

May 12, 2025

Hon. Margo K. Brodie, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

By Electronic Filing.

Re:    Mercante v. Tarzia, 24-cv-08471

Dear Judge Brodie:

My firm, with co-counsel, represents Plaintiff in the case above. I write, per the Court's rules and May 12, 2025 Minute Order, to respond to Defendant's new pre-motion conference letter (ECF No. 15), following Plaintiff's amendments as of right and by consent (ECF No. 13, "SAC"). As briefly discussed below, Defendant's arguments are without merit. This is now Defendant's second attempt at a pre-motion letter, along with a fully briefed motion served on Plaintiff. Yet, Defendant has barely, if at all, responded to the operative complaint. A brief telephone conference may help crystalize a more efficient — and focused on the actual claims and elements — approach to briefing, but otherwise, Plaintiff is ready to brief the motion.

### I. Defendant's Personal Jurisdiction Arguments are Meritless.

First, Defendant's argument the Court lacks jurisdiction fails and does not address the amendments. Whether under CPLR § 302(a)(3) (for the non-defamation causes of action) or otherwise, a course of action targeted at, and integrated with, New York is sufficient for jurisdiction. New York is not some random place: It is the center of this controversy. Defendant's connections with — and intentional projections into — New York are detailed at length in the SAC, yet barely addressed in his letter. Some highlights are below.

Most clearly, Defendant has deliberately targeted and projected his presence at New York. Plaintiff's former employer, Kotaku, located in New York. And Defendant conducted his "#EndKotaku" campaign, obviously directed at that New York business for the (accomplished) purpose of, among other things, ending Plaintiff's career there. And on the prima facie tort/stochastic harassment claims,[1] Defendant's statements that he recognizes the publication of private information necessarily and inevitably leads to such harassment (ECF No. 1 ¶ 107), plus his celebratory behavior after just such events occurred (*e.g.,* ECF No. 1 ¶¶ 136, 152, 161), show he specifically targeted the harassment to reach Plaintiff *in New York*. Of course, the daily stream of rape and death threats that followed (*see, e.g.,* ECF No. 13-1) reached Plaintiff in New York.

---

[1] While, at least arguably, the gravamen of some of Plaintiffs' claims overlaps with the defamation, *see* ECF No. 7 at 2 n. 1, that is not true for the prima facie tort/stochastic harassment claim, as explained below.



Next, Defendant's downstream agents are also largely clustered in New York, and he even has appeared on multiple New York-hosted shows — shows on which he engaged in much of the conduct alleged in the SAC.  *See, e.g.,* SAC ¶¶ 38-45; 46.[2]  Likewise, Defendant's website is a New York-based operation.  That website, where he made some of the statements at issue[3] in the defamation claims, is hosted by Wix.com, in Manhattan.  Defendant purchased extra features (like allowing user comments), triggering Wix's terms of service[4] with a choice of law clause for New York.  Moreover, the website paywalls content about Plaintiff (meaning Defendant receives income from statements and conduct at issue), the website is highly interactive (as relevant under the caselaw), that interactivity is a major part of the *prima facie* tort and § 79-n claims, and Plaintiff receives revenue from that website, growing out of his harassment and defamation.[5] SAC ¶¶ 60-67; *accord Am. Girl, LLC v Zembrka*, 118 F.4th 271, 278 (2d Cir 2024) (jurisdiction where "Defendants contend that they did no more than operate interactive websites that were accessible from New York").  As in *Am. Girl*, Defendant derives significant revenue from his projections into New York: He's made over 150 hours' worth of videos and content about Plaintiff, and encourages downstream content creators to post content about her so that he can then react to that content, creating harassment and even more discussion regarding Plaintiff that he can flog for views and revenue.

## II. Defendant Does Not Challenge the Well-Pled Non-Defamation Claims.

Defendant seeks to file a motion to dismiss,[6] essentially exclusively briefing defamation doctrine and ignoring the remainder of Plaintiff's causes of action, claiming that they all "sound in defamation."  ECF No. 13 at 2.  However, the explicitly "narrow" rule Defendant is citing here has no application:  It is black-letter doctrine that "where the alleged harm suffered by the plaintiff is not ***precisely*** the same as that caused by defamation" — namely, harm to the plaintiff's reputation — "the Court should decline to construe a claim as one for defamation."  *Lindner v IBM Corp.*, 2008 US Dist LEXIS 47599, at *43 (SDNY June 18, 2008) (cleaned up; emphasis in original; collecting cases).

With that rule in hand, the fault in Plaintiff's approach is clear.  And the amendments in response to the first motion to dismiss should have led to at least *some* further analysis from Plaintiff.  Plaintiff's N.Y. Civ. R. L. § 79-n and *prima facie* tort/stochastic harassment claims are based on — by their express terms — entirely differenty acts and damages as the defamation claim.  Indeed, the SAC itself clarifies the claims "do[] ***not*** seek any damages for injury to reputation, or from the falsity of Tarzia's statement[s]."  SAC ¶ 408 (emphasis in original).

---

[2] *Cf. also, e.g.,* ¶ 293 (Defendant's counsel saying on a livestream that the choice of New York venue was "Better for me than to s[ue] to you in California," and similar venue choices "happen[] all the time.").

[3] Even in Defendant's YouTube videos, hosted by a company not in New York, Defendant repeatedly steers viewers to his New York-based Wix site.

[4] https://www.wix.com/about/terms-of-use

[5] *See, e.g.*, *Gianetta v. Johnson*, No. 20 CIV. 9016 (PAE), 2021 WL 2593305, at *8 (S.D.N.Y. Jun. 24, 2021), quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967).  *See also*, *Fischbarg v Doucet*, 38 AD3d 270, 275 (1st Dept 2007) (jurisdiction over an out-of-state individual who only e-mailed, phoned, faxed and mailed into New York); *Legros v. Irving*, 38 A.D.2d 53, 55 (1st Dep't 1971).

[6] Even in the full motion to dismiss, Defendant did not bother making any arguments addressing the non-defamation claims.  Thus, the amendments intended to spell out exactly what acts and damages were at issue in what claims.



So, the "narrow" rule Defendant cites is inapposite: There is no question that the conduct at issue in — and the damages sought by — the Second and Fifth Causes of Action are "not *precisely* the same as that [raised by the] defamation" claim. *Lindner*, 2008 US Dist LEXIS 47599, at *43. So Defendant must address these on their own terms, yet he still fails to make any argument on that front even on this third go-round. Thus, the pre-motion letter provides no "basis for the anticipated motion," at least to the extent Defendant is attacking the Second and Fifth Causes of Action.

### III. Plaintiff's Shifted Defamation Arguments Lack a Connection to the Elements of a Defamation Claim.

Defendant then turns to defamation, shifting from earlier arguments saying he relied on statements made *after* the statements sued over, to now argue that Plaintiff's public statements discussing "sex work" and where she stated that she used to be a cam girl (a girl who chats, often in states of undress, with viewers) end her defamation claim as a matter of law. *See* ECF No. 15 at 2-3. But Defendant never explain what element of defamation these statements would bar.

At first he seems to argue it goes to actual malice: Defendant could have "reasonably interpreted" the statements to mean the specific facts he would state as fact months later. *Id.* at 2. But the complaint does *not* allege Defendant ever saw or relied on the statement from mid-2023 in making statements in March 2024. In fact, the SAC specifically describes how Defendant (necessarily falsely) specifically claimed he relied on different statements made *after* his accusations as his source. SAC ¶¶ 157-163.[7] So how Defendant "reasonably interpreted" the tweets is irrelevant without predicate evidence. ECF No. 15 at 2.

Next, Plaintiff seems to argue the tweets go to truth and a kind of defamation-proof status. *Id.* at 3. Again, however, this move turns on what Defendant says a "reader [would] understanding 'sex work' … to mean," disconnecting it from the relevant element: Falsity. *Id.* at 3. The rule here is that a proffered document must "utterly refute … the plaintiff's factual allegation that the allegedly defamatory statement is false." *Greenberg v Spitzer*, 155 AD3d 27, 45-46 (2d Dept 2017). But the tweet offered does not even bear on falsity, because falsity has nothing to do with what some hypothetical viewer took as a possible (but reaching) interpretation of a barely-seen tweet. And the SAC is clear on that: Plaintiff has never engaged in specific sex acts in exchange for money (or done any other illegal sex work). SAC ¶ 147-150; N.Y. Pen. L. § 230. Since the tweet offered does not "utterly refute" the allegation that Defendant's specific statements were false, it cannot be a basis for dismissal.

In sum, the fact that, months before the statements Plaintiff made, Defendant made a joke and said she worked in sex work very broadly does not establish that (1) Plaintiff ever saw, let alone relied on and took the unreasonable interpretation of those statements he advances now (purportedly defeating the fault element) or (2) that as a matter of law, Plaintiff's *different* "utterly refutes" her falsity allegations. *Greenberg*, 155 AD3d at 45-46.

---

[7] Perhaps in discovery, Defendant will walk back those statements, and perhaps a jury might even believe his retraction. But nothing in the SAC (or the motion to dismiss for that matter) suggests Defendant ever even *saw* the barely-viewed 28-like and 30-like tweets from months before his statements, let alone relied on it.

COHEN&GREEN                                                                                     Page 3 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



As always, I thank the Court for its time and attention to this matter.

>Respectfully submitted,
>/s/
>_____
>J. Remy Green
>*Honorific/Pronouns: Mx., they/their/them*
>**COHEN&GREEN P.L.L.C.**
>*Attorneys for Plaintiff*
>1639 Centre St., Suite 216
>Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com