**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ALYSSA MERCANTE.,

       *Plaintiff,*

  *v.*

JEFF MR. TARZIA,

       *Defendant.*

Case No.: 1:24-cv-08471

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

Ronald D. Coleman
COLEMAN LAW FIRM, P.C.
50 Park Place, Suite 1105
Newark, NJ  07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorneys for Defendant*

# CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................ 3

I.    LEGAL STANDARDS ..................................................................................................... 3

    A.    Fed. R. Civ. P. 12(b)(2)—Personal Jurisdiction ...................................................... 3

    B.    Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim .................................................. 3

II.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT AND SHOULD
DISMISS THE SAC PURSUANT TO FED. R. CIV. P. 12(b)(2). ............................................ 4

III.  THE SAC FAILS TO STATE A PLAUSIBLE CLAIM FOR DEFAMATION AND SHOULD
BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6). ................................................. 8

IV.   THE SAC FAILS TO STATE A CLAIM UNDER NEW YORK CIVIL RIGHTS LAW § 79-n
FOR HARRASSMENT BASED ON PLAINTIFF'S GENDER PRESENTATION AND SEXUAL
ORIENTATION. .................................................................................................................. 17

V.    THE SAC FAILS TO STATE A CLAIM FOR EMOTIONAL DISTRESS, TORTIOUS
INTERFERENCE OR PRIMA FACIE TORT. ....................................................................... 18

VI.   DEFENDANT IS ENTITLED TO ATTORNEYS' FEES UNDER NYCRL § 70-a. ................ 19

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) .............................................................. 3

*Aristocratic Plastic Surgery v. Silva*, 206 A.D.3d 26 (1st Dep't 2022) ...................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 3

*Bacon v. Nygard*, NY Slip Op 05028, ¶ 1, 140 A.D.3d 577 (App. Div. 1st Dept. 2016) .......................... 18

*Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ........... 19, 20

*Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783 (3rd Dep't 1994) ........................................ 19

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ....................................................... 15

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) .................................. 7

*Coritsidis v. Khai Bnei Torah of Mount Ivy*, No. 22-cv-10502 (CS), 2024 WL 37122,
    (S.D.N.Y. Jan. 3, 2024) ............................................................................................................. 19

*Dixon v 105 W. 75th St. LLC*, 148 AD3d 623 (App. Div. 1st Dept 2017) ................................... 3

*Dykstra v. St. Martin's Press LLC*, Slip Op 31813(U) (Sup. Ct. NY Cty. 2020) ......................... 4

*Fleischer v NYP Holdings, Inc.*, 104 AD3d 536 (1st Dept 2013), *lv denied*, 21 NY3d 858 (2013) .......... 18

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ........................................................... 9

*Golan v. Daily News*, 214 A.D.3d 558 (1st Dep't 2023) ............................................................. 20

*Goldman v. Barrett*, 733 F. App'x 568 (2d Cir. 2018) ................................................................ 18

*Greenberg v Spitzer*, 155 AD3d 27 (App. Div. 2d Dept 2017) ............................................. 4, 13

*Guccione v Hustler Mag., Inc.*, 800 F2d 298 (2d Cir 1986), *cert. denied*, 479 U.S. 1091 (1987) ............. 15

*Harris v. Am. Acct. Ass'n*, No. 22-811, 2023 WL 2803770 (2d Cir. Apr. 6, 2023), *cert. denied*,
    __ U.S. __144 S. Ct. 565, 217 L. Ed. 2d 301 (2024) .............................................................. 7

*Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136 (S.D.N.Y. 2022) .................................... 13

*In re Starter Corp. Sec. Litig.*, No. 94 CIV. 718 TPG, 1996 WL 406624 (S.D.N.Y. July 19, 1996) .......... 8

*Islay v Garde*, No. 160699/2018, 2024 WL 763923 (N.Y. Sup. Ct. Feb. 13, 2024) ................... 20

*Karam v. Cty. of Rensselaer*, No. 1:13-cv-01018 (MAD/DJS), 2016 U.S. Dist. LEXIS 368
    (N.D.N.Y. Jan. 4, 2016) ............................................................................................................ 17

*Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*, 205 A.D.3d 467 (2022) .............................. 5

*Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504 (S.D.N.Y. 2013) .................................................... 18

*Lanasa v. Stiene*, No. 24-1325, 2025 U.S. App. LEXIS 6775, (2d Cir. Mar. 24, 2025) ................... 9. 18

*Le v. Triza Elec. Corp.*, No. 19-cv-5134 (ARR) (PK), 2020 U.S. Dist. LEXIS 45300
    (E.D.N.Y. Mar. 16, 2020) ......................................................................................................... 17

*Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453 (N.Y. 1967) ......................................................... 18

*Pontarelli v. Shapero*, 231 A.D.2d 407 (1st Dept. 1996) ............................................................. 5

*Prince v. Interce*pt, 634 F. Supp. 3d 114 (S.D.N.Y. 2022) ........................................................... 4

*Rall v. Hellman*, 284 A.D.2d 113 (App. Div. 1st Dept. 2001) .................................................... 18

*Rapaport v. Barstool Sports Inc.*, No. 22-cv-2080, 2024 U.S. App. LEXIS 556 (2d Cir. Jan. 9, 2024) ...... 9

*Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ...................... 5, 18

*Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) .................................... 8

*Saunders v. Taylor*, NY Slip Op 51743(U), 6 Misc. 3d 1015(A), 1015A (Sup. Ct. NY Co. 2003) ............ 9

*Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniveral Media, LLC*, 864 F.3d 236 (2d Cir. 2017) ........................................................................ 3

*Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198 (E.D.N.Y. 2014) ................................................. 6

*Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead*, 98 F. Supp. 2d 347 (S.D.N.Y. 2000) ....... 19

## Statutes

28 U.S.C. § 1332 ............................................................................................................................. 4

NYCRL § 76-a(2) .......................................................................................................................... 3

NYCRL § 70-a ........................................................................................................................ 16, 17

NYCRL § 79-n ..................................................................................................................... 14, 16, 17

## Other Authorities

Brian S. MacNamara, "Commentary: New York's Hate Crimes Act Of 2000: Problematic and Redundant Legislation Aimed at Subjective Motivation," 66 *Alb. L. Rev.* 519, 534 (2003) .... 15

Merriam-Webster online dictionary "Sex worker" found at https://www.merriam-webster.com/dictionary/sex%20worker .................................................................................... 8

Merriam-Webster online dictionary, "Camgirl," found at https://www.merriam-webster.com/dictionary/ camgirl. ............................................................................................... 11

Merriam-Webster online dictionary, "Whore," found at https://www.merriam-webster.com/dictionary/whore ................................................................................................................ 8

Urban Dictionary, "Getting F*cked," found at http://getting-fucked.urbanup.com/3404630 (entry created October 14, 2008). .................................................................................................. 9

## Rules

Fed. R. Civ. P. 8 .......................................................................................................................... 17

Fed. R. Civ. P. 12(b)(2) ............................................................................................................. 3, 4

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3, 12, 17

NYCPLR § 302(a) ........................................................................................................... 4, 5, 6

NYCPLR § 3211(g)(1) ........................................................................................................... 3

## INTRODUCTION

In this defamation case—as a matter of New York law, all five counts sound in defamation, regardless of how styled—plaintiff, a New York resident, alleges that defendant, who lives and works in California, said things—a lot of things—about her on the Internet that offended her and made her lose her job. The SAC alleges that these comments constituted bias-based harassment; tortious interference with contract; intentional infliction of emotional distress; and a new offense called "stochastic terrorism" which is, in fact, at best a non-justiciable social phenomenon and, at worst, an expression of contempt for free speech. The gravamen of the SAC, however, is that defendant accused plaintiff, who has repeatedly described herself as a former "sex worker," of prostitution, and that this constituted defamation.

Plaintiff's problem, however, is that she has—as shown below—repeatedly, publicly and unapologetically **described herself** online as a (i) a former sex worker and (ii) a "whore"—and urged followers not to deem either of these occupations or epithets as demeaning or negative. This posture and attitude may or may not be a problem for plaintiff with respect to how she lives her life and how she influences others to live theirs—but for her complaint of defamation, as well as the other tort claims in the SAC, these self-descriptions are a problem indeed: one of many fatal ones, as set out below.  The SAC should be dismissed and the defendant should be awarded attorneys' fees and costs under New York's Anti-SLAPP statute.

## STATEMENT OF FACTS

The plaintiff in this action is Alyssa Mercante, who writes about videogames. The defendant is Jeff Tarzia, who operates social media channels that focus on videogames under the name "SmashJT."  The SAC outlines what is described as a harassment campaign by Mr. Tarzia, a social media influencer, against Mercante, a former senior editor at Kotaku, a website that reports

1

on news and developments in the world of video gaming and an active social media figure in her own right. Mr. Tarzia is alleged to have targeted Mercante as part of a campaign against perceived "woke" bias in video game journalism. According to the SAC, Tarzia is so influential that his actions alone caused Mercante's resignation from Kotaku, resulting in significant personal and professional harm.

The SAC begins by providing context on the original "Gamergate" controversy from 2014 and sets the stage for its own ideological bent by characterizing all critics of Kotaku's journalistic practices as "right-wing." Mr. Tarzia created and uploaded YouTube content consisting of his reporting on a new controversy in 2024 that came to be known as "Gamergate 2.0" involving a company called Sweet Baby Inc., which the SAC suggests Mr. Tarzia wrongfully used to grow his online following, largely by attacking Mercante—a significant figure in the original Gamergate and a brash, militant and frequently obscene voice in the online culture wars—as well as Kotaku.

The SAC describes Mr. Tarzia's coverage of Mercante, and her role in "Gamergate 2.0," as harassment, alleging that he made false statements about her personal life, repeatedly invocation of her name and image without consent, and called for his followers to target her with their own online opprobrium. The SAC contains no allegation of any threat of physical harm to Mercante by Mr. Tarzia or anyone else.

The SAC lists five causes of action: (i) Defamation and defamation per se for alleged false statements about Mercante; (2) bias-related violence or intimidation under New York law; (3) intentional infliction of emotional distress; (4) tortious interference with Mercante's employment contract; and (5) a proposed new tort of "stochastic terrorism" or, alternatively, deployment of the prima facie tort rubric based on Mr. Tarzia and, allegedly, his friends mocking Mercante online. The SAC alleges Mercante suffered damages including loss of employment, income, and

professional opportunities; damage to her personal and professional reputation; and severe emotional distress.

## LEGAL ARGUMENT

### I.    LEGAL STANDARDS

#### A.    Fed. R. Civ. P. 12(b)(2)—Personal Jurisdiction

A plaintiff has the burden of proving personal jurisdiction by a preponderance of the evidence but need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion. The plaintiff may not, however, "rely on conclusory non-fact-specific jurisdictional allegations to overcome a motion to dismiss." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d Cir. 2017).

#### B.    Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013). Also, under New York's anti-SLAPP law, an action such as this one, "based upon . . . the exercise of the constitutional right of free speech in connection with an issue of public interest," NYCRL § 76-a(2), is subject to dismissal unless the SAC establishes a "substantial basis" for the action pursuant to NYCPLR § 3211(g)(1). Under that provision, where a defense is founded upon documentary evidence, dismissal appropriate "where the documentary evidence presented conclusively

establishes a defense to the plaintiff's claims as a matter of law." *Dixon v 105 W. 75th St. LLC*, 148 AD3d 623, 626-27 (App. Div. 1st Dept 2017)(internal citations omitted); *Dykstra v. St. Martin's Press LLC*, Slip Op 31813(U), ¶ 8 (Sup. Ct. NY Cty. 2020). "[T]here is," moreover, "particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quotation marks and citation omitted); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). To that end, under New York law courts may consider documentary evidence to establish context relevant to affirmative defenses or for context. *Dykstra*, supra, 2020 NY Slip Op 31813(U), ¶ 8 (Sup. Ct.), quoting *Greenberg v Spitzer*, 155 AD3d 27 (App. Div. 2d Dept 2017).

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT AND SHOULD DISMISS THE SAC PURSUANT TO FED. R. CIV. P. 12(b)(2).

This Court has no jurisdiction over defendant. The SAC alleges that plaintiff is a resident of the State of New York, and that defendant resides in California (Compl. ¶¶ 31-32) but alleges jurisdiction on the ground that defendant "has directed his activities towards the State of New York via his '#EndKotaku' campaign" on the Internet (¶ 36) and because he has friends in New York (¶¶ 37-46) who sometimes repeat what he says (¶ 69). The SAC also goes to great lengths to allege facts concerning Mr. Tarzia's statements and advocacy directed at Kotaku, which is in New York City, but is not the plaintiff. (¶¶ 48-53). It is well established law that such allegations—which, as in this instance, allege conduct sounding in defamation—fall far short of satisfying New York's longarm jurisdiction statute.

Subject matter jurisdiction here is alleged to be based on diversity under 28 U.S.C. § 1332. (¶ 33). And, as is well known, in a diversity action personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits and by the limits of due process. *See*, *Prince v. Interce*pt, 634 F. Supp. 3d 114, 128–29 (S.D.N.Y. 2022). The Court, consequently, first looks to New York's jurisdictional statute, NYCPLR § 302(a) to ascertain whether that statute provides for long-arm jurisdiction under the facts alleged and then determines whether such exercise would comport with due process. *Id.*

Courts routinely recognize that "placing allegedly defamatory content on the internet and making it accessible to the public does not constitute the transaction of business in New York, even when it is likely that the material will be read by New Yorkers." *Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*, 205 A.D.3d 467, 467 (2022). Here the SAC's jurisdiction allegations track NYCPLR § 302(a)(3)(ii), which provides that "a court may exercise personal jurisdiction over any non-domiciliary ..., who commits a tortious act without the state causing injury to person or property within the state, **except as to a cause of action for defamation of character arising from the act**, (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce" (emphasis added.)  The CPLR, in other words, explicitly exempts defamation claims from the operation of New York's long-arm jurisdiction—and notwithstanding the tag-along causes of action in the SAC, this is essentially a defamation action. See, e.g., *Reich v. Lopez*, 38 F. Supp. 3d 436, 458 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ("Although Plaintiffs' claims include, in addition to defamation, tortious interference with prospective economic advantage, trade libel, and injurious falsehood, all of these causes of action sound in defamation").  Plaintiff, therefore, cannot as a matter of law establish jurisdiction over Mr. Tarzia because "[t]here is no basis to exercise 'long-arm'

jurisdiction over . . . nondomiciliary defendants . . . under CPLR 302(a)(2) or (3) where, as here, the only tort alleged to have been committed, defamation of character, cannot form the basis for long-arm jurisdiction under the specific language of the statute." *Pontarelli v. Shapero*, 231 A.D.2d 407, 410 (1st Dept. 1996).

Plaintiff's "targeted at New York" allegations are unavailing. As this Court explained in *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198 (E.D.N.Y. 2014), while the Due Process Clause might allow the State of New York the power to allow its courts to exercise "impact-" or "effects-only" jurisdiction, it has chosen not to do so; NYCPLR § 302(a)(1)'s transaction requirement "sets a decidedly stricter test for defamation cases." *Id*. at 203. The same is true, of course, for NYCPLR § 302(a)(3), to which the defamation carve-out applies, except that instead of using the word "transaction," it provides in subsection (i) for essentially the same thing—that a defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." Again, no legally sufficient allegations of such activity are alleged in the SAC.

Alternatively, however, the statute provides under subsection (ii) that personal jurisdiction may exist if the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." No allegations of substantial revenue are found in the "Jurisdiction and Venue" section of the SAC (¶ 33), however. Plaintiff does put together a grab-bag of activities by which it purports to establish that Mr. Tarzia's expects or should reasonably expect the act to have consequences in New York, such as by agreeing to use a web hosting service with New York choice of law and forum selection clauses (¶ 56), which have nothing to do with plaintiff; that he has a YouTube "shop" (¶ 62) which, along with offering YouTube "subscriptions" (actually, memberships) to his channel for $4.99 a

month, leads the SAC to simply assert, "Therefore, Tarzia collects significant revenue in New York" (¶ 67).

The SAX also alleges that Mr. Tarzia has a friend, the YouTube personality "Hypnotic," who orders manga comics from Amazon… which are evidently shipped from a warehouses in Melville and Syosset… and thus presumably lives in New York (¶¶ 38-45), but who, all the same, is Hypnotic, and is not Jeff Tarzia. The SAC also alleges that YouTubers "ToastywiththeMosty" and "RevSaysDesu" live in Brooklyn and Jamesville, New York, respectively (¶ 46-47) , even though neither one of them is alleged to be Mr. Tarzia either.  These allegations appear to be an attempt to establish a "conspiracy theory" of personal jurisdiction. Plaintiff's vague description of YouTubers endorsing each other's commentary—some of whom are New York residents—does not, however, suffice to establish long-arm jurisdiction because the SAC fails to either make out a valid conspiracy claim or name those New Yorkers as defendants. See, *Harris v. Am. Acct. Ass'n*, No. 22-811, 2023 WL 2803770, at *2 (2d Cir. Apr. 6, 2023), *cert. denied*, __ U.S. __144 S. Ct. 565, 217 L. Ed. 2d 301 (2024) ("conspiracy theory" of personal jurisdiction fails where forum pleadings fail to allege actionable claims against domiciliaries themselves). Nor does the SAC adequately allege facts which, if true, would make these New York–based YouTubers agents of Mr. Tarzia. *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 86 (2d Cir. 2018) ("Schwab's sparse allegations of agency . . . are too conclusory to make a prima facie showing of personal jurisdiction").

Alternatively, the SAC's allegations may be taken as approaching a formulation that might satisfy § 302(a)(3)(ii), because it alleges that Mr. Tarzia's conduct, besides being "directed" at a New York resident, resulted in "consequences" and "substantial revenue." It seems, in other words, that the "substantial revenue" alleged here is essentially nothing other than the revenue allegedly

7

generated by Mr. Tarzia's online statements about the plaintiff—a matter regarding which plaintiff cannot plausibly claim to know, much less quantify, and which she has no reasonable basis for guessing about. See, e.g., *Hartman v. Low Sec. Corr. Inst. Allenwood*, No. 03 CIV. 5601 (DLC), 2004 WL 34514, at *2 (S.D.N.Y. Jan. 7, 2004) ("Hartman's speculation that Evangelical has received substantial income from services performed on New York residents does not address the statute's requirement that the revenue be derived from services performed 'in' New York"); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 420 (S.D.N.Y. 2009) ("Even assuming those facts could support an inference that transactions with New York residents occurred, they would nonetheless be insufficient to support the further, necessary finding that defendants purposefully and knowingly entered into those transactions with New York residents or otherwise targeted New York for business").

Plaintiff's jurisdictional allegations fail for these reasons, and the Court should dismiss this case for lack of personal jurisdiction over the defendant.

## III.    THE SAC FAILS TO STATE A PLAUSIBLE CLAIM FOR DEFAMATION AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).

The SAC includes many allegations concerning political and social "culture war" topics. "The complaint in this case contains a great amount of narrative, rhetoric and possible evidence, which actually obscures the issue of whether a real claim is stated." *In re Starter Corp. Sec. Litig.*, No. 94 CIV. 718 TPG, 1996 WL 406624, at *2 (S.D.N.Y. July 19, 1996) ("The amended complaint is a lengthy document of 43 pages and 110 paragraphs. In the unfortunate style of many current complaints in the federal courts, it falls a long distance short of complying with Fed. R. Civ. P. 8[(a)(2)]"). Focusing, however, on the factual allegations against Mr. Tarzia, the claims against him are legally deficient. Plaintiff is unquestionably a public figure

and thus bears the burden of plausibly alleging all required elements of defamation including actual malice. "Conclusory allegations that the statements were 'false' are insufficient to survive a motion to dismiss because a plaintiff is required 'to plead facts that, if proven, would allow a reasonable person to consider the statement false.'" *Id*. Here the SAC seeks relief for both *per quod* and *per se* defamation, but the allegedly false statements—separate and apart from the many obvious expressions of opinion cited in the SAC—appear to be the same as those alleged to be actionable as *per se* defamation.

Under New York law, mere insults are nonactionable. *Lanasa v. Stiene*, No. 24-1325, 2025 U.S. App. LEXIS 6775, at *8 (2d Cir. Mar. 24, 2025). And "courts have emphasized the generally informal and unedited nature of" communications in Internet forums, which "leads readers [to] give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) (cleaned up). All the allegations of the SAC must be considered in its context and will not be actionable if that context indicates that the comments are nothing more than hyperbole or epithet. *See*, *Saunders v. Taylor*, NY Slip Op 51743(U), ¶ 5, 6 Misc. 3d 1015(A), 1015A (Sup. Ct. NY Co. 2003); *Rapaport v. Barstool Sports Inc*., No. 22-2080-cv, 2024 U.S. App. LEXIS 556, at *8 (2d Cir. Jan. 9, 2024) (statement that plaintiff was a "stalker, or has committed domestic abuse" were non-actionable opinions considering the immediate and the broader context in which each challenged statement was delivered).

Indeed, contrary to the SAC's assertion regarding plaintiff's use of an emoji, the "obvious" interpretation of it is that plaintiff was making fun of her own double-entendre—a double meaning that, again, relies **entirely** on the reader understanding "sex work" not to mean, as the SAC claims, "selling erotic pictures" (¶ 147), but prostitution—which is what it means. See, e.g., *United States*

*v. Purcell*, 967 F.3d 159, 168 (2d Cir. 2020) (sex trafficking defendant "expected the women to avoid relationships and interactions with other men (other than in the performance of commercial sex work)"); *United States v. Rivera*, No. 19 CR. 131 (PAE), 2021 WL 5106631, at *5 (S.D.N.Y. Nov. 3, 2021), *aff'd*, No. 22-2780-CR, 2024 WL 2813548 (2d Cir. June 3, 2024) ("Randall advised Rivera on how to create online advertisements for Rodriguez's prostitution and to make more money from her sex work"); *United States v. McKen*, No. 2:23-CR-00377 (JMA) (SIL), 2025 WL 1384125, at *3 (E.D.N.Y. May 13, 2025) (prostitute "perform[ed] sex work" for defendant trafficker).  The SAC should be dismissed with prejudice.

The first exemplary post, reproduced as Figure 1 above, is dated December 21, 2023, and is now only available on the Internet Archive or "Wayback Machine."[1]  Presumably plaintiff deleted it, and many others reproduced here, because it can no longer be found at its original URL on the X website.[2]



Figure 1

In Figure (1), plaintiff states, "I'm just gonna go back to sex work because at least when I get f*cked a lot I'll get paid well for it." It appears that plaintiff is suggesting that, for some reason

---

[1]  Found at, https://archive.is/mqxac (last visited March 16, 2025).

[2]  Visiting the URL that Archive Today indicates is the original link, https://twitter.com/lyssa_merc/status/1737844720871838166 brings up a message stating, "Hmm...this page doesn't exist. Try searching for something else."

she believes she is "getting f*cked," i.e., abused or being taken advantage of.[3]  See, Figure (1). By playing on this dual meaning of the phrase, plaintiff makes it clear that she is not a sex worker at present, but merely the victim of some kind of abuse. She makes this point, however, by making a play on words by stating that she may as well "**go back to sex work**" and "at least . . . get paid well for it." The premise of the post, therefore, is that plaintiff **was formerly a sex worker**—a claim that was not necessary to make the play on words; plaintiff could have just as easily have said, "I'm just gonna go into sex work because at least when I get f*cked a lot I'll get paid well for it" and achieved the same effect.  It is hard to imagine any reason plaintiff would have chosen to write about "going back to sex work" if she did not mean it was something she had done before.

In another post, plaintiff answers the question, as shown in Figure (2) below, of how she got "into the gaming industry," by stating, "I sucked d*ck"—that is, she exchanged sex for economic benefit.[4]



---

[3] See, Urban Dictionary, "Getting F*cked," found at http://getting-fucked.urbanup.com/3404630 (entry created October 14, 2008), providing three definitions, the first two being "To have sexual intercourse" and "To be take advantage of, betray, or cheat; victimize."

[4] This post cannot be located anywhere online anymore.

Below are two more relevant posts. In Figure (3) plaintiff describes sex work as "just another—very lucrative—way of making money" and characterizes anyone who looks down on it as a misogynist. Indeed, in the SAC she firmly reaffirms her endorsement of sex work.



Figure 2

In Figure (4) below, plaintiff brags of having worked as a "cam girl,"[5] and demonstrates that from her point of view, that is the sort of "sex work" appropriate for celebration on "International



Figure 3

---

[5] "[A] woman who poses for a webcam especially as a form of paid adult entertainment." Merriam-Webster online dictionary, "camgirl," found at https://www.merriam-webster.com/dictionary/camgirl.

Whores Day."[6] Defendants are not aware of any source definiging "cam girl" employment as "sex work."  But it is reasonable to read the post in Figure 4 as a statement that plaintiff considers herself a member of the international fraternity she was celebrating on June 2, 2023, and not only does not consider such a description as defamatory, bur rather one to be celebrated..

Given the indisputable nature of these admissions, or seeming admissions, by plaintiff, it is well within the Court's discretion to consider them even on a motion to dismiss under Rule 12(b)(6). These Twitter / X posts "are not offered for the truth of [their] contents, but solely for the purpose of establishing the context in which the allegedly defamatory statement was made— an inquiry that bears directly on whether the statement is actionable as a matter of law." *Greenberg v Spitzer*, *supra*, 155 AD3d at 45.

Plaintiff has shifted her emphasis away from that found in the original Complaint, the operative allegations of which were that defendant referred to plaintiff as a "whore" and a "sex worker," constituting an actionable offense to plaintiff's reputation for chastity. The SAC, in contrast, acknowledges—as it must in response to the proof laid out in defendant's motion to dismiss the original Complaint—that plaintiff has admitted saying both things about herself. Plaintiff's pivot in the SAC to emphasizing the allegations that she has been accused of the crime of prostitution (¶¶ 143-155) do not strengthen her claim. Truth, of course, "is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 146 (S.D.N.Y. 2022).

Now, however, the  gravamen of plaintiff's *per se* claim is that defendant falsely accused her of committing the crime of prostitution (¶¶ 148-164). Plaintiff admits that she has been a "sex

---

[6]  This post cannot be located on X anymore, but can be found at https://web.archive.org/web/20230603021807/https://twitter.com/alyssa_merc.

worker" (¶ 147), which is defined as "a person whose work involves sex acts *especially* : a person who engages in sexual intercourse in exchange for pay."[7] She also acknowledges that she "has frequently spoken on the topic of sex work and does not consider sex work to be improper." (¶ 146)  Yet her defamation case rests on the premise that when she posted the tweet above, defendant not only **could not** have reasonably interpreted it to mean that plaintiff exchanged in sex for money, but that Mr. Tarzia **must have known** that she had never done so and was **intentionally lying** when he said she had. This argument is not sustainable as a matter of law, as shown below.

Responding to the intuitive inference from the above post that, in fact, plaintiff **has** engaged in sex work—as that term is universally understood—the SAC posits the following:

> 362. Tarzia will also likely argue that a December 21, 2023, tweet from Mercante that she should "go back to sex work" because "at least then when I get fucked a lot I'll get paid well for it." This statement is followed by a laughing emoji with its tongue hanging out.

> 363. This statement is obviously a joke.

The argument that a laughing emoji makes it "obvious" that what preceded was "just a joke" is a dubious one that has been found wanting in innumerable contexts, including defamation law. As the Texas Supreme Court has observed:

> [T]he question is not whether some actual readers were misled, as they inevitably will be, but whether the hypothetical reasonable reader could be. . . .

> This is not the same as asking whether all readers actually understood the satire, or "got the joke." Intelligent, well-read people act unreasonably from time to time, whereas the hypothetical reasonable reader, for purposes of defamation law, does not. In a case of parody or satire, courts must analyze the words at issue with detachment and dispassion, considering them in context and as a whole, as the reasonable reader would consider them.

*New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 158 (Tex. 2004). The SAC sets forth no factual basis on which the Court can conclude, as a matter of law, that a reasonable reader would read plaintiff's

---

[7]  *Id.*, "Sex worker" found at https://www.merriam-webster.com/dictionary/sex%20worker.

tweet above as a joke. And even if defendant's descriptions of her conduct was itself mere *kulturkampf* rhetoric and could somehow be shown to be empirically false, plaintiff's repeated descriptions of herself as a "sex worker" and a "whore" who took money for sex, would appear to any reasonable person to be true, and were thus not made with actual malice.

Alternatively, defendant's statements were tasteless but non-actionable polemic—or, to use plaintiff's rubric, "obvious jokes." New York courts look to the immediate context and the broader social context of the statement and evaluate the impact that the statements would have on a reasonable reader. *Obi v. Amoa*, 58 Misc.3d 446 (2017). In the context of social media, courts must carefully analyze the nature of the statements, the forum in which they were made, and the broader social context. Statements that are clearly opinions, made in a casual or emotive manner, are likely to be protected. *Jacobus v. Trump*, 55 Misc.3d 470 (2017). If plaintiff's own characterization of plaintiff and his content, as well as the politically-charged, highly rhetorical and calumny-laden discourse described and illustrated throughout the SAC are taken at face value, it is hard to understand how plaintiff can allege that the public would regard Mr. Tarzia's claims and characterizations about her as serious, reliable sources of factual information.

Finally, considering all the above, plaintiff has rendered herself "libel-proof" with respect to chastity through her own voluntary, public descriptions of herself and her moral standards. A libel-proof-plaintiff is barred from asserting a claim for defamation because his "reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject." *Guccione v Hustler Mag., Inc.*, 800 F2d 298, 303 (2d Cir 1986), *cert. denied*, 479 U.S. 1091 (1987) (plaintiff was "libel-proof" as to adultery because widely published articles were probative of the plaintiff's notoriety for adultery"); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 346 (S.D.N.Y. 1998) (court took judicial notice of "indisputable facts" of

gangster's criminal history to hold that his reputation was so "badly tarnished" that even if depiction of his involvement in violent acts was otherwise defamatory, he could not sustain a defamation cause of action as a matter of law). As a matter of law, plaintiff cannot claim to have been damaged because defendant described her as something she has publicly not only claimed she is, but who has "owned" that identity in so a militant fashion. See Figure (5) below (plaintiff describing herself in her X profile as a "feminist whore" and "slut").[8]



Figure 5

For any of these reasons or all of them, plaintiff's defamation claim should be dismissed with prejudice.

---

[8] This post on X was evidently deleted. It is available, however, at https://web.archive.org/web/20240517052410/https://x.com/alyssa_merc?mx=2.

IV.    **THE SAC FAILS TO STATE A CLAIM UNDER NEW YORK CIVIL RIGHTS LAW § 79-n FOR HARRASSMENT BASED ON PLAINTIFF'S GENDER PRESENTATION AND SEXUAL ORIENTATION.**

The Second Count of the SAC seeks relief under New York Civil Rights Law § 79-n, which states, "Any person who intentionally selects a person or property for harm or causes damage to the property of another or causes physical injury or death to another, or subjects a person to conduct that would constitute harassment under section 240.25 of the penal law." (¶ 378.) The latter provision makes it unlawful to harass a person "by engaging in a course of conduct that has reasonably put her in fear of physical injury." (*Id.*) The SAC alleges that defendant "intentionally selected" plaintiff for harassment, as that term is used in NYCRL § 79-n, because of her "gender presentation and sexual orientation." (¶¶ 379-380.) This allegation is pleaded on information and belief, and indeed no specific comment or action by defendant is cited in the SAC in support of this "selection" allegation. This claim is meritless.

As a threshold matter, there are legitimate constitutional questions about New York's hate crime laws. See, e.g., Brian S. MacNamara, "Commentary: New York's Hate Crimes Act Of 2000: Problematic and Redundant Legislation Aimed at Subjective Motivation," 66 *Alb. L. Rev.* 519, 534 (2003). But the Court need not reach that issue, because the SAC does not plausibly allege either violence or other conduct by defendant that could reasonably have put plaintiff in reasonable fear of imminent harm, as required by the statute. "'Harm' against a person, in this context, requires an act of violence or intimidation," and where, as here, a plaintiff "alleges verbal harassment, but no threats, intimidation, or violence," she "has not stated a claim" under NYCRL § 79-n. *Le v. Triza Elec. Corp.*, No. 19-cv-5134 (ARR) (PK), 2020 U.S. Dist. LEXIS 45300, at *7-8 (E.D.N.Y. Mar. 16, 2020). See also, *Karam v. Cty. of Rensselaer*, No. 1:13-cv-01018 (MAD/DJS), 2016 U.S. Dist. LEXIS 368, at *55 (N.D.N.Y. Jan. 4, 2016)

("The legislative history of § 79-n clearly states that 'this new remedy applies only to "bias-related violence or intimidation").

Nor does the SAC include any alleged facts that could plausibly support its conclusory allegation that defendant "intentionally selected" plaintiff for harassment, as that term is used in NYCRL § 79-n, because of her "gender presentation and sexual orientation." These claims should also be dismissed.

## V.    THE SAC FAILS TO STATE A CLAIM FOR EMOTIONAL DISTRESS, TORTIOUS INTERFERENCE OR PRIMA FACIE TORT.

The SAC piles on three causes of action that are merely defamation claims dressed up as other torts: intentional infliction of emotional distress, tortious interference with contract, and prima facie tort. But "New York courts treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action." *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 227 (N.Y. 1967), *quoted in*, *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018). See also, *Reich*, *supra*, 38 F. Supp. 3d at 458.

The cases are legion applying this to emotional distress and prima facie tort claim. See, e.g., *Rall v. Hellman*, 284 A.D.2d 113, 115 (App. Div. 1st Dept. 2001) "it would be improper to permit plaintiff to evade the pleading prerequisites of a libel cause of action by simply recasting his claim as one for intentional infliction of emotional distress"); *Bacon v. Nygard*, NY Slip Op 05028, ¶ 1, 140 A.D.3d 577, 578 (App. Div. 1st Dept. 2016) ("The intentional infliction of emotional distress and prima facie tort claims are duplicative since the underlying allegations fall within the ambit of the defamation causes of action"); citing, *Fleischer v NYP Holdings, Inc.*, 104 AD3d 536, 538-539 (1st Dept 2013), *lv denied,* 21 NY3d 858, 992 (2013).  *See also*, *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 n.10

(S.D.N.Y. 2013) ("IIED claims are routinely dismissed where they 'fall[] well within the ambit of other traditional tort liability'"). The emotional distress claim also fails because it fails to allege specific special damages that arose from the alleged emotional harm. *Lanasa v. Stiene*, No. 24-1325, 2025 U.S. App. LEXIS 6775, at *13 (2d Cir. Mar. 24, 2025) (emotional distress claims that do not plead the specific amount of expenses arising from treatment for emotional distress fail as a matter of law).

The same applies to tortious interference claims that merely duplicate defamation claims. "[W]here '[t]he factual allegations underlying [the prima facie tort] cause of action relate to the dissemination of allegedly defamatory materials,' that cause of action 'must fail.'" *Lanasa*, *supra*, 2025 U.S. App. LEXIS 6775, at *12, quoting, *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783 (3rd Dep't 1994).

## VI.     DEFENDANT IS ENTITLED TO ATTORNEYS' FEES UNDER NYCRL § 70-a.

This action qualifies as an "action involving public petition and participation" because it is based upon defendant's "exercise of the constitutional right of free speech in connection with an issue of public interest" under New York's anti-SLAPP law, NYCRL § 76-a(1)(a)(2). Defendant, therefore, is entitled to an award of attorneys' fees, which is mandatory under the statute: "costs and attorney's fees **shall be recovered** upon a demonstration . . . that [an action involving public petition and participation] . . . was commenced or continued without a substantial basis in fact and law." NYCRL § 70-a(1)(a) (emphasis added).

The "substantial basis" standard was designed to set a heightened pleading standard "to make it easier for defendants in SLAPP suits to win motions to dismiss." *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead*, 98 F. Supp. 2d 347, 359 (S.D.N.Y. 2000). Accordingly, where (as here) a complaint fails to state a claim under the more lenient federal pleading

standards of Rule 8 and Rule 12(b)(6), it follows that the action was necessarily commenced without a "substantial basis in fact and law" under the heightened New York standard, and the substantive standard for fees under § 70-a is triggered.  Decisions in this district declining to apply section 70-a on the ground that its "standard conflicts" with Rule 12, *see,* e.g., *Coritsidis v. Khai Bnei Torah of Mount Ivy*, No. 22-cv-10502 (CS), 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024), confuse two distinct issues.  Although New York's pleading standards do not displace Fed. R. Civ. 12(b)(6), the substantive right to fees provided by § 70-a(1) is a matter of New York substantive law and should be applied by a federal court sitting in diversity. *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277 at *13 (S.D.N.Y. Nov. 26, 2024).

New York courts have also established that § 70-a commands that attorneys' fees should be awarded on a successful pre-answer motion to dismiss without any need for filing a separate claim or action for attorneys' fees.  *See*, e.g., *Golan v. Daily News*, 214 A.D.3d 558, 559 (1st Dep't 2023); *Aristocratic Plastic Surgery v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022); *Islay v Garde*, No. 160699/2018, 2024 WL 763923, at *5 (N.Y. Sup. Ct. Feb. 13, 2024).  The Southern District is in accord. *Bobulinski*, *supra*, 2024 WL 4893277 at *13. Indeed, requiring a separate action would defeat the "Legislature's clear intent" to create a vehicle allowing defendants to "expeditiously halt SLAPP claims and recover attorneys' fees and costs without the burden of . . . protracted litigation."  *Islay*, 2024 WL 763923, at *6.  Defendant has shown that this action was commenced "without a substantial basis" and has a substantive right under New York law to an award of fees on this motion; no additional litigation is or should be necessary.

**CONCLUSION**

For all the foregoing reasons, the SAC against Jeff Tarzia should be dismissed with prejudice.

_____

Ronald D. Coleman

COLEMAN LAW FIRM, P.C.
50 Park Place, Suite 1105
Newark, NJ  07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorneys for Defendant*

June 1, 2025