**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ALYSSA MERCANTE.,

*Plaintiff*,

*v*.

JEFF MR. TARZIA,

*Defendant*.

Case No.: 1:24-cv-08471

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Ronald D. Coleman
COLEMAN LAW FIRM, P.C.
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorney for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

I. LEGAL STANDARDS .......... 1

A. The Court cannot determine if the allegedly defamatory posts by plaintiff could be defamatory as a matter of law without considering those posts in their complete social media context. .......... 1

B. The Court cannot determine if plaintiff is "libel proof" as a matter of law without considering her own posts in which she describes herself in a degrading fashion such that her reputation will not sustain an action for defamation. .......... 4

II. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SECOND AMENDMENT COMPLAINT PLAUSIBLY ALLEGES FACTS WHICH IF TRUE WOULD ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANT. .......... 5

A. The Court lacks jurisdiction under CPLR § 302(a)(1) .......... 5

B. The Court lacks jurisdiction under CPLR § 302(a)(3) .......... 6

III. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SECOND AMENDMENT COMPLAINT STATES A CLAIM FOR ANY CAUSE OF ACTION SOUNDING IN DEFAMATION. .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

### Cases

*Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009) .............................. 8

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ...................................................... 5

*Brahms v. Carver*, 33 F. Supp. 3d 192 (E.D.N.Y. 2014)............................................................ 4

*Broome v. Biondi*, 96 Civ. 0805 (RLC), 1997 U.S. Dist. LEXIS 1431 (S.D.N.Y. Feb. 10, 1997). 4

*Cassava Scis., Inc. v. Bredt*, No. 1:22-cv-9409-GHW, 2024 U.S. Dist. LEXIS 59822 (S.D.N.Y. Mar. 28, 2024) ............................................................................................................... 2

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ....................................................... 4

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)..................................... 7

*Condit v. Dunne*, 317 F. Supp. 2d 344 (2004) ............................................................................. 3

*Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am.*, 551 F. Supp.3d 320 (S.D.N.Y. 2021)......................................................................................................................... 3

*Delgado v. Sonnen*, No. 24-CV-1690 (JGLC) (JW), 2025 U.S. Dist. LEXIS 62612 (S.D.N.Y. Feb. 18, 2025)........................................................................................................... 9

*Delgado v. Sonnen*, No. 24-CV-1690 (JGLC), 2025 U.S. Dist. LEXIS 61579 (S.D.N.Y. Mar. 31, 2025)......................................................................................................................... 8

*Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184 (Ind. 2010)....................................................... 4

Dykstra v. St. Martin's Press LLC, Slip Op 31813(U), ¶ 8 (Sup. Ct. NY Cty. 2020).................. 1

*Eades v. Kennedy PC L. Offs.*, 799 F.3d 161 (2d Cir. 2015) ....................................................... 5

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) .................................................. 2, 3, 8

*Goldman v. Barrett*, 733 F. App'x 568 (2d Cir. 2018)................................................................. 8

*Greenberg v Spitzer*, 155 AD3d 27 (App. Div. 2d Dept 2017) .................................................... 1

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) .................................. 3

*Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577 (S.D.N.Y. June 10, 2005)....... 6, 7

*Lewis v. Abramson*, 673 F. Supp. 3d 72 (D.N.H. 2023) .............................................................. 3

*Rapaport* [*v. Barstool Sports*], 2021 U.S. Dist. LEXIS 59797[(S.D.N.Y. Mar. 29, 2021), *aff'd*, No. 22-2080-CV, 2024 U.S. App. LEXIS 556 (2d Cir. Jan. 9, 2024) ........................................ 9

*Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32 (N.Y. App. Div. 2011) ......................... 8

*Savage Universal Corp. v. Grazier Const., Inc.*, 2004 U.S. Dist LEXIS 16088 (SDNY Aug. 12, 2004)......................................................................................................................... 7

*Sweigert v. Goodman*, No. 23-CV-5875 (JGK), 2024 U.S. Dist. LEXIS 189346 (S.D.N.Y. Oct. 11, 2024), *reconsideration denied*, No. 23-CV-5875 (JGK), 2024 U.S. Dist. LEXIS 223609 (S.D.N.Y. Dec. 9, 2024) ........ 8

*Valle v. Bendett & McHugh, P.C.*, No. 3:14-cv-1796 (SRU), 2015 U.S. Dist. LEXIS 133111 (D. Conn. Sep. 30, 2015) ........ 3

*Valley Elecs. AG v. Polis*, No. 20-CV-2133 (ARR) (LB), 2021 U.S. Dist. LEXIS 168426 (E.D.N.Y. Aug. 6, 2021) ........ 3

*Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354 (7th Cir. 2019) ........ 4

**Statutes**

NYCRL § 76-a(1)(a)(2) ........ 10

**Other Authorities**

Tortious Tweets: A Practical Guide to Applying Traditional Defamation Law to Twibet Claims, 73 La. L. Rev. 559 ........ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1, 2

CPLR § 302(a)(3) ........ 5, 6

CPLR § 302(a)(1) ........ 5

Fed. R. Civ. P. 12(b)(1) ........ 1

## INTRODUCTION

Defendant respectfully submit this reply brief in further support of his motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff has failed to meet the burden of establishing subject matter jurisdiction and has not satisfied the pleading requirements under FRCP 8(a).

## LEGAL ARGUMENT

### I. LEGAL STANDARDS

In his moving brief, defendant cited *Dykstra v. St. Martin's Press LLC*, Slip Op 31813(U), ¶ 8 (Sup. Ct. NY Cty. 2020) and *Greenberg v Spitzer*, 155 AD3d 27 (N.Y. App. Div. 2017) for the proposition that on a motion under Fed. R. Civ. P. 12(b)(6) for a failure to state a claim, courts employing New York law will consider documentary evidence to establish context relevant to affirmative defenses or for context. Plaintiff mistakenly construes this as an argument that federal courts should apply a "heightened pleading standard" in defamation cases because of New York's anti-SLAPP law—a position she correctly observes the Second Circuit has rejected. It is not, however, a position that defendant has asked this Court to adopt. Rather, defendant cited these cases in support of a legal axiom: the substantive law of defamation requires any court to consider any statement alleged to be defamatory in the proper context. the context provided by defendant because that material is not contained within the four corners of the pleadings.

#### A. The Court cannot determine if the allegedly defamatory posts by plaintiff could be defamatory as a matter of law without considering those posts in their complete social media context.

Plaintiff, understandably, would prefer that the Court ignore the context of defendant's comments. Consideration of the screen shots included in defendant's motion to dismiss, they assert, would constitute consideration of material extrinsic to the pleadings, which is typically

prohibited on a 12(b)(6) motion. But this argument would gut the entire concept of considering a statement in its appropriate context to ascertain whether it is defamatory as a matter of law, as defamation law requires. Plaintiff asserting defamation are, to put it mildly, unlikely to include context that would tend to lessen the defamatory effect of a statement in their pleadings. As the Southern District explained in *Cassava Scis., Inc. v. Bredt*, No. 1:22-cv-9409-GHW, 2024 U.S. Dist. LEXIS 59822 (S.D.N.Y. Mar. 28, 2024), not only should a court consider such materials—especially in the context of "Twitter" (i.e., X.com)—but a defendant is remiss for failing to bring them to the court's attention:

> As an initial matter, while the context of each challenged tweet is crucial to the Court's analysis, Plaintiff has alleged almost no facts regarding their context. *See Gross*[ *v. N.Y. Times Co.*], 82 N.Y.2d [146,] 153 [(1993)] (discussing the importance of context to an analysis of an allegedly defamatory statement); *Levin* [*v. McPhee*], 119 F.3d [189,] 195 [(2d Cir. 1997)] (same). With respect to all but a few dozen of the challenged tweets, Plaintiff alleges only the posting date, author, and the text of the tweet. Had any party provided exhibits showing the context in which each tweet appeared—for instance, the other posts the tweet appeared alongside on the author's X page, the tweet that a challenged tweet responded to, or the thread in which a challenged tweet appeared—the Court would have evaluated each statement in its full context. …

*Cassava Scis., Inc.*, *supra*, LEXIS 59822, at *57-58.

Indeed, consideration of "tweets" (now known as "X posts") that provide appropriate context in defamation cases is standard operating practice in this Circuit. A leading federal case in this Circuit supporting this proposition is *Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020), cited by *Cassava Scis, Inc.*, which explained as follows in analyzing the defamation claim before it:

> First, the Court will take judicial notice of Defendant's "Exhibit 3," which—in addition to the Tweet at issue here—displays two other tweets that Defendant posted on July 27, 2018, approximately twenty minutes before the Tweet, all of which related to the same topic. These two other tweets are part and parcel of Defendant's "interject[ion]" into "the conversation (thread) between Ganske and @Conspirator0." Therefore, to look only at the Tweet—rather than all three tweets posted during this twenty-minute span—would not provide the necessary or proper

> context for understanding Defendant's statements that morning. *See Condit v. Dunne*, 317 F. Supp. 2d 344, 357-58 (2004) (taking judicial notice of documents that "aid the Court in its determination of whether plaintiff states a claim for relief [for slander]" and that help "place [the defendant's] comments in the broader social context"). Courts are permitted to take judicial notice "of documents that are 'integral to the complaint'" and "of materials in the public record . . . for the limited purpose of noting what the documents state, rather than to 'prove the truth of their contents.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020). Because Defendant's two other July 27, 2018 tweets are integral to the allegations in the complaint and necessary to place her comments in context, the Court will take judicial notice of Defendant's "Exhibit 3."…"

*Ganske, 480* F. Supp. 3d at 545-46.[1] See also, *Lewis v. Abramson*, 673 F. Supp. 3d 72, 94 n. 14 (D.N.H. 2023) ("courts considering tort actions arising out of Twitter posts regularly rely on other statements in the same thread to provide the necessary context…"); *Ctr. for Med. Progress v. Planned Parenthood Fedn. of Am*., 551 F. Supp.3d 320, 330 (S.D.N.Y. 2021) and Tortious Tweets: A Practical Guide to Applying Traditional Defamation Law to Twibet Claims, 73 La. L. Rev. 559, 599 ("The *Finkel* [*v. Dauber*] decision[, 29 Misc. 3d 325 (N.Y. Sup. Ct. 2010),] demonstrates the importance of fully analyzing the context of defamatory tweets.…"), cited by *Lewis*, *supra*.

These analyses all emphasize the importance of applying the "context" rule in a real-time, social media setting—but they are, ultimately, all applying a well-established legal principle. See, e.g., *Valley Elecs. AG v. Polis*, No. 20-CV-2133 (ARR) (LB), 2021 U.S. Dist. LEXIS 168426, at *3 (E.D.N.Y. Aug. 6, 2021) (social media screenshots that included defendant's allegedly defamatory statements "as well as their immediate contexts, are 'integral to the allegations in the complaint' and provide 'proper context for understanding [defendant]'s statements…"); *Yeatts v.*

[1] Defendant did not formally move the Court to take judicial notice of the public posts by plaintiff on X inserted into his moving brief. In an abundance of caution, he does so, albeit informally, now. See, *Valle v. Bendett & McHugh, P.C.*, No. 3:14-cv-1796 (SRU), 2015 U.S. Dist. LEXIS 133111, at *37 (D. Conn. Sep. 30, 2015) ("Because a request may be taken 'at any stage of the proceeding,' district courts have utilized judicial notice at the motion to dismiss and summary judgment stages. …").

*Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 359 (7th Cir. 2019) ("Defamation *per quod* involves words that "are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence"; quoting, "*Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010)). It is not necessary, moreover, for such "extrinsic" context to be limited to immediately contemporaneous exchanges. See, *Brahms v. Carver*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) ("The statement was also clearly 'rhetorical hyperbole' or a 'vigorous epithet' . . . particularly when viewed in the context of the heated argument—replete with name-calling—in which [plaintiff] and [defendant] had engaged only weeks earlier. …").

**B. The Court cannot determine if plaintiff is "libel proof" as a matter of law without considering her own posts in which she describes herself in a degrading fashion such that her reputation will not sustain an action for defamation.**

Additionally, as plaintiff argued in his moving brief, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 346 (S.D.N.Y. 1998) teaches that a court can—and should—take judicial notice of matters relating to reputation that are not in dispute in order to determine if the plaintiff is even capable of maintaining a defamation action as a matter of law. Plaintiff ignores this argument, and *Cerasani*—understandably. Yet it is merely one example of a legal doctrine well established in this Circuit. "The libel-proof defense has been held suitable in cases where 'the truth' or 'undisputed evidence' of a plaintiff's past had already severely damaged the plaintiff's reputation. …" *Broome v. Biondi*, 96 Civ. 0805 (RLC), 1997 U.S. Dist. LEXIS 1431, at *14 (S.D.N.Y. Feb. 10, 1997). This is such a case. Whether or not plaintiff is a "whore" or a sex worker is not at issue here; what is at issue is that she has repeatedly described herself that way, regarding which there are no grounds for dispute.

The Court should decline plaintiff's attempt to wrench defendant's online comments from their context, including plaintiff's own debased and degrading descriptions of herself, her conduct

and her moral views, because the law requires that context in order to evaluate (1) whether Mr. Tarzia's comments would be construed as defamatory in the social media context and (2) whether it is even possible to defame this plaintiff—who has crafted an online reputation as a militantly libertine feminist who embraces an identity, whether real or for show, of "whore" and "sex worker"—as a whore or a sex worker.

## II. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SECOND AMENDMENT COMPLAINT PLAUSIBLY ALLEGES FACTS WHICH IF TRUE WOULD ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER DEFENDANT.

Plaintiff argues in her opposition that this Court has jurisdiction pursuant to CPLR §§ 302(a)(1) and (3). As demonstrated below, neither provision of New York's longarm statute applies here.

### A. The Court lacks jurisdiction under CPLR § 302(a)(1).

To establish jurisdiction under § 302(a)(1), a plaintiff must allege that: (1) the defendant has "transacted business" in New York, and (2) the claim asserted arises from that business activity. *Eades v. Kennedy PC L. Offs*., 799 F.3d 161, 168 (2d Cir. 2015). "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state. Although § 302(a)(1) does not exclude defamation from its coverage, New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation…." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Even if the SAC did adequately plead that defendant transacted business in New York, moreover, plaintiff's opposition makes clear, albeit by omission, that she has not alleged that her claims arise out of defendant's New York activities—notwithstanding the activities of any of his friends and associates. Absent such a showing, personal jurisdiction cannot be claimed over non-

domiciliary defendants under § 302(a)(1). *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381 (E.D.N.Y. 2015). See also, *Lenahan Law Offices, LLC v. Hibbs*, No. 04-CV-6376 CJS, 2004 U.S. Dist. LEXIS 30528, at *19 (W.D.N.Y. Dec. 22, 2004).

Plaintiff also misconstrues the meaning of "targeted." As the Southern District of New York has explained:

> Defendant's online activities consist of postings regarding plaintiff, and as such, do not provide a basis for jurisdiction. The sole connection between plaintiff's cause of action and New York—the fact that plaintiff, the subject of defendant's postings, is a resident of New York—is not sufficient to support a finding of jurisdiction under 302(a)(1). Beyond the internet activity already referenced, plaintiff has submitted no further evidence to connect defendant with New York. Furthermore, defendant attests that "no web page on any of my web sites or public message postings have ever been directed at the forum state of New York. Anything I advertise, publish, or state as a matter of free speech is intended to be read by the entire worldwide internet audience, and is not directed at any specific forum." As there is nothing in the record to suggest that defendant purposefully availed herself of the benefits and protections of the laws of New York, there is no jurisdiction under section 302(a)(1).

*Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577, at *10-11 (S.D.N.Y. June 10, 2005). Conduct does not "target" New York merely because the "target" of the alleged tort is a New York resident; it means that *the target of the message being broadcast is New York State*—something the SAC does not, and cannot plausibly, allege. *Compare*, *Ousmane Bah v. Apple Inc.*, No. 19-cv-3539 (PKC), 2020 U.S. Dist. LEXIS 22867, at *12-13 (S.D.N.Y. Feb. 10, 2020) (complaint alleged that defendants published false accusations "in New York, directed to a specific New York audience, the NYPD, and intended to have a specific effect within New York, the initiation of legal process against [plaintiff] in New York….").

**B. The Court lacks jurisdiction under CPLR § 302(a)(3).**

Plaintiff also relies on § 302(a)(3), however, which by its terms does not apply to defamation actions. In doing so, plaintiff once again disregards the rule, addressed at length in

defendant's moving brief, that courts sitting in New York "are instructed to decline jurisdiction over claims that attempt to avoid the requirements of New York's long-arm statute by merely restating a defamation claim under a different name." *Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577, at *12 (S.D.N.Y. June 10, 2005) (citation omitted).

Plaintiff relies on a non-defamation case, *Savage Universal Corp. v. Grazier Const., Inc.*, where a "campaign" of attacks at a New York company plus interactive websites sufficed to establish longarm jurisdiction. 2004 U.S. Dist. LEXIS 16088, at *33 (SDNY Aug. 12, 2004). This reliance is misplaced. First, Plaintiffs have failed to allege facts establishing that Mr. Tarzia's YouTube channel is, in fact, an "interactive" website. "It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred. …" *Savage*, 2004 U.S. Dist. LEXIS 16088 at *28. Here there is none, other than at best a mere guess. See also, *Citigroup Inc. v. City Holding Co*., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) ("passive" websites, which merely make information available to viewers, have "been analogized to an advertisement in a nationally-available magazine or newspaper, and [do] not without more justify the exercise of jurisdiction over the defendant") (internal citations omitted).

Nothing in the SAC plausibly alleges—nor can the entirety of its narrative, which insists that Mr. Tarzia sought to maximize his viewership, as opposed to his viewership in New York alone—that any of his alleged conduct was meant to have an effect on a New York audience. This Court does not have personal jurisdiction over Mr. Tarzia.

## III. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SECOND AMENDMENT COMPLAINT STATES A CLAIM FOR ANY CAUSE OF ACTION SOUNDING IN DEFAMATION.

Putting aside, for the sake of this motion, the issue of jurisdiction, plaintiff's submission only reinforces the preposterous nature of this defamation lawsuit—which, again, is all it is. "Here, while Plaintiff asserts she pleads different *damages* because certain of her business relationships allegedly suffered, the fact remains that "any economic damages [would] derive from [the] defamatory statements." *Goldman v. Barrett*, 733 F. App'x 568, 571 (2d Cir. 2018) (summary order). And as Plaintiff's authority confirms, the key question is whether the 'reality' and 'essence of the action' can be considered defamatory in nature, which the Amended Complaint clearly is." *Delgado v. Sonnen*, No. 24-CV-1690 (JGLC), 2025 U.S. Dist. LEXIS 61579, at *15 (S.D.N.Y. Mar. 31, 2025), citing *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009).

In an earlier iteration of the *Delgado* case—a report and recommendation essentially adopted by the court per the last citation—the Southern District described, with balance and perspective, the present state of play with respect to legal claims arising from a sort of public forum never envisioned by the chancellors who shaped the ancient law of defamation:

> While sometimes viewed with less credibility, freewheeling internet forums have loosened the requirement of truth and, at the same time, increased the reach of the average person's statements. See e.g., *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (N.Y. App. Div. 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a freewheeling, anything-goes writing style.") (internal quotation and citation omitted); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) ("Twitter's forum is equally—if not more—informal and freewheeling."); *Sweigert v. Goodman*, No. 23-CV-5875 (JGK), 2024 U.S. Dist. LEXIS 189346, 2024 WL 4493768, at *4 (S.D.N.Y. Oct. 11, 2024), *reconsideration denied*, No. 23-CV-5875 (JGK), 2024 U.S. Dist. LEXIS 223609, 2024 WL 5047302 (S.D.N.Y. Dec. 9, 2024) (analyzing defamation claims for opinions or "illogical online conspiracy theories" posted to Twitter (now X) and YouTube)....

*Delgado v. Sonnen*, No. 24-CV-1690 (JGLC) (JW), 2025 U.S. Dist. LEXIS 62612 (S.D.N.Y. Feb. 18, 2025) at *3. The *Delgado* court continued,

> Lastly, this Court looks to the particular forum where the statements were published. Here, the Amended Complaint provides that the statements were published on various platforms, including on their YouTube channel with 1.6 million subscribers. This consideration typically weighs slightly in favor of a reasonable listener understanding Defendant Sonnen's statements on a podcast are those of opinion and not fact. See *Rapaport* [*v. Barstool Sports*], 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240, at *12 [(S.D.N.Y. Mar. 29, 2021), *aff'd*, No. 22-2080-CV, 2024 U.S. App. LEXIS 556, 2024 WL 88636 (2d Cir. Jan. 9, 2024)] ("comments are made on free-wheeling internet fora, such as blogs or social media sites, which courts have generally found to be a persuasive factor in holding that a statement would be understood by readers as reflecting the author's opinion.")…"

2025 U.S. Dist. LEXIS 62612, at *20-21 (S.D.N.Y. Feb. 18, 2025). As the *Delgado* court acknowledged, notwithstanding the “Wild West”–like quality of Internet discourse, there are all the same some appropriate times and places for the law to intervene in aid of those whose reputations, livelihoods or family lives are harmed by false and defamatory accusations.

This tawdry contest is not one of those times. This case is an expensive, petty slap fight over social media “shitposting” from opposing camps in the 21st century’s endless culture wars—wasteful mudslinging by a woman who has immersed herself in mud as a fashion statement. If “stochastic terrorism” were anything besides a trope deployed to describe perfectly legal things certain activists do not like, it would look very much like this lawsuit.

Enough public and communal time has been wasted on this dispute over the notional honor of a lady who has built a persona around dishonoring herself—and the modern women in whose name she claims to speak. It should not occupy the good offices of a federal court in New York, and the Court should send it back to the no-man’s-land of social media where it belongs.

## CONCLUSION

For all the foregoing reasons, the Complaint against Jeff Tarzia should be dismissed with prejudice and defendant should be awarded fees and costs pursuant to NYCRL § 76-a(1)(a)(2).

Ronald D. Coleman

COLEMAN LAW FIRM, P.C.
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorney for Defendant*

July 28, 2025