UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALYSSA MERCANTE,

                              Plaintiff,                **MEMORANDUM & ORDER**
                                                        24-CV-8471 (MKB)
            v.

JEFF TARZIA,

                              Defendant.

MARGO K. BRODIE, United States District Judge:

I.    Background .................................................................................................................. 3

    a.    The parties .......................................................................................................... 3

    b.    Kotaku, "Gamergate," and "Gamergate 2.0" ................................................... 4

    c.    Defendant's focus on "Gamergate 2.0" and Plaintiff ...................................... 6

    d.    Defendant's monetization of his online platforms ........................................... 7

    e.    Alleged defamatory statements ......................................................................... 8

II.   Discussion .................................................................................................................. 8

    a.    Standard of review ............................................................................................ 8

    b.    The Court lacks personal jurisdiction over Defendant .................................... 11

        i.    Plaintiff fails to plead specific jurisdiction under C.P.L.R. § 302(a)(1) for any cause of action .............................................................................................................. 14

            1.    Plaintiff fails to establish that Defendant "transacts business" under C.P.L.R. § 302(a)(1) ...................................................................................................... 20

                A.    The SmashJT Website's "purposeful targeting" of a New York audience and New York residents ......................................................................................... 23

                B.    The SmashJT Website's commercial activities in New York ............................. 26

                C.    The SmashJT Wesbite's hosting through Wix, a New York webserver.............. 28

            2.    Plaintiff fails to establish that her claims under C.P.L.R. § 302(a)(1) "arise from" Defendant's New York "business" ................................................................. 31

                A.    Defamation claim ............................................................................................. 33

                B.    All other claims................................................................................................. 35

        ii.    Plaintiff fails to plead specific jurisdiction under C.P.L.R. § 302(a)(3)...................... 38

    iii.    Plaintiff fails to plead an agency or conspiracy theory ............................................ 43

        A.   Agency ............................................................................................ 45

        B.   Conspiracy ....................................................................................... 48

  c.   The Court grants jurisdictional discovery ...................................................... 50

III.   Conclusion .................................................................................................. 54

Plaintiff Alyssa Mercante commenced the above-captioned action on December 11, 2024 against Defendant Jeff Tarzia, (Compl., Docket Entry No. 1), and filed an Amended Complaint on April 18, 2025, and a Second Amended Complaint ("SAC") on May 8, 2025. (*See* Am. Compl., Docket Entry No. 11; SAC, Docket Entry No. 13.) Plaintiff alleges five causes of action: (1) defamation and defamation per se based on several statements made by Defendant about Plaintiff, (SAC ¶¶ 355–74); (2) bias-related violence or intimidation under New York Civil Rights Law § 79-n, (*id.* ¶¶ 375–81); (3) intentional inflection of emotional distress, (*id.* ¶¶ 382–92); (4) tortious interference with Plaintiff's employment contract, (*id.* ¶¶ 393–404); and (5) common law "stochastic terrorism" and/or prima facie tort, (*id.* ¶¶ 405–38). Plaintiff alleges defamation based on two specific statements Defendant made about Plaintiff on his X account, formerly known as Twitter ("Twitter"), and also alleges Defendant published numerous social media posts, videos, and online articles across various platforms portraying Plaintiff in a negative light. (*Id.* ¶¶ 143–53, 168–76.)

On July 28, 2025, Defendant moved to dismiss the SAC for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Plaintiff opposes the motion.[1] (*See generally* Def.'s Mem.; Pl.'s Opp'n; Def.'s Reply.)

---

[1] Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 22; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 22–1; Pl.'s Mem. in Opp'n to Def.'s Mot ("Pl.'s Opp'n"), Docket Entry No. 23; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket. Entry No. 24.

Defendant also seeks attorneys' fees pursuant to New York's anti-SLAPP law, New York Civil Rights Law § 70-a(1)(a). (Def.'s Mem. 19–20.) For the reasons set forth below, the Court denies Defendant's motion to dismiss, and grants Plaintiff the opportunity to engage in limited jurisdictional discovery.

## I. Background

### a. The parties

Plaintiff, a resident of the State of New York and the County of Kings, is a female journalist active in the video game space and, until recently, was employed as a former senior editor at the gaming news website and blog Kotaku.[2] (SAC ¶¶ 3, 31, 85, 255.) Kotaku is a "popular, online video gaming blog owned by G/O Media" that became the focus of online gaming community discourse as it "has long enjoyed the derision and ire of a certain set of 'alt-right' trolls online for its perceived liberal or leftward bias in covering video games and issues related to gaming." (*Id.* ¶¶ 4–5, 8, 53, 79.) Plaintiff has also written for other publications, such as Jalopnik, Jezebel, GamesRadar, SFX, and Rolling Stone, and is an active user of social media, self-described as "not a demure, wilting flower . . . [but] bold, brassy, and opinionated." (*Id.* ¶¶

---

[2] The Court relies on the pleadings, affidavits, and declarations in evaluating Defendant's motion to dismiss for lack of personal jurisdiction. *See Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019) ("Courts may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion."); *Applied Research Investments, LLC v. Lin*, No. 22-CV-7100, 2025 WL 949573, at *2 (S.D.N.Y. Mar. 28, 2025) (quoting *Johnson*, 791 F. App'x at 241); *Saks v. Andreu, Palma, Lavin, & Solis, PLLC*, No. 24-CV-2045, 2025 WL 317516, at *2 (E.D.N.Y. Jan. 28, 2025) (quoting *Johnson*, 791 F. App'x at 241); *see* Minden *Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458, 467 (S.D.N.Y. 2024) (relying on the defendant's declaration in evaluating their motion to dismiss for lack of personal jurisdiction); *Reliable Automatic Sprinkler Co. v. Riverside Brass & Aluminum Foundry, Ltd.*, No. 20-CV-10220, 2022 WL 142375, at *5 (S.D.N.Y. Jan. 14, 2022) (same); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) ("The allegations [regarding personal jurisdiction] in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993))).

82–83.)  Recently, Plaintiff resigned from her position at Kotaku due to the online harassment she has faced.  (*Id.* ¶¶ 26, 86, 87.)

Defendant, a resident of the State of California and the County of San Diego, is a former gaming industry worker, recruiter, game tester and game master at Sony and currently is a "social media influencer" who publishes content related to video games on various platforms under the name "SmashJT," including on online video websites, such as YouTube (under the name "SmashJT") (the "SmashJT YouTube") and Rumble, on his website, located at http://www.SmashJT.com (the "SmashJT Website"), and on his several social media pages, including Twitter under the username @SmashJT (the "SmashJT Twitter") and Discord on a server called "Smash JT" (the "SmashJT Discord").  (*Id.* ¶¶ 6, 32, 48, 88, 93–95, 135.) Defendant's coverage of video games and video game culture comes "from a generally right-of-center to conservative point of view."  (*Id.* ¶¶ 89–90, 92.)

### b.  Kotaku, "Gamergate," and "Gamergate 2.0"

Starting in 2014, an "organized harassment campaign formed against numerous targets, such as women in the gaming industry, games journalists perceived to be biased or who promoted a liberal or left-wing slant in their coverage, and game developers who produced video games seen as catering to audiences other than straight, white men."  (*Id.* ¶¶ 1, 74–75, 77.)  This movement was dubbed "Gamergate" by Actor Adam Baldwin and adopted by prominent influencers within the video game space.  (*Id.* ¶¶ 75–76.)  In 2024, a Montreal-based narrative development and consulting company, Sweet Baby, Inc., was "accused by Gamergate enthusiasts of forcibly inserting gender, sexual, or ethnic minority characters into the game or otherwise tweaking its narrative presentation to favor a general liberal bent."  (*Id.* ¶ 2.)  Supporters of this criticism dubbed this controversy "Gamergate 2.0."  (*Id.* ¶¶ 14, 106.)

Kotaku was involved in the controversy from which "Gamergate" originated and has been a "central target" of both "Gamergate" and "Gamergate 2.0." (*Id.* ¶¶ 4, 74, 77.) The company's editorial position is "left-of-center," describing itself as "an inclusive site for gamers of any ethnicity, gender or sexual orientation," "expect[ing its] writers and commentators to treat those they write about as they would if they met them in person," "[n]ot mistaking honesty with cruelty, approaching everything with good faith, and affording people grace." (*Id.* ¶¶ 4, 78, 79.) Kotaku has faced criticism from numerous sources, including through the Reddit subforum "kotakuinaction" and by various social media content creators, including Defendant, and it has even been the subject of a petition, created by Defendant, at Change.org to "shut [the company] down," for which Defendant has accumulated over 4,700 signatures to date.[3] (*Id.* ¶¶ 6, 8, 77, 80, 120.)

Defendant is an outspoken critic of Kotaku and an active contributor in the online discourse surrounding the company, going so far as to say that he "want[s] to shut down Kotaku" and "demand accountability" from the company, declaring it "everything [that is] wrong with the video game industry." (*Id.* ¶¶ 8, 11, 12, 114, 119–21, 123.) In addition to creating the petition discussed above, Defendant created a page on the SmashJT Website called "Kotaku Detected" where he maintains "'a comprehensive directory of individuals who work, have worked, or are in some way related to Kotaku' with the intent to 'spotlight the people behind Kotaku's content and hold them accountable for their actions.'" (*Id.* ¶¶ 9, 49, 121.) Plaintiff is one of the individuals with a page in this directory. (*Id.* ¶ 10.)

---

[3] *Demand the Shutdown of Kotaku for the Betterment of Video Game Journalism*, Change.org, https://www.change.org/p/demand-the-shutdown-of-kotaku-for-the-betterment-of-video-game-journalism (last visited Sept. 29, 2025).

c.    **Defendant's focus on "Gamergate 2.0" and Plaintiff**

In addition to his criticism of Kotaku, Defendant's online content also relates more generally to "Gamergate 2.0." (*Id.* ¶ 114; Def.'s Mem. 2.) These posts include tweets on the SmashJT Twitter, such as "[w]e need to pull every lever to get activists out of the game industry," (SAC ¶ 21), and video information on the SmashJT YouTube, such as "Gamergate 2[.0] is well underway, thanks to the narrative being pushed forth by the video game industry media agenda. It all started with Kotaku.", (*id.* ¶ 113).

Plaintiff became the topic of Defendant's criticism after she "published an article refuting many of the lies, fabrications, and distortions around the consulting business of Sweet Baby, Inc." (*Id.* ¶¶ 13, 15, 100.) Given Plaintiff's "prominent role [in 'Gamergate 2.0'], outspoken views, and position at Kotaku," as well as her opposing political views, Defendant has continued to generate content about Plaintiff, creating approximately 250 posts and videos in which Plaintiff is either the "substantive topic of discussion" or "her name or face appears in the title or thumbnail of the video." (*Id.* ¶¶ 15, 84, 105–07, 114–16, 173–76.) The collective total run time of these videos is over 150 hours. (*Id.* ¶¶ 117, 175.)

Plaintiff alleges these articles and posts collectively amount to a "campaign of hatred and harassment" aimed at her through Defendant's use of "old-fashioned, and illegal, tactics of yellow journalism." (*Id.* ¶¶ 15, 17, 30, 68, 168–94.) Some examples include those entitled "Alyssa Mercante FLEES Twitter After Karma Comes Roaring Back . . .," (*id.* ¶¶ 180–81), "Alyssa Mercante is OBSESSED with me . . .," (*id.* ¶ 168), "Alyssa Is OBSESSED," (*id.* ¶ 170), "Adam Sessler Thinks Alyssa Mercante is TOO Crazy . . .," (*id.* ¶ 212), and "Alyssa Mercante Now Wants To Be My Editor . . .," (*id.* ¶ 214). Plaintiff further asserts that Defendant's followers "echo what he says" by "creat[ing] their own set of videos, amplifying what [Defendant] says, while stoking harassment, rape and death threats, and the like." (*Id.* ¶¶

195–96.)  Many of these content creators' posts feature similar if not identical titles as those of

Defendant's.  (*Id.* ¶¶ 205–15.)  Given the amount of notoriety, Plaintiff has "received more than

a thousand death, rape, and other vicious threats and harassment."  (*Id.* ¶ 216.)  In the SAC,

Plaintiff includes several examples: "Oh look, the low life attention whore is back on Twitter 1

week after announcing her departure lmao.  How[']s the dick sucking business?"; "kill yourself.

do it . . . do it. kill yourself"; "Why do you look like a horse?  Your titties are further apart than

your eyes . . . One looks to the west the other looks to the east . . . We also need you to prove you

are human so pls don't lick your reptile eyes in public no mo."  (*Id.* ¶ 217; *see also* Appendix -

Small Sampling of Harassment, annexed to SAC, Docket Entry No. 13-1 (listing more

examples).)

### d.    Defendant's monetization of his online platforms

Plaintiff contends that Defendant uses his various online and social media platforms to

generate revenue.  (SAC ¶¶ 62, 63, 66, 67, 226.)  The SmashJT Website is hosted through

Wix.com ("Wix"), a web hosting and website design service.  (*Id.* ¶ 54.)  Defendant pays to

maintain the SmashJT Website and to make various features and content available through Wix.

(*Id.* ¶¶ 55, 57, 58.)  He also collects revenue through this website, selling SmashJT-branded

merchandise in the "Shop" area, offering subscriptions for $4.99 per month, and using a paywall,

in which some of the articles are available only to subscribers.  (*Id.* ¶¶ 62–67; Def.'s Mem. 6–7.)

Similarly, the SmashJT YouTube account offers paid subscriptions and utilizes a paywall to

access certain videos, and the SmashJT Discord channel is only available to those with a paid

subscription.  (SAC ¶¶ 137, 328.)  Lastly, the SmashJT YouTube generates income based on the

number of individual users that watch Defendant's videos, with increased earnings for increased

views.  (*Id.* ¶¶ 226, 227.)

Defendant has admitted through his social media posts that since his coverage of "Gamergate 2.0" and Plaintiff began in 2024, his SmashJT Twitter tweets, his SmashJT Website articles, and his SmashJT YouTube videos have seen significant increases in views, reads, and overall engagement.  (*Id.* ¶¶ 103, 104, 240, 242, 243.)  Defendant's first video about Plaintiff was published on March 22, 2024.  (*Id.* ¶ 243.)  Defendant posted a graph on his SmashJT Twitter that demonstrated the lifetime subscriber count of the SmashJT YouTube, "showing an increase in nearly 40,000 subscribers between late March [of] 2024 and September 10, 2024." (*Id.* ¶¶ 240, 242.)

### e.  Alleged defamatory statements

Plaintiff's defamation cause of action is based on two of Defendant's statements.  First, on or about March 30, 2024, Defendant posted on his SmashJT Twitter "'Whorification'? What's that? Like what @alyssa_merc does sucking dicks in her off time for money?"  (*Id.* ¶ 143.)  Second, on April 1, 2024, Defendant published a video on his SmashJT YouTube where he stated, "Alyssa Mercante . . . has since come forward stating that she used to be a sex worker, sucking dicks for money before working at Kotaku."  (*Id.* ¶ 144; Defendant's March 30, 2024 statement along with this April 1, 2024 statement are referred to as the "Alleged Defamatory Statements".)  Defendant subsequently repeated these claims on his SmashJT Website, once in a free article and once in a subscriber-only article (discussing this lawsuit and Plaintiff's claims), and on his SmashJT YouTube.  (*Id.* ¶¶ 64–65, 145, 151.)

## II.  Discussion

### a.  Standard of review

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Troma Ent.*, *Inc. v.*

*Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  The showing a plaintiff must make to meet that burden is governed by a "sliding scale," which "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *V&C Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)); *see also Sullivan v. UBS AG,* 149 F.4th 206, 217 (2d Cir. 2025) ("[p]laintiffs need only make a *prima facie* showing of personal jurisdiction over the defendant[s]." (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010))); *Holmes v. Apple Inc.*, 797 F. App'x 557, 559 (2d Cir. 2019) ("A plaintiff has the burden of establishing personal jurisdiction over [a defendant] against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, 'a plaintiff must make a prima facie showing that jurisdiction exists.'" (quoting *Penguin Grp.*, 609 F.3d at 34–35)); *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci IV)*, 732 F.3d 161, 167 (2d Cir. 2013))).  Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes*, 797 F. App'x at 559–60 (quoting *Chloé*, 616 F.3d at 163); *see also Dix v. Peters*, 802 F. App'x 25, 27 (2d Cir. 2020) ("Where the district court grants a Rule 12(b)(2) motion without an evidentiary hearing, we credit the plaintiff's

averment of jurisdictional facts as true." (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996))); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))). After discovery, the plaintiff's "*prima facie* showing must be factually supported." *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85 (quoting *Ball*, 902 F.2d at 197). "Conclusory allegations based only on information and belief are not sufficient" to provide such factual support. *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010) (citing *Jazini*, 148 F.3d at 184).

In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a district court may consider materials outside the pleadings. *Dorchester Fin. Sec., Inc.*, 722 F.3d at 86 (citing *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)); *see also Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019) ("Courts may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion."). In addition, the court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci IV*, 732 F.3d at 167 (citing *Chloé*, 616 F.3d at 163); *see also Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 72 n.1 (2d Cir. 2023) (same); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 742 (same) (quoting *DiStefano*, 286 F.3d at 84). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673 (quoting *Jazini*, 148 F.3d at 185); *see also Lelchook*, 67 F.4th at 72 n.1 (quoting *Jazini*, 148 F.3d at 185).

### b.   The Court lacks personal jurisdiction over Defendant

Defendant argues that Plaintiff cannot establish personal jurisdiction under any of the provisions of New York Civil Practice Law and Rules ("C.P.L.R.") § 302(a).[4] (Def.'s Mem. 4–8; Def.'s Reply 5–7.)

Plaintiff asserts the Court has personal jurisdiction over Defendant pursuant to New York's long-arm jurisdiction statute, C.P.L.R. § 302(a). (Pl.'s Opp'n 7–12; *see* SAC ¶ 34–73.) Specifically, Plaintiff asserts jurisdiction under C.P.L.R. § 302(a)(1) for all five causes of action (defamation; bias-related violence or intimidation under New York Civil Rights Law; intentional infliction of emotional distress; tortious interference with contract; and prima facie tort or "stochastic terrorism"). (Pl.'s Opp'n 10–12.) In the alternative, Plaintiff asserts jurisdiction under C.P.L.R. § 302(a)(3)(ii) for all causes of action excluding defamation.[5] (*Id.* at 7–10.)

"There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam). Under New York law, courts exercise general jurisdiction pursuant to C.P.L.R. § 301 and specific jurisdiction pursuant to C.P.L.R. § 302. *See Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769–70 (2d Cir. 2014); *Lim v. Koon*, No. 24-CV-7399, 2025 WL 2782494, at *6 (S.D.N.Y. Sept. 30, 2025); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 133 (E.D.N.Y. 2022). General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum. *Sonera Holding*, 750 F.3d at 225 ("A court with

---

[4] Plaintiff noted in her opposition that Defendant's briefing does not challenge that the exercise of jurisdiction would be inconsistent with due process requirements. (Pl.'s Opp'n 7 n.6; *see generally* Def.'s Mem.; Def.'s Reply.) The Court therefore does not discuss due process.

[5] Plaintiff does not assert jurisdiction under C.P.L.R. § 302(a)(2) for any of her claims, but she does allege jurisdiction through Defendant's New York-based agents, necessarily implicating C.P.L.R. § 302(a)(2).

general jurisdiction over a [defendant] may adjudicate *all* claims against that [defendant] — even those entirely unrelated to the defendant's contacts with the state.").[6]  Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

Under C.P.L.R. § 302(a), there are four bases for extending specific personal jurisdiction over a non-domiciliary defendant.[7]  *Penguin Grp.*, 609 F.3d at 35 n.3 (citing to C.P.L.R. § 302(a) to describe all four bases for jurisdiction under the New York long-arm statute); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) (same); *Alongis v. Arby's Restaurant Grp., Inc.*,

---

[6]  Because Plaintiff asserts that the Court can exercise specific jurisdiction over Defendant pursuant to C.P.L.R. § 302, and both parties concede Defendant is a resident of the state of California, (SAC ¶ 32; Def.'s Mem. 4), the Court does not address whether it can exercise general jurisdiction over Defendant pursuant to C.P.L.R. § 301.  *See SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . .." (quoting *Goodyear Dunlop*, 564 U.S. at 923)).

[7]  C.P.L.R. § 302(a) provides that:
> a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . . ; or (3) commits a tortious act without the state causing injury to person or property within the state . . . ; or (4) owns, uses or possesses any real property within the state.

C.P.L.R. § 302(a).  Plaintiff does not allege Defendant "owns, uses or possesses any real property" within New York state to support a finding of personal jurisdiction under C.P.L.R. § 302(a)(4).  The Court accordingly only addresses whether it has jurisdiction over Defendant under C.P.L.R. §§ 302(a)(1), 302(a)(2), or 302(a)(3).

No. 23-CV-6593, 2025 WL 2772810, at *4 (E.D.N.Y. Sept. 29, 2025) (same); *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 630–31 (S.D.N.Y. 2025) (same); *Bah v. Apple Inc.*, No. 19-CV-3539, 2020 WL 614932, at *4 (S.D.N.Y. Feb. 10, 2020) (same). C.P.L.R. § 302(a)(1) permits courts "to exercise personal jurisdiction over [a] non-domiciliary" where the "cause of action aris[es] from any of the acts enumerated in the [statute]" and the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1); *see also Kurzon LLP v. Thomas M. Cooley L. Sch.*, No. 12-CV-8352, 2014 WL 2862609, at *5 (S.D.N.Y. June 24, 2014) (defining circumstances under which a court may exercise specific personal jurisdiction over non-domiciliary defendant pursuant to C.P.L.R. § 302(a)(1)).

C.P.L.R. § 302(a)(2) provides for long arm jurisdiction where the defendant is alleged to have committed a "tortious act within the state." *Berkshire Bank v. Lloyds Banking Grp. Plc*, No. 20-1987, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (summary order) (citing C.P.L.R. § 302(a)(2)), *cert. denied,* --- U.S. ---, 143 S. Ct. 286 (2022)); *see also Langer v. Paysafe Partners LP,* No. 19-CV-4388, 2022 WL 2467617, at *5 (E.D.N.Y. Mar. 2, 2022) (defining basis for jurisdiction under § 302(a)(2)); *Glob. Edge Design Inc. v. Michel*, No. 20-CV-9654, 2021 WL 1549990, at *2 (S.D.N.Y. Apr. 20, 2021) (same).

C.P.L.R. § 302(a)(3) provides for long arm jurisdiction where the defendant "commits a tortious act without the state causing injury to person or property within the state." C.P.L.R. § 302(a)(3); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023) (listing the elements required to confer jurisdiction over a non-domiciliary under C.P.L.R. § 302(a)(3)); *see also DiStefano*, 286 F.3d at 84 (defining the basis for jurisdiction under C.P.L.R. § 302(a)(3)).

However, C.P.L.R. §§ 302(a)(2) and 302(a)(3) "explicitly exempt causes of action for the tort of defamation from [their] scope, whether or not such jurisdiction would be consistent with due process protection." *Best Van Lines, Inc.*, 490 F.3d at 246; *see Fischer v. Stiglitz*, No. 15-CV-6266, 2016 WL 3223627, at *4 (S.D.N.Y. June 8, 2016) ("Sections 302(a)(2) and (3) of the [N.Y. C.P.L.R], which ordinarily govern personal jurisdiction over anyone who 'commits a tortious act,' do not apply to 'cause[s] of action for defamation.'  This 'exception' applies if a plaintiff's claims are all 'based upon [the same] alleged defamatory statements' such that the 'entire complaint sounds in defamation.'" (second and third alterations in original) (first quoting *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); and then citing *Dupont v. N.J. State Police*, No. 08-CV-10220, 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009))). Notwithstanding this explicit exemption, "when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1)." *Best Van Lines, Inc.*, 490 F.3d at 245–46.

### i. Plaintiff fails to plead specific jurisdiction under C.P.L.R. § 302(a)(1) for any cause of action

Defendant argues that Plaintiff has failed to establish jurisdiction under C.P.L.R. § 302(a)(1) for any of her causes of action.  (Def.'s Mem. 6; Def.'s Reply 5.)  As for the defamation claim, Defendant contends that New York courts construe "§ 302(a)(1)'s transaction requirement '[as] set[ting] a decidedly stricter test for defamation cases," which Plaintiff fails to meet.  (Def.'s Mem. 6; Def.'s Reply 5.)  He further argues as to all causes of action that the SAC's allegations that Defendant targeted New York are "unavailing," (Def.'s Mem. 6; Def.'s Reply 6), and "[e]ven if the SAC did adequately plead that [D]efendant transacted business in New York . . . [P]laintiff's opposition makes clear . . . that she has not alleged that her claims arise out of [D]efendant's New York activities," (Def.'s Reply 5).

Plaintiff contends Defendant is subject to personal jurisdiction under C.P.L.R. § 302(a)(1) for all causes of action.  She argues that she sufficiently alleges in the SAC that Defendant "transacted business" in New York by "identifying both his execution of a contract with a New York entity, Wix, to provide hosting and ongoing ecommerce services to [Defendant] for his highly interactive website . . . and his appearances on a New York-based YouTube channel."  (Pl.'s Opp'n 10–11 (internal citations omitted).)  These transactions of business in New York, Plaintiff contends, have "a substantial nexus" to her claims.  (Pl.'s Opp'n 11.)

"In order to evaluate whether personal jurisdiction exists pursuant to C.P.L.R. § 302(a)(1), [the court] must determine: (1) whether [the defendant] transacted any business in New York, and, if so, (2) whether there was an articulable nexus, or substantial relationship, between the [ ] conduct and the actions that occurred in New York."  *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (citing *Best Van Lines, Inc.*, 490 F.3d at 246); *see also Raad v. Bank Audi S.A.L*, No. 24-840, 2025 WL 1214139, at *1 (2d Cir. Apr. 28, 2025) (summary order) (stating that C.P.L.R. § 302(a)(1) has two prongs: (1) "the [d]efendant must have transacted business within the state," and (2) "the claim asserted must arise from that business activity" (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006))); *Goldman v. Trinity Sch. of Med. Through Bd. of Trs*, No. 24-1827, 2025 WL 1099088, at *1 (2d Cir. Apr. 14, 2025) (same); *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020) (same) (quoting C.P.L.R. § 302(a)(1)); *Licci IV*, 732 F.3d at 168 (same); *Paige v. Digit. Bus. Networks All., Inc.*, No. 24-CV-3169, 2025 WL 753952, at *8 (S.D.N.Y. Mar. 10, 2025) ("To determine the existence of jurisdiction under Section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this

cause of action arises from such a business transaction." (quoting *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *7 (S.D.N.Y. Mar. 21, 2024))). Under New York state law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, "so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the transaction and the claim[s] asserted." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting *Deustche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)); *see also Goldman*, 2025 WL 1099088, at *1 ("To be subject to specific jurisdiction under the [long-arm] statute, a 'defendant must have conducted sufficient activities to have transacted business in the state, and . . . the claims must arise from the transactions" (quoting *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016)); *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 76 (2d Cir. 2023) ("[A] chain of causation involving physical presence in New York does not, by itself, create a nexus between an otherwise unrelated tort claim and a business transaction . . . . Rather, the claim asserted must arise from th[e] business activity, so that there is a direct relation between the cause of action and the in-state [business] conduct." (second and third alterations in original, citations and quotation marks omitted)); *Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci II)*, 673 F.3d 50, 61 (2d Cir. 2012) ("A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities [within the state] were purposeful.'" (quoting *Fischbarg*, 9 N.Y.3d at 380)); *C. Mahendra (N.Y.), LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 3 N.Y.S.3d 27, 30 (App. Div. 2015) ("The statute applies where the defendant's New York activities were purposeful and substantially related to the claim." (citing *D & R Glob. Selections, S.L. v. Piñeiro*, 934 N.Y.S.2d 19, 20 (App. Div. 2011))). "Transacting business under § 302(a)(1) means 'purposeful activity — some act by which the defendant purposefully avails itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024) (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023)), *cert. denied*, 145 S. Ct. 1130 (2025); *see Seiden v. Baker Tilly Hong Kong Ltd.*, No. 23-1254, 2024 WL 4441582, at *2 (2d Cir. Oct. 8, 2024) ("An out-of-state defendant transacts business within the state of New York only through 'purposeful activity' — that is, 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Best Van Lines*, 490 F.3d at 246)); *Am. Girl,* 118 F.4th at 276–77 ("[T]he overriding criterion necessary to establish a transaction of business within the meaning of CPLR 302(a)(1) is that a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York." (internal citation and quotation marks omitted)); *Eades*, 799 F.3d at 168 ("Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (quoting *Fischbarg*, 9 N.Y.3d at 380)).

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 380; *see Best Van Lines, Inc.*, 490 F.3d at 246 ("Courts look to 'the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' satisfying the first part of the test." (alteration in original) (citations omitted) (first quoting *Sterling Nat'l Bank & Tr. Co. of N.Y. v. Fidelity Mortg. Invs.*, 510 F.2d 870, 873 (2d Cir. 1975); and then citing *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 (1965))); *see also Licci II*, 673 F.3d at 62 (noting

that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction). "[M]ore limited contacts regarding services to be performed outside New York would not satisfy [section] 302(a)(1)." *Yih*, 815 F. App'x at 574 (citing *Fischbarg*, 9 N.Y.3d at 380). "New York courts construe the 'transacting business' test more narrowly in defamation cases than in other contexts . . . [and] do not interpret 'transacting business' to include 'defamatory utterances' sent into New York state, unless the conduct also included 'something more.'" *Penachio*, 461 F. App'x at 5 (quoting *Best Van Lines, Inc.*, 490 F.3d at 248– 49)). Thus, "[i]n defamation cases . . . the 'single act' of uttering a defamation, no matter how loudly, is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction." *Best Van Lines*, 490 F.3d at 248 (holding that "when the defamatory publication itself constitutes the alleged 'transact[ion of] business' for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it"); *see also SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012) ("Defamation claims are accorded separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression."); *Kim v. Dvorak*, 658 N.Y.S.2d 502, 505 (App. Div. 1997) (concluding that sending allegedly defamatory letters into New York did not constitute a transaction of business and that holding otherwise would "unjustifiably extend the intendment of the Legislature to allow, in limited circumstances, the reach of [New York's] jurisdiction beyond its borders").

To satisfy the "arises from" prong, a plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions taken in New York. *Raad*, 2025 WL 1214139, at *1 (first quoting *Sole Resort*, 450 F.3d at 103; and then quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci III)*, 20 N.Y.3d 327, 341

(2012)); *Edwardo*, 66 F.4th at 76 (quoting *Sole Resort*, 450 F.3d at 103); *Best Van Lines, Inc.*, 490 F.3d at 246 (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)); *see also Licci III*, 20 N.Y.3d at 341 (2012) ("[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [section 302(a)(1)]."). "Although 'the inquiry under [C.P.L.R. § 302(a)(1)] is relatively permissive,' and 'causation is not required,' not every connection to a New York transaction is substantial enough to confer jurisdiction." *Edwardo*, 66 F.4th 76 (quoting *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022)). "Where this necessary relatedness is lacking, the New York Court of Appeals has characterized the claim as 'too attenuated' from the transaction, or 'merely coincidental with it." *Id.* (quoting *Daou*, 42 F.4th at 130 (quoting *Licci III*, 20 N.Y.3d at 339–40)); *see Best Van Lines*, 490 F.3d at 249 ("A connection that is 'merely coincidental' is insufficient to support jurisdiction." (quoting *Sole Resort*, 450 F.3d at 103)). New York courts have construed C.P.L.R. § 302(a)(1)'s "arising from" requirement more narrowly in the defamation context because of the need to preserve First Amendment protections. *See, e.g.*, *Symmetra Pty Ltd. v. Hum. Facets*, No. 12-CV-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("In addition to holding that a single defamatory statement is insufficient to give rise to long-arm jurisdiction, New York jurisprudence otherwise imposes a stricter standard on the transaction-of-business and arising-from prongs of C.P.L.R. § 302(a)(1) in defamation cases. As to claims for defamation, 'particular care must be taken to make certain that [a] non-domiciliar[y] [is] not haled into court in a manner that potentially chills free speech without an appropriate showing [ ] that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue.'" (fourth alteration in original) (quoting *SPCA*, 18 N.Y.3d 400 at 405)).

**1. Plaintiff fails to establish that Defendant "transacts business" under C.P.L.R. § 302(a)(1)**

Defendant argues that "mere defamatory utterances sent into the state" are not interpreted by New York courts as "transacting business" as such prong is construed "more narrowly in defamation cases than . . . in the context of other sorts of litigation . . .." (Def.'s Reply 5; Def.'s Mem. 6.) Therefore, he argues that Plaintiff needs to, and fails to, allege conduct other than the Alleged Defamatory Statements as a basis for her defamation cause of action. He further contends that Plaintiff's attempt to establish that he "transacts business" with New York, for both the defamation and other causes of action, through the SmashJT Website fails because his alleged "[c]onduct does not 'target' New York merely because the 'target' of the alleged tort is a New York resident." (Def.'s Reply 6.) Instead, Defendant contends that Plaintiff needs to allege "that the target of the message being broadcast is New York State," something she fails to assert in the SAC. (Def.'s Reply 6 (emphasis omitted).)

In addressing all of her claims, Plaintiff alleges Defendant "transacts business" in New York through his "highly interactive" SmashJT Website. (Pl.'s Opp'n 10–11; SAC ¶¶ 54–72.) First, Plaintiff asserts that the SmashJT Website is "not a 'passive' website through which [Defendant] simply makes information available," but rather a "highly interactive" website through which "users can create accounts on the website, sign up to be notified when new content is posted, and comment below each of the posts on the website, exchanging information with [Defendant] and with other users of the SmashJT Website." (SAC ¶ 60.) She further contends this website "deliberately targets New York residents as both topics of his message and targets for harassment by his fans" and "makes frequent use of New York residents to amplify and spread his message," for example by "appear[ing] on a New York-based YouTube channel." (*Id.* ¶¶ 69–70; Pl.'s Opp'n 10–11.) Second, Plaintiff contends that the SmashJT Website is a

commercial website through which Defendant "collects significant revenue in New York" through the website's shop section and the "offering of subscription-only content for a monthly fee." (SAC ¶ 67.) Lastly, Plaintiff argues that Defendant's SmashJT Website is hosted through Wix, a "New York webserver host" with its principal place of business in New York. (Pl.'s Opp'n 11; SAC ¶ 54.) Plaintiff also notes that the Wix terms of service, which each customers such as Defendant must agree to before using various features and services available through payment, includes a choice of law and venue clause for New York. (SAC ¶ 56.)

"[New York] courts have concluded that the posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." *Best Van Lines,* 490 F.3d at 250; *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 204 (E.D.N.Y. 2014) (quoting *Best Van Lines,* 490 F.3d at 250); *Torati v. Simpson,* No. 502696/12, 2014 WL 5026291, at *3 (N.Y. Sup. Ct. Oct. 7, 2014) (quoting *Best Van Lines,* 490 F.3d at 250); *Gary Null & Assocs., Inc. v. Phillips,* 906 N.Y.S.2d 449, 452–53 (Sup. Ct. 2010) (quoting *Best Van Lines,* 490 F.3d at 250); *see Starmedia Network, Inc. v. Star Media, Inc.,* No. 00-CV-4647, 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit." (citation and quotation marks omitted)); *see, e.g., Realuyo v. Villa Abrille,* No. 01-CV-10158, 2003 WL 21537754, at *7 (S.D.N.Y. July 8, 2003) (deciding that the availability of an article on a website, without more, does not amount to "transacting business" for purposes of § 302(a)(1)); *Kim,* 658 N.Y.S.2d at 505 (finding the sending of allegedly defamatory letters into New York did not constitute a transaction of business under C.P.L.R. § 302(a)(1)); *Pontarelli v. Shapero*, 647 N.Y.S.2d 185, 187–88 (App. Div. 1996) (concluding defendants had

21

not "transacted any purposeful business activity bearing a substantial relationship to the subject

matter of the lawsuit" in New York but sending allegedly libelous letters into the state); *Streslsin*

*v. Barrett*, 320 N.Y.S.2d 885, 886 (App. Div. 1971) (holding the defendant did not transact

business in New York where the alleged defamatory statement was made outside of New York,

but was published in a television broadcast and distributed in New York). "[A] website's

interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only

insofar as it helps to decide . . . whether the defendant, through the website, 'purposefully

avail[ed] himself of the privilege of conducting activities within New York, thus invoking the

benefits and protections of its laws.'" *Best Van Lines*, 490 F.3d at 354 (alteration in original)

(quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)); *see Raad*, 2025 WL

1214139, at *3 (same); *cf. Deutsche Bank,* 7 N.Y.3d at 71–72 (determining that there was

jurisdiction over a sophisticated institutional trader from Montana who "knowingly initiat[ed]

and pursu[ed] a negotiation with [plaintiff] in New York [via instant messaging] that culminated

in the sale of $15 million in bonds," thus "enter[ing] New York to transact business"). "[M]ere

interactivity is not enough to support jurisdiction under Section 302(a)(1). Instead, '[t]he correct

inquiry is whether defendant's services were targeted at New York residents, and whether New

York residents used those services.'" *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, --- F. Supp.

3d ---, 2025 WL 2416401, at *6 (S.D.N.Y. Aug. 21, 2025) (second alteration in original) (first

quoting *Capitol Recs., LLC v. VideoEgg, Inc.,* 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009); and

then quoting *Coll. Essay Optmizer, LLC v. Edswell, Inc.*, No. 14-CV-8586, 2015 WL 5729681,

at *5 (S.D.N.Y. Sept. 30, 2015)); *see Donner v. DER SIEFEL Gmbh & Co. KG*, 747 F. Supp. 3d

681, 692 (S.D.N.Y. 2024) ("Operating [an interactive] website did not mean that the defendant

'transact[ed] business' in New York for purposes of a defamation claim arising from content

posted on the interactive website." (quoting *Best Van Lines* at 251–52)); *Cap. Recs.*, 611 F. Supp. 2d at 358 ("Although [the sliding scale of interactivity] 'may be useful for analyzing personal jurisdiction under Section 302(a)(1)' it 'does not amount to a separate framework for analyzing internet-based jurisdiction.'" (quoting *Best Van Lines*, 490 F.3d at 252)).

### A.   The SmashJT Website's "purposeful targeting" of a New York audience and New York residents

Accepting Plaintiff's allegations as true, that the "SmashJT Website is highly interactive" because "users can create accounts on the website, sign up to be notified when new content is posted, and comment below each of the posts on the website, exchanging information with [Defendant] and with other users of the SmashJT Website," (SAC ¶ 60), the allegations fail to establish that Defendant's website specifically and/or purposefully targeted New York rather than a nationwide audience, and therefore fails to show Defendant "purposefully avail[ed] himself of the privilege of conducting activities within New York." *Best Van Lines*, 490 F.3d at 252; *Knight-McConnell v. Cummins*, No. 03-CV-5035, 2005 WL 1398590, at *3 (S.D.N.Y. June 13, 2005) (noting that "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed" (quoting *Seldon v. Direct Response Techs., Inc.,* No. 03-CV-5381, 2004 WL 691222, at *4–5 (S.D.N.Y. Mar. 31, 2004))); *cf. Dow Jones*, 2025 WL 2416401, at *6 (finding plaintiff sufficiently alleged that the defendant "targeted New York users and purposefully avail[ed] itself of the privilege of conducting activities within New York" (internal citation and quotation marks omitted)).  Instead, almost all of the content, including one of the articles that contains the Alleged Defamatory Statements, is "merely available" in New York.  *See Donner*, 747 F. Supp. 3d at 693 (noting that "plaintiff failed to demonstrate that mere availability of the defamatory statements in New York was sufficient to satisfy the 'transacts any business' prong of CPLR 302(a)(1)" (citing *Tannerite*

*Sports LLC v. NBCUniversal Media,* LLC, 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), *aff'd, Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017))); *Knight-McConnell*, 2005 WL 1398590 ("Absent an allegation that [defendant] is projecting himself into New York, [a] [c]ourt cannot exercise specific personal jurisdiction over [defendant]." (quoting *Lenahan L. Offs., LLC v. Hibbs,* No. 04-CV-6376, 2004 WL 2966926, at *6 (S.D.N.Y. Dec. 22, 2004)); *Realuyo*, 2003 WL 21537754, at *6–7 (noting that "the sheer availability of an article on [defendant's] website, where it can be downloaded in New York at no cost" "was not the transaction of business in New York . . . and [thus] cannot be the basis of jurisdiction under CPLR 302(a)(1)"); *Sino Clean Energy Inc. v. Little*, No. 651248/2011, 2012 WL 1849658, at *7 (N.Y. Sup. Ct. May 21, 2012) ("There is no indication that [Defendant's] websites postings, which were merely accessible in New York, were expressly targeted at *anyone in New York*.").

Plaintiff's contentions that Defendant's content "deliberately targets New York residents as both topics of his message and targets for harassment by his fans" and "makes frequent use of New York residents to amplify and spread his message" are both conclusory and, regardless, do not change the analysis.  (SAC ¶¶ 69–70.)  *Best Van Lines*, 490 F.3d at 253 ("New York case law establishes that making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers."); *Nixon v. Inquisitr Ltd.*, No. 20-CV-1819, 2021 WL 3667154, at *6 (E.D.N.Y. Aug. 17, 2021) (finding that plaintiff's argument that defendant "'employed and/or contracted' with unspecified individual in this District 'for the purpose of operating, managing, and supervising the photographic content uploaded to the [w]ebsite, including the infringing content at issue in this case" was insufficient to establish jurisdiction "[a]bsent factual information that makes the inference of culpability plausible");

*Giannetta v. Johnson*, No. 20-CV-9016, 2021 WL 2593305, at *10 (S.D.N.Y. June 24, 2021) (finding that the defendant sending an allegedly defamatory press release to "individuals in New York is inconsequential, as [defendant] engaged in *no other activity in the state* which might otherwise count as a 'business transaction,' and sending a letter to someone in the state, without more, is insufficient").

In addition, Plaintiff's allegation that Defendant "fully intends that his communications are sent to, viewed, reacted, and have their effect in New York," (SAC ¶ 72), is insufficient to establish jurisdiction as she fails to allege that Defendant took specific action targeting New York — it is not enough to allege that he intended an impact on New York or even that an impact was made. *Tannerite Sports*, 135 F. Supp. 3d at 234 (finding that a website capable of being accessed by all internet users which had "only thirteen users in New York [who] viewed the website" was "too small a number to demonstrate purposeful direction"); *Coll. Essay Optimizer*, 2015 WL 5729681, at *5 ("[T]he mere solicitation of business within the state does not constitute the transaction of business within the state absent some other New York-directed activities." (quoting *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004))); *Weiss v. Barc, Inc.*, No. 12-CV-7571, 2013 WL 2355509, at *3 (S.D.N.Y. May 29, 2013) (same); *Trachtenberg*, 43 F. Supp. 3d at 204 ("[E]ven though the posts' probable purpose and effect was to warn New Yorkers about plaintiff's conduct in their community . . . such 'targeting' is not a jurisdiction-conferring transaction under C.P.L.R. §302(a)(1)."); *ISI Brands, Inc. v. KCC Intern., Inc.*, 458 F. Supp. 2d 81, 87 (S.D.N.Y. 2006) ("Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users.").

**B.    The SmashJT Website's commercial activities in New York**

Further, Plaintiff's allegation attempting to tie the SmashJT Website to New York through commercial transactions is too conclusory. Plaintiff's claim that Defendant's "highly interactive website," which offers subscriptions and merchandise sales through and using Wix, "collects significant revenue in New York," (SAC ¶¶ 60, 67), is alone not enough to withstand a motion to dismiss. *See Donner*, 747 F. Supp. 3d at 692–93 (declining jurisdiction where there was no showing that defendants purposefully availed "themselves of business transactions in New York through the online publication of the article" without "evidence that the defendants derived a significant part of their revenue from digital subscriptions in New York"); *Seldon v. Magedson*, No. 11-CV-6218, 2012 WL 4475274, at *11 (S.D.N.Y. July 10, 2012) ("Merely hosting an interactive, non-commercial website with a nationwide audience, which website is not alleged to raise significant revenues from New York consumers, does not amount to defendants purposefully availing themselves of the privilege of doing business in New York under section 302(a)(1)."); *Savage Universal Corp. v. Grazier Const., Inc.*, No. 04-CV-1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) ("It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence . . . that commercial activity in that state actually occurred."); *Sino Clean Energy*, 2012 WL 1849658, at *7 (finding the defendant's "internet activities of maintaining a website with discussion threads and email subscription offering posting responses and comments to the website users, who could download reports and files directly to their computers, are insufficient to support a necessary finding that [the defendant] *purposefully and knowingly interacted with New York residents or otherwise targeted New York for business*."); *cf. M. Shanken Commc'ns,*

*Inc. v. Cigar500.com,* No. 07-CV-7371, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008) (finding C.P.L.R. § 302(a)(1) jurisdiction over defendants because interactive website was primarily used to effect commercial transactions; even though website did not target New York market, 10% of website's revenue was derived from New York consumers).

Plaintiff otherwise fails to allege how Defendant "collects significant revenue in New York," whether through New Yorkers subscribing to the SmashJT Website or purchasing merchandise — she only claims that Defendant "clearly does business over the internet via the SmashJT Website" without connecting such business specifically to New York. *See Coll. Essay Optimizer,* 2015 WL 5729681, at *4–5 (As "New York courts have exercised personal jurisdiction over defendants with interactive websites generally . . . based on proof of direct sales in New York, or direct solicitation of business in New York," plaintiff's allegation that defendant's website with merely "non-paying registered users located in New York" was insufficient to establish jurisdiction.); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 419–20 (S.D.N.Y. 2009) ("The Court need not decide whether [the alleged New York based] activity, either singularly or cumulatively, is sufficient to amount to 'transaction of business' for purposes of section 302(a), because even if it could be sufficient, [plaintiff] provides no evidence that any New York resident actually engaged in any such transactions — e.g., registered with the website or downloaded material from it — or that defendants did anything to indicate their knowing and purposeful transaction with New York visitors."); *see also Weiss*, 2013 WL 2355509, at *4 (noting that the fact that "some New York residents ha[d] registered" with defendant's social media website did not "rise to the level of alleging that [defendant] ha[d] purposefully and knowingly entered into or sought transactions with New York residents"); *ISI Brands*, 458 F. Supp. 2d at 87–88 ("Even the existence of an interactive 'patently

commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." (citing *Savage*, 2004 WL 1824102, at *9)); *Realuyo*, 2003 WL 21537754, at *6 ("[T]he existence of 332 non-paying e-mail registrants" from New York on defendant's website was not enough to assert personal jurisdiction.).

### C.    The SmashJT Wesbite's hosting through Wix, a New York webserver

Finally, Plaintiff's argument that Defendant's SmashJT Website, which is hosted through Wix, a "New York webserver," is insufficient to establish jurisdiction and the case law Plaintiff relies on is distinguishable.[8] (Pl.'s Opp'n 11; SAC ¶ 54.)  While such transaction could provide the basis to establish long-arm jurisdiction if Defendant "purposefully availed" himself of the protections of New York, the "transaction" at issue is coincidental and unintentional.

Plaintiff's only cited case involving C.P.L.R. § 302(a), *Do The Hustle, LLC. v. Rogovich*, No. 03-CV-3870, 2003 WL 21436215 (S.D.N.Y. June 9, 2003), includes a discussion of factual issues which would be relevant to the Court's inquiry into personal jurisdiction. *Id.* at *6.  Such questions considered by the court included "(1) whether or not the [w]ebsite was created or 'published' in New York, or whether the [w]ebsite is hosted on a web server that is physically located in New York; (2) whether or not [the defendant] or its agents sent files (presumably via email) to a web server located in New York, for the purpose of posting content to the Website; and (3) whether or not [the defendant] or its agent, when creating and publishing the [w]ebsite,

---

[8]  The Court also notes that two of the cases cited by Plaintiff, and the cases discussed within each, are from jurisdictions outside of New York and further distinguishable as they discussed jurisdiction only in the context of establishing personal jurisdiction under the Due Process Clause, not New York's long-arm statute.  *See DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276 (9th Cir. 2018); *HB Productions, Inc. v. Faizan*, 603 F. Supp. 3d 910 (D. Haw. 2022).

entered into any contracts with a web server or other website service provider in New York." *Id.* (internal citations omitted). The court emphasized that these questions would help establish the "degree of substantiality of the relationship between the [w]ebsite's transactions and the claims asserted by [the plaintiff,] [which] depend on the exact nature of those transactions" and which ultimately would allow the court to determine if there was "a sufficient relationship . . . for this [c]ourt to exercise personal jurisdiction over [the defendants]." *Id.* Ultimately, the court held it lacked sufficient information on these factual issues to find that the plaintiff had satisfied their burden to establish a basis for personal jurisdiction. *Id.*

Plaintiff's other two cases provide examples of situations where, applying the above, a web server hosted in the forum state would or would not be enough to establish personal jurisdiction. In *HB Productions, Inc. v. Faizan*, 603 F. Supp. 3d 910 (D. Haw. 2022), the plaintiff could not establish jurisdiction in California, Texas, or Arizona. *Id.* at 932. The court held the SAC's "slight connection to California," that defendant used a company headquartered in California for domain name services, was "insufficient to establish purposeful availment in or purposeful direction to California." *Id.* The court then found "[f]or the same reasons, the SAC's allegations concerning Texas — that Defendant uploaded torrent files onto a website hosted in Texas — [was] also insufficient." Lastly for Arizona, while the "infringement-inducing websites were hosted on servers located in Arizona," "crucially, the allegations supporting purposeful availment in the United States [did] not suggest [d]efendant acted with a specific purpose regarding Arizona as opposed to any other state." *Id.* In comparison, in *DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276 (9th Cir. 2018), the plaintiff was able to establish jurisdiction because "the software was located on California servers pursuant to an agreement reached by the parties," the defendant "actively set up the California-based VPN to facilitate

printing following technical difficulties," and, as agreed by the parties, the server "was located in California" and "both the California-based VPN and the Europe-based VPN continued to be used to transmit print data." *Id.* at 278. In comparison, in this case, Defendant's acceptance of the terms and conditions offered by a company with a principal place of business in New York, and which accordingly includes a choice of law and venue selection clause in their home state, fails to establish jurisdiction.

Plaintiff does not allege that the server is physically located in New York, and the transactions Plaintiff challenges do not demonstrate that any connection with New York was purposeful, rather, they were merely a "fortuitous circumstance." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (finding no personal jurisdiction where the only contact with the forum state amounted to a "fortuitous circumstance"); *Edwardo*, 66 F.4th at 75–76 ("Where [the] necessary relatedness is lacking, the New York Court of Appeals has characterized the claim as 'too attenuated' from the transaction, or 'merely coincidental' with it'" to find personal jurisdiction based upon that action. (citing *Daou,* 42 F.4th at 130)); *Aquiline Cap. Partners LLV v. FinArch* LLC, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) (finding that the "court must look at the totality of circumstances to determine the existence of purposeful activity and may not subject the defendant to jurisdiction based on 'random,' 'fortuitous,' or 'attenuated' contacts" (quoting *PaineWebber Inc. v. WHV, Inc.,* No. 95-CV-52, 1995 WL 296398, at *2 (S.D.N.Y. May 16, 1995))). The "limited nature" of the transaction, without more to establish Defendant purposefully elected to have his website hosted on a New York server, is insufficient to establish personal jurisdiction. *See HB Productions*, 603 F. Supp. 3d at 932; *Do The Hustle*, 2003 WL 21436215, at *6; *cf. DEX Sys.*, 727 F. App'x at 278. Accordingly, Plaintiff has failed

to establish that Defendant purposefully avails himself of the privileges of transacting business in New York as to all claims.

###### 2.    Plaintiff fails to establish that her claims under C.P.L.R. § 302(a)(1) "arise from" Defendant's New York "business"

Defendant contends that "[e]ven if the SAC did adequately plead that [D]efendant transacted business in New York, [] [P]laintiff's opposition makes clear, albeit by omission, that she has not alleged that her claims arise out of [D]efendant's New York activities — notwithstanding the activities of any of his friends and associates."  (Def.'s Reply 5.)

Plaintiff alleges that Defendant is subject to jurisdiction because her claims arise out of several of Defendant's New York business transactions:  (1) Defendant "contracted with Wix, a New York-based entity, to provide hosting and ecommerce services for his website, including the features that allow him to paywall certain posts and therefore charge users for access to them" and where "[a]t least one paywalled article from which [Defendant] raises revenue using the New York-based Wix services was directly related to Plaintiff and the defamatory claims at issue"; (2) Defendant "has conducted his campaign of defamation and harassment specifically to increase the revenue he earns through [his] interactive website . . . which revenue is largely dependent on his conduct at issue; and (3) Defendant "has knowingly used and directed New York-based agents to amplify his statements."  (Pl.'s Opp'n 11–12.)

"Under the 'arises from' prong, New York courts have [ ] concluded that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the '[defamation] claim did not arise from the defendants' specific business transactions in New York." *Best Van Lines*, 490 F.3d at 249–50 (quoting *Realuyo*, 2003 WL 21537754, at *6). Instead, courts have found defamatory conduct "arises from" business activity in New York where the defamatory statement was researched, written, published, or produced in New York.

*See Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 661–62 (S.D.N.Y. 2020) (finding "New York courts may exercise personal jurisdiction in defamation cases," where "at least part of the defamatory content was created, researched, written, developed, or produced in New York" (collecting cases)); *Shamoun v. Mushlin*, No. 12-CV-3541, 2014 WL 12776779, at *6 (S.D.N.Y. Mar. 26, 2014) ("Plaintiff must show that 'the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work,' such as research, writing, printing, or broadcasting." (quoting *Biro v. Nast*, No. 11-CV-4442, 2012 WL 3262770, at *10 (S.D.N.Y. Aug. 10, 2012))); *Symmetra*, 2013 WL 2896876, at *6 ("[A] court may exercise jurisdiction over a claim for defamation where 'the defendants' out-of-state conduct involve[s] defamatory statements projected into New York and targeting New Yorkers, . . . [and] the conduct also include[s]' further acts solidifying the defendant's connection with New York" such as "staying in New York to research a defamatory book or news broadcast." (second, third, and fourth alterations in original) (quoting *Best Van Lines, Inc.*, 490 F.3d at 249)).

Where the relationship between the alleged tortious conduct and/or defamatory statements and a defendant's business transactions are "so attenuated" or "so insubstantial," "the nexus . . . cannot alone be a sufficient basis upon which to establish jurisdiction over the defendant." *Best Van Lines*, 490 F.3d at 254-55 (finding the "relationship between the quest for funds [on defendant's website] and the [defamation cause of action] is so insubstantial" that it could not establish jurisdiction (citing *Realuyo*, 2003 WL 21537754, at *7)); *Cantor Fitzgerald*, 88 F.3d at 156 (affirming district court's determination that it lacked jurisdiction where "the court found that there was no evidence in the record of a substantial relationship between his business activity in New York and his alleged defamatory statements"); *Realuyo*, 2003 WL

21537754, at *7 (finding no jurisdiction where a cause of action "arises solely from [an] aspect of [a] website from which anyone — in New York or throughout the world — could view and download the alleged defamatory article"); *SPCA*, 18 N.Y.3d at 404 (determining that "where the contacts are more circumscribed and not directly related to the defamatory statement," or where the relationship between the transaction of business and the defamation is "too diluted," the court will not find jurisdiction).

### A.   Defamation claim

Even if Plaintiff could sufficiently allege that Defendant purposefully transacted business in New York, she has failed to adequately establish that her defamation claim arises from such contacts.  Plaintiff does not allege that the "defamatory statement[s] were researched, written, published, or produced in New York."  *Goldfarb*, 442 F. Supp. 3d at 661–62 (citing *Best Van Lines*, 490 F.3d at 249); *see Trachtenberg*, 43 F. Supp. 3d at 204; *Symmetra,* 2013 WL 2896876, at *6 (citing *SPCA*, 18 N.Y.3d at 404)); *Biro,* 2012 WL 326770, at *10.  Nor does Plaintiff attempt to argue that Defendant used various New York-based content creators to create or publish the Alleged Defamatory Statements (specifically stating that they did not "edit" or "verify" his claims) — only that they "echo[ed]" "and "amplify[ied]" his statements.  (SAC ¶¶ 195–98.)  Even if the Court could find that the Alleged Defamatory Statements were sufficiently connected to Defendant's forum conduct, Plaintiff does not allege that these "downstream commentators" interacted with the Alleged Defamatory Statements posted by Defendant on his various platforms.  Instead, the examples Plaintiff includes in the SAC involve statements that relate only to Plaintiff's other causes of action, those dealing with Defendant's alleged

"campaign of harassment."  Accordingly, the defamation cause of action cannot arise out of Defendant's alleged connection with these other New York based content creators.[9]

Plaintiff also argues that the SmashJT Website's business transactions have a substantial nexus to Plaintiff's defamation claim because "[a]t least one paywalled article from which [Defendant] raises revenue using the New York-based Wix services was directly related to Plaintiff and the defamatory claims at issue."  (Pl.'s Opp'n 11.)  To the extent Defendant's "contracting" with Wix to "provide hosting and ongoing ecommerce services" for the SmashJT Website can be considered "transacting business," Plaintiff cannot assert that her claim "arise[s] from" this single act — this is a "business transaction[] incidental to establishing [Defendant's] website."  *Best Van Lines*, 490 F.3d at 250–51 ("[T]o the extent that there are business transactions incident to establishing a website, a defamation claim based on statements posted on a website does not 'arise from' such transactions."); *see Realuyo,* 2003 WL 21537754, at *7 (finding that the defamation claim did not arise from advertising links on the website); *Competitive Techs., Inc. v. Pross,* 836 N.Y.S.2d 492, 2007 WL 283075, at *3 (Sup. Ct. Jan. 26, 2007) (unpublished table opinion) (concluding that libelous statements posted on a Yahoo! message board did not give rise to jurisdiction because they were "not in connection with any business transactions").

Further, Plaintiff has failed to establish that the defamation cause of action arises from the subscription services for which Defendant contracts with Wix to use.  The Alleged Defamatory Statements do not relate to Defendant's use of Wix to offer subscriptions to his website, only that such statements, which were originally posted on Twitter, can be found

---

[9]  *See supra* section II.iii for a discussion of Plaintiff's failure to allege that her other causes of action aside from defamation "arise from" Defendant's New York contacts under a theory of agency or conspiracy.

repeated in two articles (one of which is behind a paywall while the other is not).  Plaintiff only alleges that one "paywalled" article, related to this litigation, "references [Defendant's] previous defamatory statements about [Plaintiff]."  (SAC ¶ 64.)  However, Plaintiff's defamation cause of action arises from Defendant's specific tweets, therefore the one "paywalled" article is an incidental connection.  *See Realuyo*, 2003 WL 21537754, at *6 ("[I]t is plain that there is no specific personal jurisdiction under CPLR 302(a)(1), for defamation based on the allegedly defamatory article because that claim did not arise from the defendants' specific business transactions in New York.").

## B.   All other claims

Plaintiff argues that the Court has jurisdiction as to her non-defamation claims because the SmashJT Website's business transactions have a substantial nexus to these claims since many of Defendant's articles about Plaintiff, which constitute a "campaign of harassment," are found on the website.  (Pl.'s Opp'n 11.)  However, for the same reasons Plaintiff fails to establish jurisdiction as to the defamation claim, she also fails to establish jurisdiction as to these claims.[10] Wix's hosting services are considered "business transactions" incidental to establishing the SmashJT Website, which is an insufficient basis for asserting jurisdiction.  Nor can Plaintiff argue that Defendant's alleged "campaign of harassment" relates to the subscriptions available through Wix as much of the content that comprises such allegations are available to both paying and non-paying readers.  *See Realuyo,* 2003 WL 21537754 at *7 (finding that the claim which arose "solely from the aspect of the website from which anyone — in New York or throughout the world — could view and download the allegedly defamatory article" was insufficient to establish jurisdiction).

---

[10]  *See supra* Section II.b.i.2.a.

Further, Plaintiff argues that her claims arise from Defendant's "interactive website" because his "campaign of defamation and harassment . . . increase[d] the revenue he earn[ed] through that interactive website and his YouTube channel, which revenue is largely dependent on his conduct at issue." (Pl.'s Opp'n 11.) Even accepting that SmashJT Website is "highly interactive" because it allows users to comment on posts, purchase merchandise or subscriptions which amounts to transacting business in New York, these actions are not related to the creation of the allegedly tortious conduct. *See Best Van Lanes*, 490 F.3d at 254–55 (holding that website's solicitation of donations may constitute transacting business, but the donation section of the website was "essentially unrelated to the publication that underlie[d the] lawsuit" and "therefore does not provide the district court with jurisdiction under section 302(a)(1)"); *Prince v. Intercept*, 634 F. Supp. 3d 114, 130 (S.D.N.Y. 2022) ("Although [defendant] acknowledges that he had contact with New York during his employment at The Intercept, [p]laintiff failed to satisfy the 'something more' standard because [defendant's] contacts with New York were not related to the creation of the Article." (footnote omitted)); *Cameron v. Bellamy*, No. 18-CV-10395, 2019 WL 5551738, at *3 (S.D.N.Y. Oct. 28, 2019) (finding that the defendant's website's interactions with New York users did not establish that plaintiff's claim arose from defendant's New York contacts); *Biro*, 2012 WL 3262770 at *10, *12–13 (finding that while "a website that sells products would undoubtedly be subject to long-arm jurisdiction for claims arising directly out of the sales transactions for those products . . . it seems unlikely that those sales would have an articulable nexus to [statements] published by the proprietor of that website such that there would be long-arm jurisdiction over the [ ] claims"); *Realuyo*, 2003 WL 21537754, at * 7 (finding that while "the web site [may] fall within the middle ground of [interactivity for] possible jurisdiction, the claim in this case . . . does not arise from that set of

interactive links . . . it arises solely from the aspect of the website from which anyone — in New York or throughout the world — could view and download the allegedly [tortious] article").

Plaintiff's allegations that the SmashJT Website's success, directly tied to Defendant's revenue, relies on Defendant's highly opinionated and sensationalized content which includes his "negative" coverage of Plaintiff, are too attenuated to establish a connection between the website's "business" and the causes of action asserted.  (SAC ¶¶ 226–44; Pl.'s Opp'n 11.)  The Second Circuit addressed a similar argument in *Best Van Lines, Inc.*, 490 F.3d at 254–55.  In *Best Van Lines*, the plaintiff asserted that the defendant's website's "primary function and business [was] to publish negative information about companies" and the website's "visitors ma[d]e donations solely because of the overwhelming negative comments and content on the website."  *Id.*  Nevertheless, the court found the nexus "between [the] allegedly tortious conduct and the revenue transactions required to support such conduct" was too "attenuated" because "the relationship between the quest for funds and the lawsuit for which jurisdiction is so insubstantial . . . [and thus] cannot alone be a sufficient basis upon which to establish jurisdiction over the defendant."  *Id.*; *cf. Cap. Recs.*, 611 F. Supp. 2d at 361–62 (finding that the plaintiffs' "factual allegations that show the availability of popular music videos and the ability to geographically target advertisements" "represented a revenue stream" which were "integral components of an integrated advertising strategy" and for which "New York visits to the website generated a significant amount of revenue for [defendant]" was "more than a theoretical nexus" but "a credible allegation of economic motive").  As in *Best Van Lines*, Defendant's "quest for funds" through the SmashJT Website (or the SmashJT YouTube) which "is the ultimate source of his . . . harassing conduct, and from whence he conducts his campaign of harassment and

emotional terrorism against [Plaintiff]," (SAC ¶ 68), does not, without more, constitute a "substantial nexus" to Plaintiff's claims to establish jurisdiction.

Accordingly, Plaintiff fails to establish jurisdiction under CPLR § 302(a)(1).

### ii.    Plaintiff fails to plead specific jurisdiction under C.P.L.R. § 302(a)(3)

Defendant argues the Court lacks jurisdiction under C.P.L.R. § 302(a)(3) because, "by its terms[,] [it] does not apply to defamation actions" and Plaintiff's other causes of action "merely restat[e] a defamation claim under a different name."  (Def.'s Reply 6–7; Def.'s Mem. 5–8.)  To the extent the Court finds the other claims survive the statutory defamation carve out, Defendant argues that Plaintiff fails to include allegations of substantial revenue in the SAC because all that is alleged "is essentially nothing other than the revenue allegedly generated by [Defendant's] online statements about the [P]laintiff — a matter which [P]laintiff cannot plausibly claim to know, much less quantify, and which she has no reasonable basis for guessing about."  (Def.'s Mem 6–8.)

Plaintiff first contends that Defendant's argument that her other causes of action are subject to C.P.L.R. § 302(a)(3)'s defamation carve-out is futile because the case law cited in support does not apply.  (Pl.'s Opp'n 8.)  Instead, "because the relevant non-defamation claims involve 'alleged harm suffered by the [P]laintiff' that 'is not precisely the same as that caused by defamation,' they do not get analyzed as defamation claims."[11]  (*Id.* (emphasis omitted).)

---

[11]  Defendant argues that Plaintiff's non-defamation "tag-along" causes of action should also be barred under the defamation carve out of C.P.L.R. § 302(a)(3) because "this is essentially a defamation action" and "the only tort alleged to have been committed, defamation of character, cannot form the basis for long-arm jurisdiction."  (Def.'s Mem. 5–6; Def.'s Reply 7.)  C.P.L.R. §§ 302(a)(2) and (3) specifically except "a cause of action for defamation of character arising from the act."  C.P.L.R. §§ 302(a)(2), 302(a)(3).  "Plaintiffs may not evade the statutory exception [of C.P.L.R. §§ 302(a)(2) and (3)] by recasting their cause of action as something other than defamation."  *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); *see Tannerite Sports LLC v. NBCUniversal Media,* LLC, 135 F. Supp. 3d 219, 233 (S.D.N.Y. 2015)

Plaintiff argues that the Court can exercise jurisdiction under C.P.L.R. § 302(a)(3).  (*Id.* at 9.)  In support, Plaintiff argues that Defendant "should have expected his conduct to have repercussions in New York" given "Plaintiff is a New York resident, that her former employer Kotaku is a New York-based employer, that [Defendant] was aware of that, and that [Defendant] directed his harassment campaigns at Plaintiff and Kotaku."  (*Id.*)  Plaintiff contends that "the SAC [ ] sufficiently alleges that [D]efendant generates substantial revenue from interstate commerce" through the SmashJT Youtube and Smash JT Website.  (*Id.* at 9–10.)  To the "extent more is required, Plaintiff [argues she] would be entitled to jurisdictional discovery into [Defendant's] income and revenue sources."  (*Id.* at 10.)

---

("A plaintiff may not avoid the limits of Section 302(a) by disguising defamation claims as claims for other torts."), *aff'd*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017)); *Symmetra Pty Ltd. v. Hum. Facets*, No. 12-CV-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("A plaintiff may not escape the special rules applicable to allegations of defamation through artful pleading: when a claim, however denominated, sounds in defamation, the C.P.L.R.'s defamation rules apply.").  "Even claims that merely 'sound in defamation' are excluded from the ambit of claims that may be properly brought pursuant to jurisdiction established under CPLR 302(a)(2) and (a)(3)."  *Taylor v. O'Connor*, No. 18-CV-1476, 2020 WL 13689245, at *4 (E.D.N.Y. Mar. 31, 2020) (citing *G31000 N. Am., Inc. v. Paris*, No. 14-CV-3885, 2014 WL 6604790, at *2–3 (S.D.N.Y. Nov. 21, 2014)); *see IBE Trade Corp. v. Dubinsky*, No. 21-1879, 2022 WL 1487214, at *1 (2d Cir. May 11, 2022) (causes of action that "sounds primarily in defamation . . . [were] exempted from C.P.L.R. §302(a)(3)(ii)"); *Giannetta v. Johnson*, No. 20-CV-9016, 2021 WL 2593305, at *7 (S.D.N.Y. June 24, 2021) (noting that causes of action "that sound in defamation or libel . . . are subject to [the] higher jurisdictional bar in New York" because "[d]efamation claims are accorded separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression." (quoting *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012))).  "[T]o determine whether a plaintiff's claim sounds in defamation, courts must look to the substance, not merely the name of a claim."  *Taylor*, 2020 WL 13689245, at *4 (finding a claim for tortious interference based on alleged defamatory statements can serve as a basis for personal jurisdiction); *see also Cantor Fitzgerald*, 88 F.3d at 157 (same).  Plaintiff's non-defamation claims alleged in the SAC are not only based on the two Alleged Defamatory Statements, but also upon hundreds of statements from Defendant's posts and videos on the SmashJT Website, SmashJT Twitter, and SmashJT YouTube.  (SAC ¶¶ 15, 116–17, 173–76.)  However, as discussed *infra*, Plaintiff fails to establish jurisdiction under C.P.L.R. § 302(a)(3) as to any of these claims.

C.P.L.R. §302(a)(3) requires the defendant's tortious conduct, which caused the plaintiff's injury, to have taken place in New York state.  *See, e.g.*, *Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) ("Courts determining whether there is injury in New York sufficient to warrant jurisdiction under [section 302(a)(3)] generally apply a situs-of-injury test, where the 'situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.'" (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001))); *Ditto v. Ditto*, No. 23-CV-5814, 2024 WL 5508217, at *7 (S.D.N.Y. May 31, 2024) (same) (quoting *Timothy Coffey Nursery Landscape*, 760 F. App'x at 61); *Mann v. Camp Fatima, Inc.*, No. 22-CV-4740, 2023 WL 10354262, at *7 (E.D.N.Y. Nov. 8, 2023) ("To that end, courts [evaluating personal jurisdiction under section 302(a)(3)] look to 'the place where the underlying, original event occurred which caused the injury . . . not the location where the resultant damages are felt by the plaintiff.'" (emphasis omitted) (quoting *M & M Packaging, Inc. v. Kole*, 298 F. App'x 39, 42 (2d Cir. 2008))), *report and recommendation adopted*, 2024 WL 549282 (E.D.N.Y. Feb. 12, 2024); "The mere fact that the injured party resides or is domiciled in New York is not a sufficient predicate for jurisdiction under C.P.L.R. 302(a)(3)."  *Verragio, Ltd. v. Malakan Diamond Co.*, No. 16-CV-4634, 2016 WL 6561384, at *3 (S.D.N.Y. Oct. 20, 2016) (citing *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)); *see Mednik v. Specialized Loan Servicing, LLC*, No. 20-CV-427, 2021 WL 707285, at *6-7 (E.D.N.Y. Feb. 23, 2021) (same); *see also Timothy Coffey Nursery Landscape*, 760 F. App'x at 61 ("[T]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside of New York." (quoting *Whitaker*, 261 F.3d at 209)); *Troma Ent.*, 729 F.3d at 218 ("It is well-

settled that residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under 302(a)(3)." (alteration in original, internal quotation marks and citation omitted)); *Penguin Grp.*, 609 F.3d at 36–37 ("New York has long held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there." (internal quotation marks and citation omitted)); *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975) ("We have held that section 302(a)(3) is not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled there or doing business there."); *Lipin v. Bergquist*, 574 F. Supp. 2d 423, 432 (S.D.N.Y. 2008) (finding plaintiff's residence in New York and "experience of economic and/or emotional injury in this state" insufficient to constitute injury).

Plaintiff argues the Court has jurisdiction under C.P.L.R. § 302(a)(3), (Pl.'s Opp'n 7–12), but fails to allege any facts or make any arguments to satisfy the "situs-of-injury" requirement. *See Timothy Coffey Nursery Landscape*, 760 F. App'x at 61. Plaintiff's arguments track the wording of the statute precisely, asserting Defendant would be subject to jurisdiction if he "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." (Pl.'s Opp'n 8.) In her opposition to the motion, Plaintiff alleges "that [Defendant] (1) committed tortious acts outside the state; (2) caused injury in New York; (3) did so fully expecting (indeed expressly hoping) his conduct would have consequences in New York, and (4) derives substantial revenue from

interstate commerce." (*Id.* (internal citations omitted).)  The law requires Plaintiff to allege that "the location of the original event which caused the injury" be within the forum state — something Plaintiff fails to do.  *See Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d. 104, 121 (E.D.N.Y. 2023) (finding plaintiff could not establish jurisdiction under C.P.L.R. § 302(a)(3) where they failed to allege "what constituted the 'original event which caused their injury' or the 'situs of their injury'").  Instead, Plaintiff's allegations attempt to connect Defendant's online actions to New York because they had consequential harm to her, a New York resident, which she felt in New York.  Plaintiff contends that Defendant "should have expected his conduct to have repercussions in New York."  (Pl.'s Opp'n 9.)  However, under the case law in this circuit, this is not enough to establish jurisdiction.  *Mednik*, 2021 WL 707285, at *6-7 (finding plaintiff failed to state a *prima facie* case for personal jurisdiction under C.P.L.R. § 302(a)(3) where defendant's tortious act was committed outside of New York, injured plaintiff within New York because of his residence there, and that defendant "expected or should have expected to be sued in New York"); *Lipin*, 574 F. Supp. 2d at 431-32 (holding no personal jurisdiction established under C.P.L.R. § 302(a)(3) where "[n]one of the actions of events upon which [p]laintiff bases her claims took place in the state of New York," or where plaintiff "allege[s] that [the defendant] has never entered the state," "[t]he only arguable basis for the existence of [an injury within the meaning of C.P.L.R. § 302(a)(3)] would be [p]laintiff's residence in New York and [p]laintiff's subsequent 'experience' of economic and/or emotional injury in this state" was insufficient).[12]  Accordingly, Plaintiff cannot assert jurisdiction over Defendant under C.P.L.R. § 302(a)(3).

---

[12]  The case law Plaintiff relies on in support of her arguments, *Savage Universal Group*, No. 04-CV-1089, 2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004), is unpersuasive as it is

### iii.    Plaintiff fails to plead an agency or conspiracy theory

Defendant argues that Plaintiff's allegations in the SAC "fails to either make out a valid conspiracy claim[,] name [Defendant's alleged New York contacts] as defendants" or "adequately allege facts which, if true, would make these New York-based YouTubers agents of [Defendant]."[13]  (Def.'s Mem. 7.)

Plaintiff alleges "Defendant directed his activities towards New York via his affiliation with other New York-based influencers and his deliberate and knowing use of their platforms to further his defamatory harassment campaign against [Plaintiff]."  (SAC ¶ 37.)  Specifically, Plaintiff contends "that [Defendant] has knowingly used and directed New York-based agents to amplify his statements."  (Pl.'s Opp'n 12.)  First, Plaintiff states that Defendant "appeared on the YouTube channel of fellow streamer RealHypnotic1 ('Hypnotic'), who streams from his residence in Long Island, to discuss [Plaintiff] and further encourage her harassment" and includes evidence that "Hypnotic" streams from his residence on Long Island.  (SAC ¶¶ 38–45.)  Second, Plaintiff alleges that two of Defendant's "associates" live on Long Island: social media and content creators who respectively stream under the name of "ToastywiththeMosty" and "RevSaysDesu."  (Id. ¶ 46.)  Plaintiff contends that Defendant utilizes these "downstream commentators" to "echo what he says," "create[ing]their own set of videos, amplifying what [Defendant] says, while stoking harassment, rape and death threats, and the like."  (Id. ¶¶ 195–

---

inapplicable.  In that case, the court held that the plaintiff had "presented sufficient allegations that the alleged infringement caused injury within New York, as the 'first effects' of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business."  Id. at *9.  Plaintiff's claims are not for trademark infringement or dilution, and as such, both the law applied in this case and the court's ultimate holding are immaterial.

[13]  Plaintiff does not allege that the defamation cause of action has any connection to Plaintiff's potential contacts in New York, only that Defendant used such content creators, for example, to assist in the alleged "campaign of harassment" which relates to the other four causes of action.  (SAC ¶¶ 38, 46, 203–15.)

96.)  Plaintiff alleges that these "[p]rominent inhabitants of [Defendant's] ecosystem" "do not appear . . . [to] edit or verify his claims" — instead, Defendant's claims "will reappear, substantially unchanged, downstream of him in one of the videos amplifying and continuing his harassment" and "often contain the same minor mistakes and errors in wording that [Defendant's] claims contain."  (*Id.* ¶¶ 195–99.)  Plaintiff contends that these "mountweazels" are of "[Defendant's] intent, and by [Defendant's] design," intended to create an "ecosystem [that] leads to rape threats, death threats, and unlawful harassment."  (*Id.* ¶¶ 200–02.)  Plaintiff alleges several examples of this, two of which were connected to "ToastywiththeMosty," (*id.* ¶¶ 205, 215), and one connected to "RevSaysDesu," (*id.* ¶ 207).

C.P.L.R. § 302(a) provides that for a court to:

> exercise personal jurisdiction over any non-domiciliary . . . who *in person or through an agent:* (a) transacts any business within the state . . . ; or (2) commits a tortious act within the state . . . ; or (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business . . . in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

C.P.L.R. § 302(a) (emphasis added); *see El Omari v. Dechert LLP*, No. 24-1970, 2025 WL 1618359, at *2 (2d Cir. June 9, 2025) ("N.Y. C.P.L.R. § 302(a)(1), provides that a court may exercise jurisdiction over a non-domiciliary 'who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state' '[a]s to a cause of action arising from' that transaction." (citing C.P.L.R. § 302(a)(1); alteration in original); *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 126 (2d Cir. 2023) ("New York's long-arm statute provides for personal jurisdiction over a non-domiciliary who, *inter alia*, 'commits a tortious act within the state' personally 'or through an agent.'" (citing C.P.L.R. § 302(a)(2))); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790–91 (2d Cir. 1999)

("C.P.L.R. § 302(a)(3) . . . extends to any non-domiciliary who in person or *through an agent*: commits a tortious act without the state causing injury to person or property within the state . . .. (quoting C.P.L.R. § 302(a)(3) (emphasis added)); *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 1952027, at *12 (S.D.N.Y. July 16, 2025) ("C.P.L.R. 302(a)(2) permits 'personal jurisdiction over a non-domiciliary who . . . "commits a tortious act within the state" personally "or through an agent."'" (quoting *Fat Brands*, 75 F.4th at 125 (quoting C.P.L.R. § 302(a)(2)))); *Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, No. 22-CV-5055, 2025 WL 1266626, at *11 (S.D.N.Y. Apr. 30, 2025) (same); *P&L Dev., LLC v. Gerber Prods. Co.,* 715 F. Supp. 3d 435, 453 (E.D.N.Y. 2024) (same); *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 335 (E.D.N.Y. 2021) ("Section 302(a)(1) has two prongs: (1) the defendant must have 'transacted business within the state,' either itself or through an agent, and (2) the cause of action 'must arise from that business activity.'" (quoting *Licci IV*, 732 F.3d at 168)); *Varn v. Orchestrade, Inc*, No. 19-CV-2875, 2020 WL 13558690, at *5 (E.D.N.Y. Mar. 30, 2020) (same) (quoting C.P.L.R. § 302(a)(1)).

## A.   Agency

"Under [New York's long-arm statute], there is jurisdiction over a principal based on the acts of an agent where 'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)) (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981))); *Fat Brands Inc.*, 75 F.4th at 125–26 ("New York Law defines 'agent' broadly for purposes of personal jurisdiction, explaining that 'an agency relationship will be held to exist . . . [provided] a showing [is] . . . made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some

control, the nonresident principal." (second alteration in original)); *Bloomfield v. Alvest (USA), Inc.*, No. 23-CV-5090, 2025 WL 888476, at *6 (E.D.N.Y. Mar. 21, 2025) ("[T]here is jurisdiction over a principal based on the acts of an agent where 'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.'" (quoting *Charles Schwab*, 883 F.3d at 85)). However, "sparse allegations of agency" are insufficient "to make a prima facie showing of personal jurisdiction." *Charles Schwab*, 883 F.3d at 86; *see Bloomfield*, 2025 WL 888476, at *6 ("While 'a plaintiff need only show a limited amount of control,' 'sparse allegations of agency' that 'shed[] no light on the relationship between' the parent and agent are insufficient." (citation omitted) (first quoting *Protostorm, LLC v. Antonelli*, No. 08-CV-931, 2010 WL 4052922, at *5 (E.D.N.Y. Oct. 14, 2010); and then quoting *Charles Schwab*, 883 F.3d at 86)).

Plaintiff's allegation "that [Defendant] has knowingly used and directed New York-based agents to amplify his statements" is conclusory and insufficient to establish jurisdiction under an agency theory. (Pl.'s Opp'n 12.) Plaintiff discusses two New York content creators who have essentially copied what Defendant posted, concluding that such false statements are of "[Defendant's] intent, and by [Defendant's] design" without alleging any facts that suggest Defendant purposefully used these New York "agents" to promote his "campaign of harassment" or intentional interaction between Defendant and the two New York content creators. (SAC ¶ 200.) Similarly, Plaintiff includes allegations regarding Defendant's "appearance" on "Hypnotic's" YouTube channel where he "discuss[ed] [Plaintiff] and further encourage[d] her harassment." (*Id.* ¶¶ 38–45.) Such contentions also fail to include any allegation detailing the extent of "Hypnotic's" participation in the alleged campaign of harassment or claim that "Hypnotic" was acting "for the benefit of . . . and under some control" of Defendant. *Charles*

46

*Schwab*, 883 F.3d at 85.  Plaintiff must allege some level of cooperation and/or collaboration such that "the nondomicilary 'requested the performance of *those activities* in New York'" to sustain her allegation that Defendant "directed New York-based agents to amplify [his] statements."   *Edwardo*, 66 F.4th at 74–75 (affirming lack of personal jurisdiction given plaintiff's failure to "allege facts suggesting that [agent] acted 'with the knowledge and consent of' [d]efendants" when he performed the specific action that gave rise to the suit); *see Charles Schwab*, 883 F.3d at 86 (affirming that the complaint which "set[] forth a non-exhaustive list" of potential agents but "shed[] no light on the relationship between [d]efendants and those [agents]," but only "generally allege[d] that [d]efendants 'controlled or otherwise directed or materially participated in the operations of [the agents]'" was a "bare allegation" from which the court could not establish jurisdiction through defendants' agents); *Grove Press*, 649 F.2d at 122 (noting that "a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal"); *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012) ("The allegations concerning [one individual's] agency were entirely conclusory and thus inadequate," such that the court could not establish jurisdiction under an agency theory.); *Bloomfield*, 2025 WL 888476, at *7 (finding no personal jurisdiction over the defendant where the plaintiff did "not sufficiently allege[] that [defendant] controlled the actions of [the] alleged agents"); *Levitin v. Sony Music Ent.*, 101 F. Supp. 3d 376, 389 (S.D.N.Y. 2015) (finding that plaintiff could not "base an argument for specific jurisdiction on an agency theory because they have not even attempted to allege that [defendants] exert[ed] any control over [the agent], a necessary element to demonstrate agency for the purposes of personal jurisdiction"); *Pincione v. D'Alfonso*, No. 10-CV-3618, 2011 WL 4089885, at *5 (S.D.N.Y. Sept. 13, 2011) (finding of no personal jurisdiction where plaintiff

47

failed to allege "facts supporting the existence of a conspiratorial relationship" between agent and defendants), *aff'd*, 506 F. App'x 22, 24 (2d Cir. 2012); *cf. Protostorm*, 2010 WL 4052922, at *5 (determining that allegations of the nonresident principal working closely with the agent, along with proof of communications between the two, and the fact that the principal "stood to benefit financially from [the agent's] work," were "facts [] sufficient to show that [the agent] acted with [the principal's] knowledge, for its benefit, and in a manner resembling a joint venture").  Plaintiff's minimal allegations regarding Defendant's alleged agents are insufficient to establish jurisdiction under an agency theory.

### B.  Conspiracy

Under C.P.L.R. § 302(a), "'agent' . . . include[s] not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators.'"[14] *Fat Brands*, 75 F.4th at 125 (quoting *Chrysler Cap. Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (collecting cases) (alteration in original); *see Berkshire Bank*, 2022 WL 569819, at *3 ("New York courts have long recognized [that] allegations of conspiracy can satisfy the [long-arm] statute and a co-conspirator can be considered an agent so that '[t]he acts of a co-conspirator may, in an appropriate case, be attributed to a defendant for the purpose of obtaining personal jurisdiction over that defendant.'" (internal citation omitted)); *Lively*, 2025 WL 1952027, at *12 (same).  To allege a conspiracy theory of jurisdiction, "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Harris v. Am. Acct. Ass'n*, No. 22–811,

---

[14]  While Plaintiff does not specifically make a conspiracy argument in support of jurisdiction, (SAC ¶¶ 45–46, 195–215; Pl.'s Opp'n 11–12), Defendant understood Plaintiff to be making such an argument, (Def.'s Mem. 7), and the Court therefore addresses this argument.

2023 WL 2803770, at *1 (2d Cir. 2023) (quoting *Charles Schwab*, 883 F.3d at 87); *Berkshire Bank,* 2022 WL 569819, at *2 (quoting same); *Rich v. Fox News Network LLC*, No. 18-CV-2223, 2020 WL 6276026, at *6 (S.D.N.Y. Sept. 15, 2020) (quoting same).  "A conclusory assertion of conspiracy is insufficient."  *Harris,* 2023 WL 2803770, at *1 (citing *Lehigh Valley Indus.*, 527 F.2d at 83–94).  "Rather, a plaintiff must specifically plead facts that 'reveal a unity of purpose of a common design and understanding, or a meeting of minds in an unlawful arrangement." *Id.* (internal quotation marks omitted) (quoting *Gelboim v. Bank of Am. Corp.,* 823 F.3d 759, 781 (2d Cir. 2016)).

Plaintiff's allegation "that [Defendant] has knowingly used and directed New York-based agents to amplify his statements," (Pl.'s Opp'n 12), is not only conclusory, but fails to include any of the elements required to establish jurisdiction by conspiracy.  *Harris*, 2023 WL 2803770, at *2, *7 (finding no jurisdiction where plaintiff "failed to plead facts showing the requisite degree of control by the nonresident principals"); *Charles Schwab*, 883 F.3d. at 86–87 ("To allow jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of the conspiracy would be inconsistent with the 'purposeful availment' requirement."); *cf. Fat Brands*, 75 F.4th at 126 (affirming that the "amended complaint [which] specifically allege[d] that [the co–conspirator] joined and actively participated in the conspiracy" and included allegations of specific actions undertaken by the co-conspirator in furtherance of the conspiracy);  *Rich*, 2020 WL 6276026, at *6 (finding that the alleged co-conspirators "specific actions [of] developing, publishing, and publicizing the [story at issue]" were sufficient to establish jurisdiction because they "were undertaken in furtherance of the alleged conspiracy in New York").  Plaintiff fails to allege "overt acts" that any of the alleged co-conspirators *specifically took* "in furtherance of the conspiracy."  *Harris,* 2023 WL 2803770, at *2 (affirming

49

court's finding of insufficient conspiracy allegations because "[t]he complaint allege[d] no facts suggesting that [the defendant] published the [allegedly tortious] article pursuant to an agreement with the individual defendants to disadvantage [plaintiff], rather than based on its own independent editorial judgement"); *cf. Berkshire Bank*, 2022 WL 569819, at *4 (affirming plaintiffs' "pleadings and other supporting evidence [were] replete with [] communications and actions that appear to involve purported conspiracy participants located in New York who took steps there to advance the conspiracy" was sufficient to establish personal jurisdiction over defendant).  Without more, Plaintiff cannot rely on a theory of conspiracy to impute the alleged co-conspirators New York contacts to Defendant.

> **c.    The Court grants jurisdictional discovery**

Plaintiff contends that she "would be entitled to jurisdictional discovery" in connection with her allegations under C.P.L.R. § 302(a)(3)(ii).[15]  (Pl.'s Opp'n 10.)

"A district court has wide latitude to determine the scope of discovery . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff [has] not made out a *prima facie* case for jurisdiction." *Daou*, 42 F.4th at 133 n.6 (alteration in original) (quoting *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)); *see also Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("A district court has 'considerable procedural leeway' when deciding a motion to dismiss for lack of personal jurisdiction and 'may permit discovery in aid of the motion.'" (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981))); *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) ("[T]he district court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." (quoting *Foremost-*

---

[15]  Defendant does not address whether Plaintiff is entitled to jurisdictional discovery. (*See generally* Def.'s Mem.; Def.'s Reply.)

*McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990))).  "[P]recisely because the plaintiff bears the burden of alleging facts demonstrating standing, [the Second Circuit] ha[s] encouraged district courts to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary."  *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025) (first alteration in original) (quoting *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d, 114, 121 (2d Cir. 2017)); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[The] court should take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000))).  The bar for granting "jurisdictional discovery" is "low," *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014), and it is appropriately granted where a plaintiff's allegations make a "sufficient start" toward establishing personal jurisdiction, *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005).  *See Nixon*, 2021 WL 3667154, at *6 ("Jurisdictional discovery is warranted only 'where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction.'" (alterations in original) (quoting *Leon v. Shmuckler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014))); *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 313–14 (E.D.N.Y. 2014) ("It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." (quoting *Leon*, 992 F. Supp. 2d at 194)).  "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction."  *Daventree Ltd. v.*

*Republic of Azerbaijan*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004); *see Dannenfelser v. Flexi N. Am., LLC,* No. 22-CV-6608, 2024 WL 640025, at *12 (E.D.N.Y. Feb. 15, 2024) ("Where a plaintiff has established a genuine issue of jurisdictional fact, the [c]ourt may in its discretion order jurisdictional discovery."); *Coll. Essay Optimizer*, 2015 WL 5729681, at *8 ("The better way to consider [whether to grant jurisdictional discovery] is to ask whether plaintiff's complaint . . . suggest[s] the existence of additional discoverable facts that could subject defendant[] to long-arm jurisdiction.").

As discussed above, Plaintiff has failed to establish personal jurisdiction over Defendant under any prong of N.Y.'s long-arm statute because she: (1) fails to allege in the SAC any specific acts taken by Defendant in New York which caused injury; (2) fails to establish Defendant purposefully availed himself of conducting business in New York or otherwise targeted New York through the use of the SmashJT Website; (3) fails to establish a "substantial nexus" between Defendant's New York activities and the causes of action to allege that her claims arise from such conduct; and (4) fails to sufficiently plead an agency or conspiracy theory for which the Court can assert jurisdiction over Defendant through his three alleged New York "contacts" mentioned in the SAC.  However, the Court finds that Plaintiff has pleaded a "sufficient start" to establishing personal jurisdiction, specifically with regards to the SmashJT Website and Defendant's New York-based contacts.  *See Mountain Tobacco Co.*, 55 F. Supp. 3d at 314 (Court granted jurisdictional discovery where the allegations in the complaint "established a 'sufficient start' of establishing personal jurisdiction" and thus plaintiff was allowed to "develop a record relevant to the extent of [defendant's] contacts with New York State."); *C.A., Inc. v. Stonebranch, Inc.*, No. 12-CV-5988, 2014 WL 931223, at *4–5 (E.D.N.Y. Mar. 7, 2014) (granting "jurisdictional discovery because [plaintiff] ha[d] made a threshold showing that

[defendant] [was] subject to personal jurisdiction under the 'solicitation plus' theory of 'doing business'"); *Biro*, 2012 WL 3262770, at *14 (granting jurisdictional discovery where Plaintiff "made the requisite sufficient start demonstrating a reasonable basis for asserting jurisdiction over [the defendants]" (internal quotation marks and citation omitted)); *see also Dannenfelser*, 2024 WL 640025, at *12 (granting jurisdictional discovery because it "may reveal evidence . . . that personal jurisdiction is proper over [the defendant] under N.Y. C.P.L.R. 302").  Information such as Defendant's interactivity and revenue amassed from New York residents "lie[s] exclusively within the defendant's knowledge" and thus Plaintiff is entitled to learn these facts. *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011) ("Pre-motion discovery should be permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge," although the court denied discovery because such facts were known and included in an affidavit submitted to the court. (internal citation omitted)); *see Gracie Baked LLC v. GiftRocket, Inc.*, No. 22-CV-4019, 2024 WL 1345643, at *2 (E.D.N.Y. Mar. 28, 2024) (granting jurisdictional discovery where "allegations [were] sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record" (citing *Leon*, 992 F. Supp. 2d at 195)).

The Court grants Plaintiff jurisdictional discovery to determine: (1) Defendant's SmashJT Website's interactivity and business conducted within New York and with New York residents; (2) Defendant's revenue generated through the SmashJT Website, in terms of subscriptions from New York residents; (3) the extent of Defendant's relationship with New York-based content creators, including, but not limited to, "Hypnotic," "ToastywiththeMosty," and "RevSaysDesu";

and (4) any further connections Defendant, the SmashJT Website, the SmashJT Twitter, and the SmashJT YouTube have with New York and New York residents.[16]

After the parties have concluded discovery aimed at determining and resolving outstanding uncertainty regarding the extent of the SmashJT Website's interactivity and connection with New York and Defendant's New York-based contacts, Plaintiff can seek leave of Court to amend pursuant to Federal Rules of Civil Procedure 15(A)(2).  If Defendant believes that Plaintiff still fails to establish personal jurisdiction after discovery, Defendant may request permission to brief a motion to dismiss in response to a third amended complaint, renewing his arguments under Federal Rules of Civil Procedure 12(b).

## III.  Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction without prejudice which, upon leave from the Court, can be refiled after the parties complete limited jurisdictional discovery.  The Court further directs the parties to complete jurisdictional discovery within forty-five days of the filing of this decision and directs Plaintiff to file a letter within seven days of the close of jurisdictional discovery stating whether she intends to continue pursuing claims against Defendant.

Dated:  November 4, 2025
       Brooklyn, New York

                                  SO ORDERED:


                                    _____ s/ MKB _____
                                    MARGO K. BRODIE
                                    United States District Judge

---

[16]  The parties are respectfully referred to Magistrate Judge Lara K. Eshkenazi for a determination as to the scope of Plaintiff's jurisdictional discovery.  The Court also respectfully recommends that Judge Eshkenazi determine the scope of discovery and supervise the process.