# Coleman Law Firm, p.c.

RONALD D. COLEMAN
973 264 9611
RCOLEMAN@COLEMANLAW-PC.COM
50 PARK PLACE | NEWARK NJ 07102

Admitted in New York and New Jersey

January 9, 2026

**BY ECF**

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

      **Re:**   Mercante v. Tarzia
         <u>Civil Action No. 1:24-cv-08471</u>

Dear Judge Eshkenazi:

  We are counsel for defendant in this matter and write in response to plaintiff's discovery-related correspondence to the Court, most recently on January 5, 2026.

  As plaintiff correctly notes, the Court ordered jurisdictional discover in four categories: For context, in ECF No. 37, the Court directed jurisdictional discovery, to focus on four subjects: (1) Defendant's SmashJT Website's interactivity and business conducted within New York and with New York residents; (2) Defendant's revenue generated through the SmashJT Website, in terms of subscriptions from New York residents; (3) the extent of Defendant's relationship with New York-based content creators, including, but not limited to, 'Hypnotic,' 'ToastywiththeMosty,' and 'RevSaysDesu'; and (4) any further connections Defendant, the SmashJT Website, the SmashJT Twitter, and the SmashJT YouTube have with New York and New York residents."

  In response to plaintiff's discovery requests, defendant has produced, besides written responses, a significant amount of data, specifically:

- 1,103 pages of website code
- Excel spreadsheet containing all GiveSendGo transactions (121 KB)
- Eleven Excel spreadsheets generated by defendant's Google Analytics dashboard, consisting of the data sets and including the amounts of data shown below, totaling 3.59 MB of data

Hon. Lara K. Eshkenazi, U.S.M.J.  January 9, 2026
Page 2 of 4

| File | Size |
|---|---|
| Channel Analytics - Audience geography | 2,498 KB |
| Channel Analytics - Members gained by Geography | 8 KB |
| Channel Analytics - Subscribers by Geography 2024 | 271 KB |
| Channel Analytics - Subscribers by Geography 2025 | 264 KB |
| Channel Analytics - Subscribers Gained by Geography 2024 | 271 KB |
| Channel Analytics - Subscribers Gained by Geography 2025 | 264 KB |
| Channel Analytics - Transaction revenue by Geography 2024 | 15 KB |
| Channel Analytics - Transaction revenue by Geography 2025 | 16 KB |
| Channel Analytics - Transaction Revenue by State | 9 KB |
| Channel Analytics - Views by Cities - 2024 | 38 KB |
| Channel Analytics - Views by Cities 2025 | 38 KB |

- Ten Excel spreadsheets generated by defendant's Wix dashboard, consisting of the data sets and including the amounts of data shown below, totaling 1.2 MB of data.

| File | Size |
|---|---|
| Wix - people_table_api_2024-01-01-2025-01-01 | 17 KB |
| Wix - people_table_api_2025-01-01-2025-12-29 | 28 KB |
| Wix - Sales report_2024-01-01-2025-01-01 - Sales by Billing Location | 3 KB |
| Wix - Sales report_2025-01-01-2025-12-29 - Sales by Billing Location | 3 KB |
| Wix - Traffic report_2024-01-01-2025-01-01 | 633 KB |
| Wix - Traffic report_2025-01-01-2025-12-28 | 529 KB |
| Wix - transactions_payments_table_api_2024-01-01-2025-01-01 | 6 KB |
| Wix - transactions_payments_table_api_2025-01-01-2025-12-29 | 13 KB |
| Wix -Sales report_2024-01-01-2025-01-01 Top paying Customers | 1 KB |
| Wix -Sales report_2025-01-01-2025-12-29 Top paying customers | 2 KB |

This data is extensive, measured by the scope of this litigation, extremely detailed, and should in and of itself be sufficient to resolve the issue of specific jurisdiction. Plaintiff's primary complaint at this juncture, however, appears to be with respect to Category (3) from the Court's order, "(3) the extent of Defendant's relationship with New York-based content creators, including, but not limited to, 'Hypnotic,' 'ToastywiththeMosty,' and 'RevSaysDesu.'" Regarding these, Mr. Tarzia informs me that he has no record of communications with RevSaysDesu. As to Toasty and Hypnotic, Mr. Tarzia informs me that all his communications with these people have been through direct messages on X.com, and that these are extremely voluminous, although virtually none, or perhaps none at all, actually reveal anything about the extent of any business relationship between him and these persons.

Mr. Tarzia, moreover, does not know how to extract these messages in bulk, and neither does the undersigned; I have researched the matter and have not seen an answer to this challenge. I can also represent to the Court that Hypnotic has told both Mr. Tarzia and myself that he is **not** a New York resident, which raises the question of how probative his messages with Mr. Tarzia would be on the issue of personal jurisdiction.

Plaintiff appears to understand the requirement that defendant produce documents and things demonstrating "the extent of Defendant's relationship with New York-based content creators" requires the production of their entire correspondence history. This appears to be both overly broad and, in light of the technical issues adverted to above, unduly burdensome, considering the purpose of the Court's order. We also respectfully remind that Court that "[r]equests for limited discovery to help establish components of jurisdiction should be denied where the discovery goes as much to the heart of the plaintiff's claims on the merits as it does the jurisdictional issues." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 326 (E.D.N.Y. 2023) (cleaned up).

Although "extent" is a vague term, it is far from clear that the Court intended to deduce the extent of that relationship from the volume of communications. See, *Aljabri v. Mohammed Bin Salman Bin Abdulaziz Al Saud*, Civil Action No. 20-2146 (TJK), 2022 U.S. Dist. LEXIS 179821, at *56 (D.D.C. Sep. 30, 2022) (party failed to show plausible factual support that communications between defendants would yield any information relevant to personal jurisdiction; request for any information about forum-based "suit related contacts" is "nothing but a fishing expedition in the hopes of discovering some basis of jurisdiction").

Rather, it seems that what should be produced are communications that are relevant, in terms of subject matter, to establishing that "extent." The decision in *Marsteller v. Butterfield 8 Stamford LLC*, No. 3:14CV01371(AWT), 2017 U.S. Dist. LEXIS 194482 (D. Conn. Nov. 27, 2017) is instructive. Defendants sought to compel plaintiff to provide them with direct access to her social media accounts, or in the alternative, to compel plaintiff to provide copies of her social media communications in order to obtain "any and all statements, signed or unsigned, written or recorded, of any and all witnesses to the Incident(s) described in the Complaint, including plaintiff's allegations of emotional distress. The plaintiff objects, asserting that she has testified

Hon. Lara K. Eshkenazi, U.S.M.J. January 9, 2026
Page 2 of 4

that she never "posted anything relevant to her employment or the allegations in her Complaint." *Id*. at *8.

> Requiring plaintiff to provide her social media passwords to defendants would constitute a wholesale invasion of her privacy, and would be far outside the bounds of proportionality. One can hardly imagine a better example of a fishing expedition. Defendants offer no support for this demand, and the Court can find none. Accordingly, it is denied.
>
> Defendants' alternative request for <u>copies</u> of social media materials responsive to the cited requests for production, however, is reasonable and likely to lead to admissible evidence.

Id. at *9.  Mr. Tarzia has represented to me that no communications or other produceable materials appear to be responsive to a properly-tailored understanding of the Court's order.

For these reasons, defendant opposes the relief sought by plaintiff.  We are at the Court's disposal to address these matters further by conference or otherwise.

                                      Respectfully submitted,

                                      Ronald D. Coleman