# Coleman Law Firm, p.c.

RONALD D. COLEMAN
973 264 9611
RCOLEMAN@COLEMANLAW-PC.COM
50 PARK PLACE | NEWARK NJ 07102

Admitted in New York and New Jersey

January 19, 2026

**BY ECF**

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

        **Re:**     **Mercante v. Tarzia**
                    **Civil Action No. 1:24-cv-08471**

Dear Judge Eshkenazi:

      We are counsel for defendant in this matter and write in response to plaintiff's second discovery motion (Doc. 44).

### Relevant Background; Mischaracterizations by Plaintiff

      It is necessary to address certain representations made to the Court in plaintiff's motion to compel (Doc. 44). One is that much of the material, especially the considerable portions consisting of rhetoric, is redundant of what plaintiff submitted in her previous correspondence (Doc. 41). Second, plaintiff claims that defendant had, as of January 12, 2025, produced only "two documents" and, following that, "a limited set of sale data spreadsheets."

      What plaintiff does not tell the Court is that one of those "two documents" was a spreadsheet, produced on December 9th, which consisted of the full data set that comprised the first of those documents, originally produced in PDF form. They set out the amount and source of each and every online donation to plaintiff's program during the relevant period, consisting of over a thousand donations. As to the "limited set of" spreadsheets, defendant does not explain what it is that makes what was produced – 23 spreadsheets comprised of every single Google Analytics and Wix transaction described in the respective data sets' titles, as set out in defendant's June 9, 2026 submission – a "limited set," a characterization obviously meant to suggest it included a paucity of information. It is not, as explained in that letter.

Plaintiff observes that her counsel sent two deficiency letters during this period and claims that defendant "has not formally responded to either." The Court may well wonder how much weight the word "formally" is bearing here, and what its insertion is meant to obscure. In fact, counsel for both sides were in regular email communication concerning the discovery and, as plaintiff acknowledges, met and conferred twice during this period – a period that included not only the virtually universal vacation days between December 25th and January 1 but my own child's wedding as well as the considerable attendant traditional preparations and observances surrounding such events. In the period between December 11th and January 9th, moreover, the undersigned prepared and filed dispositive motions or oppositions thereto in the U.S. District Courts for the Districts of Alabama, Massachusetts, New Jersey, District of Columbia and Southern District of New York. My purpose in referring to these events is not to make excuses but rebut the suggestion, clearly intended by plaintiff, that defendant "blew off" his discovery demands and communications.  This was not the case. We were diligent and communicative, sometimes informally and, it will be acknowledged, sometimes insufficiently given the demands on this office's availability and resources.

It is also necessary to address another aspect of plaintiff's submission that may have been unintentional, but which is nonetheless quite misleading.  Plaintiff states, "At the second meet and confer, Defendant "walk[ed] that commitment back.'" (Doc. 44.) The use of quotation marks here suggests that the plaintiff is quoting a snarky, irreverent comment by the undersigned. There was no such comment; in fact, all Doc. 44 is quoting is **plaintiff's own characterization** of our colloquy in ECF No. 43-1 at 2. Plaintiff's use of quotation marks was unnecessary and misleading.

### Discussion

### I.      Defendant Does Not Resist Making Full Production.

In the order of January 14th, Your Honor made clear what the Court's view is concerning defendant's objections. Defendant does not wish to revisit that issue. Our view is that a "full production" of all responsive materials has already been ordered and that defendant is making every effort to comply with that. **No documents are being withheld on the basis of any objection made during discovery.**

Following the issuance of that order, the undersigned conferred with both plaintiff's counsel and defendant Tarzia concerning compliance.  Today, Mr. Tarzia produced to defendants two video files, each of which consists of a smart phone "screen shot" documenting the entirety of Mr. Tarzia's online messaging (via X.com direct messages) with "Toasty" and "Hypnotic." Preparing these videos was indeed burdensome; the content of those direct messages is indeed so broad as to exceed the scope of jurisdictional discovery here; nonetheless, defendant accepted the burden and produced this extensive collation of conversations which, defendant still maintains, is not likely to lead to the discovery of admissible evidence and, if anything, will negate plaintiff's assertion of personal jurisdiction.

Having said this, defendant will not burden the Court by responding to plaintiff's extensive complaints concerning document demands that, after consultation between the parties over relatively short period, defendant ultimately did his best to comply, notwithstanding an earlier response or objection.

In responding to a document production request, pursuant to Fed. R. Civ. P. 34(a), "a party is not required to create documents meeting the document requests, only to produce documents already in existence." Baicker-McKee Janssen Corr, *Federal Civil Rules Handbook*, Thompson Reuters (2014) at 889) citing case law. See also *Breedlove v. Mandell*, 2008 U.S. Dist. LEXIS 15648, 2008 WL 596864, at *2 (W.D.N.Y. Feb. 29, 2008) (denying motion to compel based on requested party's representation that it had no record of requested document, and in the absence of any reason to doubt such representation, because the "Court cannot compel production of what does not exist," *quoting American Banana Co., Inc. v. Republic National Bank of New York, N.A.*, 2000 U.S. Dist. LEXIS 4835, 2000 WL 521341, at *3 (S.D.N.Y. April 17, 2000)). Yet plaintiff's motion is layered with unjustified assumptions and confident assertions for which there is no basis, topped off with unnecessary rhetoric and unprofessional employment of adjectives, as if calling defendant's position a name ("absurd," "secretly") renders it meritless.

For example,  plaintiff states that defendant "obviously has, for example, 'Documents reflecting any subscription, on any platform, by another to [his] content.'" Plaintiff does not establish why this is "obvious," given that the full disclosure of that information was made by production of defendant's Google and Wix data. Plaintiff suggests that it has demonstrated that information was withheld from these productions by citing its own deficiency letter ("None of these three spreadsheets provides information responsive to the request for revenue received by state. But they do appear to confirm that information would be available and should be produced"), but in fact this assertion is not proof of anything. Both Google and Wix only offer limited variations of data export options, and counsel for defendant spent hours on end generating reports from that data.

Plaintiff's drumbeat of insinuations that, rather than a good faith effort to comply, these efforts manifest an effort to withhold information – information that, in fact, defendant is confident will actually demonstrate that this Court does not have jurisdiction in this case – are inappropriate and unjustified.

## II.      Specific Documents

**Request 9.**  Defendant has no chatbot logs related to jurisdiction.

**Request 10.**  This request states, "10. Please provide all records of financial transactions from GiveSendGo that concern the Lawsuit." Plaintiff's complaint is that the response, which actually included donors' names, did not include email addresses of donors. But a request for "all financial transactions" is not necessarily understood to include the email addresses of all persons who made the transactions, as opposed to just the date and amount of the sale. The interpretation

of such a request depends on the context and the specific statutory or regulatory requirements governing the disclosure or retention of financial transaction information.

For example, under 31 USCS § 5318A, financial institutions are required to maintain records that include the identity and address of participants in a transaction, but there is no explicit mention of email addresses being a required part of such records. The focus is on identifying participants and describing the transaction, such as the originator of funds, beneficial ownership, and transaction details.  Similarly, 15 USCS § 6802. limits the sharing of nonpublic personal information, such as account numbers, for marketing purposes but does not explicitly require the inclusion of email addresses in transaction records . Therefore, unless explicitly required by a specific statute, regulation, or court order, a request for "all financial transactions" would typically be interpreted to include basic transaction details such as dates, amounts, and participant identities, but not necessarily email addresses.

Defendant thus did not object to the production of email addresses, or affirmatively state that they had not been provided, because a fair reading of the Request did not contemplate the production of email addresses. But if that had been part of the Request, an objection would certainly have been appropriate.  In the context of a civil litigation discovery request seeking the email addresses of donors, privacy considerations play a significant role, particularly in the Second Circuit. Courts have consistently emphasized the need to balance the relevance of the requested information against the privacy interests of individuals whose information is sought.

Moreover, privacy concerns are heightened when the disclosure of donor information could invade protected privacy interests, such as revealing the identities of donors to a religious or charitable organization. In *Westchester Radiological Ass'n P.C. v. Blue Cross/Blue Shield of N.Y., Inc.*, 138 F.R.D. 33 (S.D.N.Y. 1991), for example, the court noted that disclosure of donor identities and donation amounts could be inappropriate, even if there is a public interest in the organization, as such disclosure could invade privacy interests. *Id*. at 37. Similarly, in *Citizens United v. Schneiderman*, 115 F. Supp. 3d 457 (S.D.N.Y. 2015) , the court acknowledged the potential chilling effect on donations and the privacy of donors who wish to remain anonymous, particularly when public disclosure is a concern. *Id*. at 464.

The courts have also recognized that privacy interests must be carefully weighed against the necessity and relevance of the requested information. In *SEC v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010), the Second Circuit emphasized that privacy concerns underlying statutory protections must be considered before ordering discovery, even when the information sought is relevant to the litigation. *Id*. at 184 ("The privacy interests in the instant case merit particular attention given that the disclosure order implicated thousands of conversations of hundreds of innocent parties").  If, however, the Court concludes that email addresses should be disclosed based on this Request, defendant submits that there are no grounds for deeming him as failing to comply with his discovery obligations, as explained above. This was a good faith dispute.

**Requests 11, 12, 13, 24, 26, and 34.** Plaintiff's assertions concerning what information can be provided in which reports are entirely speculative. Defendant's counsel made every effort to generate all conceivably responsive reports from Google Analytics and Wix, and defendant's position is that compliance with these Requests has been full and entirely undertaken in good faith.

**Requests 14 and 35**. Plaintiff states that she seeks a "payment processor name" for defendant's "SuperChat" donations. Defendant has no such information. As explained by Google, the owner of YouTube, "Super Chats are processed directly by Google through their internal payment systems, primarily leveraging Google Pay and Google Play."[1]

**Request 25**. Plaintiff's complaint here is that even though Defendant has produced 1,103 pages of website code," defendant "has not produced the back-end source code." Request 25 seeks production, however, of "[a] copy of your website's code, including any interactive elements." There is no reference to "back end" source code in this Request. In any event, even if there were, defendant's response would be the same, because a Wix website owner does not have access to the platform's core, proprietary backend source code, which is locked within Wix's environment; Wix proprietary website code cannot be exported.[2]

### III. There are No Grounds for Sanctions

Plaintiff states, "The Court should award mandatory Rule 37 fees, because there is no substantial justification for a party refusing to say what they are withholding, for secretly withholding records, for not responding to deficiency letters, and so on." As demonstrated above, however, plaintiff has asked the Court to adopt its broad constructions of discovery as definitive and, more importantly, to sanction defendant for refusing to disclose withheld documents without actually establishing that any responsive documents were withheld.

For its "mandatory" fees argument, plaintiff cites *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372 (S.D.N.Y. 2011), in which the court wrote that the "Rule sets forth a **rebuttal presumption** in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel." *Id*. at 377 (emphasis added). The court went on to write, "The Court may not award reasonable expenses, however, if the nondisclosure was 'substantially justified' or 'other circumstances make an award of expenses unjust.'" *Id*. "Substantially justified" means "there was a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the contested action." *Id*. Based on the foregoing, to the extent any of plaintiff's accusations of a failure to make proper discovery is valid – and defendant has, he respectfully submits, none of them is – there are no grounds for the issuance of sanctions. See also, *6340 NB LLC v. Capital One, N.A.*, No. 20-CV-02500 (OEM) (JMW), 2023 U.S. Dist. LEXIS 205692, at *25 (E.D.N.Y. Nov. 16, 2023) (because both parties argued their positions regarding

---

[1] See, https://share.google/aimode/jgN7LXlpUuskyoz5H.

[2] See, https://share.google/aimode/YmDuS4Nx4hLngplQK; https://chatgpt.com/s/t_696ef1d35fb481919f7aea4cdef052af.

good faith efforts to comply and made efforts to meet and confer prior to filing their respective motions and thus neither side should be obligated to pay expenses or fees related to opposing the motion).

      For these reasons as well as those set forth in defendant's previous submission regarding the scope of discovery, defendant urges the Court to deny plaintiff's motion in its entirety.

      Respectfully submitted,

      Ronald D. Coleman