# Coleman Law Firm, p.c.

RONALD D. COLEMAN
973 264 9611
RCOLEMAN@COLEMANLAW-PC.COM
50 PARK PLACE | NEWARK NJ 07102

Admitted in New York and New Jersey

February 23, 2026

**BY ECF**

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Mercante v. Tarzia, No. 1:24-cv-08471 (E.D.N.Y.)</u>

Dear Judge Eshkenazi:

I am counsel for Defendant and write in response to Plaintiff's letter motion for sanctions at ECF No. 56, as directed by the Court's February 20, 2026 Minute Order. I also address the supplemental letter at ECF No. 58 and the Court's direction to explain Defendant's failure to seek an extension of, or comply with, the February 17, 2026 deadline for jurisdictional discovery.

## I. The Extension Issue

I begin with this because it is the subject of the Court's specific inquiry, and because I owe the Court a candid explanation.

The short answer is that I made an error in judgment. I believed, incorrectly, that the joint status letter filed at ECF No. 55 effectively communicated to the Court that additional time was needed and that the matter would be addressed at the next conference. The joint letter explicitly stated that "Defendant is contemporaneously making a motion to extend the time to comply with the Court's Orders and the corresponding end date for jurisdictional discovery." ECF No. 55 at 1 n.1. I take responsibility for the fact that the separate motion contemplated in that language was not filed.

Plaintiff's motion makes much of my email statement that I was "not worried" about the deadline. In context, those emails reflect my (mistaken) belief that the status letter approach would suffice, not any contempt for the Court's authority. Indeed, at 2:09 p.m. on February 17, before the deadline expired, I emailed opposing counsel to confirm the scope of the supplemental production and to

schedule the virtual meet-and-confer the Court had directed. The production effort was ongoing and communicated to Plaintiff's counsel throughout.

Plaintiff's February 17 email confirmed that Plaintiff understood supplemental production was forthcoming no later than Thursday, February 19. Defendant proceeded in reliance on that shared understanding of the timeline. At 5:53 p.m. on February 17, I acknowledged the technical difficulties that had arisen and reaffirmed the commitment to Thursday production. That is not the conduct of a party proceeding in bad faith; it is the conduct of counsel who believed the parties were proceeding cooperatively and that a short supplemental period was understood.

## II. The Requested Sanctions Are Disproportionate

Plaintiff did not need to file this motion. Plaintiff's counsel was aware at the time of filing that production was actively underway. The motion was a litigation choice, not a necessity. The email record confirms that the parties were communicating about the supplemental production in real time, that Plaintiff was informed of the technical difficulties encountered, and that a specific supplemental deadline of Thursday, February 19 had been discussed and acknowledged. In my experience, when parties are in communication about a short delay of a day or two in meeting a discovery deadline, the professional expectation (and the standard that serves the interests of justice and judicial economy) is to work the matter out between counsel rather than to rush to court with a sanctions motion.

It is also worth placing this dispute in proper context. Defendant has now produced nearly 10,000 pages of material. This represents a massive volume of discovery, one that would be substantial in any litigation. Yet this is supposedly *jurisdictional* discovery only, the purpose of which is narrow and limited. Whatever deficiencies remain in the production, the sheer volume of what has been produced reflects genuine effort, not contempt for the process. The characterization of this as willful noncompliance does not withstand scrutiny.

Defendant was also proceeding with the understanding that a cooperative arrangement was in place. Significant concessions had been made on scope and format. Defendant understood that the parties were working collaboratively through legitimate discovery challenges, including the collection of data from platforms such as GiveSendGo, a massive number of DMs, and LLM transcripts. The motion omits this cooperative backdrop entirely.

Turning to the legal standard: the sanctions Plaintiff requests—an order precluding Defendant from raising personal jurisdiction as a defense—are among the most severe available, effectively equivalent to a default on the jurisdictional question, which is in and of itself an issue of constitutional dimension. Such case-dispositive sanctions are reserved for cases involving "willfulness, bad faith, or any fault" of a high degree. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d

298, 302 (2d Cir. 2009).

The Second Circuit has made clear that "there must be a finding on the record of willfulness or bad faith" and that "the severity of the sanction must be commensurate with the noncompliance." *Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986). Before imposing the harshest sanctions, courts also consider whether lesser sanctions would be effective. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).

The delay here resulted from a combination of technical challenges in compiling data from multiple platforms, a volume of data that was not anticipated and a procedural misstep regarding the extension. These circumstances do not rise to the level of bad faith that would justify the extraordinary remedy of striking a jurisdictional defense. Plaintiff's counsel's own February 20 email confirming the ongoing dialogue about supplemental production further undermines any claim that this was a case of deliberate obstruction.

Plaintiff relies on *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018), for the proposition that sanctions are proper even after belated compliance. *Klipsch*, however, involved **years** of discovery abuse and case-terminating sanctions affirmed only after the district court found repeated, deliberate **concealment**. It does not stand for the proposition that every missed deadline—however regrettable, and in the context of an ongoing cooperative production in a situation where Defendant has nothing to hide—warrants case-dispositive relief. See, *Zhang v. City of N.Y.*, No. 17-CV-5415 (JFK) (OTW), 2020 U.S. Dist. LEXIS 148031, at *15 (S.D.N.Y. Aug. 17, 2020) ("Plaintiffs' counsel took advantage of Defendants' inattention, turning the sanctions motion into the very game of 'gotcha' that this Court has been trying to avoid").

Plaintiff also cites to Defendant's client's statements on a YouTube livestream. Whatever rhetorical use Plaintiff makes of those statements, they are the words of a litigant on a public livestream, not representations of counsel to the Court. They bear no relevance to whether Defendant's counsel acted in bad faith in the discovery process. Indeed it would be useful if Plaintiff would put aside its practice of "tattling" on both Defendant and his lawyer by placing fundamentally irrelevant materials and comments into the litigation record in a transparent and unprofessional attempt to color the Court's moral or subjective opinions concerning Defendant, his lawyer and their views.

A more proportionate response would be an order (1) setting a firm deadline for supplementation addressing the specific deficiencies identified in ECF Nos. 56 and 58; (2) requiring a privilege log; and (3) reserving the question of fees, as the Court has already indicated. Defendant would comply with such an order promptly and fully.

## Conclusion

Defendant takes the Court's orders seriously and regrets the procedural failures that led to this motion. The production effort is genuine, the volume substantial, and the delay short. Defendant respectfully requests that the Court deny the motion for case-dispositive sanctions and instead enter a proportionate order addressing any remaining production deficiencies.

                      Respectfully submitted,

                      Ronald D. Coleman