# Coleman Law Firm, p.c.

RONALD D. COLEMAN
973 264 9611
RCOLEMAN@COLEMANLAW-PC.COM
50 PARK PLACE | NEWARK NJ 07102

Admitted in New York and New Jersey

March 5, 2026

**BY ECF**

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Mercante v. Tarzia, No. 1:24-cv-08471 (E.D.N.Y.)</u>

Dear Judge Eshkenazi:

Defendant Jeffrey Tarzia submits this letter pursuant to ECF No. 52 ¶ 9 to justify the continued sealing of Exhibits 1 through 4 filed under seal by Plaintiff at ECF No. 57. Interim sealing was requested by Plaintiff and granted by the Court. For the reasons set forth below, continued sealing is warranted as to each exhibit, though the legal bases vary and Defendant addresses them individually. Defendant does not claim that all materials are privileged in the same sense; rather, the grounds for sealing differ by exhibit and are each independently sufficient.

**Background**

This case is at the jurisdictional discovery stage. No merits discovery has been authorized. The exhibits at issue were produced by Defendant in response to court-ordered jurisdictional discovery and were submitted by Plaintiff as attachments to a letter to the Court (ECF No. 57) discussing discovery compliance. They have not been submitted in connection with any dispositive motion, and the Court has not relied upon them in making any substantive ruling. Under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006), the presumption of public access is calibrated to the role documents play in the Court's exercise of Article III power; documents peripheral to ongoing non-merits discovery proceedings carry a minimal presumption at most. See, *Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407 (NG), 2020 U.S. Dist. LEXIS 118670, at *34 (E.D.N.Y. July 7, 2020) ("the public has no overriding interest in disclosure of Exhibits. . . which were submitted only for purposes of demonstrating that this Court has personal jurisdiction over Novartis").

### I. Exhibits 1 and 4: ChatGPT Conversations Reflecting Litigation Strategy and Client-to-Counsel Communication Preparation

***A. Nature of the Documents***

Exhibits 1 and 4 consist of conversations in which Defendant used ChatGPT to analyze a settlement proposal communicated by opposing counsel to Defendant's counsel and to formulate Defendant's response to his own attorney regarding that proposal. Specifically, Defendant submitted the text of opposing counsel's settlement communication to ChatGPT and asked for an assessment of its legal and strategic implications. He then asked ChatGPT to draft a brief communication from him to his attorney conveying his litigation position—that he did not wish to concede jurisdiction or trade away leverage.

***B. Work Product Protection***

These materials are protected as work product under Federal Rule of Civil Procedure 26(b)(3). Work product encompasses documents "prepared in anticipation of litigation" by or for a party. *Hickman v. Taylor*, 329 U.S. 495 (1947). The inquiry is whether the document "can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

There is no serious question that these conversations meet that standard. Defendant was actively engaged in litigation, had received a settlement proposal forwarded by his attorney, and was using ChatGPT as a tool to understand that proposal and to formulate his instructions to counsel. The fact that an automated language model rather than a human advisor served as the interlocutor does not change the character of the activity: Defendant was processing litigation strategy and preparing to communicate a litigation position to his attorney. That is the core of what work product doctrine protects.

Plaintiff's Update Letter characterizes one of these conversations as "manipulating prompts" to generate a desired answer. That characterization is not accurate. In Exhibit 2 (addressed below), Defendant asked an initial question about Wix platform access, received an answer that addressed multiple possible meanings of his question, and then clarified which meaning he intended—a perfectly ordinary and unremarkable use of any question-and-answer tool, human or automated. Defendant does not concede that any characterization of impropriety attaches to his use of AI tools during the pendency of litigation.

***C. The Waiver Argument Does Not Apply to These Exhibits***

Plaintiff's letter suggests that Defendant waived privilege by disclosing attorney communications to ChatGPT and third parties. As to Exhibits 1 and 4 specifically, that argument does not apply. The communication that Defendant submitted to ChatGPT was opposing counsel's settlement proposal—a communication from Plaintiff's attorney, not a privileged communication from Defendant's counsel to Defendant. Opposing counsel's communications to adversary counsel are not privileged, and their transmission to a third party carries no privilege consequences.

Defendant's subsequent effort to formulate a response to his own attorney, using ChatGPT as a drafting aid, was likewise not a disclosure of any privileged communication. Defendant reserves all rights with respect to the broader waiver arguments Plaintiff has raised as to other materials, which are disputed and not resolved by these exhibits.

## II. Exhibit 3: ChatGPT Conversation Regarding the Court's Discovery Order

Exhibit 3 consists of a conversation in which Defendant submitted the text of the Court's order compelling discovery to ChatGPT and asked for a plain-English explanation of what it required him to do. This is, on its face, a layperson preparing to comply with a court order by seeking to understand its terms—the paradigmatic example of litigation preparation. The fact that Defendant turned to an AI tool rather than calling his attorney for an explanation does not strip this activity of its character as preparation undertaken in anticipation of—and in direct response to—ongoing litigation.

The document does not reveal any attorney communications; it reflects only Defendant's effort to understand a public court order to respond to it. It warrants protection as ordinary fact work product, and its public disclosure would serve no purpose proportionate to the exposure of Defendant's litigation-driven thought process.

## III. Exhibit 2: ChatGPT Conversation Regarding Wix Platform Capabilities

Exhibit 2 presents closer questions in this evolving area. The conversation consists of Defendant asking ChatGPT general questions about the technical capabilities of the Wix website platform—specifically, whether Wix users have access to server-level hosting controls. That is a general technology question; its answer does not depend on the existence of litigation, and an identical conversation could have occurred absent any lawsuit.

That said, Defendant submits that sealing is still warranted on two alternative grounds. First, the conversation occurred during the jurisdictional discovery period and in direct connection with Defendant's effort to understand what technical records he could access and therefore produce. The context is litigation-driven even if the subject matter is not inherently privileged, and the conversation reveals Defendant's understanding of his own discovery obligations—a category of information that retains a work product character. Second, and independently, the *Lugosch* presumption is minimal for discovery materials not used in any judicial determination. The Wix conversation has played no role in any ruling by this Court and has no cognizable public significance. Plaintiff's use of it in a discovery letter brief does not elevate it to the level of a judicial record warranting disclosure.

Defendant does not contend that Exhibit 2 is privileged in the traditional attorney-client sense, and the privilege log will reflect that distinction. The application to maintain sealing rests on the work product and minimal-presumption grounds described above, particularly in the context of jurisdictional discovery.

### IV. Exhibit 3 (the DM Exhibit): Third-Party Privacy and Jurisdictional Scope

The remaining sealed exhibit consists of excerpts from Defendant's Twitter/X direct message production. These are private communications between Defendant and third parties who are not parties to this litigation. The grounds for sealing are distinct from the privilege arguments applicable to the ChatGPT materials.

As set forth above, the Second Circuit's public access framework weighs the presumption of access against the role documents play in Article III adjudication. These DMs were produced in response to jurisdictional discovery and have not been used by the Court in making any substantive determination. The individuals whose private messages appear in the production are not parties; they did not consent to having their private communications filed in federal court; and they have had no opportunity to be heard. Their privacy interests are substantial, especially considering the mechanisms at play for their disturbance in a case centering on heated allegations and counter-accusations of Internet-based harassment and abuse. See *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

Finally, Defendant notes that if the Court determines that jurisdiction is absent—which remains a live question—these materials will never bear on the merits of the action. Unsealing them now, before that threshold question is resolved, would expose the private communications of non-parties in a case that may never proceed to the merits. That is not a result the law requires.

### Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court maintain the sealing of Exhibits 1 through 4 filed under seal at ECF No. 57. The grounds vary by exhibit: Exhibits 1 and 4 are protected as work product reflecting litigation strategy and client communication preparation; Exhibit 3 (the ChatGPT order-explanation) is protected as fact work product reflecting Defendant's litigation-driven effort to understand his discovery obligations; Exhibit 2 (the Wix conversation) is not claimed as privileged in the traditional sense but warrants sealing under the *Lugosch* minimal-presumption framework applicable to discovery materials that have played no role in any judicial ruling; and the DM exhibit warrants sealing based on the substantial privacy interests of non-party correspondents and the jurisdictional posture of the case.

Defendant remains available to provide further briefing or to address the Court's questions at a conference.

Respectfully submitted,

*[signature]*

Ronald D. Coleman