

February 20, 2026

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

**Re: Mercante v. Tarzia, 24-cv-08471**

Dear Judge Eshkenazi:

As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. I write to oppose Defendant's motion to seal at ECF No. 61.

Defendant's motion is, frankly, baffling. It fails to engage with the standard; claims that documents disclosed to an adversary have privilege; and generally overlooks that the documents were submitted for consideration on a motion for sanctions, not just randomly filed. It also contains at least one fabricated quote and other citations that make little sense — something that has become a pattern in this case, and which at this stage, Plaintiff believes merits at least ***some*** explanation.

As explained below, then, the Court should deny the motion to seal and issue an order directing an explanation of why fabricated quotes have appeared in a number of Defendant's filings.

## Discussion.

Defendant correctly says that the familiar standard in *Lugosch* governs sealing. ECF No. 61 at 1. But he does not actually address the analytic framework *Lugosch* requires. In *Lugosch*, the Second Circuit specifically gave courts a three-step process to review an application to file a document under seal. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121-24 (2d Cir. 2006).

First, the court decides whether the document is a "judicial document." *Id.* at 121; *accord Olson v. MLB*, 29 F.4th 59, 87-88 (2d Cir. 2022). This is not a high bar; documents are "judicial" when they are "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995); *Olson*, 29 F.4th at 87-88. And "[a] document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules ***or whether the document ultimately in fact influences the court's decision***." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (cleaned up; emphasis added). If a document is "judicial" at all, the presumption of public access attaches.



Second, if the Court finds a document is judicial and the presumption of access attaches, the Court next determines the weight of the presumption. The need to look at weight "flows from the purpose underlying the presumption and the broad variety of documents to be deemed judicial." *United States v. Amodeo*, ("*Amodeo II*"), 71 F.3d 1044, 1050 (2d Cir.1995). The weight falls along a "continuum"[1] of the importance of a document to the judicial function. *Id.* at 1049. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049; *Olson* at 87-88. Much of this is common sense: Documents filed with summary judgment get the "highest" weight (*Lugosch,* 435 F.3d at 123); documents filed with discovery motions get "modest" weight (*Royal Park Investments SA/NV v. Deutsche Bank Natl. Tr. Co.*, 2016 WL 7188795, at *2 (SDNY Dec. 7, 2016)).

Then, the third step: The Court "must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020).

Last, the mere fact that a party made a confidentiality designation does not — and cannot — overcome the presumption of access to judicial documents. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (SDNY 2018) (citing cases).

## I. Defendant Fails to Even Address the Three-Step *Lugosch* Framework.

Defendant does not even address the three-step framework. Nor does his motion correctly describe the documents. Accordingly, the Court might well stop there: "It fails to provide the Court with any analysis under the *Lugosch* three-part test, however. That is, it gives no explanation of why the [exhibits are] not [] judicial document[s]. It gives no explanation of its view of the weight of the presumption of judicial access. It also does not give any explanation of considerations that

[1] As *Lugosch* explains:

> [I]n discussing the continuum along which the strength of the presumption will be measured, we explained that where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches. *Amodeo II*, 71 F.3d at 1049. Moving down the continuum, away from "matters that directly affect an adjudication" and towards "matters that come within a court's purview solely to insure their irrelevance," we explained that "the weight of the presumption declines." *Id.* Considering briefly what might fall into the middle of the continuum, we noted that "[o]ne judge has pointed out, for example, that where a district court 'denied the summary judgment motion, essentially postponing a final determination of substantive legal rights,' the public interest in access 'is not as pressing.'" *Id.* (*quoting In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n. 3 (D.C.Cir.1985) (Wright, J., concurring in part and dissenting in part)). At the low end of the continuum, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

*Lugosch*, 435 F.3d at 121.





Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



would counter that weight." *In re NY City Policing During Summer 2020 Demonstrations*, 635 F Supp 3d 247, 254 (SDNY 2022).

But in the interest of clarity, Plaintiff moves through the steps.

### A. The Exhibits and the Full Letter are Judicial Documents.

Plaintiff filed a motion for sanctions, because Defendant had failed to comply with Court orders. After that motion was made, Defendant served a belated production — and the documents at issue here were attached to the supplemental letter Plaintiff filed in support of her sanctions motion, essentially arguing that the production was not a full effort at compliance with the Court's Orders,[2] and sanctions were still required. And it argued for sanctions that would meaningfully impact the case, on the basis that the documents and other evidence showed that non-compliance with the Court's orders was willful.

### B. The Exhibits and Full Letter are Entitled a Strong Presumption of Public Access.

Because they were filed on a sanctions motion, not a conventional discovery motion, the documents and the letter are entitled to something more than the mere "modest" for conventional discovery motions. Rather, "the items relating to the sanctions proceeding in this action come within the court' purview for the essential purpose of permitting this Court to perform its Article III duties of deterring abuses of the judicial process and imposing sanctions to achieve that end, if necessary." *Centauri Shipping Ltd. v W. Bulk Carriers KS*, 528 F Supp 2d 197, 205 (SDNY 2007) (quotation marks omitted, alterations accepted). "Accordingly," they "must be accorded a strong presumption of public access." *Id.; see also Capricorn Mgt. Sys. v Govt. Emples. Ins. Co.*, 2019 U.S. Dist. LX 123723, at *78 (EDNY July 22, 2019) ("strong presumption of public access" for sanctions motion documents); *Cypress Holdings, III, L.P. v Sport-BLX, Inc.,* 2025 U.S. Dist. LX 161943, at *7 (SDNY Aug. 20, 2025) (documents filed with Rule 11 motion "carry a strong presumption of public access").

As Judge Wicks recently explained in connection with a document filed "in connection with and pursuant to this Court's Memorandum Order on Plaintiff's Motion to Compel and Motions for **S**anctions," the strong presumption applies just as much to documents "exchanged by the parties in discovery," and on discovery sanctions motions, because of the nature of the Court's role. *White v County of Suffolk*, 2024 U.S. Dist. LX 155782, at *5, n 2 (EDNY Aug. 29, 2024). Again, Defendant fails to even address this step, or correctly identify what the nature of the document at issue was.[3]

[2] Defendant does not argue (nor could he) that the exhibits had "little or no discernable relationship to the resolution" of the motion. *Banco Santander (Brasil), S.A. v. Am. Airlines, Inc.*, 2020 WL 4926271, at *3 (EDNY Aug. 21, 2020). Again, the standard is not whether they ultimately had impact; it is whether they were relevant, and they were.

[3] This may or may not be related to the issues with fabricated quotation, which (as explained below) are likely coming from using LLMs to draft.



C. **Defendant Does Not Meet His Burden.**

Defendant gestures at an attempt to overcome the presumption, but his arguments are misguided and downright bizarre in places. He also does not address the sealing of the letter itself.

*i. There is no work-product privilege for documents disclosed to an adversary.*[4]

For Exhibits 1, 2,[5] and 4, Defendant says, he "does not contend" they are "privileged in the traditional attorney-client sense," but that it is "ordinary fact work product" or "the core of what work product doctrine protects." ECF No. 61 at 2-3. But these are all documents he produced in discovery. It is true that mere third party disclosure does not *always* waive work product protection, but it is still black letter law that "[a] party waives the work product protection by taking actions inconsistent with this its purpose, such as disclosing work product to its adversary." *NY Times Co. v United States DOJ*, 939 F.3d 479, 494 (2d Cir. 2019). Indeed, the ***purpose*** of work product protection is so a party has a "zone of privacy" that is "free from unnecessary intrusion ***by his adversaries.***" *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (emphasis added). But here, Plaintiff already has these documents, ***because Defendant gave them to her***. So, no work product protection exists, and there is no non-frivolous argument otherwise.

Since work product is the only basis Defendant asserts for sealing Exhibits 1, 2, and 4 (and perhaps the letter itself), Defendant cannot meet his burden, regardless of weight.

*ii. The specific messages in Exhibit 3 involve no privacy interests.*

Defendant's argument on Exhibit 3 is thin, and its only citation is to a page in a case that rejects sealing where the documents at issue would not "reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets," as is true here too. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). It is far from clear how anything in *Bernstein* supports the proposition that messages with third parties, lacking any particular private information, warrant sealings because "[t]heir privacy interests are substantial, especially considering the mechanisms at play for their disturbance in a case centering on heated allegations and counteraccusations of Internet-based harassment and abuse." ECF No. 61. But that is the sentence Defendant cites *Bernstein* for, and he provides no further explanation.

It seems Defendant's argument is that the mere fact that some third party sent a message

[4] Defendant also says Plaintiff's reading of the chatbot history that appears to show him manipulating prompts is incorrect. Plaintiff would be able to address that with at least one dramatic example from the production last night, but in the interest of avoiding ouroboros sealing issues, has not addressed it because of another blanket confidentiality designation.

[5] In Point II, Defendant discusses "Exhibit 3" as a ChatGPT conversation (ECF No. 61 at 3), but as he later discusses in Point IV (*id.* at 4), that is not what it is. It appears what he calls Exhibit 3 initially is what he discusses as Exhibit 1 in the immediately preceding section (Point I).



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



means sealing is required. But again, Defendant cites no case for that proposition. Nor does there appear to be any sensitive information in the direct messages here. And they were attached because they appear to show Defendant sharing images of his communications with his attorney with third parties. Thus, the documents were relevant to an issue on the pending motion (prejudice to Plaintiff from receiving this proof of extensive waiver of privilege after discovery closed), and the mere fact that a third party was involved cannot be a basis for wholesale sealing.[6]

## II. The Court Should Order Defendant to Explain the Repeated, Fabricated Quotes in His Filings.

In this filing, Defendant attributes the quotational snippet "prepared in anticipation of litigation" to "*Hickman v. Taylor*, 329 U.S. 495 (1947)" without a pincite. ECF No. 61 at 2. The quote does not exist in the case. Likewise, the citation to *Bernstein* discussed above makes little sense in connection with the proposition it is cited for. And the general structure of the filing smacks of LLM use: Each sentence holds together grammatically, but it is hard to imagine, for example, that a seasoned attorney could overlook that work product ceases to exist when a document is disclosed to an adversary. So basic is the proposition that the only plausible way it was missed was that an LLM was prompted simply to draft ***something*** arguing for sealing, and Defendant filed it without meaningful review or thought.

And this is not the first time fabricated quotes have appeared in Defendant's filings. In ECF No. 60, Defendant quoted "*Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986)" as saying "there must be a finding on the record of willfulness or bad faith" and that "the severity of the sanction must be commensurate with the noncompliance," but neither the pages cited nor anything else in the decision contains those quotes, and the words "severity," commensurate," "on the record," do not even appear in the decision at all. In ECF No. 50, Defendant's letter falsely described a document he attached as having the "clear hallmarks of audio transcription that the person posting about the hearing worked from a written transcript, saying it had things like "[Inaudible] tags" and "'Clean speaker labels as … 'The Court:' 'Mr. Coleman:', 'Plaintiff's Counsel:'" ECF No. 50 at 2 n. 1 and n. 2. But that was false. And Mr. Coleman avoided answering repeated, pointed questions about whether he had generated the filing with an LLM, writing, "I don't see what you are trying to accomplish here; nothing in our letter was directed at your client or your office." And then there have been repeated, factually false claims that certain categories of documents do not exist.[7]

Nor is there any question that counsel ***is*** using LLMs as part of his legal work here. In ECF No. 47, he cited LLM chatbots multiple times as fact sources, in one case falsely describing a chatbot transcript as something "explained by Google, the owner of YouTube." At a minimum, that seems to be an admission counsel is asking questions of LLM chatbots as part of factual investigation — and that those questions and the answers from the chatbots are making it into filings. And the ChatGPT transcripts discussed above show that LLMs have drafted communications from

---

[6] Defendant does not make any argument for redactions, so Plaintiff does not address it further but to say that any possible prejudice to third parties could be addressed with very limited redactions.

[7] These are not the only examples; but they should suffice to make the point.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



Defendant himself to counsel. The only question is whether ***these specific*** fake quotes came from an LLM.

To be sure, unlike some LLM/hallucination cases, Defendant here has not yet cited a wholly fictional case. But there is "no reason to distinguish between the submission of fabricated cases and the submission of fabricated quotations from real cases. In both postures, the attorney seeks to persuade the Court using legal authority that does not exist." *Gurpreet Kaur v Desso*, 2025 U.S. Dist. LX 129902, at *7, n 4 (NDNY July 9, 2025). And the same is true for "fake quotations that happen[] to be arguably correct statements of law." *Ader v Ader*, 87 Misc 3d 1213[A], 2025 NY Slip Op 51563[U], *1 (Sup Ct, NY County 2025). So, in the latest filing, it does not matter that the principle and partial quote Defendant attributes to *Hicks* is more or less correct ***law***: "when a fake case is used to support an uncontroversial statement of law, opposing counsel and courts—which rely on the candor and veracity of counsel—in many instances would have no reason to doubt that the case exists. The proliferation of unvetted AI use thus creates the risk that a fake citation may make its way into a judicial decision, forcing courts to expend their limited time and resources to avoid such a result." *Id.* at *4-5.

There may be some explanation other than LLM use — although given the extensive use of LLMs that Defendant has admitted to, it is hard to fathom what — for why Defendant's filings have made up quotes from cases and documents; cited completely off-point cases for the wrong propositions; and otherwise seem likely the result of unreviewed LLM use. But at this stage, as hundreds of other courts across the country have done when faced with similar indicia, it is time for the Court to formally ask what is going on.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/

______________________

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.