

March 17, 2026

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

### Re: Mercante v. Tarzia, 24-cv-08471

Dear Judge Eshkenazi:

As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above. I write to respond briefly to Defendants' letter filed just after our meet and confer, at ECF No. 68.

Thematically, Defendant keeps suggesting Plaintiff is raising Defendant's failure to do basic things — like file an opposition to ECF No. 65 or even respond to repeated requests to meet and confer[1] — for tactical advantage. She is not.

In fact, on substance, counsel's lack of attention to detail has immeasurably benefited our client; he has turned over, in jurisdictional discovery, documents that conclusively demonstrate actual malice.

The issue is that counsel's behavior — the refusal to provide timely discovery, the blown

---

[1] Defendant's suggestion that the motion at ECF No. 65 was opposed baffling. And his claim that it was not "properly noticed motion practice" (ECF No. 68 at 3) seems to come from a total lack of familiarity with local practice. A motion was filed; opposition was due Monday. To be sure, the Court did direct a meet and confer, but that does not mean Defendant met the deadline.

And though he *now says*, the Court's sealing order—which addressed four specific exhibits that Plaintiff herself attached to a sanctions motion and thereby made judicial records—has no logical bearing on the confidentiality designation of the thousands of pages" (ECF No. 68 at 3), when *we said exactly that*, he said:

> "my intention was that our motion to seal be considered our opposition which is why we included it in the list of relevant prior filings"; and "Looks like the same issues to me."

As explained above, this seems to be happening because counsel has candidly admitted he does not read letters or emails from Plaintiff, saying, "I'm not sure it's worth it to me to read them." Indeed, it took a solid 10 minutes at the meet and confer to explain to counsel why the Court's Order did not address the motion at ECF No. 65. That he *now* understands the difference is welcome, but that does not mean he did not miss the deadline.



deadlines, the refusal to engage in a meaningful meet and confers, etc. — is prejudicing all parties by dragging this proceeding out immeasurably.  And that's of particular concern because we know, from the ChatGPT logs that counsel produced to us without ever reviewing any of them,[2] ███████ ███████████████████████████████████████████ **Exhibit 1**; *cf.* 28 U.S.C. S. 1927.  We should not need the Court's help to get the parties to do basic stuff.  But clearly (and unfortunately) we do.

The summary of the meet and confer that Defendant complains of is attached at **Exhibit 2**.[3] I noted in it that I had certain quotes in my notes verbatim, not as gamesmanship, but because they were genuinely shocking.  And I had hoped perhaps counsel might pull back a little knowing we were keeping track of such things.  Among other things, he said (and does not deny in his letter):

> "Oh please, give me a fucking break" when asked about how he searched for emails, given the initial failure and false claim there were none, and then production of only a single email when Plaintiff pointed out she knew specifically that the individual email existed.

> When Plaintiff noted that an issue that counsel came to understand during the meet and confer was explained repeatedly in emails and letters, he said:  "I'm not sure it's worth it to me to read them."[4]

And Plaintiff asked directly if Defendant was using LLMs to draft papers, we had the following exchange (verbatim except where bracketed):

> Mx. Green:  "[Have you been using LLMs to draft your papers?]"
> Mr. Coleman:  "None of your fucking business."
> Mx. Green:  "Sounds like I have my answer."
> Mr. Coleman:  "[laughing] No you don't"
> Mx. Green:  "[after a pause] I do."
> Mr. Coleman:   "Ok."

Mr. Coleman then hung up while I was in the middle of a sentence (and threatened to leave the meeting multiple times).  Saying "none of your fucking business" is not "the ordinary give-and-take of a discovery dispute."  ECF No. 68 at 2.  But it *is* clear Mr. Coleman does not understand that. What he is doing during meet and confers is — as courts confirm — sanctionable.  *See, e.g., Rojas v X Motorsport, Inc.*, 275 F Supp 3d 898, 909 (ND Ill 2017) (sanctions where lawyer told "opposing counsel to 'shut up" or to 'shut [his or her] big fucking mouth'" during a deposition) (alteration in

---

[2] The were produced as interleaved (that is, not human readable) JSONs.  At the meet and confer, counsel admitted he never reviewed any of them.  This also makes the designation of them as "confidential" — without **any** review — shockingly frivolous.

[3] Ms. Tewson, a paralegal on this case, and I are both happy to submit our notes to the Court *in camera* on this.

[4] It is this total refusal to read emails, motions, and letters (to say nothing of reviewing discovery) that seems to be causing much of the delay here.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



original).

This angry, disrespectful and outraged behavior is simply more of the same that the Court saw at the last hearing and had to say: "[N]o yelling. No yelling. I understand. Let's try again to use less inflammatory language" and "I'm sorry. Mr. Coleman, stop. Okay? No one's going to speak to anyone this way in a conference with me. Okay? We're going to be respectful. I understand that there are disagreements here, but everyone's going to be respectful." 2026-02-29 Tr. at 15:15-16:12. Suffice to say, Mr. Coleman's yelling and respect were at their best in front of the Court.

Last, to be clear, the issue with LLMs is **not** one instance of a fake quote.[5] And it does seem that the "[n]one of your fucking business" response confirms an LLM was used in drafting papers that include multiple fake quotes. Plaintiff is contemplating a stand alone motion, so Defendant can give a "direct answer" to the full issue — but would appreciate the Court's guidance on this issue.[6]

At bottom, we are at a loss. Defendant **is** correct that meeting and conferring has become rather difficult, but it is because counsel is — as he candidly admits — not reading letters or emails, not reviewing any discovery, yelling, and behaving in ways that are hard to understand. We think perhaps a conference may help, but did not want to leave the accusations in Defendant's letter unaddressed — and believed the Court would likely want to understand the reason Defendant's counsel was upset and filing a letter is that we confirmed we actually remembered he said "None of your fucking business" to a question during a meet and confer.

---

[5] And counsel's explanation is **right** out of sanctions orders. He says the language he put in quotes was "universal judicial shorthand." Fair enough. But why was it in quotes, attributed to a court that did not say it? As courts have universally found, sanctionable conduct with LLMs "includes where the fake citations stand for accurate legal principles." *Deutsche Bank Natl. Trust Co. v LeTennier*, ___AD3d___, 2026 NY Slip Op 00040, *4 (3d Dep't 2026). And for that matter, **why did Defendant re-adopt it knowing it was wrong?**

[6] Otherwise, the other quotes were fake include:

- In ECF No. 61, citing "*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016), for something seemingly unrelated to its analysis (or if anything, directly the opposite of what it says);
- In ECF No. 60, quoting "Salahuddin v. Harris, 782 F.2d 1127, 1131–32 (2d Cir. 1986)" as saying "there must be a finding on the record of willfulness or bad faith" "Salahuddin v. Harris, 782 F.2d 1127, 1131–32 (2d Cir. 1986)" and that "the severity of the sanction must be commensurate with the noncompliance";
- In ECF No. 50, described a document he attached as having the "clear hallmarks of audio transcription that the person posting about the hearing worked from a written transcript, saying it had things like "[Inaudible] tags" and "'Clean speaker labels as … 'The Court:' 'Mr. Coleman:', 'Plaintiff's Counsel:'" ECF No. 50 at 2 n. 1 and n. 2.

These three examples of fake quotes and citations are not addressed. Perhaps it is because Mr. Coleman decided "I'm not sure it's worth it to me to read" the letter and ECF No. 64. But that is simply the sort of conduct *Mata* itself said requires sanctions, where the lawyer sanctioned "consciously avoided learning the fact[]" that he had used fake citations "by neither reading the Avianca submission when received nor after receiving the Court's Orders of April 11 and 12." *Mata v Avianca, Inc.*, 678 F Supp 3d 443, 464 (SDNY 2023).

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Regardless, as always, we thank the Court for its time and consideration.    ___

                                        Respectfully submitted,
                                            /s/
                                        _____
                                        J. Remy Green
                                            *Honorific/Pronouns: Mx., they/their/them*
                                        **COHEN&GREEN P.L.L.C.**
                                        *Attorneys for Plaintiff*
                                        1639 Centre St., Suite 216
                                        Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN                                    Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com