

remy green &lt;remy@femmelaw.com&gt;

## Mercante v. Tarzia - Summary of Meet and Confer

**remy green** &lt;remy@femmelaw.com&gt;                                                        Wed, Mar 18, 2026 at 3:07 PM
To: Ronald Coleman &lt;rcoleman@colemanlaw-pc.com&gt;
Cc: Admin &lt;admin@femmelaw.com&gt;, Kathryn Tewson &lt;ktewson@kusklaw.com&gt;, Lane Haygood &lt;lhaygood@kusklaw.com&gt;

Hi Ron,

This email is to summarize what we discussed at our meet and confer.  As ever, if anything is wrong or inaccurate, please feel free to indicate.

### 1. SuperChats:

Happily, you reported to us that someone in Jeff's community has created an export of all SuperChats.  You said you would produce that **by close of business March 19, 2026.**

### 2. Privilege Log:

You indicated we would get a privilege log **by close of business March 19, 2026.**  This also came up towards the end, and I believe we reached the understanding that it would contain a categorical claim for communications between you and Jeff.

### 3. Formal Responses:

You agreed you would get us updated formal responses **by close of business March 19, 2026.**

### 4. YouTube Data:

You complained that my emails contained too much rhetoric to read -- although you seemed to concede the relevant emails to this issue did not.

At any rate, once again, relevant "tick boxes":  Transaction Revenue, Transactions, Revenue per Transaction, YouTube Premium, Watch Page Ads, Estimated Doubleclick Revenue, Estimated Adsense Revenue, YouTube Ad Revenue, Ad Impressions, Playback-Based CPM, CPM, etc.; also the relevant metrics such as CPM, Estimated Monetized Playbacks, RPM, Rubies, etc., as well as the breakdown of revenue by source (superchats, ads, etc).

You agreed this export was not difficult, and committed to provide it **by close of business March 19, 2026.**

### 5. Emails:

After a heated exchange (you said "Oh please, give me a fucking break" -- this and other quotes are recorded in Kathryn and my notes verbatim -- and threatened to leave the call after I referenced the Sedona Principles and the basic idea that parties should discuss their search methodology), you agreed that your updated formal responses would describe your search methodology.

**6. Post-November 12, 2025 DMs.**

After still more heated exchanges -- in which you said, after I said I had tried to explain this repeatedly in my emails, and you said, "I'm not sure it's worth it to me to read them." -- we arrived at an understanding that while there are post-November 12, 2025 DMs in the production, some conversations (including the one with Hypnotic) do not have those.

We re-forwarded the screenshot showing as much, and all looked at the Hypnotic conversation, confirming it stops in November 2025.

You agreed to look into this and provide some explanation **by close of business March 19, 2026.**

**7. Other Messages (for example, Discord; texts):**

You said you would address this -- including the examples we found referenced in the Twitter production -- in your updated formal responses, **by close of business March 19, 2026.**

**8. Confidentiality Designations:**

After some discussion of the Court's Order, and my explaining the status of the motion (e.g., we filed a motion, you have not opposed, the Court specifically directed us to meet and confer on this at the same time she resolved the sealing motion), you agreed you would clarify whether you still oppose removing the confidentiality designations **by close of business March 19, 2026.**

**9. Sealing:**

We raised the fact that (1) the Court's order did not resolve whether the actual letter should remain under seal and (2) that the settlement offer discussed in Exhibit 4 was ours and that your client has discussed the offer publicly (and presumably that was part of why you did not make this argument).

We agreed we can let the Court know both of those documents should be unsealed.

**10. LLM Use:**

I asked, directly, if you were using LLMs to draft papers.  You said (direct quote):  "None of your fucking business."  We had a little further exchange ("Sounds like I have my answer" / "[laughing] No you don't" / "... I do." / "Ok").  And that was about it on this.

**11. ChatGPT Production:**

We asked if you had your own version of this other than the interleaved JSONs (you said you did not), and we made sure you were okay with the format we intended to use to produce it back with Bates numbers for future use (PDFs, text searchable, single PDF per conversation).

**12. Privilege Waiver:**

We discussed that your client has shared direct communications with you with his friends, and with ChatGPT.  We confirmed we have an impasse on whether those communications and those on the

same subject matter should be produced.

I think that covers it.  I agreed I would take the pen on our status letter for Friday, leaving blanks for positions.  Obviously, much of it will be the content above -- subject to what we get tomorrow close of business.

Yours,

Remy.

_____

**J. Remy Green**

       *Partner*
| Cohen&Green P.L.L.C. | #FemmeLaw |
| remy@femmelaw.com (e) | (929) 888.9560 (direct) |
| (929) 888.9480 (p) | (929) 888.9457 (f) |
| honorific / pronouns:  Mx. / they, their, them |
| 1639 Centre St., Ste. 216 | Ridgewood (Queens), NY 11385 |

_____



_____