

March 20, 2026

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

Re:   **Mercante v. Tarzia, 24-cv-08471**

Dear Judge Eshkenazi:

As the Court likely recalls, my firm, with co-counsel, represents Plaintiff in the case above.  I write jointly with counsel for Defendant pursuant to the Court's March 12, 2026 and March 17, 2026 Minute Orders to report on the status of jurisdictional discovery.

At this stage, here is what remains outstanding, and what issues remain for the Court to resolve.  The issues for the Court to resolve or act on are listed first.

**Confidentiality Designations.**  Defendant has agreed to withdraw the blanket confidentiality designation, subject to the right to make targeted designations for attorney-client communications, settlement material, and identified third-party private communications.  Defendant will identify any such targeted designations promptly, no later than 5:30 p.m. on March 24, 2026.  Failure to designate by that date means the document will be treated as if produced without a designation.  Rule 37 fees can be addressed with the rest of the Rule 37 issues after productions have finished.  Accordingly, the Court should terminate the motion at ECF No. 65 as granted in the manner described in this letter.

**LLM Usage and Quotations:**  This issue remains for the Court to resolve.  The parties would appreciate knowing whether the Court wants a formal motion, or something else.  The parties' positions appear in the various letters that address this topic.  *See, e.g.,* ECF Nos. 53 (at 2-3); ECF No. 64 at 5-6; ECF No. 68 at 2; ECF No. 69 at 1-3.

**Rule 37 Fees.**  There remains an issue for the Court to resolve, and it is fully briefed.  The parties would appreciate knowing how the Court wants to resolve the reserved issues on Rule 37 fees.

**Privilege Waiver.**  This issue remains for the Court to resolve.  The parties would appreciate knowing whether the Court wants a formal motion, or something else.

*Plaintiff's Position.* The parties have met and conferred about the effect on privilege of the fact that the production reveals that — in addition to discussing legal strategy on stream —



Defendant has sent full communications with his lawyer to his friends, Mr. Coleman participates in a group chat with the community harassing Plaintiff and discusses the case therein, and Defendant routinely has ChatGPT analyze Mr. Coleman's communications to him and has it draft his responses. At this stage, that is sufficient for subject matter waiver, particularly given — to use Defendant's phrasing — that the substance of what would otherwise be privileged is being discussed "in the same spaces plaintiff claims have been the locus of the alleged harms done to her," making it "an extension of the very conduct at issue." ECF No. 50 at 2; *see, e.g., Siras Partners LLC v Activity Kuafu Hudson Yards LLC*, 157 AD3d 445, 446 (1st Dept 2018) (three-line email to third party waived subject matter); *accord Robbins & Myers, Inc. v J.M. Huber Corp.*, 274 FRD 63, 94 (WDNY 2011) (public announcement waived subject matter).

Defendant's claim that all that is at issue here is "passive monitoring" reflects only counsel's refusal to actually read correspondence. As cited by Bates to counsel repeatedly, the heart of the issue is disclosure of correspondence between counsel and Defendant in full,[1] and other messages where Defendant describes counsel's "thought process" to third parties. TARZIA022416.

*Defendant's Position:* No subject matter waiver has occurred. Plaintiff's waiver argument rests primarily on the assertion that counsel participated in a group chat with community members discussing the litigation. The production reflects that counsel was added to a group

---

[1] For example, this at TARZIA022715:



COHEN&GREEN

Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



X/Twitter direct message by a third-party community member and was present passively. Counsel made no disclosures of privileged communications or attorney-client substance in that chat. Mere passive presence in a group chat where others discuss pending litigation does not constitute subject matter waiver. The cases Plaintiff cites involve actual disclosure of privileged substance to third parties — not passive monitoring. *See Siras Partners*, 157 AD3d at 446; *Robbins & Myers*, 274 FRD at 94. Defendant reserves all rights on the privilege waiver issue.

**Emails.**  This issue remains for the Court to resolve.

*Plaintiff's Position*:  Defendant initially claimed there were no emails at all, after conducting a diligent search:  "Defendant has reviewed both accounts and **has not identified emails responsive** to the jurisdictional discovery requests."  ECF No. 62 at 2 (emphasis added). Then, when Plaintiff followed up repeatedly about Twitter DMs that make clear an email exists that she knew about, Defendant produced *just that email*.  Defendant has not explained how his initial search failed to find this email.  And despite Plaintiff providing two other pin cites that seem to confirm relevant emails, Defendant has not addressed his failure to produce those emails.  *See, e.g.,* TARZIA001889 (cited in correspondence, describing an email that was sent, then saying "Exposing Sarkeesian should undermine Mercante's plans. Be well.").

Moreover, Defendant's search terms are woefully inadequate, and disclosed for the first time — despite Plaintiff's requests to discuss search terms at meet and confers; met with the profane response described in ECF No. 69 — in drafting this letter.  A diligent search would, at a **minimum**, include "Mercante," "Kotaku," relevant misspellings and nicknames, and Hypnotic's **actual** name (or at least email address).  Rather, it seems like Defendant's search did not turn up anything:  neither term he claims to have used appears in the email produced, though "Mercante" and Hypnotic's email does.[2]  And Defendant makes no attempt to explain his previous statement he did a diligent search without finding this email (and again, counsel's response to an attempt to discuss search methodology was profane dismissal).

*Defendant's Position:*  Defendant searched both of his email accounts — jeff.tarzia@gmail.com and info@smashJT.com — using the search terms "hypnotic" and "Alyssa." One responsive email was identified and produced. No additional responsive non-privileged emails exist.

**Other Messages (like Discord messages or text messages).**  This issue remains for the Court to resolve.

*Plaintiff's Position:*  The Court ordered production of all messages of any kind responsive to requests (as drafted, not with any reconstruction).  Yet, Defendant has not produced any text messages, Discord messages, Facebook messages Instagram messages, or the like, even

---

[2] Hypnotic's email contains "hypnotic," but without knowing the search platform, most native email searches would not pull this email just from "hypnotic."

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



though the Court has ordered him to, and the Twitter DMs confirm such documents exist, and has sent Defendant follow up emails with pincites to the messages confirming as much for at least Discord messages (TARZIA010805 ("where do you get all this content for streams" / "Sometimes I find it on my own, sometimes through discord or email. All over the place really")), text messages (TARZIA 012038 (after discussing research into Plaintiff with a New York resident, the resident says "If you ever want to talk or vent, it[ e.g., research]'s my natural skill lol my cell is [number]")), and Instagram/Facebook messages (TARZIA010396 ("have enough to keep up with on Twitter and YT and instagram and Fb man I can't")).[3]

Defendant's claim that he has conducted a diligent search, and description of that search, are simply not credible — particularly given his history of false statements in discovery. And given that hundreds of his videos are about the Relevant Topics, his claim he did not find content for those videos in his normal ways is not credible. Plus, given his search methodology, the search was not "complete," and Defendant's refusal to discuss search terms at all is inconsistent with the Federal Rules and ground level electronic discovery best practices. Indeed, much of the fighting here would be avoided if the parties had discussed this before searches, as Plaintiff requested — or at least, if requests to discuss search terms and methodology were not met with responses like, "Give me a fucking break."

*Defendant's Position:* Defendant conducted a reasonable search of his Discord direct messages, text messages, and Instagram and Facebook direct messages for communications responsive to the jurisdictional discovery requests, and identified no responsive communications. The statement at TARZIA010805 — "sometimes through discord or email" — refers to Defendant's practice of finding content for his streams and is not a reference to communications concerning the Relevant Topics. Defendant's search of Discord direct messages, text messages, and Instagram and Facebook direct messages was complete, and no responsive materials from those searches were withheld.

**Sealing.** Technically, the parties are asking the Court to act on this — though there is no dispute. The Court's order on sealing did not address the actual letter at ECF No. 57. After discussion, the parties agreed the Court's analysis would apply to the letter. The parties also agreed, in light of public discussion of the settlement offer not discussed in the briefing (since neither party raised the settlement offer as a settlement offer), the Court should also unseal ECF No. 57-4, consistent with its reasoning on the other exhibits.

**Formal Responses.** There may be more for the Court to do on this issue. Defendant produced updated formal responses on March 19, 2026, superseding his prior responses of

---

[3] Until last night, Defendant had not produced or responded as far as a search for messages on his Discord forum (as opposed to private messages on Discord generally). Apparently last night he ran a search just for "Mercante" and found over a thousand hits. However, he proposed a solution — providing Plaintiff's team a standing invite to last for the duration of litigation with appropriate permissions to allow exports — and allowing us to collect relevant documents ourselves. We agreed, so this part of the issue is no longer in dispute.

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



November 25, 2025 and incorporating a statement of search methodology as directed by the Court. This resolves the outstanding formal responses issue.  However, Plaintiff's issue with this is below.

> *Plaintiff's Position:*  A basic problem with Defendant's formal responses remains despite the countless times Plaintiff has raised it starting last December:  He is responding to the wrong requests, because he copied them wrong.  *See, e.g.,* ECF No. 40-5 at 4 ("As I said in my December 3, 2025 email, the 2025-11-25 Initial Responses incorrectly responded to Request 8, not Request 7. So, a supplemental, corrected response is necessary," and repeating as appropriate for each wrongly numbered request); ECF No. 44 at 4 ("Defendant literally has not made any objection to this Request, even faced with a deficiency letter" noting he responded to the wrong request); etc.  Plaintiff noted this defect immediately on receiving the amended responses.
>
> Moreover, the substantive deficiency in Defendant's formal responses remains identical to before:  They contain false statements and do not say what is being withheld.  They contain boilerplate objections that do not suffice under the Federal Rules (as the Court already found).  And they continue to silently narrow requests.  For example, Request No. 14 includes messages concerning "End Kotaku," and Defendant does not object to that part of the request.  Yet, Defendant's search methodology seems to describe omitting that (for example, saying he searched by "Plaintiff's name and by the names of identified individuals (Hypnotic, Toastywiththemosty, RevSaysDesu)").  Defendant also seemingly continues to claim "work product" in ChatGPT logs he disclosed, although it is not clear to what end.
>
> The bottom line is that Defendant still has not done a complete search.  And when Plaintiff has tried to confer on this, counsel has said things like "Give me a fucking break."

**Post-November 12, 2025 DMs.**  There may be more for the Court to do on this issue. After several emails, and a meet and confer, Defendant now agrees he understands the problem Plaintiff is raising.

Defendant provided an explanation on March 19, 2026: Defendant believes the encryption upgrade reflected in the export was toggled by Hypnotic, who is represented by separate counsel. Defendant will seek to obtain a confirmation of this explanation from Hypnotic's counsel and will supplement promptly upon receiving it.

Plaintiff does not believe it is necessary to speak to Hypnotic — it is Defendant's own conversation history.  There is an indication "encryption" is on.  If that caused messages to be unable to export, Defendant must find another way to export them, and any burden is self-imposed. This could have also been resolved much sooner if Defendant's counsel did not refuse to read emails.

**SuperChats.**  There is no more for the Court to do on this issue. Since the last letter, Defendant discovered that a member of his community was able to generate a summary of all SuperChats, which Defendant produced on March 19, 2026. This resolves the outstanding SuperChat production issue.

 

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**Privilege Log.** There is no more for the Court to do on this issue. Defendant produced a privilege log on March 19, 2026. This resolves the outstanding privilege log issue.

**YouTube Data:** There is no more for the Court to do on this issue. Defendant produced additional YouTube analytics data on March 19, 2026, in the format discussed at the Court-ordered meet and confer, including transaction revenue, YouTube ad revenue, ad impressions, CPM, RPM, estimated monetized playbacks, and revenue breakdown by source. This resolves the outstanding YouTube data issue.

**ChatGPT Production.** Defendant produced his entire, lifetime ChatGPT history to Plaintiff as a series of interleaved JSONs. Plaintiff has been reviewing that history for relevance and responsiveness, and will produce responsive/relevant chat logs back to Defendant as human-readable, PDFs once review is done.[4]

The parties are available should the Court wish to schedule a conference.

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[4] To be clear, Plaintiff did not consent to or suggest this method. Because of the format and breadth of the production, review has taken more than 40 hours at this stage, and continues.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com