# Coleman Law Firm, p.c.

RONALD D. COLEMAN
973 264 9611
RCOLEMAN@COLEMANLAW-PC.COM
50 PARK PLACE | NEWARK NJ 07102

Admitted in New York and New Jersey

April 10, 2026

**BY ECF**

Hon. Lara K. Eshkenazi, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** ***Mercante v. Tarzia*, No. 1:24-cv-08471 (E.D.N.Y.)**

Dear Judge Eshkenazi:

Defendant respectfully submits this reply to Plaintiff's opposition (ECF No. 83) to Defendant's motion for a protective order (ECF No. 81). Plaintiff's response distorts the record, misstates the law, and is padded with inflammatory but irrelevant exhibits that have nothing to do with the narrow question before the Court: whether Plaintiff is entitled to elevated administrative access to Defendant's Discord server, server audit logs, and ever-expanding categories of Discord-related discovery beyond what has already been provided.

At its core, Plaintiff's opposition asks the Court to lose sight of what this case is: a defamation and harassment action in which no court has found personal jurisdiction over a California defendant. After the Court authorized **narrow** jurisdictional discovery to address four specific deficiencies identified in Judge Brodie's order, Plaintiff transformed that limited writ into an open-ended fishing expedition, demanding administrative control over an entire Discord community, audit logs, and access to private moderator channels. At the same time, Plaintiff simultaneously represented to Defendant and the public, that the discovery she already obtained is sufficient to prove every element of every claim and, incidentally, jurisdiction too.

## I.      This Is Not a Reconsideration Motion.

A party does not forfeit the right to seek a protective order under Rule 26(c) merely because a prior motion to compel was granted on different discovery months earlier. *See* Fed. R. Civ. P. 26(c)(1) (authorizing protective orders upon a showing of good cause). Plaintiff cites no authority to the contrary.

Hon. Lara K. Eshkenazi, U.S.M.J.                                                April 10, 2026
Page 2 of 4

Plaintiff's lead argument is that Defendant's motion is an untimely motion for reconsideration of the January 14, 2026 minute order under Local Civil Rule 6.3. That characterization is wrong. The January 14 order addressed Plaintiff's motion to compel production of communications with identified individuals. It did not address Plaintiff's subsequent demands for elevated administrative access to a Discord server, for production of server audit logs, or for access to private moderator channels. Those demands first arose in March and April 2026, well after the January order, and cannot reasonably be construed as implicit or obvious corollaries of the authorization to conduct jurisdictional discovery.

## II.    Plaintiff's Exhibits Regarding ChatGPT and Twitter Are Irrelevant.

The most striking feature of Plaintiff's opposition is the space devoted to material that has nothing to do with whether a protective order should issue. Plaintiff attaches a ChatGPT log (Ex. 5) and a Twitter direct message exchange (Ex. 6) and devotes nearly a full page to arguing that Defendant and his counsel are pursuing a strategy of deliberate delay. This accusation is false; the exhibits do not support it; and it is of a piece with Plaintiff's consistent efforts to demonize both Defendant and his counsel.

Exhibit 5 is a log of Defendant's private conversation with a chatbot in November 2025. Defendant's counsel was unaware of Defendant's ChatGPT exchanges, did not direct them (and hence did not assert that they were privileged), and did not adopt any strategy generated by ChatGPT. The phrases Plaintiff quotes most prominently—including "Dragging Out Jurisdictional Discovery" and "respond to objections and motions for weeks or months"—are ChatGPT's words, not Defendant's and not his counsel's. Attributing a chatbot's output to the defense as though it were a litigation plan is not a serious argument.

Exhibit 6 is a casual September 2025 text exchange between Defendant and a friend in which Defendant speculated, in colloquial terms, about what he thought his lawyer was doing. The conversation immediately turned to video games. A client's offhand remark to a friend that his lawyer is being strategic is not evidence of attorney misconduct, discovery abuse, or bad faith.

More fundamentally, none of this is relevant to the motion before the Court. The question is whether Plaintiff is entitled to the specific Discord access and audit logs she demands. Plaintiff offers these exhibits to inflame, not to inform. She has employed such tactics throughout this case.

## III.    "Admin" Status Does Not Establish Custody and Control Over Third-Party Content.

Plaintiff argues that because Defendant holds "Admin" status on his Discord server, he necessarily has custody and control of all content posted by all users in all channels. That conflates technical platform permissions with legal custody and control under Rule 34. The "Admin" role means

Hon. Lara K. Eshkenazi, U.S.M.J.                                            April 10, 2026
Page 3 of 4

Defendant has the **technical** *ability* to view channels. It does not mean he created, directed, or controls the content that hundreds of third-party users independently posted. Plaintiff's own exhibits demonstrate the point: Exhibits 3 and 4 show moderators having extended conversations that Defendant did not participate in and which there is no reason to believe he ever saw. They are, moreover, of questionable relevance to jurisdictional discovery.

The Rule 34 standard requires a legal right or practical ability to obtain documents on demand—not that a party has theoretical access to a platform on which third parties post content. By Plaintiff's logic, any individual who administers a Facebook group, subreddit, or online forum would be deemed to have custody and control of every post by every member. That is not the law, and the facts and posture of the discovery permit here make it a particularly inappropriate one for extending the law in such an intrusive, burdensome direction.

### IV.     Plaintiff's Discord Moderator Exhibits Undercut Her Own Narrative.

Plaintiff offers Exhibits 3 and 4. screenshots of Discord moderator conversations, to insinuate spoliation, which of course is the third rail of litigation misbehavior. On a careful reading, however, these exhibits refute the insinuation.

In Exhibit 3, the moderator "King Alucard" **explicitly** *states* that chat history "will not be purged." The moderators **rejected** the idea of migrating to a new server, concluding it would be "a bad move." And the entire "Relaunch" discussion concerned adding security features and re-verifying users, not deleting content. None of these conversations involved Defendant or were directed by him.

As for the Exhibit 4 comment about forwarding "discovery towards Smash ... in private," this is a third party's characterization of his own actions. It is not evidence that Defendant received anything, directed anything, or was even aware of the conversation. Plaintiff cannot impute third-party moderator chatter to Defendant without any evidence of his involvement.

### V.     Plaintiff Misapplies Rule 408.

Plaintiff argues that Defendant's reference to Plaintiff's settlement demand letter in his motion is barred by Federal Rule of Evidence 408. This argument fails on two independent grounds.

First, Rule 408 is an **admissibility** rule governing the use of settlement communications as evidence at trial. It does not render settlement letters confidential, and it does not prohibit a party from referencing a settlement communication in a discovery motion. Defendant cited the letter not to prove "the validity ... of a disputed claim," Fed. R. Evid. 408(a), but to demonstrate Plaintiff's **own assessment of the sufficiency of existing discovery**—a point directly relevant to

Hon. Lara K. Eshkenazi, U.S.M.J.                                                April 10, 2026
Page 4 of 4

proportionality under Rule 26(b)(2)(C). That purpose is not within the scope of Rule 408.

Second, Plaintiff **herself** published the settlement letter on the social media platform Bluesky, as the Court is aware from ECF No. 74. Whatever confidentiality interest might attach to a settlement communication, Plaintiff waived it by broadcasting the document to the public. Plaintiff made the tactical decision to disseminate this "demand letter' to the world; she should not be heard to complain when Defendant refers to it in a court filing—much less one seeking relief from precisely the conduct exemplified in it, i.e., the abuse of discovery.

### VI.    The Audit Log Demand Rests on Speculation.

Plaintiff demands production of Discord audit logs based on the assertion that the discrepancy in search results (1,200 versus 503 hits) constitutes evidence of spoliation. It does not. As Plaintiff's own counsel acknowledged during the meet and confer, the discrepancy is likely attributable to different permission levels returning different search results. This is precisely the kind of mundane technical explanation one would expect on a platform with multiple access tiers. Absent actual evidence of deletion, there is no basis for ordering production of server audit logs that would reveal the moderation activities of non-party server moderators.

This is jurisdictional discovery. Plaintiff has represented that the discovery already obtained—and indeed it is voluminous, extensive and intrusive—is sufficient to establish jurisdiction and prove every element of every claim. The Court should hold Plaintiff to that assessment and deny her demand to convert a Discord community server used by hundreds of people into an open-access evidence repository, particularly where the underlying question remains simply whether Defendant, a California resident, is subject to personal jurisdiction in New York in an Internet defamation matter.

Defendant thanks the Court for its continued attention to this matter.

Respectfully submitted,

Ronald D. Coleman