**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALYSSA MERCANTE,<br><br>            *Plaintiff,*<br><br>        v.<br><br><br>JEFF TARZIA,<br><br>            *Defendant* | **Case No. 24-cv-8471 (MKB) (LKE)** |

---

**PLAINTIFF'S MEMORANDUM OF LAW AND**
**OBJECTIONS TO / APPEAL OF ORDER**
**DENYING REQUEST FOR ORDER TO SHOW CAUSE**

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com


**KAMERMAN, UNCYK, SONIKER,**
**    & KLEIN, PC**
Lane A. Haygood
1700 Broadway, 16th Floor
New York, New York 10019
Tel. 646.845.6085

*Attorneys for Plaintiff*

May 26, 2026

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

RELEVANT FACTUAL & PROCEDURAL HISTORY ............................................. 4

    a.    The factual assertions explaining the incorrect citations are not colorable. ..................... 6

    b.    The claim all citations were legally correct appears to reflect a failure to perform diligent review even after issues were raised. .................................................................................. 8

    c.    The LLM issues are a symptom of a general lack of the care required of an attorney under Rule 11. ................................................................................................................................. 10

ARGUMENT.................................................................................................................. 11

    I.    The Court Below made a Legal Error in Finding Frivolous Conduct Needed to Directly Impact the Court Itself to Trigger an Order to Show Cause. ................................................... 14

    a. An order to show cause is the first step required when there are indicia of hallucinated authority. .............................................................................................................................. 14

    b. A core, relevant harm that makes A.I. hallucinations sanctionable is the burden on parties.................................................................................................................................... 15

    c. Often, the relevant burden on the Court comes post-order to show cause, because the burden is unraveling the conduct that is the subject of the order to show cause. ............. 16

    II.    The Explanation Offered is Not Colorable, the Conduct is Sanctionable, and the Indicia of Careless A.I. Use Require an Order to Show Cause to Find Out What Happened. ............. 20

CONCLUSION.............................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. v. City of New York*,
  2022 WL 20472225 (E.D.N.Y. Aug. 8, 2022) ................................................ 5, 7, 8, 9

*Auscape Int'l v. Nat'l Geographic Soc'y*,
  2003 WL 21976400 (S.D.N.Y. 2003) ..................................................................... 5

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
  814 F.3d 132 (2d Cir. 2016) ................................................................................ 4

*Chakma v Sushi Katsuei, Inc.*,
  2026 US Dist LEXIS 111065, at *32 (SDNY May 19, 2026) ............................ 3, 15

*Deutsche Bank Natl. Trust Co. v LeTennier*,
  ___AD3d___, 2026 NY Slip Op 00040 (3d Dep't 2026)............................................ 15

*Crespo v Tesla, Inc.*,
  2025 US Dist LEXIS 126543, at *3 (SD Fla June 30, 2025) ................................ 3, 15

*Doe v Mount St. Mary High Sch. Corp. of Oklahoma*,
  2026 US Dist LEXIS 106280, at *4 (WD Okla May 13, 2026)............................... 17

*Fuller v Hyde Sch.*,
  2026 US Dist LEXIS 98656, at *2 (D Me May 5, 2026).......................................... 17

*Gauthier v Goodyear Tire & Rubber Co.*,
  2024 US Dist LEXIS 214029, at *7 (ED Tex Nov. 25, 2024) ................................. 13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) .................................................................................. 11

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ........................................................................................... 4

*Jimenez-Fogarty v Fogarty*,
  2026 US Dist LEXIS 94006, at *22-23 (SDNY Apr. 29, 2026) ............................. 16

*Kettering Adventist Healthcare v Collier*,
  2026 US Dist LEXIS 124, at *34-43 (SD Ohio Jan. 2, 2026)................................. 18

*Lee v. HSBC Bank USA*,
  2026 WL 1270038 (C.D. Cal May 7, 2026)........................................................ 17, 19

*Mata v Avianca, Inc.*,
   678 F Supp 3d 443 (SDNY 2023) ................................................................. 4, 12, 15, 20

*Morgan v Community Against Violence*,
   2023 US Dist LEXIS 190181, at *18 (DNM Oct. 23, 2023) .................................... 15

*Rich Prods. Corp. v. Bluemke*,
   No. 13CV30S, 2014 WL 860364 (W.D.N.Y. Mar. 5, 2014) ................................. 5, 7, 8

*Richir v. Vill. of Fredonia, N.Y.*,
   2008 WL 941805 (W.D.N.Y. Apr. 4, 2008) .............................................................. 5

*Salahuddin v. Harris*,
   782 F.2d 1127 (2d Cir. 1986) ................................................................................... 4

*State Natl. Ins. Co. v Treadwell*,
   2026 US Dist LEXIS 72098, at *5 (ND Ala Mar. 26, 2026) .................................. 21

*Superb Motors Inc. v Deo*,
   2026 US Dist LEXIS 95581, at *6 (EDNY Apr. 30, 2026) ......................... 3, 15, 17

*Townsend v Haza Foods, LLC*,
   2026 US Dist LEXIS 62350 (WDNY Mar. 24, 2026) ......................................... 5, 8

*Twigg v BSN Sports, Inc.*,
   2026 US Dist LEXIS 113089, at *25 (MD Pa May 21, 2026) .................... 13, 20, 21

*United States v Hayes*,
   763 F Supp 3d 1054 (ED Cal 2025) .................................................... 2, 6, 20

*Versant Funding LLC v Teras Breakbulk Ocean Nav. Enters., LLC*,
   2025 US Dist LEXIS 98418, at *4-5 (SD Fla May 20, 2025) ............................... 16

*Wilkes v Canyons Sch. Dist.*,
   2026 US Dist LEXIS 99436, at *1 (D Utah May 4, 2026) .................................... 17

**Rules**

Fed. R. Civ. P. 11 ...................................................................................... 15, 16, 18

Fed. R. Civ. P. 11(b) ........................................................................................ 14, 15

Fed. R. Civ. P. 11(c)(1) .......................................................................................... 15

Fed. R. Civ. P. 11(c)(2) .......................................................................................... 15

Fed. R. Civ. P. 72(a) ............................................................................................... 12

## PRELIMINARY STATEMENT

Throughout this case, Defendant's counsel has used generative AI or large language models ("LLMs" for short) as a major part of drafting and research.  That is not in dispute.  *See, e.g.,* ECF No. 47 at 5 n. 1 and 2 (Defendant quoting chat responses from Google's Gemini and OpenAI's ChatGPT chatbots to assert facts, and falsely saying Gemini's chat responses were something "explained by Google").  Fake quotations, false statements, and mis-citations have appeared in papers in ways that strongly suggest AI usage.  Plaintiff is filing these objections because of the continuing burden that careless legal work — as exemplified by the continued careless use of hallucinated citations — is imposing on her.  It appears that the many times Plaintiff has raised this, and the warnings the Court below has issued, perhaps because of the lack of real consequences, have only emboldened Defendant to use even less care.

To be clear, the Court below has already — after it "double-checked some of the examples that [Plaintiff] provided to [the Court]," and "it did appear that there were certain quotes that didn't appear in the cited cases" contrary to Defendant's continued protestations — cautioned Defendant's counsel that "you need to review [papers] more carefully."  2026-04-21 Tr. (Green Ex. 1) at 7:9-8:10.  But in Defendant's very next submission — on top of carelessly placing Plaintiff's law firm's bank details on the docket and deliberately deciding he did not need to give due regard for a confidentiality designation he disagreed with — he included a series of citations that were wrong and one citation that dramatically misstated and misapplied a holding in a case in a way that a human lawyer would not.  ECF No. 88 (sealed).[1]

---

[1] The Court below ordered Defendant to "file an appropriately redacted version of ECF 88 by 5/21/2026."  May 14, 2026.  He has since violated that order by failing to file as directed.  Accordingly, for the sake of review, Plaintiff has removed sensitive material from a version of the document appropriately, and it is submitted as Green Ex. 3.

Accordingly, Plaintiff sought an order to show cause "to direct Defendant to explain" how these citations happened and kept happening.  ECF No. 89.  Because Defendant had posted Plaintiff's lawyers' bank information to the docket, however, the Court below called an immediate conference on all the issues raised over the same period.  May 11, 2026 Minute Order.  At that conference, given the rush over the weekend, the Court below was understandably not fully read in on every issue, misunderstood the issue to be about "letters between the parties," and noted it "ha[d]n't had time to check his cites between the time of the filings and now."  2026-05-11 Tr. (Green Ex. 2) at 27:4-28:4.  Part of its reasoning, given that it had not reviewed the citations, was not that the citations were not frivolous, but that it felt limited because "his mis-citations honestly have not caused a particular burden in this particular one to the Court because I haven't even had time to consider that," explaining that "normally when the Court has imposed these types of orders to show cause it's when it's caused the Court difficulty."  2026-05-11 at 36:2-24.  Thus, it explained:

> "So it's a little strange for me to issue a order to show cause on something ***that didn't really impact me*** between last night and today.
>
> So I'm going to issue a warning. If you want to appeal that warning as being insufficient, then I leave that to you."

*Id.*  The Court below then commemorated that denial in part of the order to show cause with a Minute Order, saying, "The Court declines to issue an Order to Show Cause at this time in light of the Courts on the record warning to Defendant's counsel of his obligations to … exercise due diligence when citing case law."  May 12, 2026 Minute Order.

As explained below, the mode of citation in ECF No. 88 leaves no plausible possibility that a human generated the citations.  And counsel's explanation, like the initial explanation that triggers an order to show cause in almost every LLM case, simply does not hold together.  *Accord, e.g., United States v Hayes,* 763 F Supp 3d 1054, 1066 (ED Cal 2025) (similar denial is

2

"inadequate and not credible").  That calls for an order to show cause to ***allow*** a real explanation. It is not actually clear if the Court below disagreed with this point.  Instead, its approach appeared to be based on an understanding that the hallucination case law is narrowly limited to cases where LLM hallucinations "caused the Court difficulty." 2026-05-11 at 36:2-24.

But that limitation does not exist.  While the impact on the Court is certainly important, it is also relevant that opposing counsel must — pursuant to their own duty of candor — "uncover and respond to Defense Counsel's false submissions." *Chakma v Sushi Katsuei, Inc.*, 2026 US Dist LEXIS 111065, at \*32 (SDNY May 19, 2026).  Indeed, in one case, noting "Plaintiff also apologizes to the Court for wasting its time, but seemingly has not apologized to Defendant's counsel for wasting their time," a court ordered such an apology.  *Crespo v Tesla, Inc.*, 2025 US Dist LEXIS 126543, at \*3 (SD Fla June 30, 2025).[2]  As noted below, a substantial number of the growing body of hallucination cases involve no burden at all on a court ***prior*** to the relevant orders to show cause.

Defendant has repeatedly used fake quotes, cited cases for unrelated propositions, and clearly uses LLMs to draft letters.  Indeed, the letter at issue was drafted and filed in less than an hour and a half, strongly suggesting that is how the mis-citations happened.  The Court below was legally incorrect that frivolous conduct must directly impact the Court, and the conduct at issue — courts have found — should mean the Court is "left with no choice but to impose sanctions under Rule 11 which is well in line with the developing case law," at least if the facts are what it seems. *Superb Motors Inc. v Deo*, 2026 US Dist LEXIS 95581, at \*6 (EDNY Apr. 30, 2026).

---

[2] And, indeed, things would be far different here if that is the approach Defendant took.  Instead, as with the past frivolous citations, when confronted, Defendant's counsel only doubles down and declares the citations are correct. *See, e.g.,* 2026-04-21 Tr. (Green Ex. 1) at 7:9-8:10.

3

## <u>RELEVANT FACTUAL & PROCEDURAL HISTORY</u>

Throughout this case, Defendant has used LLMs for his legal work and factual investigation.  Below are highlights that in the last few months (e.g., leading up to the warning in April and then in ECF No. 88).

- In ECF No. 61, falsely attributing the quote "prepared in anticipation of litigation" to *Hickman v. Taylor*, 329 U.S. 495 (1947), which does not contain that language.

- In ECF No. 66, attributing that quote to *Hickman **again***, even after Plaintiff pointed out the quote did not exist (ECF No. 64 at 5-6), suggesting he was willfully blind to the frivolousness of the conduct by failing to "reading the [Plaintiff]s submission when received."  *Mata v Avianca, Inc.*, 678 F Supp 3d 443, 464 (SDNY 2023).[3]

- In ECF No. 61, citing "*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016), for something seemingly unrelated to its analysis (or if anything, directly the opposite of what it says).

- In ECF No. 60, quoting "*Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986)" as saying "there must be a finding on the record of willfulness or bad faith" "*Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986)" and that "the severity of the sanction must be commensurate with the noncompliance," when those quotations do not exist in that case.

- In ECF No. 50, described a document he attached as having the "clear hallmarks of audio transcription that the person posting about the hearing worked from a written transcript, saying it had things like "[Inaudible] tags" and "'Clean speaker labels as … 'The Court:' 'Mr. Coleman:', 'Plaintiff's Counsel:'" ECF No. 50 at 2 n. 1 and n. 2.  Again, those quotations and items do not exist in the document cited.

At a meet and confer, when asked if he was using LLMs and that was why these misquotations were happening, counsel declared it was "none of your fucking business."  ECF Nos. 68, 69, and 69-2.

Before the Court on Plaintiff's motion for an order to show cause were a collection of citations from ECF No. 88:

- The citation, "2008 WL 4104455" (ECF No. 88 at 2) goes to *Whitcomb v. Todd*, No. 9:04CV223(LEK/DRH), 2008 WL 4104455, at *1 (N.D.N.Y. Sept. 3, 2008), not a case

---

[3] This does seem to be confirmed.  At a meet and confer, counsel stated he does not read Plaintiff's emails or filings, explaining, "I'm not sure it's worth it to me to read them."  ECF No. 69-2 at 2.

called "*Richir v. Vill. of Fredonia*" in the Western District. More, the case does not involve a Court "conducted its own analysis" (ECF No. 88 at 2) of a fee submission, but a District Court affirming a grant of summary judgment on plain error review. There *is* a case called *Richir v. Vill. of Fredonia, N.Y.* — at 2008 WL 941805, at *3 (W.D.N.Y. Apr. 4, 2008) — that partially fits Defendant's description, but it grants the entire sanction sought in a similar situation to this one.

- The citation "2014 WL 3908334" (ECF No. 88 at 2) goes *Shambour v. Carver Cnty.*, No. CIV. 14-566 RHK/LIB, 2014 WL 3908334, at *1 (D. Minn. Aug. 11, 2014), not a case called "Rich Prods. Corp. v. Bluemke" in the Western District. Like the last citation, the actual case at the citation is unrelated to the principle it is cited for. And again, there is a case that broadly fits Defendant's description — *Rich Prods. Corp. v. Bluemke*, No. 13CV30S, 2014 WL 860364, at *1 (W.D.N.Y. Mar. 5, 2014)" — at a different citation. It does, as Defendant suggests, award time for meet and confers.

- The citation, without even a docket number, to "*Townsend v. Haza Foods, LLC*, Slip Copy (W.D.N.Y. 2026)" appears to be an attempt to cite *Townsend v Haza Foods, LLC*, 2026 US Dist LEXIS 62350 (WDNY Mar. 24, 2026). However, that case does not — as Defendant suggests — evaluate whether time was involved in a motion based whether it "preceded the motions by weeks." ECF No. 88 at 2. More the factual assertion that any time sought "preceded the motions by weeks" also appears to be a hallucination: There is absolutely no such time in the timesheets. The earliest in time entry is for 12/10/2025, the date of the first meet and confer, and 9 days before the first motion was filed.

- While cited correctly, *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 21976400, at *4 (S.D.N.Y. 2003) does not say anything that could fairly be paraphrased as "the appropriate mechanism is a motion **by the fee recipient** to fix the amount, not a demand that the fee respondent tender a counter-offer." Rather, it just reflected a Magistrate Judge following a motion procedure where — unlike the underlying dispute here — the Court directed a process where the fee recipient "may file a motion, not later than February 17, 2003, before the Magistrate Judge assigned to fix the amount." 2003 WL 21976400, at *1. Nothing in the decision suggests the Court lacks authority — as it did here — to direct a party to file objections after being served with timesheets.

- "2022 WL 17543173" does not appear to exist. ECF No. 88 at 3. There is a case with the same name, *A.M. v City of NY*, 2022 US Dist LEXIS 141001 (EDNY Aug. 8, 2022) but it relates not to the notion that a "fee application" generally "requires formal motion papers filed on the docket with supporting documentation" (even if the Court directs otherwise), but about compliance with the particular requirements of Local Civil Rule 83.2 in relation to infant compromises, which has specific requirements for how the Court "must determine those fees and disbursements after due inquiry into all charges against the fund," and the process in those cases "must conform, as much as possible, to the New York State statutes and rules." Local Civ. R. 83.2(a)(1)-(2).

In response to Plaintiff's motion for an order to show cause, Defendant's counsel offered both factual and legal defenses.

a.   The factual assertions explaining the incorrect citations are not colorable.

Factually, he asserted, "[e]very case cited in ECF No. 88 was retrieved by counsel (i.e.,

the undersigned) directly from Westlaw." ECF No. 90 at 1.  Instead, he says, he "made mistakes

when recording citations for four of the cases." *Id.*  And he described them as "clerical

numbering errors." *Id.* at 2.

But this explanation — at least without the inquiry an order to show cause would begin

— is "inadequate and not credible." *Hayes,* 763 F Supp 3d at 1066.  If, as the response suggests,

counsel were copying the case citations down manually — as opposed to by copy and paste as

most lawyers do — it is impossible to imagine *how* the citations changed as they did.  Helpfully,

counsel attached what he claims he was looking at.  So, for *Richir* for example, counsel was

looking at the following heading for the case:

EXHIBIT B

2008 WL 943024
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Denise RICHIR, Plaintiff,

v.

VILLAGE OF FREDONIA,
NEW YORK, et al., Defendants.

No. 05CV76S.
|
April 4, 2008.

**Attorneys and Law Firms**

ECF No. 90 at 9.  The citation at the top of the page counsel says he was looking at is —

correctly — 2008 WL 943024.  But Defendant instead cited "2008 WL 4104455."  The numbers

943024 and 4104455 are nothing alike.  Not even a single number is in the same position, they

6

have different numbers of digits, and there is no number resembling 4104455 anywhere on any page of the case.  Some explanation is still necessary for how 943024 **could** turn into 4104455.

The other transpositions are similar.  "17543173" is nothing like "20472225", for *A.M. v. City of New York*, 2022 WL 20472225 (E.D.N.Y. Aug. 8, 2022).  "3908334" is nothing like "860364" for *Rich Prods. Corp. v. Bluemke*, 2014 WL 860364, at *1 (W.D.N.Y. Mar. 5, 2014).  Perhaps counsel genuinely has handwritten notes that led to these transpositions.  Or perhaps counsel has a Word draft that reflects editing.  But there is no realistic explanation for how a lawyer physically even **could** "ma[k]e mistakes when recording citations for four of the cases" that led to these transpositions.  ECF No. 90 at 1.  But as explored below further, these "mistakes" are all but an LLM signature:  LLMs do not know things.  Case citations are notoriously difficult for an LLM to generate, because LLMs use language "tokens" to generate text that **looks** like other text in its training data.  A seemingly (without knowledge, at least) random sequence of numbers in the training data will result in an actually random sequence of numbers in output.  And that is the only plausible explanation of how, for example, 943024 turned into 4104455.

This also seems to be confirmed by the way Defendant's counsel's filings jump from Lexis to Westlaw and back again, depending on the filing.  *Compare, e.g.*, ECF No. 42 (only using Lexis for unpublished cases); ECF No. 60 (same); ECF No. 66 (same); *with* ECF No. 31 (primarily, but not exclusively using Westlaw)[4]; ECF No. 22 (similar); *with* ECF No. 88 (only using Westlaw citations); *and with* ECF No. 47 (mixed citations[5]).  Having a subscription to both

---

[4] My firm primarily uses Lexis.  Co-counsel's firm primarily uses Westlaw.  Attorneys from both firms working on different parts of a document might be an explanation for how mixed citations exist in one document.  But it is not clear how that would happen for a solo practitioner if he is, in fact, reading every case cited.
[5] This would suggest copy and past from a decision without individual review.

services is all but financially impossible for small firm and solo practitioners (and indeed, maintaining even one is difficult).  *See, e.g.,* Green Dec. ¶ 7.

        b.  <u>The claim all citations were legally correct appears to reflect a failure to perform diligent review even after issues were raised.</u>

Legally, Defendant asserted the legal claims were accurate.  As alluded to above, and explored more below, while true for some of the citations, it is simply hard to square with a diligent review of others.

For example, *A.M. v City of NY*, 2022 US Dist LEXIS 141001, at *4 (EDNY Aug. 8, 2022)[6] specifically applies the special infant compromise procedures in Local Civil Rule 83.2. Indeed, the core argument was even that both parties were — in seeking reconsideration — "emphasizing that Local Civil Rule 83.2(a)(1), which requires an infant compromise order, is inapplicable to this case."  *A.M.*, 2022 US Dist LEXIS 141001, at *5.  More to the point, the core of the holding, explicitly, runs:  "plaintiffs' motion for attorney's fees ***is a dispositive motion*** seeking approval of a settlement of the entire federal action.  ***Thus***, under the Local Rules, ***the motion should be made in accordance with Local Civil Rule 7.1(a)***."  *Id.* at *12 (emphasis added; internal quotations omitted).  Accordingly, the motion needed to be denied because the movants "ha[d] not satisfied all of the requirements of Local Civil Rule 7.1(a)."  *Id.*

But there is nothing resembling a suggestion here that there was a dispositive motion involved, that there was a settlement to "approve[,]" that any of the  "certain procedural safeguards" that applied in *A.M.* were somehow relevant here, or for that matter, that Local Rule 7.1(e) did not apply.  *Id.* at *11-12.  Rather, here, the Court already granted a discovery letter

---

[6] Something similar is true of *Townsend v Haza Foods*, LLC, 2026 US Dist LEXIS 62350 (WDNY Mar. 24, 2026). While Defendant cites it saying "Time spent in conferences that preceded the motions by weeks, without any showing of direct connection to the specific letter motions filed, does not satisfy that standard," the case does not say anything about weeks (or months or days for that matter).  Nor would it be accurate to say time in the fee dispute "preceded the motion by weeks"; the earliest in time entry is 12/10/2025, for a meet and confer in advance of a motion made on 12/19/2025.

motion — explicitly "authorized by the judge's individual practices" — and the structure for seeking fees was also explicitly "authorized by [an]… order issued in a particular case." Local Civ. R. 7.1(e). So, while under Local Civil Rule 7.1(a), a motion *other than* a letter-motions permitted by Local Civ. Rule 7.1([e[7]]) must include a notice of motion, the motions relevant here (ECF Nos. 40 and 44) were made under Local Civil Rule 7.1(e) — and indeed, *were already granted*. *A.M.*, by its own terms, has nothing to say.

If that were not enough, *A.M.* even explicitly includes the caveat that Rule 7.1(a) carves out "letter-motions as permitted by Local Rule 7.1([e]) or as otherwise permitted by the Court." *A.M.*, 2022 US Dist LEXIS 141001, at *11-12, *quoting* Local Civ. R. 7.1([e]). It says, specifically, "Local Civil Rule 7.1(d) makes it clear that letter motions may *only* be filed when seeking non-dispositive relief." *Id.* (emphasis in original).

So, no reasonable lawyer — at least, after diligently reading *A.M.* and knowing the local rules — would think it somehow held *any* "fee application requires formal motion papers filed on the docket with supporting documentation." Green Ex. 3 (ECF No. 88) at 3. The case itself says as much. Yet, despite notice of this defect, in every filing since and in Court, counsel insisted that it holds — in some way applicable to this case — "a fee application was denied for failure to comply with formal filing requirements, including the absence of a notice of motion and supporting declarations," without even a hint of nuance. ECF No. 90.

This, too, suggests an LLM at work.[8] If, for example, counsel prompted a model something like "draft a section of a brief arguing formal notices of motion are required before a court can award any attorneys' fees," relevant language tokens — "notice of motion" "attorney's

---

[7] Since *A.M.*, former 7.1(d) has moved to 7.1(e).

[8] Even if it did not, to claim *A.M.* applied to a process dictated by Order and Individual Rules under Local Civ. R. 7.1(e) would be frivolous on its own. And counsel's doubling down on the reading of *A.M.* after notice strongly suggests that he simply did not read the case at any point.

fees," "denial", etc. — certainly exist in the case and the case is likely in relevant training data. Likewise, the fact that *some* contexts would require a notice of motion accounts for the lack of a purely made up case — while (as noted above) the totally made-up citation numbers seemingly confirms the use of an LLM.

> c. The LLM issues are a symptom of a general lack of the care required of an attorney under Rule 11.

Last, it bears mentioning that the use of LLMs to generate and file documents without review is not necessarily the disease here, but a symptom. The Court below has now had to directly caution Defendant's counsel to exercise basic care twice. *See, e.g.,* May 12, 2026 Minute Order[9]; 2026-04-21 Tr. at 7:3-8:10.[10] *See also, e.g.,* 2026-02-09 Tr. at 4:1-10.[11]

Discovery has been characterized by nothing so much as Defendant declaring things do not exist, Plaintiff finding examples, and then Defendant revealing there are massive troves of responsive documents. More, once the Court — Plaintiff alone pointing this out has not been enough, and has lead to profane responses — presses Defendant on these facts, counsel has then taken a document dump approach that is, frankly, profoundly harmful to his client. For example, after Defendant initially denied there were responsive ChatGPT logs where Defendant talked about jurisdiction-relevant issues with the chatbot, Plaintiff found video of him on stream literally discussing jurisdiction with the chatbot. Then Defendant made a paltry production *that*

---

[9] Noting the Court gave an "on the record warning to Defendant's counsel of his obligations to (1) exercise due diligence when citing case law, (2) exercise due diligence when filing sensitive information on the docket, and (3) refrain from filing any documents on the docket designated as "confidential" regardless of counsel's disagreement with the designation."

[10] "Now I don't know how much you relied on A.I., you know, but there do appear to be several examples where there are quotes that are not -- that don't appear in the cited cases … we double-checked some of the examples that your opposing counsel provided to us. And it did appear that there were certain quotes that didn't appear in the cited cases," and when counsel responded "Nothing is submitted to the Court without my personally reviewing it, as well as subjecting it to review by -- in Westlaw and Lexis. That's how I operate," the Court had to clarify, "All right, well, I think maybe some of those things are falling through and you need to review it more carefully and not just submissions to the Court, but submission -- if you're engaging in correspondence that the Court's not involved in, you need to check the accuracy."

[11] "I'll tell you, my overall sense is that defendant is not meeting their obligations and not doing enough."

***did not even include the specific example***.  Following that, rather than doing a real review, counsel dumped Defendant's entire **lifetime ChatGPT history** on Plaintiff.  *For discussion of this, see generally,* ECF No. 79-1.  This approach has been the nature of virtually every kind of document:  Twitter messages, text messages, emails[12]

In the specific filing where Defendant included the mis-citations at issue here, he ***also*** (1) filed documents specifically designated confidential and (2) accidentally filed Plaintiff's law firm's bank account information mis-redacted such that a notorious doxxing forum (that happens to be one of counsel's clients) began spreading it.

## ARGUMENT

The question on this set of objections and appeal is whether, in essence, The Court below made a legal error in believing it should not issue an order to show cause over (yet another round of) LLM-generated, incorrect citations, because "his mis-citations honestly have not caused a particular burden in this particular one to the Court" and "orders to show cause" should really only issue "when [LLM mis-citation] caused the Court difficulty."  2026-05-11 at 36:2-24.

As set out below, that view was a legal error.  And since that is a legal mistake, and a "mistake of law" is kind of "abuse of discretion" (*Goldberger v. Integrated Res., Inc.*, 209 F.3d

---

[12] For example, Defendant emphatically and directly repeated that there were no relevant or responsive emails.  *See, e.g.,* ECF No. 62 at 2; 2026-04-21 Tr. at 5:10-15 (Defendant's Counsel:  "a lot of it comes down to Plaintiff not believing that my client doesn't have emails. He doesn't -- he's a person who doesn't use a lot of email").  But once forced to do a diligent search, a rather large volume of responsive emails was produced.  And after the latest round of sanctions, Defendant went on stream to brag about how he specifically had emails he received from someone claiming to be a New York resident providing supposedly damning information about Plaintiff.  Jeff Tarzia (@SmashJT), *Another Kino Casino Channel FLAGGED Down,* YOUTUBE, (May 20, 2026) ("I've had communications with someone that claims to be friends with Alyssa …And this person that has been in contact with me for the better part of the past year and a half, ***has communicated many emails to me***") (emphasis added), *available at* https://www.youtube.com/live/XWnnMqrsPzE?t=10811&si=v2L_H48y842tjXJJ.  Whether this direct contradiction of prior representations to the Court grows from misrepresentation by counsel or deliberate obfuscation by Defendant to his own lawyer is unclear for the moment, but it did lead to still more delays in jurisdictional discovery, and again, is part and parcel of the same pattern this appeal addresses.

11

43, 47 (2d Cir. 2000)) — or is otherwise "contrary to law" (Fed. R. Civ. P. 72(a)) — the Court should reverse and enter an order to show cause directing Defendant's counsel to explain how the citations in ECF No. 88 as well as the others in other papers came to be.

"Unchecked generative AI usage has become a scourge on the courts, and ***it must be*** called out and reined in at every opportunity." *Miller v. Regions Bank*, 24-cv-1324, ECF No. 39, Slip Op. at *13 n. 1 (N.D. Ala. May 21, 2026) ("*Miller*") (emphasis added).[13]  And *Miller* is of particular note because there, as here, "the cases [we]re real," but did not contain the quotations cited  (even if the principles cited were not entirely wrong[14]) — like the issues with *Hickman* and *Salahuddin* discussed above, and that the Court below only gave a warning over.  And like the lawyer in *Miller*, counsel's first response here was to essentially say "he does not know how the false quotations ended up in his submitted brief," but represent he checked every citation and so on.  *Miller*, Slip. Op. at *4; *accord* Green Ex. 4 at 1-5 (counsel referring to the hallucinated claims about a summary of the hearing, saying, "not sure I remember what I was thinking there," "Will try to dig up what if anything I was looking at," before retreating to "I don't see what you are trying to accomplish here").

Thus, a common theme in many LLM cases is that the cover-up is worse than the crime. *See, e.g., Mata v Avianca, Inc.*, 678 F Supp 3d 443, 464-65 (SDNY 2023); *Miller*, Slip Op. at *16 ("Some meaningful sanction for these misrepresentations is absolutely necessary, but the court reserves imposition of harsher sanctions for Attorney Harp's dishonesty in attempting to cover up his AI usage") ("*Miller*").[15]  That is, "[l]awyers make errors. Competent and ethical lawyers own them." *Miller*, Slip Op. at *32.   And here, past the beginnings of what looks like

---

[13] *Available at* https://storage.courtlistener.com/recap/gov.uscourts.alnd.191468/gov.uscourts.alnd.191468.39.0.pdf

[14] Indeed, like Defendant's counsel here, one of the excuses the lawyer in *Miller* offered was that the principles were right, and he made an ordinary mistake putting them in quotations.

[15] *Available at* https://storage.courtlistener.com/recap/gov.uscourts.alnd.191468/gov.uscourts.alnd.191468.39.0.pdf

cover-up, the basic fact is reasonable warnings are not being heard, and because the Court has not issued an order to show cause the warnings are encouraging still more cover-up, as counsel feels comfortable simply declaring — after obviously wrong citations — that there were no issues at all and "the judge is not hearing it and quite understandably." 2026-05-11 Tr. at 26:12-18.[16]

That is, even as the Court literally issues a "on the record warning to Defendant's counsel of his obligations to … exercise due diligence when citing case law" (May 12, 2026), what counsel has heard instead was the message that that "the judge is not hearing it and quite understandably." 2026-05-11 Tr. at 26:12-18. That is, the lack of tangible consequences or even a demand for an explanation means the Court below's warnings did and continue to fall on deaf ears. Indeed, even when the citations above were challenged, the response was not to accept responsibility, but a formalized version of the "none of your fucking business" (ECF No. 69-2) offered outside of the Court's presence. *See, e.g.,* 2026-05-11 Tr. at 26:12-18; *accord Twigg v BSN Sports, Inc.*, 2026 US Dist LEXIS 113089, at *25 (MD Pa May 21, 2026). Again, even while the Court was ***giving a warning***, counsel heard not a warning, but encouragement: Not apologizing for the errors, but declaring he was right and saying "the judge is not hearing it and quite understandably." *Id.*

Of course, as counsel himself acknowledged as his client was being sanctioned, "being sanctioned … often focuses the attention." 2026-04-21 Tr. at 33:24-34:02. *Accord, e.g., Gauthier v Goodyear Tire & Rubber Co.*, 2024 US Dist LEXIS 214029, at *7 (ED Tex Nov. 25, 2024) ("It was only after the court entered the Show Cause Order that Monk sought leave to

---

[16] The full context was Defendant's counsel talking to Plaintiff's counsel, rather than the Court, saying, "You called my cases hallucinations when in fact every one of those cases not only existed but said exactly what I said they did. You are absolutely obsessed with the idea of getting a sanction against me because it's very personal to you because this is -- and the judge is not hearing it and quite understandably."

13

amend the Response" containing hallucinated citations).  With the clear lack of care here, "the attention" needs some help with focus; and the first step in figuring out how to get that focus is to ask, "how did this happen?"  As one Judge at the First Department recently quipped at oral argument, "We're bringing this to your attention, so you may explain, if possible, how this occurred."  Oral Argument, *Landberg v. City of New York*, 2025-02380 (May 20, 2026).[17]  The same question exists here — and no plausible or even colorable explanation has been given.  Yet, on a request, the Court below declined to even ask the question.

The way a District Court asks "how this occurred" is through an order to show cause.  And depending on the answer to that question the Court can determine whether a sanction — not just more warnings — are required to further focus the attention.  Contrary to the Court below's view, it should have issued an order to show cause.

## I.      The Court Below made a Legal Error in Finding Frivolous Conduct Needed to Directly Impact the Court Itself to Trigger an Order to Show Cause.

In explaining its reasoning, the Court below seemed to say it did not think it could issue an order to show cause requiring an explanation because counsel's "mis-citations honestly have not caused a particular burden in this particular one to the Court."  2026-05-11 at 36:2-24.  That view may have intuitive appeal, but it is a mistake of law — and a misunderstanding of ***when*** hallucinations have burdened courts in past cases.

### a.      An order to show cause is the first step required when there are indicia of hallucinated authority.

To start, the plain text of Rule 11 does not require an impact on the Court — conduct is frivolous upon "presenting to the court a pleading, written motion, or other paper."  Fed. R. Civ.

---

[17] *Available online at* https://cmi.nycourts.gov/vod/WowzaPlayer/ad2/OA1779285484.mp4

P. 11(b).[18]  From there, the Court "may impose an appropriate sanction" immediately upon a "determin[ation] that Rule 11(b) has been violated."  Fed. R. Civ. P. 11(c)(1).[19]  When LLM hallucinations are found, as other Courts in this district have found, the Court is "left with no choice but to impose sanctions under Rule 11 which is well in line with the developing case law."  *Superb Motors*, 2026 US Dist LEXIS 95581, at *6.

An order to show cause is merely the first step Rule 11 requires in instances like this: Sanctions may only issue "after notice and a reasonable opportunity to respond," after which the question is whether "the court determines that Rule 11(b) has been violated."  Fed. R. Civ. P. 11(c)(1).

> b.  A core, relevant harm that makes A.I. hallucinations sanctionable is the burden on parties.

Beyond the plain text, courts explaining why A.I. hallucinations warrant essentially automatic sanctions routinely recite their impact not just the Court but on opposing litigants. Indeed, the ***first*** harm the *Mata* court itself highlighted had nothing to do with the Court:

> "Many harms flow from the submission of fake opinions.  The opposing party wastes time and money in exposing the deception."

*Mata v Avianca, Inc.*, 678 F Supp 3d at 448.[20]  The fact that, additionally, the "Court's time is taken from other important endeavors" is the second.  *Id.* Indeed, ***most*** cases of hallucinations

---

[18] No one disputed that, per *Mata* and the ever growing body of LLM caselaw, using an LLM to generate citations without reviewing them is sanctionable.  And indeed, sanctionable conduct with LLMs "includes where the fake citations stand for accurate legal principles." *Deutsche Bank Natl. Trust Co. v LeTennier*, ___AD3d___, 2026 NY Slip Op 00040, *4 (3d Dep't 2026).

[19] In light of the timeline for letter motions in this District, Rule 11(c)(2)'s safe harbor is not generally feasible.

[20] *Accord also, for examples, Chakma*, 2026 US Dist LEXIS 111065, at *32 (noting opposing counsel had to "uncover and respond to Defense Counsel's false submissions"); *Morgan v Community Against Violence*, 2023 US Dist LEXIS 190181, at *18 (DNM Oct. 23, 2023) ("including wasting the opposing party's time and money" as the first listed harm); *Crespo*, 2025 US Dist LEXIS 126543, at *3 (emphasizing the lack of consideration of the impact on opposing counsel in crafting a sanction);

involve one side pointing out the hallucinations well before the Court would have read anything — including *Mata* itself.

To be sure, those Courts eventually ***did*** spend time unraveling the hallucinations, but that is not because of some inherent impact that is lacking here; it is because they issued precisely the order to show cause the Court below refused.  In fact, many such orders to show cause come after the pleading or citation has been withdrawn, so there could be no impact on the Court itself. *See, e.g., Jimenez-Fogarty v Fogarty*, 2026 US Dist LEXIS 94006, at *22-23 (SDNY Apr. 29, 2026);[21] *Versant Funding LLC v Teras Breakbulk Ocean Nav. Enters., LLC*, 2025 US Dist LEXIS 98418, at *4-5 (SD Fla May 20, 2025).[22]

      c.   <u>Often, the relevant burden on the Court comes post-order to show cause, because the burden is unraveling the conduct that is the subject of the order to show cause.</u>

Some cases even emphasize that the relevant burden on the Court is ***not*** the burden from unwinding the fake or bad citations, but instead ***post***-order to show cause use of "substantial judicial resources as the court has had to sift through an ever-evolving series of distortions, evasions, and half-explanations designed to obscure rather than illuminate the truth."  *Miller*, Slip Op. at *2.  It is not that issuing the order to show cause requires the Court to have spent some time bamboozled by the fake citations.  Rather, the relevant burden is that the Court —

---

[21] Before the order to show cause was issued, "Hirshowitz's counsel pointed out that Lindsay's objection contained eight false, fake, or 'hallucinated' citations. These suspect citations were described at length and in detail.  In response, Lindsay stated that she was withdrawing the 'specific . . . citations contained within [the objection] that defense counsel has claimed violate Rule 11' while at the same time asserting that she was doing so 'without admission of liability.' In other words, Lindsay again failed to own up to her errors or give any explanation of how they occurred" (citations omitted; alterations in original).

[22] "[A]pproximately two weeks after Plaintiff pointed out the hallucinated case in its Reply, Defendants filed a Notice of Withdrawal of Citation … No explanation was given at that time as to why that case citation was withdrawn. On the same date, May 8, 2025, the Court entered a Paperless Order requiring counsel Lord and Bello to file a response explaining how and why the non-existent case and citation appeared in the Response" (citations omitted).

with the fact that "meaningful sanction for these misrepresentations [in misciting authority] is absolutely necessary" (*Miller,* Slip Op. at *15) — must unravel the conduct period.

In fact, reviewing cases that involve an order to show cause from those listed on the public database one legal scholar started specifically to track A.I. hallucination decisions, it appears a substantial portion of decisions involve no burden on the Court until **after** the order to show cause. *See* Damien Charlotin, *AI Hallucination Cases* (accessed May 26, 2026), available at https://www.damiencharlotin.com/hallucinations/; *see, e.g. Doe v Mount St. Mary High Sch. Corp. of Oklahoma*, 2026 US Dist LEXIS 106280, at *4 (WD Okla May 13, 2026) ("Defendants filed separate reply briefs pointing out that Plaintiffs' response … included reference to legal authorities that were either nonexistent or misleading," Plaintiffs amended to exclude those, and the Court **then** issued an order to show cause); *Fuller v Hyde Sch.*, 2026 US Dist LEXIS 98656, at *2 (D Me May 5, 2026) ("In their reply, Defendants asserted the Response contained inaccurate, misleading, and potentially fabricated sources," and there was back and forth with multiple rounds of correction and errata, before the Court issued an order to show cause); *Lee v. HSBC Bank USA*, 2026 WL 1270038 (C.D. Cal May 7, 2026) (order to show cause "after Defendant pointed out several of Plaintiffs' misrepresentations"); *Wilkes v Canyons Sch. Dist.*, 2026 US Dist LEXIS 99436, at *1 (D Utah May 4, 2026) ("various citations to non-existent case law" were "identified" by opposing party). *Cf. Superb Motors Inc. v Deo,* 2026 US Dist LEXIS 95581, at *2-3 (EDNY Apr. 30, 2026) (OSC issued after "the Court independently found – **with little effort** – another fake citation") (emphasis added).

So here, the only reason the only reason there was no "particular burden …to the Court" (2026-05-11 at 36:2-24) was because the Court below elected **not** to "sift through" (*Miller*, Slip Op. at *2) the conduct in the first instance. It would be perverse to say that the Court cannot

17

issue an order to show cause about A.I. hallucinations that were withdrawn (as they are in most of the cases cited herein) *because* issuing that order to show cause would be the Court self-imposing some burden.

Again, the point is not that it was not understandable the Court below was focused on other things.  Courts are very busy.  Jurisdictional discovery in this case has been a morass, and the Court below is understandably focused on getting done what should have been done months ago.  But the point is that the relevant burden on the Court in all these cases is the burden *after* the order to show cause — and indeed, the basic carelessness and dishonesty inherent in the fake and mis-citations to date is part and parcel of *why* jurisdictional continues to drag, not a sideshow.

Ultimately, declining to even ask why the misconduct keeps happening runs into precisely the caution Courts offer in ultimately issuing post-order to show cause sanctions:

> "If such behavior does not lead to rapidly escalating sanctions, lawyers will have no incentive to be candid with the court when they are caught making such misrepresentations in their filings."

*Miller*, Slip Op. at *30.  That is precisely the problem here:  Given the path to date, it is clear Defendant's counsel sees no incentive "to be candid with the court when [he has been] caught" (*id.*), precisely because he has only seen warnings without teeth.

The problem — the reason Plaintiff is taking this appear — is this:  The Court below appears to, essentially, be relying on the fact that Plaintiff's counsel is diligent enough for both sides.  In preparing papers, opposing motions, or even just reviewing discovery, Plaintiff's counsel can no longer rely on basic Rule 11 obligations.  Each citation needs to be thoroughly checked. *Kettering Adventist Healthcare v Collier*, 2026 US Dist LEXIS 124, at *34-43 (SD Ohio Jan. 2, 2026) (Court recusing after hallucinations, because "trust cannot be rebuilt with the

18

undersigned"). And indeed, such conduct — beginning with leaving citations "unexplained and unapologized for, in spite of their conduct twice having been brought to their attention by opposing counsel" — "if it is allowed to become the norm, threatens the very foundation of our legal system and the rule of law." *Id.*

To be sure, the conduct in *Kettering* — and for that matter, *Miller* (although the conduct that made *Miller* so serious all happened ***after*** an order to show cause) — is much more severe than the conduct here. But it also has striking parallels. For example, in *Kettering,* "even after being put on notice by Kettering that three cases cited in Collier and Scott's Motion did not state what Collier and Scott represented that they did, Collier and Scott cited those very same cases for the very same propositions of law in their later Reply." *Id.* at *29. Counsel did the exact same thing here — and took it a step further by tripling down even when the Court pointed it out. *See, e.g.,* ECF No. 61 (fake quote from *Hickman*); ECF No. 64 (pointing out the quote was fake); ECF No. 66 (using the same quote again); 2026-04-21 Tr. at 7:18-8:10 (counsel baldly declaring "there are no cases that is -- I'm not aware of an actual case that has been miscited" after the Court said "there do appear to be several examples where there are quotes that are not -- that don't appear in the cited cases"). By a similar token, the situation would be much different if "counsel wrote a letter to the Court acknowledging the false citations, withdrawing them, and apologizing." *Doe v Trustees of Columbia Univ. in the City of NY*, 2026 NY Slip Op 31902[U], *3 (Sup Ct, NY County 2026). Or, as another court put it:

> "When lawyers are caught submitting AI-generated misrepresentations to the court, they have two options: they can either admit to their mistakes and show contrition, or they can attempt to cover up their mistakes and demonstrate a weakness of character unsuited to the legal profession. If they choose the former path, they will likely preserve their standing before the court. If they choose the latter, they may well lose their career."

*Miller*, Slip Op. at 32.

If counsel had acknowledged the mistakes, explained them, and apologized, there might well be a reason to think the conduct would not continue without the Court seeking to get an explanation. But given the aggressive response from counsel (*accord Twigg*, 2026 US Dist LEXIS 113089, at *25; 2026-05-11 Tr. at 26:12-18), another warning is insufficient. **Some** inquiry is necessary, because some explanation is necessary.

All told, the Court below's perception that some "particular burden …to the Court" was required before an order to show cause — or even that it was "strange" or unusual for a hallucination "order to show cause" to issue "on something that didn't really impact" the Court — was a mistake of law. 2026-05-11 at 36:2-24.

Given that, the Court should reverse.

**II.    The Explanation Offered is Not Colorable, the Conduct is Sanctionable, and the Indicia of Careless A.I. Use Require an Order to Show Cause to Find Out What Happened.**

In an abundance of caution, while the Court below did not address this issue, Plaintiff also addresses — as explored above in the procedural history — that there are sufficient indicia that the citations here were hallucinated to require an order to show cause.

To start, a bare declaration that no LLM was used to generate the citations is often what *triggers* an order to show cause — not the end point. *See, e.g., Hayes,* 763 F Supp 3d at 1066 (initial and consistent denial, but one the Court found not credible); *Mata*, 678 F Supp 3d at 451 (initial denial, but after order to show cause, "it was later revealed, Mr. Schwartz had used ChatGPT, which fabricated the cited cases"); *Miller*, Slip Op. at *13 ("Attorney Harp has never admitted that he used generative AI to draft the filing or create the specific quotations at issue"). Defendant's counsel's seeming claim he personally drafted the citations here — and reviewed the previous fake quotes — raises more questions than it answers: There is no plausible

20

*mechanism* for the kind of mistake he made absent an LLM, unless he was citing cases by literally typing in random numbers.  To be clear, counsel has never ***directly*** denied the fake and mis-citations that litter the docket were generated by an LLM — and his response is much like that in another case where sanctions issues.  *See, e.g., Twigg v BSN Sports, Inc.*, 2026 US Dist LEXIS 113089, at *25 (MD Pa May 21, 2026) ("Mr. Mattiacci responded to Defendants notation of these errors with vitriol, claiming that these fictitious citations were 'clerical errors,' 'scrivener's error[s],' or 'minor technical discrepancies'").

And of course, if it were true that counsel generated the mis-citations by hand by typing in random numbers, that stunning lack of care would call for sanctions on its own.  As a number of recent decisions explain, it is sanctionable for a lawyer to think "he need not worry about the granular accuracy of his citations":

> "If any lawyer is under the misapprehension that, as long as he brings the correct issues to the court's attention, the court will come to the correct conclusion on its own and therefore he need not worry about the granular accuracy of his citations, that lawyer must shift his mindset. The importance of this topic is not solely rooted in some high-minded ideal of the legal profession as an honorable one. In order to fairly, efficiently, and, above all, accurately adjudicate cases, federal courts must be able to rely on the specific authorities cited by parties, not simply the broad principles of law they state. The federal judiciary has neither the resources nor the obligation to do a lawyer's job for him, especially given his clients are already paying him to do that job. Every second the court spends doing a lawyer's job for him … is a disservice to his clients and a waste of taxpayer dollars that needlessly defers other necessary work.

*State Natl. Ins. Co. v Treadwell*, 2026 US Dist LEXIS 72098, at *5 (ND Ala Mar. 26, 2026) (emphasis added); *see also, Miller*, Slip Op. at *10 (same).  The use of LLMs just makes the relevant misconduct obvious and provable — and when Courts have no direct "proof of such usage, the court need not make a finding of AI usage to sanction an attorney for making misrepresentations to the court." *Miller*, Slip Op. at *13 n. 1.

21

Put simply, the purpose of an order to show cause in these kinds of cases is to find out *how* the mistakes were made. Sometimes, that explanation provides a basis to decline sanctions. Other times, a lack of candor in the response makes things worse. But the Court below erred in not asking the question — and as explained above, did so based on a legal mistake.[23]

## CONCLUSION

For all the reasons discussed herein, Plaintiff respectfully requests that the Court overrule the Magistrate Judge's Order and enter an order to show cause directing Defendant's counsel to explain how the citation errors in ECF No. 88 — and those across the rest of the docket — came to be.

Dated:    May 26, 2026
          Queens, New York


                                Respectfully Submitted,
                                     /s/
                                _____
                                J. Remy Green
                                COHEN&GREEN P.L.L.C.
                                1639 Centre Street, Suite 216
                                Ridgewood, NY 11385
                                (929) 888.9480 (telephone)
                                (929) 888.9457 (facsimile)
                                remy@femmelaw.com

---

[23] To be clear, the Court below was acting under difficult circumstances, and in a context with a more pressing emergency: The fact that the same lawyer carelessly filed bank information on the docket. But that does not mean it was proper to *never* address the frivolous citations in Defendant's papers.

22