UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
ALYSSA MERCANTE,                : 24-cv-08471-MKB-LKE
                               :
             Plaintiff,        :
                               :
   - versus -                  : U.S. Courthouse
                               : Brooklyn, New York
JEFF TARZIA,                   :
                               : May 11, 2026
             Defendant         :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiff**:        **Remy Green, Esq.**
                             Cohen&Green P.L.L.C.
                             1639 Centre Street, Suite 216
                             Ridgewood, NY 11385


**For the Defendant**:        **Ronald D. Coleman, Esq.**
                             Coleman Law Firm, PC
                             50 Park Place, Suite 1105
                             Newark, NJ 07102




**Transcription Service**:    **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             RL.Transcriptions2@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE CLERK:  Motion Hearing, 24-cv-8471.  Can everyone state their appearance for the record?

MX. GREEN:  Good afternoon.  This is Remy Green from Cohen&Green PLLC for plaintiffs.  A couple of other folks from our side are on the line but I'll just be the one speaking.

I should appear in any transcript as Mx. Green spelled M-X period rather than Mr. or Ms.

THE COURT:  Good afternoon.

MR. COLEMAN:  Ronald Coleman for the defendant.

THE COURT:  Good afternoon.  So there's been a lot of filings in the last 48 hours over the weekend today.  I also note for the record since there are other people who are on this call, members of the public, that I'm going to ask everyone to refrain from referring to any confidential or sealed information.  The Court sealed docket 88 last night and the Court sealed docket entry 91 today.

So before we move further, is there anything else that needs to be sealed while the parties figure out appropriate public documents to file.

MX. GREEN:  Your Honor, I think we would have asked for document 92 to be sealed.  We emailed about that.  But I think the cat is out of the bag on that one and it is, you know --

3

Proceedings

THE COURT:  I don't see a basis for sealing that one to be perfectly honest.

MX. GREEN:  Okay.  I think it would not have been sealed immediately.  The idea was at least until we could get our, you know, get our bank to transfer all of our money out of the account that has been leaked.  We would have hoped no notice went out on the docket letting people know that, you know, there was a place they could go to find it.

THE COURT:  But I was confused by that.  The place they could go to find it is a sealed document.

MX. GREEN:  Well, they can also --

THE COURT:  We sealed 88 last night.

MX. GREEN:  I'm not going to say more except that that document is already out (inaudible).

THE COURT:  No, okay, I understand that it was out before then, but we did seal it last night.  So by the time, just so I understand the chronology, by the time 92 was filed, 88 was already sealed.

MX. GREEN:  That's correct.  The idea is just like there's two issues.  I mean again, as I said, it's moot at this point but there are two things.  One, that you know, in these types of communities if you tell them they can't have something, they decide to spread it further.  So we were hoping that no one would say that

4

Proceedings

they weren't getting to have something.

And the other thing is, you know, it is still -- and I should note that Kiwi Farms is one of Mr. Coleman's other clients.  But you know --

THE COURT:  It looks like, by the way, we did seal 92 temporarily.

MX. GREEN:  Oh, okay.  Great.

THE COURT:  It looks like we did.  But I --

MX. GREEN:  Which is all we would have been looking for.

THE COURT:  -- would be inclined to unseal that as soon as possible.  So when would we be able --

MX. GREEN:  That would be all we're asking for. But again, this call is on a public line.  The notice of the hearing was --

THE COURT:  Right.

MX. GREEN:  So it is what it is at this point.

THE COURT:  Okay.  So in that regard, when can I --

MX. GREEN:  So I'd ask for, I'm sorry, Wednesday probably.  I genuinely don't know.  I've been on the phone with the bank all day.  Our accountant has been on the phone with the bank all day.

THE COURT:  All right.  So I would ask then that you submit a letter on Wednesday concerning --

5

Proceedings

MX. GREEN:  Of course.

THE COURT:  -- when we can unseal.

Turning to the fees application, so for some reason the parties seem to be unable to engage in just normal negotiations.  What I anticipated is that plaintiff would give their attorneys' fee number and defendant -- I anticipated in this case there would be objections to the amount but that there would be a negotiation.

And I read the letters that were submitted.  And the tone on both sides makes it impossible for the parties to actually negotiate with each other.  And I really mean that on both sides.

I will tell you now I'm not inclined to award $20,000 in fees for those two motions.  So I strongly encourage the parties to negotiate.  But if the parties feel that they cannot do that, then we can brief it.

I will also tell you I'm not awarding fees on fees.  So if we're briefing it, there's not going to be a separate award for fees on fees because I do think the $20,000 number is high.  I'm not going to say how high.  I think there's stuff that could be shaved off of that.

But I really think that this is something the parties should have been able to work out if they actually spoke to each other rather than going back and

6

Proceedings

forth in vitriolic letters to each other.  So --

MX. GREEN:  Your Honor?

THE COURT:  Go ahead.

MX. GREEN:  At least until what we filed on Saturday, I certainly don't think we were in a (indiscernible) register.  I mean I repeatedly just asked, as you suggested, that defendants make some offer so we could negotiate.  I do think once they missed the deadline and submitted something that was still, what looked like hallucination, yes, the register changed. But I just, I don't think it is fair to us to suggest that we were not engaged.  We repeatedly tried to engage.

THE COURT:  Well, I'm not going to totally agree with that because I'm looking at the email from April 30th and there is a tone in here that I understand. I don't know.  It's a different tone than I would use.

And yes, would it have been better for the defendants to offer a number and then to engage in a back and forth so there could be -- yes, that is the normal way to do it.  But instead, everybody just does it.  And everybody does it in a way where -- and it's a little bit mocking.  Both of you engage in this mocking of each other that is really not helpful.

And so I don't know whether any real discussions can be had, whether you think that a

Transcriptions Plus II, Inc.

7

Proceedings

productive conversation can be had to negotiate the speed.  I didn't want the speed issue.  And one of the reasons I deferred ruling on it for a while is I really wanted the parties to work on the discovery and stay focused on the issues and I didn't want these issues to be a huge distraction.  And now it has turned into yet another distraction and back and forth rather than focusing on getting the jurisdictional discovery done.

So how do the parties want to proceed?  We can brief it or if the parties think that they can negotiate with each other, if you want the Court's help in a confidential call, settlement call, I can do that.  Obviously not this call because there are members of the public on it, I can do that as well.  But I don't know how much time and resources the parties want to put into this.  And usually these motions are fairly easy to negotiate, but it seems quite difficult in this case for the parties to talk to each other.

MX. GREEN:  And your Honor, I don't disagree about any of that.  (Indiscernible) settled fee apps (indiscernible) whether under (indiscernible) Rule 68, et cetera.  I don't think -- like again, I do think some of where the number is is coming from rates, not time.  And I would say, you know, I would ask the Court not to prejudge fees on fees.  I think that the case law is

Transcriptions Plus II, Inc.

8

Proceedings

actually quite clear that we're entitled to it if we have to litigate it.

But as far as, you know, what we said in the email, you know, there may have been, I don't know, like I tried to address everything and I do think, you know, what I've said in one of the emails is look, if you think that certain time is problematic, why don't you tell us what the number is with the time you think is problematic excluded?  And if you're offering to pay that, you can think about it.  Right?

I don't know what else we could do to continue to try to be the adults in the room to get defendant to engage with us.  Right?  The problem I don't think is tone.  The problem is whether it is attorney or client, there is no willingness to make any offer about us having to litigate.  And that's the reason we're entitled to fees on fees.

THE COURT:  Well, except in your negotiations you threaten in your emails that, you know, this email alone is $125.  I just think that that's not helpful.  Right?

MX. GREEN:  The reason for that is because they didn't make an offer.  Right?  The point about it is to say --

THE COURT:  Right, but did anybody pick up the

9

Proceedings

phone and call each other and say hey, how much are you willing to pay?

MX. GREEN:  I will admit I did not pick up the phone.  I don't think Mr. Coleman has picked up a call from me in the past.  I'm happy to try that next time. But if, you know -- the point was I repeatedly did say, you know, let's get past all of the -- like I did say let's get past all the rhetoric.  Can we please just talk about numbers and get down to, you know, brass, the phrase I used was brass tacks because yes, I agree this is ridiculous.

You know, they need to tell us how much they're willing to pay and if we can live with it, we can live with it.  If there's something between our two numbers we can live with, we will accept that.  Right?  I don't see how it falls on us to physically force them to make an offer.  I don't think I can do that.

MR. COLEMAN:  May I be heard?

THE COURT:  Right.  Yes, Mr. Coleman, go ahead.

MR. COLEMAN:  This is Mr. Coleman.

THE COURT:  Yes, go ahead.

MR. COLEMAN:  The logic of counsel's argument is that any number that would have been put out by plaintiff would be the number that would set the bracket within which we must negotiate.  And no number,

10

Proceedings

regardless of how unjustifiable it is, would be inappropriate.  My job would be to come back -- so if I would have come back and said $2,000, plaintiff wouldn't have a problem because that would have been my offer and I would have made an offer.

Our view of the matter was give us -- take another look at the scope.  You gave us -- you made a decision to include certain charges.  We've given you a rationale as to why those charges should not be included.  Rerun your numbers and then let's talk about what we can do.

THE COURT:  Well no, Mr. Coleman, that's not how it works.  Right?  Yes, they gave a number and they gave a really high number.  You identified a number of areas that you think should not be included.  Take them all out and then justify your counter offer.  That is how it works.  They are right about that.

So I don't understand like basic conversations do not happen in this case.  So if your response is $2,000, it should be justified.  You should go do it.  Say here's what we took out, here's what we think that you are entitled to.  And then they can respond to that.

I mean it's normal negotiation.  That is what I -- I didn't -- there's no world in this particular case where I thought they were going to give you a number and

11

Proceedings

you were just going to pay it.  But I think they gave you number.  You think it's too high, you think that there are certain categories that should not have been included in their fees amount.  That's fine.  Take it all out.  Give them a number and justify that number.  I mean that is how people do it all the time.  And say hey, here's where I think that you do get it.  You get an amount for drafting and that's this many hours at this rate.  And if you have an issue with the rate, then you can say we don't think that rate is reasonable, here's the rate we think is reasonable.  All of that.

MR. COLEMAN:  Your Honor, I don't think we made any complaints about the rate anywhere.

THE COURT:  Well, that's fine.  I'm not saying you should.  I'm just saying --

MR. COLEMAN:  No, but --

THE COURT:  -- whatever your number is --

MR. COLEMAN:  -- counsel has said that I did, which I didn't.

THE COURT:  Okay.  But it doesn't matter to me whether you did or didn't.  That's not my point.  My point is if you think that the numbers are too high and that they're padded and that hours should come out, and if it's not about the rate and it's just about the number of hours, fine, then say here are the number of hours

Transcriptions Plus II, Inc.

12

Proceedings

that we think are justified and that we think you're entitled to and that amounts to X amount and that's what we're willing to pay.  And then they would write back to you and they would say, you know, actually we think we're entitled to this and this and you negotiate that.  I mean this is usually pretty easy for people to do.  And I'm not sure what the blockage is here, why we can't get past this.

MR. COLEMAN:  I'm sure we can.  In fact, your Honor, I want to make it very clear that there are -- there have been a number of very cooperative areas where we have worked, you know, hand in hand to get things done.  We prepared a protocol for the Discord access last week and with a slight change from plaintiff, we submitted it to your Honor who entered it promptly and boom, that was taken care of.

So it's not nearly as contentious as the Court might think.  It's only the fun stuff that gets in front of your Honor.

MX. GREEN:  I don't know that I need to address that but I mean that was a (indiscernible) them to produce by the end of January.

THE COURT: Okay.  All right.  Look, let's not go back and revisit stuff that the parties actually agree to.  I was happy to see there was an agreement on that

13

Proceedings

which is why honestly I was a little surprised when everything blew up again this weekend.

So what I want to know now is can the parties negotiate this or should I set a briefing schedule? I'm not going to -- and just to be clear, I understand the May 8th deadline, May 6th. I think there was confusion and maybe lack of clarity on my part. He raised the objection in a timely matter. He didn't raise it to the Court. I'm not going to preclude him from objecting to the fees because he raised it to you and not to me and he raised it to me on May 8th and not May 6th. Okay? So that's not going to happen.

But what I want to know is whether the parties think they can negotiate these fees, whether that would be productive. I would strongly suggest a conversation as opposed to maybe the emails back and forth, but I leave it to the parties to decide that. But Mr. Coleman, you need to make an offer.

MR. COLEMAN: Your Honor, understood. I'll do that. I'll do that no later than --

THE COURT: And I shouldn't have to say this but I'm going to say it anyway, the offer needs to be based on their hours --

MR. COLEMAN: Yes.

THE COURT: -- and what you think justifies --

14

Proceedings

not just a number out of a hat.  Right?

MR. COLEMAN:  Of course, of course.

THE COURT:  These discussions, the numbers have to be based on what they sent to you, the hours they worked, and has to reflect what actually the amount of time spent on filing the motion.

MR. COLEMAN:  We can do that.  We can do that, your Honor, yes.  Thank you.  Understood.  We'll do that by close of business tomorrow.

THE COURT:  Okay.  Mx. Green?

MX. GREEN:  I mean yes.  I mean that has been what we wanted the whole time.

THE COURT:  Okay.  So here's what we're going to do.  By the close of business tomorrow -- I'm going to put this all in an order so that it's -- Mr. Coleman will make an offer on the fees.  How much time do you think you're going to need to respond?

MX. GREEN:  I mean it depends on the level of detail, but honestly the next day is fine.

THE COURT:  Okay.

MX. GREEN:  He has to communicate with the client and I don't.

THE COURT:  Got it.  Okay.  So by close of business then on the 13th you will respond.  And then I'm assuming there may be other rounds.  I'm going to ask for

15

Proceedings

a status update from the parties on Friday, the 15th. And if what the parties say to me is we're negotiating and we want to continue, that's fine. But I just ask the parties to really try to just engage in an offer and counter offer back and forth.

And if the parties want my help, if you get to a point where you're close and you think you just can't get it over the finish line, I'm happy to do a virtual settlement conference to try to resolve the issue.

MX. GREEN:  Thank you, your Honor.

MR. COLEMAN:  Thank you, Judge.

THE COURT:  Okay?  So I'm going to get two letters, one on the 13th on what can be unsealed at that point and anything that should be -- I don't know that anything needs to be re-filed.  I think if that one entry gets unsealed, that's the redacted version, then we should be okay but you can let me know on the letter on the 13th.  Okay?

MX. GREEN:  Yes.

MR. COLEMAN:  Yes, Judge.

THE COURT:  Okay.  Is there anything else today?

MX. GREEN:  Yes, your Honor.  And again, I know that the Court doesn't necessarily want to hear this, but I do think that it continues to be an issue that we're

Transcriptions Plus II, Inc.

Proceedings

dealing with hallucinated filings.

THE COURT: Oh, I read -- yes. So look, I mean I don't like that phrase because I think that raises the temperature. But you know, I don't know what else to do, Mr. Coleman, except to keep asking you to please be more careful in your submissions not just to the Court, but to opposing counsel because it does put extra work on them if they're not able to find the citations and if there is a future motion for fees on something, then that's going to be added hours because that takes longer for them to find everything.

MR. COLEMAN: Understood. Thank you, Judge. Absolutely.

THE COURT: And obviously if there's something filed directly to the Court that we find is not appropriately cited to, then there will be sanctions from the Court.

MR. COLEMAN: Understood.

MX. GREEN: You know, I think that (indiscernible) --

THE COURT: I'm sorry, Mx. Green, you're cutting out all of a sudden. You're choppy. I couldn't hear you.

MX. GREEN: Sure. (Indiscernible) --

THE COURT: I'm sorry, you're cutting out.

17

Proceedings

MX. GREEN:  Do you hear me now?

THE COURT:  Now I can hear you, yes.

MX. GREEN:  Okay.  So I'm trying to find (indiscernible) does not raise temper.  You know, I do have to raise the fact that our level of care, which is the same (indiscernible) led to my firm's bank account information being posted on the docket.  Like it is going to be expensive to fix it.  I just (indiscernible) Mr. Coleman, who does represent Kiwi Farms in another case, as a courtesy, as (indiscernible) --

THE COURT:  I'm sorry, Mx. Green, I'm getting like every other word.  I'm getting the gist of what you're saying but I'm only getting every other word right now.

So just to repeat what I'm hearing is that the expense of the bank account appearing on the docket and the level of care with the filings causes issues.  And then you started to talk about his representation of Kiwi Farms but I couldn't hear anything after that.

MX. GREEN:  Okay.  Is this any better, your Honor?

THE COURT:  Right now it is.

MX. GREEN:  Okay.  I've switched off of wi-fi and moved to a better place I hope.

THE COURT:  Okay.

Transcriptions Plus II, Inc.

18

Proceedings

MX. GREEN:  But you know, as a professional courtesy, Mr. Coleman represents Kiwi Farms, I asked him, you know, he doesn't represent them on this matter, but to reach out to his client to see if the information could be removed.  He said he was not willing to do it because it was outside the scope of his representation.

I asked him if he was willing to in principle agree like if we incur expenses because of this, if there are damages because of this, you know, we don't have to bear them alone.  He said he could not agree to the principle.

This is not the first time Mr. Coleman has violated the confidentiality order on the docket.  We have the hypnotic issue --

MR. COLEMAN:  Whoa whoa whoa whoa whoa whoa --

MX. GREEN:  Mr. Coleman, that's not in dispute. And you know --

MR. COLEMAN:  Yeah, it's in dispute.

MX. GREEN:  And in addition to that, right, obviously this is not how we've litigated the case, but because Mr. Coleman disagrees on whether we are allowed to designate something confidential he decided, and it appears deliberately, that he was allowed to file it. You know, that was the timesheets without any redaction. You know, the confidentiality order does, contrary to his

Transcriptions Plus II, Inc.

19

Proceedings

view I think, allow unilateral designations as kind of the whole structure and we've had to make our motions to de-designate things that we think were not properly designated.  But instead, things are being filed (indiscernible) --

THE COURT:  No, that's correct.  That's true. And Mr. Coleman, if they designate something as confidential, there's a procedure in the protective order to challenge that if you think --

MR. COLEMAN:  Your Honor --

THE COURT:  -- it's improperly designated.  It should not be filed on the docket though with a confidential designation whether you agree with it or not personally --

MR. COLEMAN:  Your Honor --

THE COURT:  -- until it's been de-designated.

MR. COLEMAN:  Okay.  So first of all, I respectfully observe that the Court does not state in its order for this hearing that this issue was going to be discussed.

THE COURT:  I said everything in the last 48 hours.

MR. COLEMAN:  Not in the scheduling order. Having said that --

THE COURT:  The scheduling order, hold on, that

20

Proceedings

I -- hold on a minute.  I don't know whether it actually went out but the draft that I said -- yes, the parties should prepare to discuss all filings over the last 48 hours.  That's what the scheduling order says.

MR. COLEMAN:  Okay.  That's not my recollection but if that's what --

THE COURT:  I'm reading it.  I'm reading it off the scheduling order that's on the docket.

MR. COLEMAN:  Okay.  The parties will be prepared to discuss defendant's objection to plaintiff's Rule 37(c) and plaintiff's motion for the order to show cause.  I don't see anything about 48 hours on that.  I'm looking at the --

MX. GREEN:  Regardless, our order to show cause --

THE COURT:  Wait a minute.

MX. GREEN:  -- addressed the violation --

THE COURT:  I don't know why the docket's not reflecting accurately my order then because I'm looking at the docket and it actually clearly says -- can I ask -- something's going on with the docket.

Mx. Green, which one do you see?

MX. GREEN:  I see the one that Mr. Coleman is describing although I think I'm happy to help troubleshoot this if that is helpful but I --

21

Proceedings

THE COURT:  Oh, I see what happened.  So both were filed.  There was a second one filed immediately after.  You have to refresh your docket.  It was literally edited within minutes.

MX. GREEN:  Your Honor, but I would say that the initial version said our order, our request for an order to show cause and that's specifically addressed.  Right?  That motion raised and then triggered, you know, the posting of our bank account information.  But that -- I'm sorry, that's not quite right.  We missed it in the initial.  But that motion did address the fact that --

THE COURT:  Okay.

MX. GREEN:  -- that's something we had designated confidential and filed on the docket.  It addressed this in the second point.

THE COURT:  Okay.  So we, just to be clear, anyway we posted an order and then posted an amended one minutes later.  If you refresh your ECF, you'll see it.  But that was why what you saw was the first one.

MR. COLEMAN:  Okay.

THE COURT:  Anyway --

MR. COLEMAN:  Okay.  And to get to the substance, your Honor, to get to the substance, our position is that the confidentiality provisions of the protective order apply to discovery, not to anything that

Proceedings

you slap the word confidential on.  It's not a matter of whether we agree that it ought to be confidential.  It is simply not covered by the order.  That would be like --

THE COURT:  But you can't file something on the docket that says confidential on it.  Okay?  I mean --

MR. COLEMAN:  So can I put confidential on the rest of my emails?

THE COURT:  No, if you put confidential on the rest of your emails and then they want to post something on the docket, they have to call you and discuss it with you and challenge it.  I mean I would hope that everybody does this all in good faith, right?  That you're not putting confidential on an email that's not supposed to be confidential.  I expect everybody to operate in good faith in this regard and not use it as a tactic.  But if they put confidential and you disagreed with it, then you should have challenged it and asked them and you could have sent a letter to the Court saying we want to post this but we can't because -- and you file it under seal and say we disagree with this designation.

MR. COLEMAN:  Well, your Honor, as we explained in our response --

THE COURT:  But there's a process.

MR. COLEMAN:  As we explained in our response, this entire motion was occasioned by a five minutes

Proceedings

before the close of business email from counsel agreeing, sending wire instructions as if there had not been an objection by us.  And we could certainly see that if plaintiff's position was that two days late, according to their reading of the order which evidently would have required us to make a submission to the Court, not to object to plaintiff.  Then waiting until --

MX. GREEN:  That's literally what the Court said.

MR. COLEMAN:  Then waiting until Monday would have been an even --

THE COURT:  But you could have filed it under appeal.

MR. COLEMAN:  -- greater prejudice.  So your Honor, we really didn't have time for that.

THE COURT:  Why?

MR. COLEMAN:  Because by the time we saw this email that was sent at the end of the day, it was almost Friday night.

THE COURT:  But you didn't have to --

MR. COLEMAN:  And on Friday night, I can't respond.

THE COURT:  -- put the attachments.  Right? You can file a letter on the docket saying --

MR. COLEMAN:  Yes, and --

24

Proceedings

THE COURT:  -- and you could have --

MR. COLEMAN:  I agree.

THE COURT:  -- (inaudible) and then -- I mean it doesn't -- I have to say like just because it's a weekend or short on time, I mean I was responding on Sunday night to the emergency application to seal.  So --

MR. COLEMAN:  I spent all Sunday writing motion papers for this case as well, your Honor.

THE COURT:  Okay.  But I'm a little differently positioned than you are in your case.  Okay?  And emergencies created by the parties don't necessarily need to become my emergency.  But that's what happened.  So what I'm telling you --

MR. COLEMAN:  It won't happen again.

THE COURT:  -- if something is designated as confidential and you disagree with it, you cannot file it on the docket until you work that this agreement out. And if it's confidential, until that issue is worked out, it should be filed under seal.

And if you can't file the exhibit, then you tell the Court I would attach exhibits but right now they're confidential.  It's Friday night, I cannot do it under seal till Monday morning, then fine.  But there are other ways -- you don't just post it on the docket because that creates an issue for the Court to deal with

25

Proceedings

over the weekend.

MR. COLEMAN:  I apologize for any additional, for that additional burden.  It certainly was avoidable and we won't let it happen again.

THE COURT:  All right.  Well, we have a procedure now in place for the parties to deal with the fees.  I hope the parties can talk to each other and try to work out the fees issue.  And like I said, I remain available to (audio cut out) can't quite get there.

MX. GREEN:  Your Honor, we hammered out let's call it the merits of that issue but I do think our motion for an order to show cause is outstanding.  And again, like we have this carelessness issue with the citations, the carelessness issue with like -- I just -- it is unfathomable to me that an attorney thinks that just putting a white box over part of the document is a proper redaction.  I mean this is -- it's a shocker.  I have been -- and you know, I also don't understand how someone can think that if you don't agree that the process was proper for a confidentiality designation, you do whatever you want.  I mean, you know, the confidentiality order also says you can't mass designate, you have to do it line by line and that's page by page. When we disagreed with that, we --

THE COURT:  Okay.  Mx. Green, I just said that

26

Proceedings

if he continues to do that that he will face sanctions. So I don't understand  the point of another order to show cause.  I just addressed it.

MX. GREEN:  I mean, your Honor, I think like I have spent the past 48 hours or 24 hours dealing with emergency bank things because Mr. Coleman posted my firm's bank information online.  I had to file something over the weekend, an order to show cause, because of those hallucinated citations --

MR. COLEMAN:  No, you didn't.  No, you didn't.

MX. GREEN:  Okay.

MR. COLEMAN:  You called my cases hallucinations when in fact every one of those cases not only existed but said exactly what I said they did.  You are absolutely obsessed with the idea of getting a sanction against me because it's very personal to you because this is -- and the judge is not hearing it and quite understandably.

MX. GREEN:  Your Honor, this is the problem. This is why we can't talk to each other.

THE COURT:  All right.  I'm not imposing sanctions now.  I have given the warning.  I have told them that if it happens again, particularly with the filing of the confidential documents on the docket, that there will be sanctions.  If you file something to the

27
Proceedings

Court that contains fake citations or something rising to a level that warrants appropriate sanctions, then I will consider that at that time.

I'm not going to award sanctions based on citation errors in letters between the parties at this time.

MX. GREEN: Your Honor, this wasn't letters between the parties. I'm talking about citations in what he filed seeking relief from the Court.

THE COURT: Well, he filed it as an attachment.

MX. GREEN: No. No, your Honor. He filed it seeking relief from the Court. This is --

MR. COLEMAN: And every case was exactly what I said it was.

MX. GREEN: Again, let's address that because that's not true.

MR. COLEMAN: Yes, it is.

MX. GREEN: Just as it wasn't true last time when Mr. Coleman was insisting they were all accurate --

THE COURT: Okay.

MX. GREEN: -- and the Court checked it. But again, your Honor, this was not in a letter to any party.

THE COURT: I haven't had time to check his cites between the time of the filings and now.

MX. GREEN: I understand.

28

Proceedings

THE COURT:  There's been voluminous sightings in the last 48 hours.  At this point I'm not imposing sanctions today on this.  Okay?  If it continues, then I will reconsider.  I'm not imposing it today.  But I am --

MX. GREEN:  Your Honor, what I'm --

THE COURT:  What?

MX. GREEN:  Sorry.  What I would ask for is that at least in principle like my firm has incurred significant cost in the last 48 hours to address the fact that our bank information was posted to the docket. Again, at a minimum, I would ask for the opportunity to brief sanctions on that.  I do not see how -- like again, I'm not trying to use inflammatory language, but I don't see how the mode of redaction here or the mode of not redaction could be consistent with the duty of competence, with the duty of care --

MR. COLEMAN:  Your Honor, this is just unbelievable.  This attorney is asking --

MX. GREEN:  Mr. Coleman, you posted my bank account information.  You would do well --

MR. COLEMAN:  You have suffered --

MX. GREEN:  -- to calm down a little.

MR. COLEMAN:  -- what damage from that?  What has been the actual cost to you as a result of that?

MX. GREEN:  Your Honor, would you like me to

Transcriptions Plus II, Inc.

Proceedings

respond directly to him?  I understand (indiscernible) --

THE COURT:  I mean I guess I do want to get a sense of what the costs were.  I'm not saying that it was right.  I mean I imagine that there were a letter procedural things that had to happen, but I do want to have an understanding of that.

MX. GREEN:  Yes.  So my -- so we don't know for sure there was no fraud here in principle --

THE COURT:  That there was no what?  Sorry?

MX. GREEN:  That there was no fraud yet.  You know, with somebody's full bank details you can make ACH requests clear that, right, like it is not hard to do that if you are acting maliciously.

As far as costs that we know, I believe there are opening and closing fees for accounts, so those.

MR. COLEMAN:  On the order of what?

THE COURT:  Do you know what they are?

MX. GREEN:  I don't know.  I have had our firm accountant, who we have to pay hourly, working on this all day.  So her hourly --

MR. COLEMAN:  I could have done it for you.

MX. GREEN:  Mr. Coleman, after what you've done in this case, you can understand perhaps why I would not agree to have you --

MR. COLEMAN:  Aw, come on, give me a chance.

Transcriptions Plus II, Inc.

30

Proceedings

THE COURT:  Okay.  All right  Enough, enough, enough.

MX. GREEN:  But our --

MR. COLEMAN:  Your Honor, when does this end? When does -- is there any end to this hearing? Because --

THE COURT:  All right.  I don't know what your costs were and it sounds like you're not even sure what the costs were.

MX. GREEN:  No, we're talking --

THE COURT:  You want to file a motion --

MX. GREEN:  -- about the principle here.

THE COURT:  -- you're free to file a motion.  I think we should resolve the current sanctions motion that's before me today.  At the point you find out what the costs are and it's worth filing a motion, then I leave that to you.  You're free to file a motion.  I'm not stopping you from doing that.  You don't need an order to show cause to do that.

MX. GREEN:  No, I understand that.  Again, it is -- and I do think this is part of why productive discussions -- like I just -- if I had accidentally posted somebody else's bank account information to a docket, I would be apoplectic and apologetic and do everything in my human ability to try to fix it.  And the

31

Proceedings

first thing I would do is say look, like it's on me, any costs you have like send them to me.  I just -- I do not --

MR. COLEMAN:  Send them to me and let's have that discussion.

MX. GREEN:  It took 20 minutes of talking to the Court to get Mr. Coleman to take that step.

MR. COLEMAN:  No, all I said was I wouldn't give you a blank check which is what you wanted me to do.

MX. GREEN:  No, it wasn't.

MR. COLEMAN:  I wanted you to tell me what the costs are.

MX. GREEN:  Mr. Coleman --

THE COURT:  All right, all right, wait.  Okay. So I don't know whether this will be fruitful or not. Let's try it.  I understand your frustration.  The bank account information should never have been posted on the docket.

I am going to give Mr. Coleman the benefit of the doubt that he didn't realize the bank account information was actually getting posted when he was posting confidential information.  It's a big mistake but unfortunately, had attorneys make mistakes with posting things on the docket multiple times.  This was not the first emergency application we've gotten to seal

Proceedings

something that should not have been posted on the docket.

So I'm going to give him the benefit of the doubt that, putting aside the rest of the documents that were confidential that should not have been posted whether you disagreed or agreed with the designation, I'm going to give him the benefit of the doubt that he did not realize the bank account information was in there. Okay?  I understand that you don't give him that benefit of the doubt based on your dealings with him.  I understand that.

MX. GREEN:  I mean, your Honor, it's not just that.  It's --

THE COURT:  I don't think he intentionally posted the bank account information.

MX. GREEN:  I genuinely do not have an opinion on that.

THE COURT:  Okay.

MX. GREEN:  But again, the mode of redaction here, I just -- what he did is he put a white box over the pack, did not flatten the image, did not do -- like I cannot imagine how an attorney with, you know --

THE COURT:  Okay.

MX. GREEN:  -- who knows what the word rasterize means could do that.  Like it --

THE COURT:  Okay.  I understand you don't agree

33

Proceedings

with his practices and you think they're sloppy.  I get it.  But what I'm focused on is the posting of the bank account information.  And to the extent that you think there was any malice in that, I actually think that was a mistake, that he probably didn't realize the bank account information was in there.

MR. COLEMAN:  In fact, your Honor, I will state on the record that I tried to redact it and failed.

THE COURT:  And what do you mean by that?

MR. COLEMAN:  The original document that I filed had a redaction over it but as counselor Green is explaining, there is a -- the document was not as Mr. Green says, Ms. Green says,  was not flattened.

THE COURT:  Oh.  All right.  Okay.  I understand.

MR. COLEMAN:  The underlying information in the document was not removed.  That was my mistake.  In my haste to get the -- I didn't double check as is my usual practice to make sure that not only was the information covered but was also removed as metadata or other accessible data from the PDF document.  I take responsibility for that and I will reimburse his firm for any --

MX. GREEN:  Again, the mis-gendering continues.

MR. COLEMAN:  -- for any clerical costs

34

Proceedings

incurred as a result of it.

THE COURT:  I'm sorry, Mx. Green, what did you say?

MX. GREEN:  The mis-gendering continues.

THE COURT:  Yes, that does need to stop, Mr. Coleman.

MR. COLEMAN:  I'm sorry.  I corrected myself.

MX. GREEN:  No, you didn't.

THE COURT:  Okay.  It does need to stop though. It's happened numerous times in front of me as well.

Okay.  I understand it wasn't that you didn't realize it was there.  You thought you properly redacted it.  I thought the white box was in the later filing.  I now understand what the issue was.  It is sloppiness.  It does need to be addressed.  I hope that you will come up with a way to reimburse Mx. Green.  I'm not ordering sanctions now but I hope that you can talk about.  And if you can't agree on that and if the cost is not covered, then plaintiff is free to make the application.

MR. COLEMAN:  No, we can agree.  We can agree on that.  I'm sure of it.

MX. GREEN:  Okay.  And -- Okay.  That was what we were after.

THE COURT:  Okay?  All right.

MX. GREEN:  Yes.

35

Proceedings

THE COURT:  Is there anything else from either side?  I'm afraid to ask that question but I'm going to.

MX. GREEN:  I know, your Honor.  I think we may want to take a look at an appeal on the hallucination or call it -- again, the issue is I just don't know how you end up with a citation that looks like this, but I --

THE COURT:  An appeal on what?  What you appealing?

MX. GREEN:  The Court's -- I think the Court is declining to issue an order to show cause as to --

THE COURT:  I'm issuing an order that requires him to check his citation and be careful or he will face sanctions.  I'm not sure what the order to show cause you're asking for is.

MX. GREEN:  I mean I think in other hallucination cases what other --

MR. COLEMAN:  This is not a hallucination case.

MX. GREEN:  Again, Mr. Coleman's explanations look a lot like what other attorneys (inaudible) and courts will issue an order to show cause and say okay, but can you explain to me how this happened?  And what we have in this case, right, is we have these citations where what he's saying is he transposed some numbers. Right?  Like 2008 West Law string of numbers.  But the two strings of numbers look nothing like one another.  We

Proceedings

also have the claim --

THE COURT:  But the differences -- this is the weird thing in this procedural -- because all this has happened so quickly, his mis-citations honestly have not caused a particular burden in this particular one to the Court because I haven't even had time to consider that. So you're asking for an order to show cause for the inconvenience that it caused you --

MX. GREEN:  Yes.

THE COURT:  -- but normally when the Court has imposed these types of orders to show cause it's when it's caused the Court difficulty.  And honestly, because of the timing of all of this, I didn't have time to even focus on his citations.  I saw all the letters, I saw your back and forth on it, but I was focused on getting to the other parts of the issues that were before me today.

MX. GREEN:  Right.

THE COURT:  So it's a little strange for me to issue a order to show cause on something that didn't really impact me between last night and today.

So I'm going to issue a warning.  If you want to appeal that warning as being insufficient, then I leave that to you.

MX. GREEN:  Yes.  And I do want to say it's not

Transcriptions Plus II, Inc.

37

Proceedings

just citations, it's also the factual claims.  There were time entries some weeks before the motion that's just not true.

MR. COLEMAN:  In other words, because he disagrees --

MX. GREEN:  They disagree, Mr. Coleman.

MR. COLEMAN:  Because --

MX. GREEN:  Again, you're going (indiscernible due to cross talk) --

MR. COLEMAN:  I'm talking to one person.  I'm sorry.  I'm in the habit of talking to one person.

THE COURT:  Okay.  They disagree.  But just to fact check that for a second, Mr. Coleman said weeks, right?

MX. GREEN:  Yes.

THE COURT:  So looking at it, the motion was filed on the 19th and the first one is the 10th, so it is over a week.  The difference between one week and -- I mean I just -- look, if you want to do that, be my guest.  But I don't think that rises to the level of a sanction as happened in other cases with similar issues.

MX. GREEN:  Your Honor, let me just look at the docket for one second because my memory is that it's not -- it was four days.

THE COURT:  I'm looking at your time entry.

38

Proceedings

MX. GREEN:  Okay.  No, you're right.  It's the 19th.

THE COURT:  Yes.

MX. GREEN:  Yes, okay.

THE COURT:  And your first entry is the 10th.

MX. GREEN:  Yes.  I mean again, that first time entry, here's the meet and confer which the cases that they were citing said meet and confer time is compensable.  So again, I do think like weeks was not true.  The idea that this time is excludable when it's a meet and confer nine days before a motion is filed because -- and again, the case that they were citing had nothing to do with weeks.  It said you don't get time for underlying reviewing discovery which isn't in here.  Again --

THE COURT:  Okay.  But that's not -- all right, look, you can make your motion if you want.  I leave that to you.

MX. GREEN:  Yes.  All I was trying to get at is (indiscernible) consider it --

THE COURT:  I think --

MX. GREEN:  -- we would like an appealable piece of paper.

THE COURT:  And appeal -- I don't know what you mean by that.  I'm going to issue my order today and --

Transcriptions Plus II, Inc.

39

                        Proceedings

            MX. GREEN:  Okay.

            THE COURT:  -- you should feel free to do what
you want with it.

            Okay.  Anything else?

            MR. COLEMAN:  Not from defendant.

            MX. GREEN:  No.

            THE COURT:  Okay.  All right.  Thank you, all.

                    (Matter concluded)

                        -oOo-

40

**C E R T I F I C A T E**


I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.


I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.


IN WITNESS WHEREOF, I hereunto set my hand this **19th** day of **May**, 2026.


_____

Transcriptions Plus II, Inc.