**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALYSSA MERCANTE,<br><br>       *Plaintiff,*<br>     v.<br><br><br>JEFF TARZIA,<br><br>       *Defendant* | **Case No. 24-cv-8471 (MKB) (LKE)** |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT FOR DEFENDANT'S FILING BANK ACCOUNT AND OTHER CONFIDENTIAL INFORMATION

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com


**KAMERMAN, UNCYK, SONIKER,**
   **& KLEIN, PC**
Lane A. Haygood
1700 Broadway, 16th Floor
New York, New York 10019
Tel. 646.845.6085

*Attorneys for Plaintiff*


June 10, 2026

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iv

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL & PROCEDURAL HISTORY ............................................................. 2

    a.    Defendant's counsel has carelessly filed confidential information on the docket two other times. ........................................................................................................................................ 2

    b.    Defendant's counsel filed bank information without proper redaction. ............................ 5

    c.    The leak required significant, emergency work to address................................................. 6

    d.    Counsel eventually commits in principle to pay for expenses............................................ 7

    e.    Counsel refuses to engage seriously, forcing this motion.................................................. 8

ARGUMENT ................................................................................................................................. 9

    I.    Counsel's Violation of the Confidentiality Order Calls for Sanctions and Contempt...... 10

        a. Contempt is appropriate................................................................................................... 10

            i. The order violated was unambiguous. ......................................................................... 11

            ii. Proof of non-compliance is clear and convincing........................................................ 11

            iii.    There was no reasonable diligence. ........................................................................ 11

        b. For substantially the same reasons, the Court should issue sanctions. ............................ 13

    II.    The Court Should Certify Contempt and Issue Appropriate Sanctions............................ 13

a. The Court should certify the facts constituting contempt, and the District Judge should impose contempt. ........................................................................................... 14

b. The Court should issue appropriate Rule 37 sanctions. ................................................. 14

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Church v Steller*,
  35 F Supp 2d 215 (NDNY 1999)...................................................................................... 14

*Cine Forty-Second St. Theatre Corp. v Allied Artists Pictures Corp.*,
  602 F2d 1062 (2d Cir. 1979) ........................................................................................... 14

*Coburn v. City of New York*,
  05-cv-7623 (SDNY) (oral order and decision) ...................................................... 12, 14

*Denis v County of Nassau*,
  2019 US Dist LEXIS 223057 (EDNY Dec. 31, 2019)....................................................*passim*

*Fannie Mae v C.Y. Gold LLC*,
  2025 US Dist LEXIS 128562 (EDNY July 7, 2025).............................................................. 14

*EEOC v Local 638*,
  81 F3d 1162 (2d Cir 1996) ....................................................................................... 10, 14

*In re Lunden*,
  524 BR 410 (Bankr D Mass 2015) ................................................................................. 2, 10

*National Hockey League v Metro. Hockey Club*,
  427 US 639 (1976) ......................................................................................................... 14

*Trueman v NY State Canal Corp.*, 2010 US Dist LEXIS 16430 (NDNY Feb. 24, 2010) .............. 6

*United States v Rahman*,
  189 F3d 88 (2d Cir 1999) ............................................................................................... 11

*Williams v Johanns*,
  529 F Supp 2d 22 (DDC 2008)..................................................................................... 2, 10


**Statutes and Rules**

28 U.S.C. § 636(e) ....................................................................................................... 14

Fed. R. Civ. P. 37........................................................................................... 13, 14, 15

Fed. R. Civ. P. 37(b)(2)..................................................................................................... 13

## PRELIMINARY STATEMENT

As the Court unfortunately knows at this stage, counsel for Defendant has consistently failed to use due care in this case. This motion concerns — at least as far as severity of the results — the low point of that lack of care: filing an opposing firm's bank account information, unredacted, on the docket.

Before the merits, however, it bears mentioning that this motion did not need to be — and should not have needed to be — filed. The Court strongly encouraged Defendant's counsel to settle the issue:

> "It is sloppiness. It does need to be addressed. I hope that you will come up with a way to reimburse Mx. Green. I'm not ordering sanctions now but I hope that you can talk about. And if you can't agree on that and if the cost is not covered, then plaintiff is free to make the application."

2026-05-11 Tr. at 34:11-21.[1] When the Court pressed in that way, Defendant's counsel seeming agreed to work at settling the issue: "No, we can agree. We can agree on that. I'm sure of it." *Id.* However, and unfortunately predictably at this stage, counsel made an insulting offer of less than 5% of the actual, out of pocket costs imposed by his (to use the Court's description) undisputed "sloppiness," declared he did not think it was reasonable to essentially take ***any*** steps to mitigate his publishing of bank information and then simply stopped responding about the issue despite follow up. And that silence continued despite being raised in a status letter.

Accordingly, now the Court has to decide the issue, with relevant consequences. Filing documents and information designed confidential — as has happened ***three times*** so far in this case — is a violation of a Court order, and accordingly necessary remedies sound in either sanctions, contempt, or both. *See, e.g., Denis v County of Nassau*, 2019 US Dist LEXIS 223057,

---

[1] Page citations in this memorandum are to internal, rather than ECF or global, pages. All quotation marks and citations are omitted, and alterations are accepted, unless otherwise noted.

1

at *28 (EDNY Dec. 31, 2019) (sanctions and attorneys' fees for violation of confidentiality order, but declining contempt because intent was not shown); *In re Lunden*, 524 BR 410, 418-419 (Bankr D Mass 2015) (punitive sanctions and fees); *Williams v Johanns*, 529 F Supp 2d 22, 24 (DDC 2008) (contempt for violating confidentiality order).  More, Defendant has forced Plaintiff to make this motion to simply get the out-of-pocket expenses his counsel's "sloppiness" (2026-05-11 Tr. at 34:11-21) has caused back.  That warrants attorneys' fees.  And last, Defendant's counsel's apparent lack of perspective about the seriousness of his conduct (*see generally,* Green Exs. 1 and 3) suggests that ensuring the deterrent function of sanctions is necessary here, and just making Plaintiff and her counsel whole is insufficient to address the conduct.

Thus, the Court should, certify facts relating to contempt to the District Judge, award compensatory and punitive sanctions, and award attorneys' fees for this motion (and any related litigation).

## RELEVANT FACTUAL & PROCEDURAL HISTORY

As the Court knows, sloppiness has been endemic to Defendant's counsel's handling of this litigation.  As it said directly:  "It is sloppiness. It does need to be addressed."  2026-05-11 Tr. at 34:11-21.  The Court has issued two direct warnings so far about carelessness in filings, not to mention the multiple rounds of warnings that Rule 37 sanctions would follow if responses did not follow the rules and the ultimate sanctions that did follow.  Plaintiff assumes the Court's general familiarity with the problems here and only recaps the most relevant history.

a.  <u>Defendant's counsel has carelessly filed confidential information on the docket two other times.</u>

With that, relevant to this issue, Defendant's counsel has filed confidential information to the docket three times.

2

***First***, in ECF No. 74, Defendant filed a letter — without any reason to include the information anyway — including Defendant's colleague with the pseudonym Hypnotic's full name. That name was designated confidential — a fact that was made clear in every part of the transmission of the settlement demand. Counsel did so in describing a settlement demand's collection of exhibits, even though there was no significance or reason to identify those exhibits. Indeed, the motion (later denied) sought some unspecified remedy for Plaintiff making public that settlement demand ***without the exhibits*** (and with redactions to address the confidentiality designation.[2] Defendant filed that motion on a Sunday evening, and while context might have allowed some inference that the full name was Hypnotic's, it did not confirm as much. Plaintiff's counsel immediately alerted him to the mistake, with no response. Hypnotic's counsel did the same the next morning. Instead of making an appropriate application under seal, Defendant's counsel publicly filed a "replacement" letter that swapped out the names, so that ***both names were on the docket at the same time***.[3]

As far as the excuse, Defendant's counsel declared: "Defendant's letter was filed on an emergency basis Sunday evening, and the inclusion of the witness's name was an oversight. Defendant regrets the error." ECF No. 75 at 2. But there was no emergency outside of counsel's mind. The only relief the letter sought was, per the letter itself, was that "Defendant expects that these issues will be addressed at the status conference scheduled for April 21, 2026." ECF No. 74/75-1 at 5-6. That is, far from an emergency, the next relevant date as far as relief was ***three weeks away***.

---

[2] Given counsel's extensive use of generative AI, and the oddness of mentioning the declaration at all in the letter, it seems possible, if not quite likely, that the reason the name was included was because generative AI was asked to generate a description of the settlement demand and fed the full package — and then counsel filed that description without review.

[3] Hypnotic's counsel confirmed that this was not what was asked for and was upsetting. Green Dec. ¶¶ 18-22.

***Second***, in the same filing as the bank information, Defendant's counsel decided that he did not have to give any regard for a confidentiality designation he believed was improper. As the Court had to explain to counsel:

> "No, that's correct. That's true. And Mr. Coleman, if they designate something as confidential, there's a procedure in the protective order to challenge that if you think … it's improperly designated. It should not be filed on the docket though with a confidential designation whether you agree with it or not  personally … until it's been de-designated."

2026-05-11 Tr. at 19: 6-16. And even with that explanation, because of pushback, the Court had to continue to explain how confidentiality works: "But you can't file something on the docket that says confidential on it. Okay? …But if they put confidential and you disagreed with it, then you should have challenged it and asked them and you could have sent a letter to the Court saying we want to post this but we can't because -- and you file it under seal and say we disagree with this designation. … [T]here's a process." *Id.* at 22:4-20.

Again, the explanation for this ultimately boiled down to a self-imposed emergency: Defendant missed a deadline the Court explicitly said was to file something "with the Court" and otherwise pay by a date certain. 2026-04-21 Tr. at 21:7-19. After waiting two days after the deadline, Plaintiff — given the lack of filing — served payment information. Counsel apparently perceived, despite nothing pending, this as an emergency requiring filing on a Friday night. 2026-05-11 Tr. at 22:23-23:15. As far as following the process, when the Court asked Mr. Coleman why couldn't have "filed it under [s]eal," he brushed it off saying, "we really didn't have time for that." *Id.* The Court noted he did not need to file the exhibits. *Id.* at 23-24. And for that matter, there is absolutely no reason counsel could not have made the application on Saturday evening (after Shabbos) or Sunday — since, as the Court pointed out, there was not reason ***the Court*** should have been working on that issue over the weekend.

4

Instead, the self-imposed deadline created sloppiness, and led to an intentional decision to avoid using the sealing mechanism the Court's Orders in this case mandate, because "we really didn't have time for that." 2026-05-11 Tr. at 22:23-23:15.

Last, before discussing the filing at the core of this motion, in a mirror of the facts about the public filings, Defendant's counsel also twice filed as *ex parte* and sealed a motion without any basis for that filing. *See, e.g.,* ECF No. 77, Apr. 2, 2026 Minute Order; ECF No. 80; Apr. 6, 2026 Minute Order. Defendant apparently — without any basis — filed a motion for a protective order as *ex parte*. The Court plainly directed him "Defendant is directed to refile the motion without the ex parte designation by 4/3/2026." Apr. 2, 2026 Minute Order. But the next day, counsel filed it as *ex parte **again***. So the Court issued another order, directing:

> "Defendant was directed to refile his ex parte Motion for Protective Order 77 without the ex parte designation by 4/3/2026. Instead, Defendant refiled the same 80 motion, ex parte, on 4/5/2026. Defendant is directed to refile the motion on the public docket by 4/7/2026."

Apr. 6, 2026 Minute Order. This also undermines the claim that filing something under seal is so burdensome that it cannot be done quickly — apparently it is easy enough that counsel managed to do it by accident twice.

b.    Defendant's counsel filed bank information without proper redaction.

Core to this motion, in the same unnecessary Friday night filing discussed above, apparently assembled between the close of business and sundown,[4] Defendant included mis-redacted bank information for Plaintiff's counsel's firm. Specifically, rather than a proper redaction, counsel simply placed a white box over the text. Thus, it was simple to move the box

---

[4] That speed also led to the lack of care in citations that is now on appeal, with counsel now admitting his representations to the Court about the use of AI and review of cases were not entirely accurate. *See generally*, ECF No. 99.

out of the way and see the bank details, or otherwise to be able to copy and paste the superficially-obscured details. *See generally*, ECF No. 91; 93-1.

To be clear ***there was absolutely no reason at all to include the email with bank information***. Correspondence between parties should rarely be attached to papers anyway: "correspondence between the parties" is "a type of document generally not filed on the case docket." *Trueman v NY State Canal Corp.*, 2010 US Dist LEXIS 16430, at *5, n 4 (NDNY Feb. 24, 2010). And on this docket, both parties have previously quoted from correspondence when such quotations are necessary without attaching it — as is common practice across this district. There was no reason for Mr. Coleman to attach the email with bank information — and certainly not when he, by his own description, lacked the time to exercise due care.

Users of another of Mr. Coleman's clients — the forum publicly called "Kiwi Farms" — found this information and circulated it. Despite having Kiwi Farms as a client, Mr. Coleman refused to ask his client to take the information down. Green Dec. ¶¶ 7-10.

c.        The leak required significant, emergency work to address.

It may go without saying, but public disclosure of bank information is a major event. There are many, many ways bad actors could use the information empty the accounts, among other things. When it became clear the bank information had been posted, Plaintiff's counsel made an emergency, *ex parte* motion[5] to seal the docket entry. The Court jumped into action too, sealing the entry nearly immediately on a Sunday night.

---

[5] Plaintiff made this motion herself because of how Mr. Coleman handled the motion regarding Hypnotic. This caution proved apt, given that — despite many requests that Mr. Coleman ***not*** file anything that drew more attention to the filing with bank information until Plaintiff's firm could finish transferring funds out of the account and the like — Mr. Coleman decided to ignore those requests and file ECF No. 92. Plaintiff ***then*** had to ask the Court to temporarily seal that document too.

Plaintiff's counsel's firm then had their external accountant drop everything to address the emergency created by Defendant's counsel's mistake. That accountant spent at least 19 hours over 11 days — including more than 7 hours on Monday, May 11 and more than two hours late that Sunday night — to rework the firm's banking solutions to mitigate the risks from Defendant's counsel's carelessness. *See generally*, Green Ex. 2. Counsel too needed to engage in "break glass" type measures, also dropping everything beginning on that Sunday night. Green Dec. ¶¶ 15-16.

     d.     <u>Counsel eventually commits in principle to pay for expenses.</u>

Plaintiff asked counsel if he would "offer to cover any related costs" from the filing. Green Ex. 3 at 4. He initially said no, but asked for more information. Accordingly, Plaintiff specified costs would include things like "[t]he hourly pay for relevant professionals dealing with this emergency." *Id.* at 2. Again, counsel refused to agree even in principle that Plaintiff should not bear the costs of the leak.

At the conference, however, when pressed, counsel seemingly changed his views. Plaintiff tried to press the issue, saying: "if I had accidentally posted somebody else's bank account information to a docket, I would be apoplectic and apologetic and do everything in my human ability to try to fix it. And the first thing I would do is say look, like it's on me, any costs you have like send them to me." 2026-05-11 Tr. at 31:20-32:3. And in response, Mr. Coleman said, "Send them to me and let's have that discussion." *Id.* at 31:6-7.

And the Court gave the summary noted above:

"So I don't know whether this will be fruitful or not. Let's try it. I understand your frustration. The bank account information should never have been posted on the docket.

I am going to give Mr. Coleman the benefit of the doubt that he didn't realize the bank account information was actually getting posted when he was posting confidential information. It's a big mistake but unfortunately, had attorneys make mistakes with posting things on the docket multiple times. … It is sloppiness. It does need to be

7

addressed. I hope that you will come up with a way to reimburse Mx. Green. I'm not ordering sanctions now but I hope that you can talk about. And if you can't agree on that and if the cost is not covered, then plaintiff is free to make the application."

*Id.* at 31-34.  Thus, Mr. Coleman committed, clearly:  "No, we can agree. We can agree on that."

*Id.*

The Court recorded that agreement in its Minute Order:  "Defense counsel also stated his intent to cover the costs of Plaintiff's counsel resulting from the unredacted filing of ECF 88."

> e.  <u>Counsel refuses to engage seriously, forcing this motion.</u>

Accordingly, Plaintiff transmitted the invoice from her counsel's firm's accountant. Green Exs. 1 and 2.  That bill was for about 19 hours for "DATA BREACH MITIGATION" services, billed at the (frankly, criminally low) rate of $260 per hour.  Green Ex. 2.  The relevant professional, Andrea Sun-Mee Jones, has a J.D. and Ph.D. from Harvard and is — at least in Plaintiff's counsel's view — quite possibly the best tax and financial risk professional they've ever met or used.  Green Dec. ¶¶ 11-14.[6]

Instead of engaging seriously, counsel made a token offer premised on basic, sloppy mistakes like not seeming to grasp that Dr. Sun-Mee Jones *was* the firm's accountant.  *See, e.g.,* Green Ex. 1 at 2.  The response was, to put it gently, not exactly the tone one might expect:

"I have your May 22 transmittal of the Extralegal LLC invoice.

At the May 11 hearing I expressed willingness to discuss reasonable, documented costs your firm had incurred in addressing the May 9 docket posting. The Court's May 12 minute order memorialized that stated intent without fixing any amount or formula. Neither the colloquy nor the order created any entitlement to reimbursement of any particular sum or anything at all.

The 19.29 hours of outside attorney work at $260 per hour do not fall within the cost categories discussed at the May 11 hearing or the categories you identified to the Court – namely, bank account opening and closing fees and time spent by your firm's accountant.

---

[6] We include this to make clear we are endlessly grateful to Dr. Sun-Mee Jones for their extraordinary work on this emergency.

It is also not clear that any account closure or reopening was necessary in the first place.[7]

Without conceding any obligation, and entirely voluntarily, I offer $250 in the spirit of the discussion at the May 11 hearing. The offer is not subject to negotiation upward and is not contingent on further documentation. Please advise within a reasonable time whether you accept. Absent acceptance, the offer is withdrawn and I will consider this matter closed.

All rights are reserved."

Green Ex. 1 at 3-4.  Though Plaintiff clarified that Dr. Sun-Mee Jones *is* an accountant, and attempted to have a discussion (albeit while clarifying she would not shoulder the actual, out-of-pocket costs here), Mr. Coleman did not respond further — so he apparently "consider[s] this matter closed." *Id.* at 1-4.  His offer, accordingly, was for less than an hour of the relevant professional's time, despite seeming to concede he agreed to pay for "time spent by your firm's accountant." *Id.*

Likewise, Mr. Coleman did not respond after a status letter made clear a sanctions and contempt motion would be forthcoming.

## ARGUMENT

Violation of a Confidentiality Order is no different than violation of any other Court Order.  Violations should be taken seriously, and they call for sanctions and/or contempt.

Here, there is little question an Order was violated:  Plaintiff designated the bank information confidential, and it was filed publicly nonetheless.  As the Court said, "The bank account information should never have been posted on the docket." 2026-05-11 Tr. at 31-34. And while there are two other, unquestionable violations of the applicable Confidentiality Order — including one in the same filing where Defendant's counsel admitted the violation was intentional and made because he disagreed with the designation and he "really didn't have time for" (2026-05-11 Tr. at 22:23-23:15) doing what the confidentiality order says he "must" (ECF

---

[7] The suggestion that it is unnecessary to address a leaked account is genuinely shocking.

9

No. 52 ¶ 9) — because of the severity of the consequences, and concomitant seeming lack of understanding of the gravity of the situation, this motion primarily focuses on the bank leak.

But given the clarity of the violation of the Court's Orders, the question, instead, is the remedy.  If the bank leak were the only issue, perhaps only reimbursement and no fees or contempt would be appropriate.  But as counsel himself said when saying there was an upside to his client being sanctioned, "being sanctioned … often focuses the attention." 2026-04-21 Tr. at 33:24-34:02.  And as the Court itself said, the endemic "sloppiness" that has pervaded counsel's conduct throughout this case *does* indeed "need[] to be addressed." 2026-05-11 Tr. at 34:11-21.  And as counsel himself has said, sanctions are a good tool for ensuring future focus.

Given the clear lack of understanding shown by counsel's attitude — and apparent lack of even rational, professional, and economic self-interest (*see, e.g.,* Green Dec. ¶¶ 19(a)-(c)) — serious sanctions and contempt are necessary.

## I.      Counsel's Violation of the Confidentiality Order Calls for Sanctions and Contempt.

The legal issues here are not complicated.  As noted above, sanctions and attorneys' fees are common for violation of confidentiality orders.  *Denis v County of Nassau*, 2019 US Dist LEXIS 223057, at *28 (EDNY Dec. 31, 2019); *In re Lunden*, 524 BR 410, 418-419 (Bankr D Mass 2015) (punitive sanctions and fees); *Williams v Johanns*, 529 F Supp 2d 22, 24 (DDC 2008) (contempt for violating confidentiality order).

a.      Contempt is appropriate.

The elements of contempt are well-settled.  The Court must find "the order violated by the contemnor is clear and unambiguous," "the proof of non-compliance is clear and convincing," and "the contemnor was not reasonably diligent in attempting to comply." *EEOC v Local 638*, 81 F3d 1162, 1171 (2d Cir 1996).   "The violation, though, need not be willful." *Id.*

10

### i.    *The order violated was unambiguous.*

The first element does not appear to be in dispute.  The confidentiality order was not ambiguous:  Materials marked confidential may not be filed (*see, e.g.,* ECF No. 52 ¶ 9), and no one has disputed the bank details were marked confidential (*see e.g.,* ECF No. 99 at 24 (showing designation).

### ii.    *Proof of non-compliance is clear and convincing.*

Similarly, the second element does not appear to be in dispute.  Defendant's counsel filed bank information on the docket.  This instance is not like, say, enforcement of an injunction where there is a fact dispute over what happened and whether it fit within an order.  Defendant's counsel did the exact thing barred by the relevant order:  make public something designated confidential .

### iii.    *There was no reasonable diligence.*

Last is reasonable diligence.  Plaintiff's view is simple:  the mode of redaction used cannot be squared with reasonable diligence.  Likewise, other factors undermine diligence.  The history of two other instances of filing confidential materials to the docket, the repeated hallucinations in citations, letters and emails that do not appear to reflect even ***reading*** opposing papers, showing up 15 minutes late for a conference without so much as a phone call, nearly a dozen missed deadlines, and so on.  As the Court explicitly said:  This is "sloppiness" that "needs to be addressed." 2026-05-11 Tr. at 34:11-21.[8]  Since the Court has already explained

---

[8] More, while not a perfect fit, the equitable shape of the doctrine of transferred intent may prove helpful.  The basic idea is typically found in murder cases, and says a fact finder may "attribute or 'transfer' to a defendant who shoots at one person with intent to kill and inadvertently kills another the intent to kill the second person."  United States v Rahman, 189 F3d 88, 141 (2d Cir 1999).  As noted above, Defendant's counsel intended to file — unredacted — copies of something Plaintiff designated confidential, merely because he decided "we really didn't have time for" filing under seal (2026-05-11 Tr. at 22:23-23:15) offers a relevant view as to counsel's intent generally. And "intent" is not the standard.  So, the fact that there is a real argument for intent — not just a lack of reasonable diligence — shows that contempt is appropriate.

11

that the conduct was sloppy, and Defendant has not moved to reconsider, he cannot argue that there was reasonable diligence. *Cf. Deni*s, 2019 US Dist LEXIS 223057, at *23-24 ("although the disclosure was caused in large part by the utter failure to exercise reasonable diligence in handling the request from Attorney Groder, the Court is hard pressed to find that Plaintiff's lawyers were not ***otherwise diligent in attempting to comply with the Confidentiality Order in general***") (emphasis added).

Also helpful here, in Plaintiff's view, are the transcripts from the discussion in front of Judge Karas in *Coburn v. City of New York*, 05-cv-7623 (SDNY), Green Exs. 4 and 5. There, Judge Karas addressed quite explanations for the use of confidential information, and thought out loud about the issues in depth. There, the City had — in a footnote — referenced specifics of medical treatment one of the plaintiffs received, because of its view that those facts were vital for the Court to know. But that material was designated confidential. Judge Karas was clear, he was "prepared to accept the representation that this was not an intentional violation of the protective order" (Green Ex. 5 at 7:7-23) — much as the Court here said "I don't think he intentionally posted the bank account information" (albeit "putting aside the rest of the documents that were confidential that should not have been posted," but ***were*** posted deliberately). 2026-05-11 Tr. at 32:2-14.

But, "wil[l]fulness is not — intentional conduct is not the threshold." Green Ex. 5 at 7:7-23. Ultimately, things boil down to this:

> "The [letter] was filed, the [bank information] was in there. It did violate the protective order. And I think because there were very reasonable and minimal prudent steps that could have been taken to ensure that the sensitive information was not unnecessarily revealed in contravention of the protective order, I think, while I do not hesitate in saying [counsel] did not do this intentionally, I think it was reckless. I think it was acting in disregard of the risk that this information was covered by the protective order, and so, therefore, I do think the protective order was violated by [Defendant's c]ousnel."

12

*Id.* at 11-12. As noted above, there was no reason at all to file a copy of the email with bank details — its only relevance was the fact that it existed. And counsel specifically admitted he did not believe he had time to exercise ordinary care in filing the motion.

Accordingly, contempt is required. And at this stage, the Court should certify the facts above to the District Judge.

b.      For substantially the same reasons, the Court should issue sanctions.

For substantially the same reasons as contempt, the Court should issue sanctions. As explained at length in *Denis*, "failure to abide by a protective order is sanctionable under Rule 37." *Denis*, 2019 US Dist LEXIS 223057, at *25. That is inherent to the design of current Rule 37. *Id., citing* Fed. R. Civ. P. 37 (advisory committee notes to 1970 amendment) (in turn, noting that the 1970 amendment broadened scope of Rule 37(b)(2) to provide for enforcement of orders issued pursuant to Rule 26(c)). In *Denis,* as here, "[t]he reality … is that highly sensitive and confidential [bank] records have been disseminated to non-parties — and remain at large — with significant consequences for [Plaintiff's law firm]." 2019 US Dist LEXIS 223057, at *25-26.

Given the clarity of this issue, Plaintiff says no more for now.

## II.      The Court Should Certify Contempt and Issue Appropriate Sanctions.

Because the relevant conduct took place before Judge Eshkenazi, Plaintiff is assuming this motion will be directed to Judge Eshkenazi in the first instance. Accordingly, the Court should issue Rule 37 and other sanctions on its own and certify the relevant facts for contempt for the District Court. And Plaintiff discusses remedies below.

One touchstone for sanctions of this kind is that the party "damaged by the conduct warranting sanctions should be made whole for the harm it has suffered." *Denis*, 2019 US Dist LEXIS 223057, at *29. But Rule 37 also has deterrence aims, and the sanction should be

13

calibrated to deter similar violations of orders or discovery rules. *Cine Forty-Second St. Theatre Corp. v Allied Artists Pictures Corp.*, 602 F2d 1062, 1068 (2d Cir. 1979) (discussing "the deterrence principle of" *National Hockey League v Metro. Hockey Club*, 427 US 639, 642 (1976)). Meanwhile, civil contempt "may be used either to coerce the defendant into complying with the district court's orders or to compensate the victim of the [party's] contemptuous conduct." *EEOC,* 81 F3d at 1177.

a. <u>The Court should certify the facts constituting contempt, and the District Judge should impose contempt.</u>

"[O]n a motion for contempt, a magistrate judge functions only to certify the facts." *Church v Steller*, 35 F Supp 2d 215, 217 (NDNY 1999); *accord Fannie Mae v C.Y. Gold LLC*, 2025 US Dist LEXIS 128562, at *5 (EDNY July 7, 2025). "In certifying the facts under 28 U.S.C. § 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Fannie Mae*, 2025 US Dist LEXIS 128562, at *5.

Here, the Court should certify to the District Court the facts constituting contempt: (1) Defendant's counsel filed bank information on the docket; (2) that information was designated confidential under an unambiguous order; and (3) Defendant's counsel did not exercise due care when he violated the relevant order. And given that these facts constitute contempt, as explained well by Judge Karas in *Coburn*, the District Judge should ultimately impose contempt.

b. <u>The Court should issue appropriate Rule 37 sanctions.</u>

As noted above, a party "damaged by the conduct warranting sanctions should be made whole for the harm it has suffered." *Denis*, 2019 US Dist LEXIS 223057, at *29. Plaintiff's counsel has paid the bill in Green Ex. 2, and had to pay it because Defendant's counsel violated the confidentiality order.

14

Likewise, because of counsel's apparent lack of perspective or concern on the seriousness of this issue, he has refused to attempt seriously to resolve it — declaring he would simply consider the matter resolved if Plaintiff did not accept a token $250. *See generally,* Green Dec. ¶¶ 22; 23-27. In *Denis*, the Court rightly found that when violation of a confidentiality order required a Rule 37 sanctions motion, the fees for time spent on that motion were part of the relevant damage. 2019 US Dist LEXIS 223057, at *29-34. So, the Court should award those fees.

And given the pervasive carelessness to date, the Court should consider whether more serious sanctions are required to serve the basic deterrence ends Rule 37 is meant to serve. The attitude that accompanies serious missteps that cause others damage here is both disappointing and shocking. *See generally,* Green Dec. ¶¶ 22; 23-27.

15

## <u>CONCLUSION</u>

For all the reasons discussed herein, Plaintiff respectfully requests that the Court certify the facts constituting contempt as described above, the District Judge enter contempt, and the Court award appropriate sanctions (both as and independent of contempt) and contempt remedies.

Dated:        June 10, 2026
              Queens, New York

                              Respectfully Submitted,

                                   /s/
                              _____
                              J. Remy Green
                              **COHEN&GREEN P.L.L.C.**
                              1639 Centre Street, Suite 216
                              Ridgewood, NY 11385
                              (929) 888.9480 (telephone)
                              (929) 888.9457 (facsimile)
                              remy@femmelaw.com

16