**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

ALYSSA MERCANTE,

                           *Plaintiff,*

     v.

JEFF TARZIA,

                         *Defendant.*

Case No.: 24-cv-8471 (MKB) (LKE)

**DECLARATION OF
J. REMY GREEN**

I, Remy Green, being duly sworn, depose and say:

1.     I am a partner at Cohen&Green P.L.L.C., co-counsel for Plaintiff in the case above.

2.     I make this declaration in support of Plaintiff's motion for sanctions, to certify certain facts for contempt, and related relief, as well as to place certain exhibits and facts in my personal knowledge in the record.

3.     Pursuant to Local Rule 83.6(a), to state with "particularity the misconduct complained of, the claim, if any, for damages occasioned thereby, and such evidence as to the amount of damages as may be available to the moving party":

    a.  Defendant's counsel has (without any possible dispute) violated the Court's Confidentiality Order three times: (1) in filing Hypnotic's name on the docket (ECF No. 74); (2) in intentionally filing settlement demand documents explicitly stamped confidential (ECF No. 88); and (3) in filing, whether intentionally or simply as a matter of gross negligence, my firm's bank account information on the public docket (ECF No. 88).

    b.  At the core of this motion is the third: Defendant filed bank account information that he understood was designated confidential on the public docket.

    c.  As explained in the accompanying memorandum (and all the facts discussed therein are incorporated by reference here) Defendant did without taking the minimal reasonable and prudent steps that

1

would have been required to avoid the admitted violation of the Court's Order, including, but not limited to:

    i.  Filing all exhibits under seal, instead of using redactions;

    ii.  Competently redacting the document;

    iii.  Not attaching an email with bank information at all, since the email itself was not relevant and it is not ordinary practice to attach correspondence between counsel anyway; and

    iv.  While it would not have stopped the initial violation, offering to make Plaintiff actually whole, asking another of counsel's clients to take down the bank information, or taking other minimal steps to reduce harm;

    v.  Not filing documents on an "emergency" basis when there is no emergency at all, such that due care can actually be used to review documents for serious missteps like this;

d.  The operative Confidentiality Order (ECF No. 52) is unambiguous: Matter designated "must" not be filed without a "request to seal." ECF No. 52 ¶ 9.

e.  Plaintiff's damages from the conduct above are:

    i.  "A reasonable counsel fee, necessitated by the contempt proceedings" (Local Civ. R. 83.6(a)) and Defendant's related refusal to settle this matter; and

    ii.  The actual damages, as reflected in Ex. 2, below.

**Exhibits**

4.    Attached as **Exhibit 1** is a true copy of an email thread attempting to settle payment of expenses caused by Defendant's counsel's actions in placing certain documents on the docket.

5.    Attached as **Exhibit 2** is a true copy of my firm's accountant's bill specific to expenses from the bank information disclosure.  This bill is a record generated and received in the ordinary course of business.  My firm is covering this bill out of pocket, and at face rate.

6.     Attached as **Exhibit 3** is a true copy of an email thread in advance of the last conference, concerning the filing of the confidential-designated records Defendant's counsel filed intentionally as well as concerning the bank records.

7.     Attached as **Exhibits 4 and 5** respectively are true copies of transcripts from the contempt hearing and Judge Karas's oral decision in the Republican National Convention litigation awarding contempt on similar facts *Coburn v. City of New York*, 05-cv-7623 (SDNY).


**Relevant Facts.**

8.     I am independently aware that Mr. Coleman represents Kiwi Farms in other litigation.

9.     As the Court knows, because of Mr. Coleman's conduct, my firm's bank information was posted on Kiwi Farms.  As seen in Ex. 3 (at 1), I asked Mr. Coleman "whether [he] would be willing to discuss with that client whether removing the post would be feasible."

10.     Of course, he was under no legal obligation to do so.  But standing on that formality does bear on whether, on one hand, he was taking the issue seriously and doing everything he could (not just what he was strictly legally required to do) to fix his mistake, or on the other hand, treating the mistake as a non-issue.

11.     Instead, Mr. Coleman — without explanation — said he "would not be in a position to act as" a channel" for communication in any event."  Ex. 1 at 1. Given that his response was made only one minute after my request, he apparently

did not try or seriously consider whether there was some way he could work with his other client to address this.

12. As far as Dr. Sun-Mee Jones, I am certifying they work as our firm's accountant, tax advisor, and otherwise manage our firm's finances.

13. To be sure, Dr. Sun-Mee Jones has a law degree. But they also have a relevant Ph.D. (both degrees from Harvard), and encyclopedic knowledge of financial risks around issues like the leak of bank information.

14. Dr. Sun-Mee Jones is second to none, across a large number of tax and financial professionals I have worked with in my life. Their services are billed at a criminally low rate, particularly given their credentials, experience, and experience.

15. In a situation like this, where every second presented more risk, their experience was essential: I am aware of no one who could have worked faster with our bank to shut down every risk, who would know exactly what vectors of risk existed, and who could bring that knowledge together to essentially shut off major risks within 24 hours.

16. Alongside Dr. Sun-Mee Jones, I also was working on an emergency basis upon discovering Mr. Coleman's leak.

17. While I intend to make a detailed fee application *after* the Court grants the entitlement (to the extent it cannot be settled given the Court's guidance as far as the last sanction award) — since that is the standard approach — reviewing my time over the relevant week, I also spent many hours addressing the leak.

18.    I should also note that, when Defendant's counsel violated the Confidentiality Order for the first time in filing a copy of Hypnotic's full name despite a designation,[1] I immediately called him on the phone, and sent two emails notifying him with the first within 15 minutes of the mistake. Despite the **motion** apparently being a perceived emergency (though it did not ask the Court to do anything for three weeks), I received no response at all that night when I suggested counsel file a motion.

19.    I also specifically suggested counsel " file [a motion] under seal, it won't hit the docket and accordingly won't point anyone at Hypnotic's name" and seek immediate relief.

20.    Then, that morning, counsel instead filed — on the open docket — a letter that explicitly **connected** Hypnotic to the full name. I sent an email within 2 minutes of that letter saying: "You may want to call the clerk immediately and see if you can get this sealed. This just makes the connection absolutely explicit."

21.    Mr. Coleman said "Yes, I discussed this with Christian" (e.g., Hypnotic's lawyer). However, that lawyer confirmed (perhaps obviously) that Hypnotic **did not consent** to a public motion that made the connection explicit, and in fact, had expected the request to remove the docket item to be filed (as any

---

[1] As alluded to in the accompanying memorandum, the mention of his name has indicia that it came out of the unreviewed use of generative AI: That is, the portion of the letter it is from looks like an LLM summarizing something without context, since the name of the documents attached to the settlement demand as exhibits have nothing to do with the motion at issue (there are some parallels to *Coburn* here as far as the careless and unnecessary specificity) and it is not clear why a **human** would think it relevant to list the fact a declaration was attached to a different letter and use a name the Court would not know or understand even then, since the declaration had little to do with the substance of the motion.

5

reasonable lawyer would have done) under seal, saying "I did not expect him to file the new letter until AFTER the original had been withdrawn or redacted."

22.    I mention all of this because the difference in attitude around real emergencies that impact others and perceived emergencies that impact Defendant and his counsel is striking and revealing.

23.    Last, I should note, given the Court's suggestion that disputes over the appropriate amount of sanctions might be resolved if "anybody pick[ed] up the phone and call[ed] each other [to] say hey, how much are you willing to pay" (2025-05-11 Tr. at 8-9), I called Mr. Coleman and left a message, as well as sent emails noting I'd left that message, and mentioned — in ECF No. 97 — that though I "picked up the phone and tried to speak live, I have not received any further response." ECF No. 97 at 3.

24.    Despite even notifying the Court that I had not received even a basic phone call back, Mr. Coleman has not called me.

25.    I said something similar at the conference, but I should reiterate: It is genuinely shocking to me that Mr. Coleman was not interested in seriously attempting to resolve this. Had it been me that made this grave mistake, I would have paid anything that was not genuinely an outrageous ask, for any number of reasons.

     a. On a purely selfish and rational level, it avoids (likely, if not certain) sanctions or contempt, which have far greater long-term career and professional consequences than a likely confidential agreement to simply cover expenses;

     b. Similarly selfish and rational, it avoids the fact that fees are quite likely, given the sanctions and contempt caselaw;

c. And last as far as selfish and rational reasons, it avoids a written decision that — *even if I did not have to pay the full amount* — would likely be thrown in my face in other cases;

d. More important than the selfish and rational reasons, it's also the right thing to do:  If I carelessly filed another firm's bank information, I would leap into action instantly, make clear any reasonable cost would be coming from my pocket (and neither my adversary's nor my client's), and  otherwise do everything in my power.  Again, absent something in the mid-five digits or higher (it is not exactly shocking that emergency financial efforts take time and skill), the basic fact that *I* made a mistake should not require someone else to pay for it.

26.    And on this topic, the apparent lack of perspective or taking the issue seriously I have seen from Mr. Coleman, even in light of the history of this case, is (again) still shocking to me.  This seems the sort of issue that *should* trigger a general attitude of "I will make it right."  The tone of the various emails leaves some open question of whether Mr. Coleman even understands that violating a Confidentiality Order or posting bank information are serious infractions at all, starting with a failure to even *just click a link* to see that the bank information was posted at all (Ex. 3 at 7-8) and ending with the adversarial and hyper-technical (yet still technically wrong) approach in fighting the notion *any* efforts were necessary to address the leak, and "Absent acceptance, the offer is withdrawn and I will consider this matter closed. All rights are reserved" (Ex. 1 at 3-4).

27.    As I say above, I would rather have just resolved this, gotten my firm's out of pocket costs covered (not even my own fees), and moved forward.  The fact that even having a phone call to discuss that was not something Mr. Coleman was willing to do speaks volumes, and — as explained in the accompanying memorandum — suggests that some deterrent sanctions are essential at this point.

7

I declare, under penalty of perjury, that the statements above are true and correct.


Executed On: June 10, 2026

/s/

_____

J. Remy Green