X74D1RNCC

SEALED TRANSCRIPT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -

TARASIK ABDELL, et al.,

              Plaintiffs,

       v.

THE CITY OF NEW YORK, et al.,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - -x

05-CV-8453 (KMK)

New York, N.Y.
April 13, 2007
4:30 p.m.

Before:

          HON. KENNETH M. KARAS,

                   District Judge

APPEARANCES

JEFFREY A. ROTHMAN, ESQ.
    Attorney for Plaintiffs

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
    For Defendants
BY:  JEFFREY A. DOUGHERTY, ESQ., ACC
     JAMES MIRRO, ESQ., ACC
     HEIDI GROSSMAN, ESQ., Deputy Division Chief

X74D1RNCC                    SEALED TRANSCRIPT

2

(In open court)

(Case called)

THE DEPUTY CLERK:  Parties please state their appearances for the record.

MR. ROTHMAN:  Good afternoon, your Honor.  Jeffrey Rothman on behalf of the plaintiffs, but not in Abdell.  Abdell was the other case.

THE COURT:  Right.  I think it's, again, just following the grouping of all the cases.  But I appreciate that.

MR. ROTHMAN:  That's fine.  Your Honor, just before we begin and my adversaries introduce themselves, is the transcript of this going to be sealed?  How freely shall we be able to discuss the subject matter at hand?

THE COURT:  Why don't we get the introductions and then we'll address that.  Go ahead.

MR. DOUGHERTY:  Jeff Dougherty for the City of New York.

MR. MIRRO:  James Mirro as well.  Good afternoon.

MS. GROSSMAN:  And Heidi Grossman, your Honor.

THE COURT:  Good afternoon.

All right.  Now Mr. Rothman, your question, is it going to be sealed?  I mean, it depends on what gets said. That's up to you.  I don't know that there's a need to get into the details of the material that you say is covered by the

Case 1:24-cv-08471-MKB-LKE   Document 100-6   Filed 06/10/26   Page 3 of 42 PageID #: 1623

X74D1RNCC                       SEALED TRANSCRIPT

protective order. I think we all know what materials we're talking about.

MR. ROTHMAN: That's fine, your Honor.

THE COURT: And of course, I'm always predisposed to respect the First Amendment interests in open, in public court proceedings. So if there's a need to get into some of the details of the information that's covered by the protective order, then what I would ask is that before anybody open their mouths and discuss it, they let me know that they feel that there's a need, and then we can either take the matter at a sidebar or not. It depends on who comes into the courtroom. If everybody in the courtroom is associated with this case, then we can do it in the courtroom, but I don't know if that's the case.

MR. ROTHMAN: That's fine. Ms. Norins and Ms. Kleinman are colleagues working on the Macnamara case.

THE COURT: I know Ms. Norins. Of course I understand them hearing this stuff would not be a problem.

Okay. All right. The reason I asked you all here, I of course have read the letters. The opening salvo of Mr. Rothman's letter of February 26, it was responded to on February 27th the next day by Mr. Dougherty, Mr. Rothman replied on March 5. Here's the question. I assume it's going to be Mr. Dougherty; maybe, Mr. Mirro, you'll be responding. As I read your responding letter, the principal argument you

FROM :                    FAX NO. :                    Jan. 09 2009 06:32PM P 4
Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 4 of 42 PageID
#: 1624

4

X74D1RNCC            SEALED TRANSCRIPT

make is that the information that is discussed in footnote number 1 was already out there, was already public. And you give a number of instances. There are a couple of orders that Judge Francis issues, there are things said at the 50-h hearings, there are things that are said elsewhere.

Hang on one second.

(Pause)

THE COURT: And as I looked at those, it seemed as though, I think without exception, they related to discussions by plaintiff of the effect of the events of August of '04 on her, and I didn't read any of those discussions to relate to any preexisting issues that she had. And I think there's a difference. Even if one says -- again, to protect the confidentiality of the information, even if one says, as a result of what happened I had greater heartburn, to make it easy, that doesn't discuss any preRNC heartburn and the specifics of, for example, any medication that she might have been taking or any of that or anything like that. So how is it the same?

MR. DOUGHERTY: Jeff Dougherty for the city. Good afternoon, your Honor.

THE COURT: Good afternoon, Mr. Dougherty.

MR. DOUGHERTY: Just from the outset, our reading of the protective order is that it protects information that is, you know, in a confidential document and also that's derived

X74D1RNCC                    SEALED TRANSCRIPT                                    5

from a confidential document, and 1 don't feel that footnote number 1 violated either provision. I don't believe that it included information that was derived from the medical records. I mean, and just to go on your issue of say heartburn, preRNC heartburn, if that's what we want to call it for purposes of the hearing, that was discussed at ███████'s 50-h hearing. She indicated that there was, you know, an increased "blank" after the event, you know, to the point where it hasn't stopped. To me that would suggest that it was preexisting.

Additionally, in terms of her emotional reaction to the event, it's emotional distress that manifests itself through increased, let's say heartburn, for the purposes of keeping the record unsealed.

THE COURT: I don't care. We can be frank. The courtroom has been open, but everybody in here is either connected to the case or connected to the court.

So Mr. Rothman, then if we go ahead and get specific, I'm happy to entertain your application to seal any portion of the transcript that deals with any material protected by the protective order. I don't imagine the city would oppose that. And I think the First Amendment interests have been protected by keeping the courtroom open and filing or making available to the public a redacted version of the transcript. So I guess what I'm saying is, 1'd be strongly predisposed to grant your application to make sure the transcript is kept under seal on

X74D1RNCC                    SEALED TRANSCRIPT                    6

materials covered by the protective order, and I believe that makes it easier for everybody to have this conversation. Fair enough?

So go ahead; be candid.

MR. DOUGHERTY: Our position was that this information regarding ██████████, you know, ████████████████████ ██████ as in emotional distress is something that was openly in -- at issue in the litigation from the point that ████ testified to that in ██ 50-h. And under the 50-h statute, actually, I think it's 50-h Section 4, that law indicates that the transcript of the testimony can be read into evidence in any motion founded upon the action.

THE COURT: Okay. But I guess the question is, was there any testimony in the 50-h hearing that explicitly dealt with any preRNC ██████ or ████████████ or, in particular, reference to the existence of ██████ and ██████████████ that would indicate those issues? I mean, as I understand it, ████ talks about what happened to ██ as a result of -- and I understand your point is that somebody reading that could draw the inference that ███ had some of these as preexisting conditions. But the fact, for example, that there are ██████████████████████ records that might discuss ██████, ██████████ abuse in addition to ████████████, I'm not sure somebody would draw that inference.

MR. DOUGHERTY: I guess the distinction I want to make

FROM :                    FAX NO. :                    Jan. 09 2009 06:34PM P 7
Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 7 of 42 PageID
#: 1627

7

X74D1RNCC                         SEALED TRANSCRIPT

is, our intent was never to violate the protective order. I think that's evident from what the footnote says, which is why we offered to separate the issue of the ▆▆▆▆▆▆ from the content of the documents and offer to submit it under seal if the Court deemed necessary.

And in addition to that, the fact that this issue was litigated openly in -- at the magistrate level in discovery and none of those submissions were filed under seal and none of those submissions -- there was no question as to the propriety of not filing them under seal and still there hasn't been, that to us, you know, we felt that at the time we drafted footnote number 1 that it was appropriate and it was consistent with the way that that issue had been handled in this litigation.

THE COURT: Okay. But, you know, I understand and I, of course, got your point that you didn't mean to do that. But the fact that ▆▆▆▆▆ is even mentioned in footnote 1 didn't seem all that necessary in light of the substance of the footnote. I mean, if the point that's being made is a more generic point that evidence that a settling plaintiff who is called as a trial witness was medicated at the time of the event, was suffering from a psychological disorder or was abusing drugs and alcohol at the time, could be relevant to their memory perception or credibility, okay? A legal point that you could make, it didn't even require a footnote at all. But then you could have just said, for instance, one settling

X74D1RNCC                    SEALED TRANSCRIPT                              8

plaintiff has produced records. Even that more generic reference would not have compromised ███████████ interest. Instead she's specifically identified as having produced █████ and ██████████ records, which you recognize ███ produced subject to the protective order, and you summarize what those records indicate, which is a █████████████ and ███████████. And that was filed for all to read.

MR. DOUGHERTY: I mean, your Honor, I think that the reason that we referenced ███ specifically is that in the argument that what was possibly an abstract point about the fact that there may be settling plaintiffs who have that issue became a concrete example by referring to a specific settling plaintiff whose records may be subject to destruction on that separate motion that you're addressing. I mean, similarly, in that same argument we --

THE COURT: But you could have just said one of the settling plaintiffs.

MR. DOUGHERTY: I guess, you know, when it was drafted, we thought it was more compelling to point to a concrete example. But there was no intent to violate the protective order. I mean, there was no intent to embarrass ██████████.

THE COURT: Okay. The point of the protective order, I think you'll agree with me -- Mr. Rothman will tell me if I've misstated it -- the point of the protective order is to

9

X74D1RNCC                    SEALED TRANSCRIPT

make sure that the ██████████████████ records of ████████████ are not read or reviewed by just anybody, it would only be in connection with this litigation. And that's why there's a protective order because of the order that Judge Francis had issued and consistent with the orders I had issued in this case that prior ████████████████████ records were relevant for a number of reasons I'm not going to regurgitate here, but that out of respect for the privacy interests of ████████ and others, these records reveal things that are deeply personal, that one can understand why ████ would not want them to be revealed, not just the records themselves but the existence of the records, but more importantly the content of the records. I mean, even if no reference had been made to the records themselves but there was a reference to information contained within the records, you don't think that would violate the protective order?

MR. DOUGHERTY: I think that the distinction that I'm making is that the information was maybe contained in ████████ records but also contained in the public record of the case.

THE COURT: Is there anything in the public record of the case where ████ makes reference to prior ████████████ for which she received ████████ or ████████████████?

MR. DOUGHERTY: I mean, I don't have the entirety of the 50-h transcript in front of me so I can't answer that question.

X74D1RNCC                SEALED TRANSCRIPT                                    10

THE COURT: But I've given you plenty of time to be ready for this conference. You obviously took some time to write a letter. You could have written me other letters. Is there anything in the record of this case, the public record of this case, where ████████ made reference to prior ████████ ███, preRNC ████████████, for which ██ received ██████ or ████████████?

MR. DOUGHERTY: I mean, not that I'm aware of.

THE COURT: So that makes this disclosure different than anything ███ might have said about how the events worsened whatever situation ███ had. I actually didn't see any reference to the ████████. I mean, ████████ and ████████████ are different things. So to the extent that the RNC episode caused ███ to have even, you could say, more ████████ problems, I don't remember seeing anything about ████████ issues.

MR. DOUGHERTY: Okay. I mean, again, I think that, you know, I just want to reiterate that our intent was not to violate the protective order and, you know, the information was, in my mind, at least, or in the city's mind when we drafted it, was -- had been openly litigated and was not, you know -- that based on the prior submissions that were not filed under seal, we didn't think that it was an improper way to present --

THE COURT: Mr. Rothman says otherwise, and he says in

X74D1RNCC                    SEALED TRANSCRIPT

his letter of February 26 that there apparently has been, in his view, some rather heated discussions about this very topic and what he describes as statements by you and maybe others, in effect, threatening disclosure of this obviously deeply personal information which, you know, from Mr. Rothman's perspective, would rebut your claim that there was no intent here to violate the protective order or cause ██████ any embarrassment. How do you respond to that?

MR. DOUGHERTY: I would absolutely and respectfully disagree with that. There was settlement discussions, and I think what happened here is that in the underlying -- in the ████ case there was an underlying issue about disclosure of these records and Mr. Rothman did not want to provide HIPAA releases and instead --

THE COURT: Say again?

MR. DOUGHERTY: Did not want to provide HIPAA releases for the information and instead proposed a procedure where he provided us redacted versions of the records, and then we challenged the propriety of the redactions. And in the submission to Judge Francis we actually attached portions of the ████ -- of her ████ records which referenced, you know, various issues, including the ████ issue. Those submissions were not submitted under seal; they weren't filed under seal. That issue, you know, was litigated before Judge Francis. And in light of the fact that it was not filed under

X74D1RNCC                    SEALED TRANSCRIPT                    12

seal and at the time there was no -- there was nothing raised about that being an improper way to file the document -- I mean, even today, as this case has gone on, there's been separate magistrate level discovery disputes that are filed under seal, that are stamped confidential, and that wasn't something that happened with those records, and including our submission which attached the medical records.

I mean, I didn't -- I don't think I gave that -- I don't think I gave that to your Honor, and I guess what I'm making is that the plaintiff never requested that our submission be sealed at the magistrate level. She still hasn't. I mean, and to me, I think that that is a pretty strong argument for a waiver of the protection of at least the records that were filed at the magistrate level. They're in the court file; they're part of that open record.

And I guess also, additionally, plaintiff's reply submissions, which I did attach to this, our response, were not filed under seal, in which the exact issue is discussed. And I think that because of that, I think it seems to me that the information in footnote number 1 is arguably not derived simply from the content of the ████ records, which is the distinction that we tried to make in saying that they can be provided separately and under seal if the Court so desired. I mean, I think that that was the intent here. There was no willfulness, there was no intent or malicious intent, which I'm

X74D1RNCC                    SEALED TRANSCRIPT

not -- I don't know where, you know, where he's getting that from.

THE COURT: I'm sure he'll tell us both in a minute.

MR. DOUGHERTY: I mean, you know, that was really just a way we felt to make the argument stronger in that underlying motion about document destruction by referring to a concrete example of a settling plaintiff who had these types of records at issue who may be a witness in some other case, and that was the point of it; it was to make that argument stronger. There was no -- there was absolutely no malicious intent or willfulness. And I think that, you know, he's suggesting that there was some willfulness. I mean, at most I think it's -- maybe it can come down to a semantics issue as to whether this information was derived from records or whether it was, you know, arguably something that was openly litigated or that was part of the public record.

THE COURT: But I mean, is there a document that Mr. Rothman has filed that has been docketed or should have been docketed that makes reference to a history of ██████ and ██████████████ for which ████████ received ██████████ or ████████████?

MR. DOUGHERTY: I think -- I know that our response, our opposition to the redactions, our challenge to plaintiff's redactions, which was not filed under seal, and plaintiff never requested --

X74D1RNCC                    SEALED TRANSCRIPT

THE COURT: I'm talking about something Mr. Rothman filed. Because you're arguing waiver here, and I'm trying to get at anything he filed where you think he has waived his point here that this is still protected by the confidentiality order.

MR. DOUGHERTY: I mean, I would say that in his --

THE COURT: Because I'm not sure it's as persuasive to say you've done this before and he didn't notice it, or didn't object to it. I mean, it depends the wording of what's been said. Because I think you and I have a difference of opinion, for example, whether ████████'s 50-h testimony is the same as what's in that footnote. I just don't think it is.

So, you know, is there anything that Mr. Rothman has filed where you think he has waived on his client's behalf in effect a privilege to have this material protected under the protective order?

(Pause)

MR. DOUGHERTY: I mean, I'm not aware of a specific filing by Mr. Rothman where he specifically stated what you suggested, that there was a history of ████████████ or ██████████ in those exact words, but I guess what I'm trying to make clear is that I guess the gravity of this issue was not clear to us until, you know, this was --

THE COURT: Until you got the letter responding to the footnote.

15

X74D1RNCC　　　　　　　　　SEALED TRANSCRIPT

MR. DOUGHERTY: And we felt that our filing footnote number 1 in that other motion was consistent with the motion practice on this issue before. I mean, I really --

THE COURT: Give me your best example of where you think you have conveyed the same type of information in a filing where Mr. Rothman has not objected.

MR. DOUGHERTY: I have a copy. I didn't --

THE COURT: Okay. It would be helpful if you could --

MR. DOUGHERTY: Yes. I can give it to --

THE COURT: Okay. Thank you.

Mr. Rothman, do you have a copy of --

MR. DOUGHERTY: I don't have an extra copy.

MR. ROTHMAN: I have various documents with me.

THE COURT: What I've been handed is a letter from Mr. Dougherty to Judge Francis dated April 14, 2006. It is a four-page letter. In the future, Mr. Dougherty, bring a copy for Mr. Rothman, okay?

MR. DOUGHERTY: Okay. I apologize.

MR. ROTHMAN: I don't know if I have that here with me.

THE COURT: I'll tell you what. I'm happy to give you my copy. I'll take a quick look at it. I'd be happy to give you my copy, if you want.

MR. ROTHMAN: That's fine. Thanks.

THE COURT: I mean, this is a letter where you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X74D1RNCC                           SEALED TRANSCRIPT

objecting to the proposal you described earlier that

Mr. Rothman had about in lieu of a HIPAA release that there

would be redactions of certain information.  But in the letter

does it make --

MR. DOUGHERTY:  On page 3.

THE COURT:  On page 3 at the top, the first full

paragraph at the top.

MR. DOUGHERTY:  And that refers to Exhibit C, which

actually includes copies of the records themselves.  I mean,

and that has been in the Court's record since last year, since

April 14th --

THE COURT:  Was this docketed, this letter, or do you

know?

MR. DOUGHERTY:  It was hand delivered.  It's not

something that's on ECF, no.  And I mean, when we were drafting

footnote number 1, I mean, I specifically was aware of the

protective order and how it protected the ███████ records,

which is why that second sentence is in there is that, you

know, addressing that awareness.

I mean, I really just want to reiterate that there was

no intent to violate it.  And I think that there's clearly

nothing willful or malicious about the footnote.

THE COURT:  Mr. Rothman, I'm going to give you my copy

of this letter.  Obviously, it may jog your memory and you'll

remember it clearly.  If not, feel free to read the whole

X74D1RNCC                    SEALED TRANSCRIPT

thing.  Mr. Dougherty is pointing to the first full paragraph at the top of page 3.  But go ahead.  I'll let him finish.  And then of course I'll hear you on all these points.

Okay.  Mr. Dougherty, go ahead.

MR. DOUGHERTY:  I guess just in conclusion is I think that what we feel is really important in terms of today is that at the time that we filed this motion, the April 14th motion, Mr. Rothman --

THE COURT:  April of '06.

MR. DOUGHERTY:  Of '06 -- Mr. Rothman did not raise the gravity of the issue or raise any objection to the fact that it wasn't filed under seal.  I mean, and subsequently, as this litigation has gone on, at the magistrate level, I mean, where there's been filings that reference confidential information or include confidential information, it's definitely been an issue.  I mean, it was an issue with the New York Times and, you know, different documents that were protected and sensitive that were raised.  I mean, it's something that lawyers have been continually aware of since the inception of the RNC cases.  And I think that our drafting of footnote 1 was definitely consistent with this letter and with the information that was revealed here that was not sealed.

THE COURT:  I mean, I'll let Mr. Rothman speak for himself, but I suppose one obvious difference is that the April 14 letter, certainly you didn't docket it, as opposed to

18

X74D1RNCC                  SEALED TRANSCRIPT

a memorandum of law, which is docketed and automatically therefore is accessible to the public. A lot of times lawyers send letters to a chambers, fully expecting that it won't be docketed. Sometimes they don't know, sometimes it gets ECF filed and a courtesy copy gets sent to the Court. So it may very well be that he didn't have the reaction that he had to the brief because this was a letter straight to Judge Francis and he wasn't worried about Judge Francis making it publicly accessible. I mean, really, unless anybody knew you filed the letter, they wouldn't even know to ask Judge Francis for it.

MR. DOUGHERTY: Well, I think that there was an awareness that this letter was filed, at least by the plaintiff --

THE COURT: Filed is a term of art. I mean, filed means it goes to the clerk of the court and gets docketed. You know, when I get letters, you know, the dog ate my homework, can I have more time, you know, I get FYI letters, sometimes I get cc'd on things, I don't docket them. They don't really need to be part of the official court record. So I get a letter sent to me, that's really all it is; it doesn't necessarily get filed.

So I'm not saying you're being careless in how you're phrasing it, I'm just saying there's a difference of something being filed and something being sent by way of a letter to a chambers. That's all.

X74D1RNCC                              SEALED TRANSCRIPT

MR. DOUGHERTY: I guess what I want to communicate in response to that then is that plaintiff's counsel in RNC cases were aware of the procedural posture of this discovery dispute and following the judge's rejection of plaintiff ████'s improper redactions, that, you know, we have used that precedent, and we've attached the Westlaw and the Lexis decision in other cases and referred to this briefing and to this discovery dispute going forward so other plaintiffs have not attempted to do the same thing by making redactions, they've either, you know, had to disclose their records fully or have had to suffer the consequences about possibly dismissing on motions on distress claims or what have you. So I think there was an awareness as to the fact that this -- this letter was filed and specifically about the issues and specifically about challenging specific line item redactions.

THE COURT: See, I've read Judge Francis's orders. He's very careful to just talk about the existence of psychological treatment records for ████, but he doesn't tie those treatment records to ████ or ████. And I'm referring to the first order ████. In fact, he's careful to say that, ████ argues that the redacted portions refer to highly sensitive personal matters and are of marginal relevance at best. But he doesn't describe what those sensitive personal matters are.

You know, I've had argument on a couple or at least

X74D1RNCC                    SEALED TRANSCRIPT

one appeal from a Judge Francis ruling. I frankly don't even know if we got into the substance of the ██████ records, probably for the obvious reason that they're very sensitive. It was just the existence of them. And so, you know, I guess my point is that maybe there's a difference between saying somebody has past ███████ and ██████ records and describing what those records might discuss.

MR. DOUGHERTY: Okay. I guess just, you know, again, I just want to reiterate that there was no intent to violate the protective order, and I think if you look at the protective order itself, it says that the Court may, you know, issue sanctions. And I think that there's certainly not a willfulness here, and I don't know that that's been established.

THE COURT: Is willfulness the test? Do you think that the order would allow sanctions for reckless or negligent behavior? I'm not trying to use those terms here to describe it because I haven't decided how I'm going to describe what happened here, but do you think that the order only allows for sanctions for intentional violations of the order?

MR. DOUGHERTY: I mean, I don't think that's necessarily clear from the way that paragraph is drafted. But based on Mr. Rothman's submissions and, you know, his word choice, I think that it's vastly overstated.

THE COURT: Okay. Thank you, Mr. Dougherty.

FROM :                          FAX NO. :                    Jan. 09 2009 06:41PM P 21
Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 21 of 42 PageID #: 1641

21

X74D1RNCC                    SEALED TRANSCRIPT

MR. DOUGHERTY:  Thank you.

THE COURT:  All right.  Mr. Rothman, by the way, you're sitting at the wrong seat.  You should be up there, the defendant in the back.

MR. ROTHMAN:  My apologies.  I'll move.

THE COURT:  That's all right.  Just, we're on a criminal trial and we don't usually have this many people in the courtroom.  That's why there was this makeshift table.  I was just trying to add some lightness to an otherwise serious issue.

Do you want to respond to what Mr. Dougherty has said?

MR. ROTHMAN:  I appreciate it, your Honor.

I guess first of all, the documents that were submitted to Judge Francis seeking approval of my redactions and Mr. Dougherty's opposition were never filed, were never put in the court docket at all.  It was clear from the submission when you go to submit something to the judge to approve certain redactions -- and I specifically stated when I submitted those documents to the -- to Judge Francis that these are being submitted subject to protective order number 1, and on the same page of what has just been handed to me, Mr. Dougherty here in footnote number 2 states, "The Court should not overlook the fact that plaintiff has placed all of ████ medical records under the protection of protective order number 1."  So he was aware during that briefing in front of Judge Francis, all of which

X74D1RNCC                    SEALED TRANSCRIPT

was submitted *in camera*, all of which was clearly understood was not going to be docketed in the ECF docket, because of the sensitive subject matter that we were discussing, and Mr. Dougherty knew this. And he knew the sensitivity with regard not only to this particular subject because it's something that plaintiffs have gone -- have gone crazy about in this litigation, we've made a lot of fuss about it and it's been up in front of you with Mr. Meyerson, Mr. Spiegel, and there's been a lot of litigation about this particular issue, not only generally but specifically with this person, which is why I conclude, without any peradventure of doubt in my mind, that he did this on purpose and he did it in order to take a strike at ███ and a strike at me. Because I discussed it with Mr. Dougherty over and over again, in the course of initial negotiations, with regard to how we would go about deciding what would be turned over to the city and then, if we reached a disagreement, how we would present it to Judge Francis.

THE COURT: Where does Mr. Dougherty get by intentionally violating the protective order? I mean, he gets sanctions, so he runs the risk of getting sanctioned, and from his standpoint, who knows what those sanctions would be, so what's the benefit to him out of doing this in a footnote?

MR. ROTHMAN: Well, I think on the most problematic basis, it was just a juvenile thing to do. And it was just lashing out because he wanted to lash out, number one, at me,

X74D1RNCC                SEALED TRANSCRIPT

and I think also it's a litigation strategy of the law department, which -- and I don't want to branch off into other issues and I don't want to litigate here with you today the propriety of decisions with regard to waiver of the privilege generally for people who bring suits and claim emotional distress. But I think that involved in that issue and stemming into the issue from which this sprang, which was the return of the documents once the person settles and they've now litigated that exhaustively in front of Magistrate Judge Francis, had a reconsideration motion denied that's now up before your Honor, with regard to that issue, and then specifically here, the intent is to spread fear and to intimidate plaintiffs who are present in this action, that they're going to be abused with regard to their private and sensitive information, and that's gone on in this litigation in other instances as well.

And so that I think was the explicit litigation-oriented intent and I think, on a more personal level, it was directed at me because Mr. Dougherty's and my relationship had been deteriorating up to that point and I intervened in this dispute when I was not originally a part of it; it was filed by Mr. Spiegel. And then when he mentioned ███████, I believe that's how I got involved. He mentioned ███████ and ██ improper withholding of documents.

And this is an issue that's important to me because back in January your Honor signed settlement forms and I want

X74D1RNCC                SEALED TRANSCRIPT

to get ▬ private documents back for ▬. I want ▬ to take her small settlement, which she took because of this issue because Judge Francis issued an order that said ▬ had to turn over these records and ▬ can't bear to do that, and so ▬ took in this case what was a lot less than ▬ was entitled to. And I won't get into the substance and the merits of ▬ case, but, you know, ▬ had a slam dunk case on liability. And during the course of my discussions with Mr. Dougherty with regard to settling the case, I said, Jeff, you know, I mean, the city's got to be crazy to go forward on this. The arresting officer in this case signed criminal complaints for 30 something people, 20 something people. Usually it's five in this litigation. This guy, this arresting officer went beyond the call of duty. And she was a ▬▬▬▬▬▬. I mean, it was different from even the other RNC cases where we have strong liability. And he said, well, ▬'d better take this. And this is sum and substance. I don't remember the exact words that he said. He said, ▬'d better take this, otherwise, this stuff is going to come out. ▬'s not going to like the way it plays out. It's going to embarrass her. And what am I going to do in that --

THE COURT: Hang on. Let's just stop right there. I mean, if her case were to have gone to trial and let's say the case is as much of a slam dunk as you say it would have been, then it would have proceeded to a damages phase and inevitably

X74D1RNCC                    ·          SEALED TRANSCRIPT

the information would have come out, right?

MR. ROTHMAN:  Would or would not?

THE COURT:  It would have.

MR. ROTHMAN:  It would have.  But no, it wouldn't have come out if Judge Francis had granted my motion.

THE COURT:  But no, given the state of the decisions that have been made in the case, Judge Francis said that it was relevant.

MR. ROTHMAN:  Right.

THE COURT:  Mr. Dougherty's statement is, I don't know, I mean, a threat is something where one might exaggerate the consequences in ways that are not realistic, I mean, they're very theoretical.  Here what he's saying is, if ██ were to press the case and it were to go to trial and the question of damages would then have to be addressed by a jury, then from his standpoint, given Judge Francis's ruling, the information would come out, right?

MR. ROTHMAN:  Not only would it come out but it would come out with vehemence, and that was the problem.

THE COURT:  I know from your client's standpoint, I'm not sure there's a difference.  Because the fact that it would come out is something I understand would potentially be something very difficult for ██ to accept.  I don't make light of that at all.  But I think what Mr. Dougherty, what you're describing what he's saying is, in fact, given the rulings in

X74D1RNCC                    SEALED TRANSCRIPT

this case, true, right?  So I'm not sure how that's a threat to sort of --

MR. ROTHMAN:  Well, I mean, there's different ways that one can say it.  And there's different ways that one can do it.

THE COURT:  Fair enough.

MR. ROTHMAN:  That goes into the general litigation tactics that are going on in this case.  I mean, one can approach a task that one has as a lawyer, you know, professionally and to try and do one's job and to find out preexisting conditions or one can oppress somebody and abuse somebody.  And I received a very clear message from Mr. Dougherty in that regard.  And that's one reason among many as to why I know that this was purposeful.  And I don't have any doubt about it.

And the problem is, now Mr. Dougherty is saying that it's not purposeful, but he still will not allow himself to utter the words that the protective order was even violated.  He's saying it's only that he didn't mean to.  But he also says that it wasn't.  Which is ridiculous.  The arguments that were made in his response papers with regard to this issue are completely disingenuous and were lies, straightforward.  He says that --

THE COURT:  Tell me exactly, give me your best shot of what you think was a lie.

FROM :                    FAX NO. :                    Jan. 09 2009 06:44PM P 27
Case 1:24-cv-08471-MKB-LKE     Document 100-6     Filed 06/10/26     Page 27 of 42 PageID
#: 1647

27

X74D1RNCC                    SEALED TRANSCRIPT

MR. ROTHMAN: Well, I think you pointed your finger at it, that ▆ discussed ▆▆▆▆ in ▆ 50-h hearing. Not only had ▆ not discussed ▆▆▆▆ in ▆ 50-h, ▆ didn't discuss anything at all having to do with ▆▆▆ at ▆ 50-h hearing. ▆ stated, right after what he quoted in there, "Have you ever been ▆▆▆▆▆?" "No." "Have you ever been ▆▆▆▆▆▆?" "No." The only thing that ▆ claimed with regard to ▆▆ is that after the RNC ▆ started ▆▆ more. ▆ didn't claim anything at all about ▆▆▆. ▆ just said ▆ started ▆▆ more. ▆ felt that it was problematic and ▆ stopped. That is the extent of what was in the 50-h hearing, the extent of what was in Judge Francis's order, that was published in Lexis and Westlaw. I claimed increased ▆▆ ▆▆ as one of ▆ damages. ▆ didn't want to increase, she didn't want to ▆▆ that much, but ▆ was upset and was ▆▆ more.

THE COURT: And Judge Francis's order doesn't discuss a topic or substance of any of the prior ▆▆ records that were at issue in that discovery dispute.

MR. ROTHMAN: And further, he attempts to change the terminology there. In the footnote he says ▆▆ and ▆▆. Two separate things. Mr. Dougherty is a very articulate person, he's a very intelligent person. He may be reckless, but he's a very intelligent and fine advocate, and he

X74D1RNCC                              SEALED TRANSCRIPT

knows what the word "and" means as a conjunctive.  He's talking about two separate things in that footnote.  And number one, "not only is the ██████████ not warranted based on what's in the public record, but certainly there is no additional category of ██████████ that's been discussed anywhere in the public record.

But in the response papers to your Honor, he talks about a history of ██████████ and specifically ██████████ on the first page and the second paragraph and tries to collapse those things together, which is just trying to slide something past you, which is utterly disingenuous and inappropriate, and a lie.

THE COURT:  I'm sorry.  Where exactly are you again?

MR. ROTHMAN:  In Mr. Dougherty's letter.

THE COURT:  Of February 27.

MR. ROTHMAN:  Yes, in the second paragraph.

THE COURT:  Second full paragraph?

MR. ROTHMAN:  No, the second paragraph on the --

THE COURT:  It starts with, "As noted" or, "In her January 24"?

MR. ROTHMAN:  With, "Defendants submit that," on the first page.

THE COURT:  On the first page.

MR. ROTHMAN:  Yes.  I'm sorry.

THE COURT:  Okay.  Yes, I got your point.  Okay.

FROM :                                FAX NO. :                        Jan. 09 2009 06:45PM P 29
Case 1:24-cv-08471-MKB-LKE     Document 100-6     Filed 06/10/26     Page 29 of 42 PageID #: 1649

29

X74D1RNCC                              SEALED TRANSCRIPT

MR. ROTHMAN:  And that goes on throughout here.  And again, as your Honor noted and as I pointed out, there was no utility to the city to mentioning ███ at all.  There was nothing that could have been gained by mentioning her at all, except -- except to hurt ███ and to chill others and to jab at me.  That's the only thing that could have been gained by saying ███ name and ███ specific issue instead of a plaintiff or some plaintiffs have submitted records that showed that they had ████████████████████████ with fear of police or whatever it would have been.  That would have served the purpose entirely.  But he pointed specifically at this one person, after a great deal of litigation on this subject and a great deal of back and forth between us as to the sensitivity of this.  And I find it immensely disturbing, especially when the city is now going absolutely berserk.  I don't know if your Honor's been aware of the New York Times article.  I'm sure that you are.  The city is going crazy that some of their intelligence documents have been --

THE COURT:  Has been leaked by counsel in the case.

MR. ROTHMAN:  Right.  And pointing the finger at us, the plaintiffs' bar, when it is impossible that the documents could have come from us, because the article makes reference to documents that have never been turned over to us.  And I find that -- and now, and Mr. Farrell's about to make some sort of motion to Judge Francis that we had a conference call about

FROM :                FAX NO. :                        Jan. 09 2009 06:45PM P 30
Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 30 of 42 PageID #: 1650

30

X74D1RNCC                    SEALED TRANSCRIPT

seeking sanctions and seeking to do something with regard to all the plaintiffs' counsel with regard to this.

But this is a private individual, all right? ██ had an incident during the RNC where ██ got arrested. ██ came to this Court to seek redress. It's the only place ██ could have come to seek any redress whatsoever. ██ didn't ask for any of this. This is a police department. I don't dispute that they should be upset that their documents were leaked. And if somebody did it on the plaintiffs' side, then they should be sanctioned for it. I agree with that entirely. But it just happens in this circumstance to be impossible that that was the case.

But the protective order is important and we rely upon it, and if we can't rely on it now, it's not only going to slow down the litigation, but none of these folks who have these ████████ issues are going to be able to bring these suits, here or in the future. And it goes beyond just this RNC litigation. It goes to the whole nature of what will happen to somebody when they bring a civil rights suit, what will happen to somebody who is vulnerable who gets falsely arrested and wants to bring a suit. How are they going to go about that? What sort of gauntlet are they going to have to run through when they get to this court after they've already been through what they've been through on the street? And so that's why I think this is a very serious issue.

X74D1RNCC                          SEALED TRANSCRIPT

THE COURT: What do you think the appropriate sanction is? Well, two questions. First of all, do you think there has to be intent to violate the order or is there some lesser standard, and why? Second, what do you think the appropriate sanction would be here?

MR. ROTHMAN: I don't think, strictly speaking, you need intent to have violated the protective order. I think the protective order is in place and has very important safeguards built in there to make sure that people don't slip up, but I don't -- like I said in here, in my response, I don't think I would have asked for sanctions if I thought that this wasn't intentional, because that's not who I am.

THE COURT: So if you thought it was an act of negligence, you might have been upset but would not have sought sanctions.

MR. ROTHMAN: I think that is correct. I think that is correct. I've never sought sanctions against a lawyer before, ever, ever, in my career. I've never sought referral to the bar committee, to the board, ever. In my own personal politics, I don't believe in retributive punishment, because I think it's barbaric, and I think it's damaging our society. But the problem is, I think I'm dealing with an adversary here who only will understand that and because what's happened with prior acts from Mr. Dougherty is that he's been poking and poking and when Judge Francis has slapped his hand, he's

Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 32 of 42 PageID #: 1652

32

X74D1RNCC                          SEALED TRANSCRIPT

withdrawn it, only to come back again later and do other things in the litigation.  But this I think is the nadir that we've hit, and this is really, really very serious.

And I have other clients who have other issues with regard to ██████████ records and I don't -- to get to your second question, I don't know what the appropriate sanction is. I don't know.  I've requested fees for having to spend all this time writing this, I've requested that Mr. Dougherty be referred to the bar committee.  But within this court and this litigation, I don't know what the appropriate sanctions would be.

THE COURT:  Okay.  Mr. Rothman, thank you.

MR. ROTHMAN:  Thank you.

THE COURT:  Mr. Dougherty, reply.

MR. DOUGHERTY:  Okay.  I guess thank you for the opportunity to reply.

Initially, I think that we want to reiterate that there was utility in naming plaintiff ██████ in the footnote. It was to make that underlying brief stronger, to make what was possibly an abstract point illustrated through a concrete example.

THE COURT:  Why couldn't it have been through a concrete example where you say a settling plaintiff, and you could even put a parenthetical, whose identity I don't want to reveal because of the protective order, has ██████ and ██████

X74D1RNCC                        SEALED TRANSCRIPT

records that show ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮? I mean, I think the point that Mr. Rothman's making is, the footnote 1 doesn't just come out in a vacuum. There's a context where there's been a lot of litigation over this issue, not just by Mr. Rothman but other counsel representing plaintiffs. Not surprisingly, it's an issue that is of pretty fair importance to them as professionals who do this kind of work, but even more so they appreciate how important it is to their clients, who, as you said, have to decide whether or not it's going to be worth running through the gauntlet on their ▮▮▮ past. And there clearly has been a lot of back and forth on the sensitivity of this issue, so much so that Mr. Rothman tried to suggest an alternative to releasing all these records to the city. And I just think that to get you out of the abstractness of the point, you could have just said, there is a settling plaintiff who has these issues, and I think it would have been very hard -- I don't know that Mr. Rothman would have wasted his time or effort because it would have identified his client. At least it would have prevented ▮▮▮▮▮▮. Maybe all plaintiffs would have been mad, but nonetheless, at least it wouldn't have singled out one plaintiff.

MR. DOUGHERTY: I hear what you're saying, your Honor, and I think after this experience the city and myself now know that that would have been, you know, equally as persuasive to the Court, but I think that at the time it was drafted in terms

Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 34 of 42 PageID #: 1654

34

X74D1RNCC                    SEALED TRANSCRIPT

of, you know, being a zealous advocate for that position that this was all strung out to maintain these documents until the end of the RNC litigation, we felt the strongest decision to put forward was to name a specific plaintiff to use concrete examples. I mean, I think in that same brief there was concrete examples of settling plaintiffs who said, hey, you know, we are still going, we still intend to be a part of this case, and I attached a letter from Mike Spiegel for Abdell plaintiffs that said, we are settled but we are still going to be in the litigation. And rather than saying, you know, there are plaintiffs who did this, in that similar example, we attached a letter, and that was our -- that was our intent at the time. And absolutely if I had known or if we had known that it would escalate to this, it would have been more innocuous.

THE COURT: Can I suggest another thing you could have done? If you wanted to invoke the home run argument, you could have filed the brief under seal, right? I mean, if it's the judge you want to persuade so much so that you think you need to use information that's protected by order, then nobody is going to beef with the judge getting access to the sensitive information. It's the public file of this brief that understandably caused great heartbreak. As soon as I got Mr. Rothman's letter, I granted the application to have the footnote redacted out.

FROM :                    FAX NO. :                       Jan. 09 2009 06:48PM P 35
Case 1:24-cv-08471-MKB-LKE    Document 100-6    Filed 06/10/26    Page 35 of 42 PageID
#: 1655

35

X74D1RNCC              SEALED TRANSCRIPT

And so you had two alternatives. You could have been nonspecific as to the identity of the settling plaintiff, or you could have just filed a sealed version of the brief to file a redacted version later on, which gets done all the time by protective orders, in all kinds of cases. I mean, intellectual property cases, I get more stuff sealed than you can imagine. I know every person takes a beating in those cases, but at least in the first instance just file under seal and worry about redaction later.

MR. DOUGHERTY: I understand that, and I appreciate the information. I think that just to reiterate again, I think that at the time we thought that the conduct was reasonable based on the prior filings, and I understand the distinctions that you made today about the discovery dispute being submitted to Judge Francis and not being on the ECF system, but at the time we looked at that paper which was not filed under seal which -- and which there still has been no objection to it not being filed under seal, and I think that if you look at that, it's not vastly inconsistent with footnote 1, and I think that at the time --

THE COURT: Filed, filed.

MR. DOUGHERTY: Pardon?

THE COURT: Filed, the operative word. Is there any document that has been filed with the clerk of the court, either by the city that has gone unobjected to by Mr. Rothman,

36

X74D1RNCC                    SEALED TRANSCRIPT

or by Mr. Rothman, that makes reference to ▮▮▮▮▮ and ▮▮▮▮▮ records that deal with ▮▮▮▮▮ and ▮▮▮▮▮?

MR. DOUGHERTY:  I think that at the time defendants did not recognize the distinction that you've made clear today.

THE COURT:  Is that right?  I mean, I have to say I agree with Mr. Rothman that experienced lawyers, particularly when there becomes sort of an MO in a particular case -- you know, when I'm on a long trial, I get letters on all kinds of stuff, a letter, Dear Judge, can I bring my BlackBerry in, even though there's a rule against no cellphones, the lawyer knows I'm not going to file that, he knows I'm not going to file that, whereas a sentencing memorandum, at the end of the criminal trial, they know that's going to get filed.  Obviously a motion.  But I get discovery letters all the time, requests for a conference, we're having this issue.  Those rarely get filed.  And the practice develops.  What Mr. Rothman is saying rings true to me.  Did you really think that letter was going to end up in the docket or was it just a letter addressed to Judge Francis delivered by hand for his review?  For example, had he been docketing similar discovery letters before then?

MR. DOUGHERTY:  At that time, I mean, no, they weren't docketed in the way that we discussed it on ECF.  And, you know, I mean, as the case has gone on, there have even been documents that are faxed or filed to Judge Francis that are stamped confidential and under seal and, you know, that

X74D1RNCC                    SEALED TRANSCRIPT

distinction has developed as the litigation has gone on, and I just, I mean, again, just want to reiterate and close with that there certainly was not, you know, a willful intent to violate the protective order or to subject plaintiff ████ to any harm. And I think that that, you know, again, is just clear by the footnote itself, which references that we were aware that the records were protected and offered to, if your Honor felt it was necessary, to submit an *in camera* submission. I think that it just -- it doesn't -- it just seems like it doesn't make sense that at the same time, you know, he would suggest that I would have this animus and do something that would clearly subject myself to sanctions and create a problem when in the very footnote we say, hey, we know this is protected, and if you think it's necessary, we'll file something under seal. I mean, I think that is the clearest argument that there was nothing malicious or willful, as he has suggested, at all.

THE COURT: Okay.

MR. MIRRO: Judge, I wonder if I can make a few comments? James Mirro for the record.

THE COURT: Mr. Mirro, I appreciate you standing up. Mr. Dougherty, regardless of how I come out on this, he's done the right thing, and he signed this document. I'm sure there were others in the office who reviewed it, but he hasn't passed the buck, and I think that's much appreciated.

I'm going to take the matter under advisement. I do

X74D1RNCC                    SEALED TRANSCRIPT

think Mr. Dougherty said one thing that I think Mr. Rothman and I would both agree with, which is that, hopefully, if nothing else, the city has learned that you can't play with the line here. This stuff is sealed for a reason. And when in doubt, either vaguer references should be made or the document should be initially filed under seal. And I say that even though, because the law requires me to have it anyways, I have a healthy respect for First Amendment access to court proceedings. But we're not talking about this brief being filed under seal in its entirety until the end of time. It could have been initially filed under seal and then it could have been appropriately redacted. And it would have not affected the litigation position of the city one iota, because I would have the unredacted version. So whatever benefit you think you get out of including ▉▉▉▉▉ in the footnote, assuming there is such a benefit, you have.

And Mr. Rothman is right, that disclosure of this information does more potentially than just chill ▉▉▉▉▉'s willingness to participate in this case or cases like this. There are lots of other plaintiffs in this case who are still in this case who are very likely wrestling with the same issue that Mr. Rothman said, that is, how much they really want to see this through to the finish line if it means disclosure of sensitive information. But you know what, they control that choice. They can say today, I want to do it, and maybe if it

X74D1RNCC                    SEALED TRANSCRIPT

gets to the eve of trial or the eve of a damages hearing and then at that point they can say, I just don't want to do it. But that should be their choice, not a choice foisted upon them by circumstances that not only are out of their control but are proscribed by a duly entered protective order.

And I'll tell you, as I said, in all kinds of cases I sign protective orders, intellectual property cases, criminal cases, all kind of cases that deal with employment records, medical records, other very personal, sensitive information. And if anything, I think lawyers tend to err too far on the side of filing things under seal. But at least that can be cured through redaction. Here, once the genie's out of the bottle, it's out of the bottle. So let's keep it corked and decide what we let out of the bottle in a very timely, hopefully cooperative fashion.

I mean, I don't know how I come out on this application. If nothing else, I think the city is on notice that if something like this happens again and Mr. Rothman or somebody in his shoes sitting at this table will say now there's a pattern because I have expressed my concern that this was revealed, and I do not think that the ███████████ derived from ██████ and ██████ records was at all ever disclosed by ████████ at ████ 50-h hearing or by Mr. Rothman in the filings he made. The most that happened here was the city made reference to it in a letter addressed to Judge

X74D1RNCC                          SEALED TRANSCRIPT

Francis, and where it's not entirely clear that they had any expectation that it would be docketed. Indeed, given Judge Francis's careful treatment of the issue in his order, which was picked up by Westlaw, he was very careful in terms of how he described the records. Sensitive ████ records. And I don't think that at all compromised ████████'s interest in the confidentiality of those records.

And I want to make sure that when I say this, I'm not just looking at Mr. Dougherty, because I recognize he's part of a team. As I said, I appreciate that he got up and defended this because it's his signature on the brief, but I also recognize that things like this are no doubt discussed among colleagues, perhaps somebody does a review and edits it, so to all who work on these cases, they need to be careful.

All right. I'll take the matter under advisement.

Mr. Rothman, I take it you would like, in the first instance, the transcript of this proceeding under seal, and then what I would ask is your thoughts on how it gets redacted. Obviously I'm going to grant the application. I assume there's no opposition from the city.

MR. DOUGHERTY: No, your Honor.

THE COURT: All right. Because the very reasons for the protective order are the very reasons that this transcript should be under seal, at least until a redacted version of it can be prepared.

X74D1RNCC  SEALED TRANSCRIPT  41

The courtroom has been open. It turned out that a couple people came here. They didn't stay. We didn't throw them out. So the First Amendment interest in access to the courtroom has been protected. I think a temporary sealing of the transcript is appropriate, given that extensive personal information has been discussed, ██████████'s information that is covered by the protective order and of course still remains in effect. Even in the absence of a protective order, the interest in ████████ in the confidentiality of this information is sufficiently overriding to outweigh the First Amendment interests in access to the transcript. There's no lesser restrictive alternative. It's tailored to, at this point, anyways, satisfy those interests subject to a redaction. Now I think redaction should be fairly straightforward.

I'm going to, of course, with the exception -- the transcript can be provided to Mr. Rothman and counsel for the city, obviously. But I do think that a redacted version of the transcript should be prepared at some point. Mr. Rothman, I'm going to defer to you, since it's your client's interests that we're protecting here.

MR. ROTHMAN: That's fine, your Honor. So I'll order a copy of the transcript and I'll undertake to strike out references to my client's name and the particular ████████ and --

THE COURT: And you'll send a copy to the city of what

X74D1RNCC                    SEALED TRANSCRIPT                           42

you propose to redact, and if they disagree with you, then they'll let you know, if not, then that redacted version will go ahead and become the transcript of the proceedings, unless there's a change in circumstances where ██████'s information is otherwise revealed by ███, in which case we'd no longer need to seal this, and I would unseal it at that point.

All right.  Anything else we need to take up tonight?

All right.  Have a good weekend.  Thank you.

MR. ROTHMAN:  Thank you, your Honor.

MR. DOUGHERTY:  Thank you.

oOo