UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ALYSSA MERCANTE,

                                        Case No. 1:24-cv-08471 (MKB) (LKE)

                *Plaintiff*,

    – *against* –

JEFF TARZIA,

                *Defendant*.

-----------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS AND FOR
CERTIFICATION OF FACTS FOR CONTEMPT (ECF NO. 100)**

Ronald D. Coleman
COLEMAN LAW FIRM, P.C.
50 Park Place, Suite 1105
Newark, New Jersey 07102
(973) 264-9611
rcoleman@colemanlaw-pc.com
*Attorney for Defendant Jeff Tarzia*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

    A.    The defective redaction and the immediate cure. ................................................. 2

    B.    The May 11 hearing and the Court's disposition.................................................. 2

    C.    The cost discussion and this motion. ................................................................... 4

I.    THE COURT SHOULD DECLINE TO CERTIFY FACTS FOR CONTEMPT UNDER 28 U.S.C. § 636(e). ................................................................................................. 5

    A.    Counsel was reasonably diligent in attempting to comply. ............................ 5

    B.    Plaintiff's own authorities refuse the relief she seeks...................................... 7

    C.    Certification would be unprecedented and disproportionate. ....................... 11

II.    THE REQUEST FOR PUNITIVE OR "DETERRENT" SANCTIONS SHOULD BE DENIED.................................................................................................................. 12

III.    ANY COST RECOVERY SHOULD PROCEED BY THE APPLICATION THE COURT INVITED, LIMITED TO DOCUMENTED, REASONABLE, AND NECESSARY COSTS. ................................................................................................................... 13

    A.    The offer to reimburse reasonable costs stands. ........................................... 13

    B.    The invoice as transmitted does not establish reasonableness or necessity................. 14

    C.    Fees for this motion are not warranted. ......................................................... 15

IV.    THE MOTION BYPASSED THE PROCESS THE COURT PRESCRIBED............. 16

CONCLUSION............................................................................................................................ 17

CERTIFICATE OF COMPLIANCE .......................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Coburn v. City of New York*, No. 05-cv-7623 (RJS)(JCF) (S.D.N.Y.) .....................4, 10, 12, 13, 14

*Denis v. County of Nassau*, 2019 WL 7372957 (E.D.N.Y. Dec. 31, 2019).........................4, 10, 14

*DeSouza v. Park W. Apartments, Inc.*, No. 3:15-CV-01668 (MPS), 2018 WL 7575205 (D. Conn. June 14, 2018) ....................................................................................................................6, 12

*EEOC v. Local 638*, 753 F.2d 1172 (2d Cir. 1985) .......................................................................8

*Fannie Mae v. C.Y. Gold LLC*, 2025 WL 2888054 (E.D.N.Y. July 7, 2025)..................................8

*In re Lunden*, 524 B.R. 410 (Bankr. D. Mass. 2015).......................................................13, 14, 15

*Jobar Holding Corp. v. Halio*, No. 23-CV-11217 (JGLC), 2024 WL 4349749, at *11 (S.D.N.Y. Sept. 30, 2024), *aff'd,* No. 24-2879-CV, 2025 WL 1512574 (2d Cir. May 28, 2025) ..6, 12

*King v. Allied Vision, Ltd.*, 65 F.3d 1051 (2d Cir. 1995)................................................................8

*Saunders v. Vinton*, 554 F. App'x 36 (2d Cir. 2014) .....................................................................6

*Williams v. Johanns*, 529 F. Supp. 2d 22 (D.D.C. 2008)...............................................................13

**Statutes and Rules**

28 U.S.C. § 636(e) ...................................................................................................................16, 17

Fed. R. Civ. P. 37(b)(2)........................................................................................................4, 11, 16

Local Rule 83.6.........................................................................................................................11, 15

Judge Eshkenazi's Individual Rules III.B.1 and III.B.2 ................................................................16

## PRELIMINARY STATEMENT

One month ago, this Court addressed the filing error at the center of this motion. It did so on a full record, with both counsel before it. The Court found that the error was a mistake and not intentional, gave Defendant's counsel the benefit of the doubt, characterized the conduct as sloppiness to be addressed, declined to order sanctions, and prescribed a simple path forward: the parties should agree on reimbursement of Plaintiff's costs, and "if the cost is not covered, then plaintiff is free to make the application." Tr. 34:11–19. Plaintiff has not made that application. She has instead filed a twenty-page motion asking this Court to certify facts for a contempt adjudication against Defendant's counsel personally, to award punitive sanctions, and to award attorneys' fees – relief the Court never invited, on a record that has not changed since the Court declined to impose sanctions.

The motion fails on its own authorities. Its lead case, *Denis v. County of Nassau*, awarded fees but declined contempt because intent was not shown; Plaintiff's own parenthetical says so. Mem. at 1–2. Its centerpiece, the unpublished *Coburn* proceedings before Judge Karas, is described in the supporting declaration as an oral decision "awarding contempt on similar facts." Green Dec. ¶ 7. The transcript attached as Green Exhibit 5 does not support that description. Judge Karas proceeded under Rule 37(b)(2), not the contempt power; he imposed a single sanction – the movant's fees for the application; he expressly declined a disciplinary referral because "conduct that's egregious should be the threshold" and the conduct before him did not rise to that level; he declined to hold the attorney who signed the offending brief personally responsible; and he concluded, applying the efficacy-of-lesser-sanctions factor, that fees alone were "sufficient here and no more is necessary to make sure that we all respect the confidentiality orders." Green Ex. 5 at 12–14. The word "contempt" appears nowhere in his decision.

1

As for the costs themselves: Defendant's counsel said on the record at the May 11 hearing – and repeats here – that the failed redaction was his mistake, that he accepted responsibility for it, and that he would reimburse Plaintiff's firm for the reasonable costs it caused. Tr. 33:7–34:1. That commitment has never been withdrawn. What counsel declined to do was pay, without ordinary scrutiny, an invoice for 19.29 hours of professional time spread across ten separate billing dates. Whether those hours were necessary and reasonable is precisely the question the Court's invited cost application exists to test. It is not a basis for contempt.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      The defective redaction and the immediate cure.

On the evening of Friday, May 8, 2026, Defendant filed a letter motion with exhibits. ECF No. 88. One exhibit included an email from Plaintiff's counsel containing the firm's bank account information. Counsel attempted to redact that information before filing by placing an opaque box over it; the redaction failed because the underlying text was not removed from the PDF. Counsel described the error to the Court in his own words at the May 11 hearing:

> I will state on the record that I tried to redact it and failed. . . . The original document that I filed had a redaction over it but . . . the document . . . was not flattened. . . . The underlying information in the document was not removed. That was my mistake. In my haste . . . I didn't double check as is my usual practice to make sure that not only was the information covered but was also removed as metadata or other accessible data from the PDF document. I take responsibility for that and I will reimburse [Plaintiff's counsel's] firm for any . . . clerical costs incurred as a result of it.

Tr. 33:7–34:1. Upon Plaintiff's application, the Court sealed ECF No. 88 the night of Sunday, May 10, and sealed a related entry the following day. Tr. 2:16–18. By the time of the May 11 hearing, the material was off the public docket.

### B.      The May 11 hearing and the Court's disposition.

At the hearing, the Court addressed the error directly:

2

> I am going to give Mr. Coleman the benefit of the doubt that he didn't realize the bank account information was actually getting posted when he was posting confidential information. It's a big mistake but unfortunately, [we have] had attorneys make mistakes with posting things on the docket multiple times. This was not the first emergency application we've gotten to seal something that should not have been posted on the docket.

Tr. 31:19–32:1. The Court added: "I don't think he intentionally posted the bank account information," Tr. 32:13–14, and "I actually think that was a mistake, that he probably didn't realize the bank account information was in there." Tr. 33:3–6. The Court's disposition followed:

> It is sloppiness. It does need to be addressed. I hope that you will come up with a way to reimburse Mx. Green. I'm not ordering sanctions now but I hope that you can talk about [it]. And if you can't agree on that and if the cost is not covered, then plaintiff is free to make the application.

Tr. 34:11–19. Counsel agreed on the spot: "No, we can agree. We can agree on that. I'm sure of it." Tr. 34:20–21. Plaintiff's counsel responded: "That was what we were after." Tr. 34:22–23. The Court's May 12, 2026 minute order memorialized counsel's stated intent to cover Plaintiff's counsel's costs resulting from the unredacted filing.

One point of record clarification is necessary, because the motion builds an argument on it. The memorandum repeatedly quotes counsel's statement that "we really didn't have time for that," Mem. at 4–5, 9, 12 n.8, as though it concerned the bank account redaction. It did not. That exchange concerned a different question raised at the same hearing: whether the designated settlement correspondence attached to the same filing should have been the subject of a sealing application rather than filed with redactions. Tr. 22:21–23:15. As to the bank account information, the record demonstrates the opposite of indifference: counsel attempted the redaction and failed in its execution. Tr. 33:7–22. A failed attempt at compliance is a mistake. It is not a decision that compliance could be skipped, and the two cannot be merged into a single narrative of intent.

3

C.    **The cost discussion and this motion.**

When the Court asked at the hearing what the costs were, Plaintiff's counsel identified two categories: "opening and closing fees for accounts," and the hourly time of the firm's accountant, who had been "working on this all day." Tr. 29:14–20. The Court observed: "I don't know what your costs were and it sounds like you're not even sure what the costs were." Tr. 30:7–9.

On Friday evening, May 22, Plaintiff transmitted an invoice from Extralegal LLC totaling $5,042.05 – $5,015.40 of it for 19.29 hours of professional time billed at $260 per hour on ten separate dates between May 10 and May 21, the remainder postage – for "DATA BREACH MITIGATION." Green Ex. 2. On Tuesday, May 26 – the first business day after the Memorial Day weekend – before counsel had responded at all, Plaintiff's counsel threatened that nonpayment would draw a direct sanctions motion: "If you don't want to cover this, as the court suggested, we will proceed to a direct sanctions motion, and will include the attorney time spent litigating that motion and dealing with this in the request." Green Ex. 1, PageID 1605. Counsel responded that same evening, raising the questions any payor would raise: whether the billed work fell within the categories identified to the Court, whether account closure was necessary at all, and whether the hours were reasonable. He also made a voluntary payment offer, which Plaintiff's memorandum quotes in full. Mem. at 8–9. On June 1, Plaintiff's counsel left a voicemail and wrote that, while "[h]appy to discuss . . . this is the bill we are paying, so there is no world where we agree to something less than this bill." Green Ex. 1, PageID 1604. By Plaintiff's own account, that voicemail and the emails noting it were the entirety of counsel's further effort to confer. Green Dec. ¶¶ 23–24. This motion followed on June 10.

The parties have an established – and recent – mechanism for exactly this kind of quantum dispute. When negotiation of the Rule 37 fee award reached impasse last month, the

4

Court conducted a settlement conference on May 20, 2026, and the dispute was resolved that day. The Court had offered precisely that assistance at the May 11 hearing: "if you get to a point where you're close and you think you just can't get it over the finish line, I'm happy to do a virtual settlement conference to try to resolve the issue." Tr. 15:6–9. Plaintiff requested no conference, made no cost application, and conferred no further. She just filed this motion.

## ARGUMENT

### I.    THE COURT SHOULD DECLINE TO CERTIFY FACTS FOR CONTEMPT UNDER 28 U.S.C. § 636(e).

On a contempt motion, the magistrate judge "functions only to certify the facts," and certification is appropriate only where the movant "can adduce sufficient evidence to establish a prima facie case of contempt." *Fannie Mae v. C.Y. Gold LLC*, 2025 WL 2888054, at *2 (E.D.N.Y. July 7, 2025) (cited at Mem. 14). Contempt in turn requires that the order violated be clear and unambiguous, that noncompliance be proven by clear and convincing evidence, and that "the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); see *EEOC v. Local 638*, 753 F.2d 1172, 1178 (2d Cir. 1985). Plaintiff cannot make a prima facie showing on the third element, and her own authorities establish that contempt is the wrong remedy for this record.

### A.    Counsel was reasonably diligent in attempting to comply.

The undisputed record is that counsel attempted to redact the bank account information before filing, and that the attempt failed in execution: the box was placed, but the underlying data was not removed from the file. Tr. 33:7–22. An attempt to comply that fails through technical error is the paradigm of conduct that does not support contempt. It is the difference between a violation born of negligence and a refusal to obey – and the contempt power exists for the latter.

5

This Court has already characterized the conduct in precisely those terms: a "mistake," not intentional, of a kind that attorneys make "with posting things on the docket multiple times" – indeed, "not the first emergency application we've gotten to seal something that should not have been posted on the docket." Tr. 31:19–32:1. The error was cured almost immediately: the entry was sealed within hours of Plaintiff's application, on a Sunday night. And counsel's response when the matter was raised was not evasion but ownership, stated in open court, coupled with a voluntary commitment to reimburse. Tr. 33:7–34:1. The magistrate's approach was entirely consistent with practice in this Circuit. See *Saunders v. Vinton*, 554 F. App'x 36, 39 (2d Cir. 2014) (insufficient redaction that resulted from error not sanctionable); *DeSouza v. Park W. Apartments, Inc.*, No. 3:15-CV-01668 (MPS), 2018 WL 7575205, at *1 (D. Conn. June 14, 2018) ("Courts have concluded in similar situations that a party's willingness to remedy a violation of Rule 5.2(a) as soon as it is brought to their attention ameliorates the need for sanctions"); *Jobar Holding Corp. v. Halio*, No. 23-CV-11217 (JGLC), 2024 WL 4349749, at *11 (S.D.N.Y. Sept. 30, 2024), *aff'd,* No. 24-2879-CV, 2025 WL 1512574 (2d Cir. May 28, 2025) (denying sanction for improper redaction where " upon filing the unredacted documents, Plaintiffs requested that the documents be placed upon temporary seal on an emergency basis and subsequently properly requested the Court's permission to file redacted versions of the documents.").

Plaintiff's answer is that sloppiness nonetheless itself negates diligence – that because the Court used that word, and counsel did not move for reconsideration, the element is established. Mem. at 11–12. But the Court used that word in the course of **declining** to order sanctions and directing the parties to a reimbursement discussion. Tr. 34:11–19. A finding that conduct was careless and should be addressed through reasonable reimbursement is not a finding that counsel

6

"ha[d] not diligently attempted to comply in a reasonable manner" within the meaning of *King* –

least of all where the same Court found in the same breath that the violation was unintentional

and extended counsel, a member of the Bar of this Court for 35 years, the benefit of the doubt. In

such circumstances, there was no basis for counsel or Defendant to seek reconsideration.

Plaintiff asks the Court to convert measured case-management language into an adjudicated

element of contempt. The Court did not adjudicate any such thing, and the record would not

support it if it had been asked to.

The prior episodes the motion aggregates for supposed pattern weight do not change the

analysis. Each of them was before the Court on May 11 and May 12, and the Court's disposition

was made with full knowledge of all of them. Plaintiff identifies nothing that has occurred since.

A motion that re-presents the same record the Court already weighed, and asks for the escalation

the Court already declined, is a motion for reconsideration in different clothing.

**B.      Plaintiff's own authorities refuse the relief she seeks.**

The motion's lead authority is *Denis v. County of Nassau*, 2019 WL 7372957 (E.D.N.Y.

Dec. 31, 2019), cited for the proposition that violations of confidentiality orders "call for

sanctions and/or contempt." Mem. at 9–10. What *Denis* held – by Plaintiff's own parenthetical –

was "sanctions and attorneys' fees for violation of confidentiality order, but declining contempt

because intent was not shown." Mem. at 2. The only in-district authority cited by Plaintiff thus

**refused** the lead relief this motion seeks, and did so even though that court, on facts quite

different from those here, traced the disclosure to the firm's "gross negligence" and to "the utter

failure to exercise reasonable diligence in handling the request" – because the court was

nonetheless "hard pressed to find that [the disclosing] lawyers were not otherwise diligent in

attempting to comply with the Confidentiality Order in general." *Denis*, 2019 WL 7372957, at

*7. The records at issue in *Denis* were the individual defendants' personnel and disciplinary

records – their concise histories and training records – not financial-account information. *Id.* at *2. And the compensation the court awarded in place of contempt was the movant's own attorney's fees for the time spent recovering those records: 12.75 hours of attorney time, plus a 1.47-hour evidentiary hearing, at the $148 Criminal Justice Act rate, for a total of $2,104.56. *Id.* at *11. The memorandum's block quotation of *Denis*, which inserts "[bank]" into the court's text, substitutes the facts of this case for the personnel records that decision actually concerned.

The centerpiece of Plaintiff's motion requires closer attention, because the moving papers describe it in terms the attached transcripts do not bear out. The Green Declaration states that Exhibits 4 and 5 are transcripts "from the contempt hearing and Judge Karas's oral decision in the Republican National Convention litigation awarding contempt on similar facts." Green Dec. ¶ 7. The memorandum likewise tells the Court that "as explained well by Judge Karas in *Coburn*, the District Judge should ultimately impose contempt." Mem. at 14. The exhibits, however, show the following.

First, Judge Karas framed the question before him as one of Rule 37 sanctions, not contempt: "if the Court were to find that this footnote violates the protective order, the Court would have the authority to impose a sanction against either the City or its attorneys pursuant to Federal Rule of Civil Procedure 37(b)(2)." Green Ex. 5 at 5. Second, having found the violation reckless but emphatically not intentional – "while I absolutely do not hesitate in saying that the Corp. Counsel did not do this intentionally, I think it was reckless," *id.* at 11 – he imposed exactly one sanction: the movant's fees for having to bring the application. *Id.* at 13. Third, Judge Karas expressly declined every form of escalation now sought here. He declined any disciplinary referral, because "conduct that's egregious should be the threshold for reference to disciplinary committee, and I don't think that this rises to that level." *Id.* at 13. He declined the

8

movant's request for additional sanctions: "taking into account the factor that I'm supposed to consider[,] the efficacy of lesser sanctions, I think the mere fact that I find that it was reckless, combined with having to pay fees that you incurred as a result of making this application, I think are sufficient here and no more is necessary to make sure that we all respect the confidentiality orders." *Id.* at 13–14. Fourth, he declined to hold the individual attorney who signed the brief personally responsible, attributing the error to the office collectively: "I really don't think it's appropriate to hold Mr. Dougherty by himself responsible." *Id.* at 15; *see id.* at 12. Fifth, nowhere in the decision did Judge Karas hold *anyone* in contempt, certify any fact for contempt, or invoke the contempt power at all.

The surrounding record confirms what the transcript shows. The proceeding that produced these exhibits was convened by Judge Karas as "a conference to address issues related to Protective Order #1" – not, as the declaration styles it, a contempt hearing. *Coburn v. City of New York*, No. 05-cv-7623 (RJS) (JCF) (S.D.N.Y.), ECF No. 41 (Apr. 17, 2007); *cf.* Green Dec. ¶ 7. The conduct at issue was a confidential footnote in a reply memorandum, which the court directed be "permanently deleted from the public docket" and re-filed "with footnote number 1 redacted," the unredacted version placed under seal. *Id.*, ECF No. 33 (Feb. 26, 2007). And the District Court ultimately "approve[d] the settlement reached by the Parties" as to "the sanction order entered by Judge Kenneth M. Karas on April 20, 2007 against Defendants for the breach of a confidentiality order." *Id.*, ECF No. 156 (Apr. 30, 2009). The decision Plaintiff offers as a contempt template was, by the issuing court's own description, a sanction order for a confidentiality-order breach – and one the parties resolved by negotiated settlement, the very course the Court directed, and Plaintiff eschewed, here.

9

*Coburn*, in short, is a decision rejecting – on facts Plaintiff calls similar – each form of relief this motion seeks beyond fees: punitive sanctions, professional-discipline machinery, and personal liability for the signing attorney. It resolved the matter with the proportionate remedy of reasonable compensation. If *Coburn* supplies a template, the template is the one this Court already followed on May 11 and 12: name the problem, decline escalation, and direct the parties to reimbursement. Judge Karas added an observation worth carrying forward: sanctions "are over used by the Bar," and his fees-only award was only the second sanction he had imposed in his time on the bench. Green Ex. 5 at 14.

The facts of *Coburn* were also materially more aggravated than these. There, the protected material – the substance of a settling plaintiff's confidential records – was **deliberately** written into the text of a brief as advocacy, because counsel judged the detail rhetorically useful; the violation inhered in the decision to deploy the material at all, and Judge Karas found that mentioning it "was not at all critical to the point that was being made." Green Ex. 5 at 13. Here, by contrast, the protected information appeared in an attachment counsel attempted to redact, and the failure was one of execution, not of choice. And the *Coburn* movant himself drew the line this case turns on. He told Judge Karas he would not have sought sanctions had he believed the violation unintentional: "I don't think I would have asked for sanctions if I thought that this wasn't intentional, because that's not who I am." Green Ex. 4 at 31:10–12. When the court put the point to him directly – that if he "thought it was an act of negligence," he "might have been upset but would not have sought sanctions" – he agreed without hesitation: "I think that is correct. I think that is correct. I've never sought sanctions against a lawyer before, ever, ever, in my career. I've never sought referral to the bar committee, to the board, ever." *Id*. at 31:13–19. This Court has already made the finding the movant treated as dispositive – that the error here

10

was unintentional, a mistake. Tr. 32:13–14. What Plaintiff seeks against counsel personally –

sanctions, a contempt certification, and the disciplinary machinery of Local Rule 83.6 – is

precisely what the movant she holds out as her model said he would never pursue on facts he

believed negligent.

      **C.**      **Certification would be unprecedented and disproportionate.**

Plaintiff cites no decision – and Defendant has located none – in which a court in this

Circuit certified facts for contempt against counsel personally arising from an inadvertent

redaction failure that was sealed within hours, where the supervising judge had found the error

unintentional, declined sanctions, and prescribed a reimbursement process that remained open.

The out-of-circuit decisions in the motion do not close that gap: *In re Lunden*, 524 B.R. 410

(Bankr. D. Mass. 2015), is a bankruptcy court decision from another circuit, and *Williams v.

Johanns*, 529 F. Supp. 2d 22 (D.D.C. 2008), arises outside this Circuit as well. Both are also

distinguishable on their facts. In *Lunden*, the court imposed a punitive sanction only because,

after the unredacted filing was brought to the attorney's attention, he "refused to take any

corrective action and then defended his failures with ex post facto excuses bordering on the

frivolous" – conduct it set against the principle that "the mere failure to redact may not always

give rise to sanctions for contempt." 524 B.R. at 418. In *Williams*, counsel affirmatively placed

mediation-confidential material on the public docket and conceded an "obvious, direct violation"

of an order that expressly prescribed contempt and disciplinary referral; even then, the court

found civil contempt but imposed only a nominal $50 fine. 529 F. Supp. 2d at 23–24. Neither the

refusal to cure and frivolous defense of *Lunden* nor the deliberate public filing of *Williams* has

any counterpart here, where counsel attempted the redaction, owned the failure on the record,

and cured it within hours. Measured against *Denis* and *Coburn* – the two authorities Plaintiff

treats as closest – certification here would make this case an outlier on facts milder than those on

11

which contempt was refused. See *DeSouza v. Park W. Apartments, Inc.*, *supra*; *Jobar Holding Corp.*, *supra*.

## II.    THE REQUEST FOR PUNITIVE OR "DETERRENT" SANCTIONS SHOULD BE DENIED.

The Court has already exercised its discretion on this record. On May 11 and 12, with every episode this motion aggregates before it, the Court chose a warning plus an invited reimbursement application over sanctions. Nothing has changed since – except that Plaintiff transmitted an invoice and received a response she did not like. A sanctions motion is not a vehicle for relitigating a discretionary case-management decision made one month ago on an identical record.

Plaintiff's deterrence theory also rests on a premise the record refutes: that counsel does not appreciate the seriousness of the error. Counsel stated in open court that the failed redaction "was my mistake," that he "take[s] responsibility for that," and that he would reimburse Plaintiff's firm. Tr. 33:7–34:1. The dispute that followed was never over whether to pay; it was over what 19.29 hours of professional time had to do with the error – a quantum dispute of exactly the kind courts resolve on documented applications, and of exactly the kind these parties resolved with this Court's help three weeks earlier. Disagreement about an invoice is not contumacy, and treating it as such would teach the unfortunate lesson that questioning a bill is more dangerous than paying any number presented. Punitive sanctions, even where available, are reserved for "arrogant defiance" of a court's order or for a party that "responds to its obvious error with frivolous and meritless defenses," *In re Lunden*, 524 B.R. at 419 – the opposite of a candid, on-the-record acknowledgment of error coupled with an unprompted offer to pay.

The memorandum's aside that Defendant's recent Rule 72(a) opposition corrected counsel's earlier account of the citation errors, Mem. at 5 n.4, draws the wrong inference. The

12

correction was made candidly and at counsel's own initiative, in Defendant's own filing. That is what the duty of candor requires; it is mitigation, not aggravation, and it is not evidence of anything except that counsel corrects the record when he learns it needs correcting.

Finally, the motion's framing – sanctions and contempt directed at counsel personally, supported by a Local Rule 83.6 affidavit – should be measured against Plaintiff's own template. Judge Karas declined to hold the signing attorney personally responsible even after finding recklessness, and declined any disciplinary referral because the conduct was not egregious. Green Ex. 5 at 12–13, 15. As for the declaration's discussion of counsel's representation of an unrelated client in unrelated litigation, Green Dec. ¶¶ 8–11, the declaration itself concedes counsel "was under no legal obligation" to take the action Plaintiff requested. Id. ¶ 10. Nor does it even address the question of whether such an accommodation would have been appropriate in the context of the representation of the other client.  Conduct that violated no obligation cannot support sanctions or contempt, and the episode has no place in the analysis.

### III.    ANY COST RECOVERY SHOULD PROCEED BY THE APPLICATION THE COURT INVITED, LIMITED TO DOCUMENTED, REASONABLE, AND NECESSARY COSTS.

#### A.    The offer to reimburse reasonable costs stands.

Defendant's counsel does not resist the principle of compensation, and never has. He volunteered reimbursement before the Court raised it, Tr. 33:20–34:1, confirmed it when the Court framed the path forward, Tr. 34:20–21, and the Court memorialized it. May 12, 2026 Minute Order. Rule 37(b)(2)(C) reaches "reasonable expenses, including attorney's fees, caused by the failure," and Defendant accepts that reasonable, documented, out-of-pocket costs proximately caused by the defective redaction are compensable. The open question – the only open question – is reasonableness and necessity.

13

**B.**      **The invoice as transmitted does not establish reasonableness or necessity.**

At the May 11 hearing, Plaintiff's counsel identified the anticipated costs as account opening and closing fees plus the firm accountant's hourly time, Tr. 29:14–20, while acknowledging that the total was unknown; the Court agreed that Plaintiff was "not even sure what the costs were." Tr. 30:7–9. What arrived on May 22 was a single invoice totaling $5,042.05 – $5,015.40 of it for 19.29 hours of professional time billed on ten separate dates between May 10 and May 21, the remainder postage – captioned "DATA BREACH MITIGATION." Green Ex. 2.

Counsel's May 22 response – which Plaintiff's memorandum quotes in full, Mem. at 8–9 – raised the questions any payor would raise: whether the billed work fell within the categories identified to the Court, whether closing and reopening accounts was necessary at all, and whether 19.29 hours was a reasonable quantum for the task. The declaration certifies that Dr. Sun-Mee Jones serves as the firm's accountant. Green Dec. ¶ 12. The invoice reads otherwise. It is captioned "EXTRALEGAL LLC | ATTORNEYS AT LAW," it attributes the billed work to "Andrea Sun-Mee Jones, Ph.D., Esq.," and it itemizes the disputed time under legal task codes, including "Transactional advice and opinion." Green Ex. 2. Plaintiff's counsel anticipated the objection, writing on June 1 that Extralegal are "our outside accountants -- not random lawyers (as should be clear from the bill)." Green Ex. 1, PageID 1604.

The bill is indeed clear, though not in the direction claimed: not a "random lawyer," but the lawyer Plaintiff's counsel retained, billing as a lawyer for what the motion characterizes as the firm's "accountant" time. The mismatch does not defeat compensation, but it is one more reason the necessity and reasonableness of the billed hours cannot be assumed from the face of the invoice. Nineteen hours of professional time billed on ten separate dates, itemized only by standardized billing codes that name a category of activity but neither the substance of any task

14

nor its necessity, cannot be deemed reasonable merely because the professional is well-credentialed and the rate favorable. Reasonableness review of billed time is the ordinary stuff of fee and cost applications in this district. Plaintiff's papers offer praise for the professional, Green Dec. ¶¶ 13–15, but no basis on which the Court could find the hours themselves necessary and reasonable.

That is what the Court's invited application is for. If the parties cannot agree – and counsel remains willing to discuss documented costs, as he was on May 26 – the Court described the procedure on May 11 and offered its own assistance: a cost application, or a settlement conference of the kind that resolved the parties' fee dispute on May 20. Tr. 15:6–9; 34:11–19. The difficulty to date has not been an absence of discussion but its announced terms: Plaintiff's position, in her counsel's words, was that "there is no world where we agree to something less than this bill." Green Ex. 1, PageID 1604. A discussion with one permissible outcome is a demand, and the application process exists precisely for that impasse. Either path tests the invoice on its merits. Neither requires contempt machinery, punitive sanctions, or a finding against counsel personally.

### C.    Fees for this motion are not warranted.

Where a motion seeks relief the Court did not invite, on grounds the Court already declined, after a pre-motion conferral consisting of a single voicemail, an award of motion fees would reward the bypass. Cf. Tr. 5:14–21 (declining, in the parallel fee dispute, to award "fees on fees" and directing the parties to negotiate). If any cost recovery is ordered, it should be limited to documented costs proximately caused by the May 8 filing error, established through the ordinary application process.

### IV.    THE MOTION BYPASSED THE PROCESS THE COURT PRESCRIBED.

The Court's May 11 instruction was specific: talk, agree if possible, and if "the cost is not covered, then plaintiff is free to make the application." Tr. 34:14–19. The Court separately offered a settlement conference for exactly this kind of impasse, Tr. 15:6–9 – an offer these parties accepted to good effect in the fee dispute resolved on May 20. Plaintiff used neither path. The conferral record speaks for itself: before counsel had even responded to the invoice, Plaintiff's counsel announced on May 26 that, absent full payment, a sanctions motion would follow with the attorney time spent on it added to the request; counsel's response that evening raised ordinary reasonableness questions and made a voluntary payment offer; the June 1 follow-up paired one voicemail with the statement that "there is no world where we agree to something less than this bill"; and the motion was filed nine days later. Green Ex. 1, PageID 1604–05; Green Dec. ¶¶ 23–24.

A so-called conferral whose announced range of acceptable outcomes is a single number, on pain of a sanctions motion, is not a good-faith effort to resolve a dispute. This Court's Individual Rules confirm the defect on either reading of the motion. Rule III.B.1 provides that, "[b]efore making a discovery motion, parties must meet and confer, and make a good faith effort to resolve any disputes," and that "[f]ailure to comply with this requirement will result in denial of the motion." Rule III.B.2 requires that any such motion be made "by letter motion" not exceeding five pages. To the extent Plaintiff casts this as a discovery-related application invoking the Court's certification authority under 28 U.S.C. § 636 – the premise on which her motion proceeds – it honors neither requirement: the conferral was the single voicemail described above, and the filing is a twenty-page memorandum of law rather than a five-page letter. To the extent the motion is not a discovery motion at all, the governing procedure is the one the Court itself prescribed on May 11 – confer, agree if possible, and apply if not – which

16

Plaintiff bypassed in equal measure. The course Plaintiff chose was open to her under neither framework.

The sequencing of Plaintiff's actions here is not merely a failure of procedure. The structure the Court built on May 11 and 12 – a warning, a reimbursement discussion, an application if needed – was calibrated to the conduct the Court found: an unintentional technological mistake, promptly cured, with responsibility accepted on the record. This motion discards that structure in favor of the most severe machinery available against an attorney short of formal discipline, on the same facts, one month later. The Court should decline the invitation and return the parties to the process it prescribed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court decline to certify facts under 28 U.S.C. § 636(e); deny the requests for punitive or deterrent sanctions and for attorneys' fees; and direct that any recovery of costs proceed by documented application – or by settlement conference, as the Court prefers – limited to reasonable and necessary costs proximately caused by the May 8, 2026 redaction error.

Respectfully submitted,

COLEMAN LAW FIRM, P.C.

Ronald D. Coleman
50 Park Place, Suite 1105
Newark, New Jersey 07102
(973) 264-9611
rcoleman@colemanlaw-pc.com
*Attorney for Defendant Jeff Tarzia*

Dated: Newark, New Jersey
         June 15, 2026

17

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions and for Certification of Facts for Contempt complies with the word-count limitation of Local Civil Rule 7.1(c). As measured by the word-count function of the word-processing program used to prepare it, and exclusive of the caption, the table of contents, the table of authorities, the signature block, and this certificate, the memorandum contains 5,530 words, which is within the 8,750-word limit.

Dated: June 15, 2026

_____
Ronald D. Coleman