**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ALYSSA MERCANTE,

                *Plaintiff,*

        v.

JEFF TARZIA,

                *Defendant*

**Case No. 24-cv-8471 (MKB) (LKE)**

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT**

---

J. Remy Green
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com


**KAMERMAN, UNCYK, SONIKER,**
  **& KLEIN, PC**
Lane A. Haygood
1700 Broadway, 16th Floor
New York, New York 10019
Tel. 646.845.6085

June 17, 2026

## ARGUMENT

Defendant's opposition to the motion for contempt and sanctions ("Opp.") appears to be yet another instance of unreviewed generative AI drafting making it to the docket. In light of that, and the concomitant, ever-increasing burden that comes with sorting through arguments made without any basis in reality, generated without the "metacognitive processes that are necessary to comply with Rule 11" (*Jarrus v Governor of Michigan*, 2025 US Dist LEXIS 234830, at *5-6 (ED Mich Dec. 2, 2025)), Plaintiff submits a relatively limited reply.

Globally, Plaintiff does not have a strong view on the best source of authority for sanctions here, other than to say the sloppiness continues apace in the Opp., and the lack of seriousness with which Mr. Coleman approached even this Opp. says something of (in the colloquial sense) his contempt for the Court's orders. Accordingly, as Defendant seems to concede (and doesn't cite cases otherwise), Plaintiff cited cases where courts reached the result that a mistake like the one here requires the Court a party to make the harmed party whole, variously using contempt, Rule 37, and inherent powers. And the mechanism is, for Plaintiff, somewhat less important than the principle that the Court should make Plaintiff whole as far as (1) the accountant invoice her counsel has already paid and (2) the fees for needing to litigate this issue, because Mr. Coleman decided he would not make a serious attempt to resolve it.

Otherwise, Plaintiff's limited reply below proceeds in two basic steps. First, it notes the indicia of still-further unreviewed LLM usage (and notes the admissions of LLM-related misconduct Mr. Coleman made in handling the appeal about that misconduct), and corrects the fact mistakes that appear to come from the combination of no review and missing information in the LLM's context window.[1] Second, it notes what Defendant ***does not*** do in his Opp.: Ask for

---

[1] Relatedly, given these clear indicia that the Opp. came from unreviewed generative AI, the Court need not consider it even if Mr. Coleman attempts to file a corrected brief. *See, e.g., Zhang v. Zhang*, No 90509, Slip Op. at *2 (Nev,

1

a hearing, or deny any of the facts that require contempt and sanctions.  And that second piece essentially leaves the substance of the motion largely unopposed, even if the Court were inclined to excuse the review-free use of generative AI again.

Before that, however, the equitable shape of this issue should not be overlooked. Defendant's counsel is using AI generated papers to multiply proceedings over his admittedly at least sanction*able* conduct, all for the purpose of trying to force Plaintiff's lawyers to eat the out of pocket costs of the harm he has caused.  The use of AI without serious review means Defendant's counsel is not spending time.  And by forcing litigation and refusing to even ***answer*** a phone call, Mr. Coleman is deliberately trying to "dilute" the value of the right to be made whole. *Thomas v City of NY*, 2017 US Dist LEXIS 199235, at *25 (EDNY Dec. 1, 2017).  And that equitable piece can and should influence the Court's evaluation of the Opp.

***First***, the indicia of unreviewed LLM usage.

To start, since the Court may not be aware, as detailed in ECF Nos. 103 and 102, Mr. Coleman has now admitted he used ***two*** LLMs to draft the letter at ECF No. 88:  Westlaw's, to get case names and summaries, and Claude to draft and apparently hallucinate the entirety of the citations.  Mr. Coleman also admitted that he only read the AI-generated case summaries from Westlaw, not the actual cases, and that resulted in the misrepresentation of the holding of one of the seven cases cited in ECF No. 88, which was cited for a proposition that counsel now concedes is both unsupported by the case cited and legally wrong.

Among Defendant's Opp.'s arguments are (1) a suggestion certain cases do not involve contempt; (2) a claim that ***Plaintiff*** refused to engage in good faith to resolve payment for the

---

Apr. 22, 2026) ("we deny Mr. Lin's request to file a corrected opening brief"); *In re Wise*, 2026 Bankr LEXIS 903, at *4 (Bankr WD La Apr. 9, 2026) (striking offending filing and the filing purporting to correct it).

harm Mr. Coleman caused with his admitted sloppiness; and (3) a bizarre claim the Court foreclosed this application despite literally saying Plaintiff was free to file it.

For (1), Defendant suggests Judge Karas's decision in Coburn did not involve contempt and says it "reject[s] … each form of relief this motion seeks beyond fees" including "professional-discipline machinery." Opp. at 1; 8-10. But that reading of the decision and motion could not have been done by a competent attorney. In articulating the standard, Judge Karas discusses sanctions "***the contemnor***." ECF No. 100-7 at 5-6 (emphasis added). He cites and applies two decisions, one imposing contempt and Rule 37 sanctions side by side, and the other ***without any Rule 37 angle at all***. *Id.*, *quoting EEOC v Local 638*, 81 F3d 1162, 1182 (2d Cir 1996) (decision concluding, without mention of Rule 37, "[t]he finding of contempt against Local 28 is affirmed"); and *Blum v Schlegel*, 1996 US Dist LEXIS 21598, at *1 (WDNY May 9, 1996) ("I found plaintiff in civil contempt" and imposed Rule 37 sanctions). It is not clear how an attorney could review a decision applying — explicitly — the standard for a ***contemnor*** and then write, in good faith, "[t]he word 'contempt' appears nowhere in his decision," since "contemnor" is a cognate of "contempt." Opp. at 1.[2] More, nothing in the motion seeks to invoke "professional-discipline machinery"; the suggestion otherwise appears to be a hallucination. Opp. at 8-10.

As for (2) and (3), both appear to be AI context window misfires. Though the Opp. says "counsel remains willing to discuss documented costs" (Opp. at 15) his emails before the motion — apparently left out of the context window for Claude drafting — say explicitly he was not:

---

[2] And the argument that the decision turned on a find that the confidential information "was **deliberately** written into the text of a brief as advocacy" (Opp. at 10 (emphasis in original)) simply writes out of existence Judge Karas's express caveat that he was "prepared to accept the representation that this was not an intentional violation of the protective order" (ECF No. 100-7 at 7:7-23). And the attempt to treat the movant's personal views as dispositive is downright strange.

3

"***The offer is not subject to negotiation upward***" and "Absent acceptance, the offer is withdrawn and I will consider this matter closed." ECF No. 100-1 at 3-4. It was only after that, a failure to return a phone call over several days, and an email follow up, that Plaintiff made the motion. Likewise, it was only after this bad faith offer that Plaintiff's counsel explained they were not willing to shoulder *actually paid, out of pocket costs*. All of this suggests that Claude's drafting was responding to a limited window, without relevant information — no attorney, after sending the emails in ECF No. 100-1 and knowingly not returning phone calls, declaring he was done, and not responding over nine more days or ever mentioning a desire to actually negotiate, could in good faith claim there was some further negotiation he expected.

Likewise, given the Court's express direction that if Plaintiff's actual "cost is not covered, then plaintiff is free to make the application" (2026-05-11 Tr. at 34:11-21) for sanctions, no reasonable attorney would be able (in good faith, at least) to make it through the metacognitive processes required to argue the Court had **barred** the very application it invited. Yet, the Opp. does just that. *See, e.g.,* Opp. at 16. Again, the use of AI without review appears clear. And if unreviewed AI were ***not*** used, the argument that the Court did not ***mean*** "plaintiff is free to make the application" when it said "plaintiff is free to make the application" is sanctionable bad faith on its own. 2026-05-11 Tr. at 34:11-21.

***Second***, **Defendant does not ask for a hearing or contest the facts constituting contempt/sanctionable conduct.**

Because of the nature of contempt and sanctions, parties are sometimes entitled to a hearing. *See, e.g.,* Local Civ. R. 83.6 ("If the alleged contemnor puts in issue his or her alleged misconduct or the damages thereby occasioned, that person will upon demand be entitled to have oral evidence taken"). But Defendant "ha[s] not requested a hearing on the contempt," so "a

4

full-blown hearing is not required." *IME Watchdog, Inc. v Gelardi*, 2026 US Dist LEXIS 26340, at *24, n 9 (EDNY Feb. 9, 2026).[3]

Nor does Mr. Coleman contest any of the facts constituting sanctionable conduct or contempt. He violated the confidentiality order three times. Once, at least, he admits it was intentional. The other two times, he offers no explanation for his carelessness. Nor does he offer any way to explain his apparent disregard for the risks of leaking bank information — or apparent personal belief such a leak could be addressed lackadaisically. And indeed, by failing to submit any statement under oath, he waives any ability to challenge that he was grossly negligent or engaged in any diligent efforts to avoid violating the confidentiality order. Perhaps there is some fact that could explain how, in light of professed technical incompetence and a self-imagined emergency, filing an email with bank details ***at all*** could be consistent with diligence. But no such fact is offered at all — let alone one under oath.

Fundamentally, nowhere does the Opp. (1) contest that the conduct requires compensation; (2) contest that Plaintiff is entitled to fees for making this application; or (3) contest (at least seriously) that Mr. Coleman's conduct was grossly negligent.[4] All he says is he'd rather have a settlement conference. But ***Defendant has not opened up any further dialogue***. And as Plaintiff said, her counsel will not eat the out of pocket costs. Counsel paid the invoice attached to the moving papers. Counsel had to make this application after Mr. Coleman refused to pick up the phone or respond to emails, and otherwise told counsel his bad faith offer "is not subject to negotiation upward." Mr. Coleman remains free to make a serious offer, which Plaintiff would consider. But otherwise, she was — and is — as the Court explicitly

---

[3] This too looks like AI misfire: It is surprising that a lawyer facing contempt would not know to ask for a hearing.
[4] It does not address or contest there was no reason to file the email with bank information ***at all***. Which, in light of the other decisions about haste and knowledge of his tendency towards sloppiness across this docket, is more than sufficient to find failure to exercise due care required for contempt.

said "free to make th[is] application." 2026-05-11 Tr. at 34:11-21. And since counsel has not taken serious steps to settle this issue, the Court now has a live issue to resolve.

## CONCLUSION

Accordingly, for all the reasons discussed herein and in the moving papers, Plaintiff respectfully requests that the Court certify the facts constituting contempt as described above, and issue appropriate sanctions.

Dated:         June 17, 2026
               Queens, New York

                                        Respectfully Submitted,

                                             /s/
                                        _____

                                        J. Remy Green
                                        **COHEN&GREEN P.L.L.C.**
                                        1639 Centre Street, Suite 216
                                        Ridgewood, NY 11385
                                        (929) 888.9480 (telephone)
                                        (929) 888.9457 (facsimile)
                                        remy@femmelaw.com

6