UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

ALYSSA MERCANTE,

                        *Plaintiff,*

            v.

JEFF TARZIA,

                        *Defendant.*

Case No.: 24-cv-08471 (MKB) (LKE)

DECLARATION OF
ANDREA SUN-MEE JONES

---

State of Washington        )

County of Whatcom          ) ss.:


I, Andrea Sun-Mee Jones, being duly sworn, pursuant to 28 U.S.C. § 1746, depose and say:

1.      I am an attorney admitted in the State of New York, United States Tax Court, and the United States District Courts for the Eastern & Southern Districts of New York, and I regularly practice before the Internal Revenue Service, New York State Department of Taxation and Finance, and New York City Department of Finance.

2.      I have over ten years' experience rendering business tax and accounting services to clients as an owner of two professional service limited liability companies. My professional practice regularly involves advising clients on matters of financial risk and information security – including the tasks of making risk assessments, devising and implementing strategies to mitigate risks of data breach, evaluating the extent of potential financial and operational impact of any data breach, and identifying and resolving potentially fraudulent transactions – as

well as advising other attorneys on matters of attorney ethics, including compliance with the requirements of the New York Rules of Professional Conduct regarding both law firm operating accounts and attorney trust accounts.

3.    I have personally rendered such services to Cohen Green PLLC, attorney for Plaintiff in the above-captioned case, since 2018.

4.    On Sunday, May 10, 2026, I became aware that information pertaining to a certain bank account of Cohen Green PLLC (hereinafter "breached account") had been published in an e-filed document in the above-captioned case and thereafter propagated online (hereinafter "data breach"). At such time, I was also aware that the breached account was used in the ordinary course of Cohen Green PLLC's business, *inter alia*, in order to make payments for case expenditures such as filing fees, transcript fees, medical records fees, investigation fees, expert witness fees, and postage and delivery fees for legal clients of Cohen Green PLLC.

5.    In my professional opinion, the risk of unauthorized transactions in light of the data breach was undue, but it would have been prejudicial to Cohen Green PLLC's clients to close the breached account in response to the data breach without making careful provisions to maximize the likelihood that such other clients – on whose behalf Cohen Green PLLC was responsible for making timely financial transactions – would not be harmed by any strategy implemented to mitigate potential harm due to the data breach.

6.    Ultimately, upon conducting a thorough review of existing and potential banking security protocols and transactional analysis, my professional advice was to implement a strategy of applying immediate, post-breach risk-mitigation measures with respect to the breached account while simultaneously

establishing security protocols for another account (hereinafter "replacement account") of comparable administrability to the pre-breach security protocols applicable to the breached account that could serve to effectuate Cohen Green PLLC's ordinary business transactions, including those undertaken on behalf of its clients, on a permanent basis.

7.  To wit, during the period beginning May 10, 2026 and ending May 21, 2026, I personally spent 19.29 billable hours rendering the following services to Cohen Green PLLC in direct response to the data breach:

a.  I spent a subtotal of 7.26 billable hours reviewing transaction data and existing security banking protocols pertaining to the breached account, as well as reviewing active case files in order to ascertain the likelihood of harm that would be caused by unauthorized transactions in the breached account and the extent to which prejudice to Cohen Green PLLC and its legal clients would likely result were any authorized transactions from the breached account to be returned unpaid or otherwise be disrupted and providing advice to Cohen Green PLLC to explain the known and potential risks of the data breach.

b.  I spent a subtotal of 6.79 billable hours devising and assessing potential strategies that, to varying degrees, would both be likely to prevent unauthorized transactions from occurring in the breached account and simultaneously be likely to enable Cohen Green PLLC to complete authorized financial transactions for which it was responsible for completing in a timely manner, as well as

evaluating and advising Cohen Green PLLC of potential options for remedial action with respect to the breached account and the known, likely, and other potential consequences of each option for Cohen Green PLLC, including for each client of Cohen Green PLLC whose ongoing case would be affected by the method chosen, and reviewing the new protocols to Cohen Green PLLC's managing members.

c. I spent a subtotal of 2.23 billable hours drafting banking and other transactional financial documents for execution by Cohen Green PLLC in order to implement the chosen data breach mitigation strategy.

d. I spent a subtotal of 3.01 billable hours communicating with banking personnel, contracted vendors, and other financial transaction partners by facsimile transmission, electronic mail, online messaging, postal mail, and telephone in order to implement temporary and permanent security protocols for the breached account and the replacement accounts – protocols that, in the interest of maintaining the security of such protocols, will not be disclosed in a public document but effectively resulted in the decommissioning the breached account and operationalizing the replacement account, including cancelling and re-authorizing dozens of transactions – and documenting such actions for Cohen Green PLLC's books and records.

8.      On May 22, 2026, I emailed an invoice to Cohen Green PLLC from Extralegal LLC, a professional service limited liability company of which I am a managing member, for services rendered and expenditures made specifically with respect to mitigation of harm from the data breach – none of which, in my professional opinion, would have been necessary absent the data breach.

9.      Pursuant to a preexisting contract between Extralegal LLC and Cohen Green PLLC, such invoice billed Cohen Green PLLC for my time at a rate of $260 per hour. No premium or surcharge was added for weekend or expedited service.

10.     On June 10, 2026, Extralegal LLC received payment of $5,042.05 for such invoice from Cohen Green PLLC.

11.     Furthermore, mitigation actions in response to the data breach are still ongoing and continue to require follow-up communications with Cohen Green PLLC's managing members, staff, clients, and vendors to help ensure both that the new security protocols and operationalization of the replacement account are fully implemented and that corresponding updates to Cohen Green PLLC's books and records have been made. My time billed during the latter part of the May 22, 2026 invoice largely reflected such work, which in my professional opinion is integral to re-establishing a fully functional baseline of financial operations at Cohen Green PLLC. That is, even once the security of breached account itself was addressed in an immediate sense, significant work still remained to update preexisting payment arrangements with vendors, clients, and other transaction partners in order to place Cohen Green PLLC in an operational situation commensurate with its position prior to the data breach.

12.     While I have spent additional billable time on data breach mitigation tasks on and after May 22, 2026, such time has not been billed to Cohen Green PLLC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 23, 2026

_____

Andrea Sun-Mee Jones