**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

Alyssa Mercante,
Plaintiff,

v.

Jeff Tarzia,
Defendant.

Case No. 24-cv-8471

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff submits this Notice of Supplemental Authority in relation to the pending appeal concerning LLM use, at ECF No. 96 (and related entries). Attached is a recent decision by a Florida appellate court, also available at *Lisandrillo v Palozzi*, 2026 Fla. App. LEXIS 7179 (Dist Ct App Sep. 16, 2026).

The decision is relevant to the pending request for an order to show cause because it (implicitly, at least) rejects Defendant's premise that to be sanctionable, LLM use must involve not just a hallucination, but specifically a hallucination of an entirely fake case. Instead, it finds sanctionable and warranting of an order to show cause "AI[ ]drafting without meaningful attorney involvement," which is what Defendant's counsel here has already admitted happened — at least as to the parts of the relevant filing that cited authority.

The Florida Court writes:

> "The AI slop problem we address here has nothing to do with hallucinated law or false legal citations.
>
> > ***The citations are real. The cases exist.*** The language is confident. Yet the analytical reasoning—or lack of it—reveals that the arguments were assembled by an AI tool rather than developed through a trained advocate's independent judgment.
>
> Jodi Swick & Jarrett Ganer, *AI Slop Filings Show Lawyers Must Do More Than Check Citations*, Bloomberg Law (January 26, 2026, 4:30 AM), https://news.bloomberglaw.com/legal-exchange-insights-and-commentary/ai-slop-filings-show-lawyers-must-do-more-than-check-citations. We agree that AI[ ]drafting without meaningful attorney involvement 'undermines the very premise of qualified legal representation.' *Id.*"

*Lisandrillo,* 2026 Fla. App. LEXIS 7179, at *1, n 1 (emphasis added). While, of course, the conduct in *Lisandrillo* differs in degree, the decision is important because it rejects the precise defense of the unreviewed use of LLMs that counsel offered here: Using an LLM to draft, without meaningful review, ***is*** frivolous, period. And therefore, the conduct warrants an order to show cause — and without a meaningful explanation, sanctions.

And notably, the LLM-generated brief in *Lisandrillo* making significant procedural mistakes (e.g., *id.* at *9-10) matches precisely the kind of mistake counsel here made in allowing his double-AI drafting process to make an unreviewed argument about *A.M. v City of NY*, 2022 US Dist LEXIS 141001 (EDNY Aug. 8, 2022).

Respectfully Submitted,

DATED: September 18, 2026
Queens, NY

/s/

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com
*Attorneys for Plaintiff*

## Lisandrillo v. Palozzi

Court of Appeal of Florida, Fourth District

September 16, 2026, Decided; September 16, 2026, Filed

No. 4D2026-2262

**Reporter**
2026 Fla. App. LEXIS 7179 *; 2026 LX 594669

LORIE JEAN LISANDRILLO, Petitioner, v. RENEE PALOZZI, Respondent.

**Notice:** NOT FINAL UNTIL DISPOSITION OF TIMELY-FILED MOTION FOR REHEARING.

**Prior History:** **[*1]** Petition for writ of prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Elaine Alexandra Carbuccia, Judge; L.T. Case No. 062025DR021084AXXXCE.

**Counsel:** Jaclyn R. Soroka of Betras Kopp, LLC, Lakewood Ranch, for petitioner.

No appearance for respondent.

**Judges:** GROSS, J. LEVINE and SHEPHERD, JJ., concur.

**Opinion by:** GROSS

## Opinion

GROSS, J.

We deny the extraordinary writ petition seeking review in this dissolution of marriage case and write solely to address counsel's filing of what appears to be "AI slop."[1] Counsel's lengthy and unfocused filings contain gibberish and abuse the litigation process in different ways—including by churning out convoluted, false, and frivolous arguments.

We suspect that counsel's filings contain AI-generated components.[2] Abusive AI filing threatens the orderly administration of justice. We have recently sanctioned vexatious pro se litigants for abusive AI filings. *E.g., Avery v. Beauzil*, 51 Fla. L. Weekly D1068, 2026 Fla. App. LEXIS 4059, 2026 WL 1475262 (Fla. 4th DCA May 27, 2026); *Gouldy v. Chiasson*, 51 Fla. L. Weekly D1498, 2026 Fla. App. LEXIS 5601, 2026 WL 2104492 (Fla. 4th DCA July 22, 2026). Courts must require more from attorneys and not tolerate abusive practice fueled by AI.

### *Background*

The parties to this marriage have a 10-year-old child together. After petitioner sought a domestic violence injunction, **[*2]** the parties settled, and the court entered an agreed "stay away" order. The agreed order requires respondent and the child to have reunification therapy, which was to be followed by supervised, and ultimately, unsupervised visitation.

In February 2026, on petitioner's motion, the court appointed a guardian ad litem (GAL). Because of the

[1] The AI slop problem we address here has nothing to do with hallucinated law or false legal citations.

The citations are real. The cases exist. The language is confident. Yet the analytical reasoning—or lack of it—reveals that the arguments were assembled by an AI tool rather than developed through a trained advocate's independent judgment.

Jodi Swick & Jarrett Ganer, *AI Slop Filings Show Lawyers Must Do More Than Check Citations*, Bloomberg Law (January 26, 2026, 4:30 AM), https://news.bloomberglaw.com/legal-exchange-insights-and-commentary/ai-slop-filings-show-lawyers-must-do-more-than-check-citations. We agree that AIdrafting without meaningful attorney involvement "undermines the very premise of qualified legal representation." *Id.*

[2] Ironically, while some of the content appears AI-generated, other portions appear too unpolished to have been produced by AI.

disparity in incomes between the parties, the court made respondent responsible for 100% of the GAL fees.

The problems in this divorce case began after counsel—Jaclyn R. Soroka—appeared for petitioner in May 2026.

In June 2026, after the GAL recommended that respondent begin supervised visitation with the child, petitioner violated the agreed order by unilaterally terminating reunification therapy and all respondent's contact with the child. Petitioner alleges the child had an "emotional breakdown." Petitioner further violated the order by taking the child to doctors without consulting respondent and by not submitting the issue to the GAL for a recommendation as required by the order.

Instead, petitioner's counsel sent respondent and the GAL a lengthy email to establish a "medical basis" to pause reunification. The email purported to revoke releases in **[*3]** the court's appointment order that allowed the GAL and reunification therapist to obtain the child's records. The email forbade them from contacting the child's doctors and demanded they answer questions.

The GAL moved for a status hearing, and respondent moved for contempt. Both motions were set for July 14, 2026.

On July 3, 2026, petitioner's counsel filed a 41-page document titled "Urgent Omnibus Application" that demanded cancellation of the contempt hearing and requested 13 forms of relief. Among other things, the Omnibus Application sought to discharge the GAL.

In advance of the hearing, the court appointed counsel to represent the GAL, an act expressly permitted by the appointment order. That night, petitioner's counsel filed an "emergency" motion to vacate the order and again sought to discharge the GAL and vacate the appointment order. The 11-page emergency motion demanded nine forms of relief.

The trial court denied emergency treatment and set the motion for hearing on the afternoon of July 14, 2026 - after the contempt hearing.

On July 13, 2026, petitioner's counsel filed three separate motions in limine seeking to exclude the GAL from testifying and to exclude evidence from **[*4]** the hearing the next day.

The GAL's status hearing began at 1:30 p.m. The GAL's counsel opened by explaining that petitioner had prevented all contact with the child, which prevented the GAL from preparing a report.

In her opening statement, petitioner's counsel raised her pending Omnibus Application and the emergency motion that was set for that afternoon. Counsel objected to the GAL testifying and asked for permission to argue her motion, "[S]ince we're here, I may as well put it before Your Honor. Unless you'd like me to wait." The court agreed, and counsel argued the motion at length. The court then heard from respondent and the GAL before allowing petitioner to make a final argument. The court denied the motion and ruled that counsel had consented to the emergency motion being heard first. The court adjourned.

Petitioner alleges that, before the contempt hearing at 3:30 p.m., petitioner's counsel began drafting a motion to disqualify and tried to proffer it at the start of the contempt hearing. The judge stated she "did not take proffers" and would not allow further argument.

Contrary to the allegations, however, counsel did not move to disqualify or request the opportunity to do **[*5]** so at any point during the hearing.

Petitioner's counsel did not cross-examine the GAL and relied on her "prior filings"—presumably, the Omnibus Application and/or the three motions in limine filed the day before. The court advised that only the contempt motion was scheduled for hearing.

Petitioner testified and admitted violating the agreed order, and the court sustained hearsay objections when petitioner tried to testify about notes she had obtained from the child's doctors trying to justify the suspension of reunification therapy and visitation.

After respondent rested, petitioner presented nothing and again tried to rely on "prior filings," but the court maintained its ruling that prior filings were not set for hearing.

After hearing the testimony establishing petitioner's violations, the court held petitioner in contempt and granted makeup timesharing to be determined at a future hearing. The court also awarded respondent attorney's fees and costs as a compensatory sanction but has not determined the amount. As an additional sanction, and to discourage petitioner from continuing to interfere, the court made petitioner responsible for 50% of the GAL fees going forward—pending reallocation **[*6]** during equitable distribution.

Three days after the hearing, petitioner filed a 33-page motion to disqualify the judge. The motion complains about the court's rulings and raises many frivolous arguments, including arguments that are contrary to the record. The court denied the motion as legally insufficient.

This petition followed on July 31, 2026.

### *The Emergency Petition*

The 61-page emergency petition seeks a writ of prohibition to review the denial of the motion to disqualify, but the petition also purports to seek certiorari review of seven other rulings.

The petition demands an emergency stay of all proceedings below, including stopping the trial court from memorializing its rulings in writing.

Strangely, however, the petition then recognizes that the court did so. The petition discusses in granular detail how respondent's proposed order was initially rejected by the case management system and that the court signed the contempt order the next day at 1:54 p.m. and served it at 7:02 p.m. The author thus laments, "The relief this Petition sought to forestall has issued, and the accrual it sets in motion is continuing."

The filings contain indicia of non-human authorship.

### *Abusive Emergency Filing*

The first red flag is the emergency request. "Pursuant to our Administrative Order 2014-1, an emergency is a matter of extreme urgency that requires immediate action by this Court in order to avoid imminent, irreparable, and material harm." *Eclectic Synergy, LLC v. Seredin*, 51 Fla. L. Weekly D1061, 2026 WL 1475836, at *1 n.1 (Fla. 4th DCA May 27, 2026) (quoting *In Re: Requests for Emergency* ***[*7]*** *Treatment*, 4th DCA Admin. Order 2014-1 (June 12, 2018) (internal quotation marks omitted)). The request must "succinctly" state the "nature of the emergency."

Petitioner's confusing request complains about rulings, including that the court declined to treat petitioner's filings as an "emergency" but did so at the hearing.

> **Nature of the emergency**: This tribunal declared the child in an emergency posture, exercised emergency jurisdiction over her, denied evidentiary filings without notice or hearing, and the same afternoon held Petitioner in contempt, directed a rule to show cause, awarded fees, imposed fifty percent of the guardian's fees on her as a sanction, and modified her timesharing. It has three times refused, in writing, to treat her filings pertaining to that child as emergencies: July 8, July 9, and July 28, a day after denying her disqualification motion. Both cannot be true. . . .

The description continues on like this and repeats a frivolous argument raised throughout these proceedings—that the court could not hear from the GAL because she had not filed a report.

Like the other filings in this case, the emergency request churns out a string of convoluted arguments.

No imminent **[*8]** irreparable harm of any kind is shown. The document alleges an emergency exists because the July 29, 2026, contempt order required the parties to reestablish a timesharing schedule by

July 17, 2026, and stated that a rule to show cause should issue on noncompliance. The court, however, has not threatened incarceration as a sanction. Another purported harm was that the GAL's fees are accruing.

No "emergency" by any definition exists. Counsel merely sought priority over other litigants, which is an abuse of procedure. Emergency filings disrupt proceedings by causing this Court to drop everything and should not be filed for tactical reasons.

> A true emergency requiring "immediate" action by this Court means action is needed within a matter of hours, not an event that is days or weeks away. Filing an emergency request merely because counsel desires to have a matter expedited is an abuse of procedure.

*Eclectic Synergy, LLC*, 2026 Fla. App. LEXIS 4056, 2026 WL 1475836, at *1 n.1; *USAA Cas. Ins. Co. v. Pembroke Pines MRI, Inc.*, 24 So. 3d 588, 589 (Fla. 4th DCA 2009) ("Pleadings filed as emergencies disrupt court procedures and interrupt work on cases that were already pending.").

### *Eight Proceedings in One*

Another red flag is the petition's request for review of eight separate rulings in this single writ proceeding. *See Int'l House of Pancakes (IHOP) v. Robinson*, 124 So. 3d 1004, 1006 (Fla. 4th DCA 2013) ("[I]t was improper for petitioner **[*9]** to seek review of two distinct and separate non-final orders in this single certiorari petition.").

A prohibition petition seeking review of the denial of a motion to disqualify cannot be used to simultaneously challenge the court's rulings. As discussed further below, the requests for certiorari relief are frivolous.

### *Citations to an Unpublished Order*

Another red flag is the citation to our unpublished order deciding a wholly unrelated case three years ago.

Our unpublished decision in that case has no precedential value and should not have been cited. *See Dep't of Legal Affairs v. Dist. Ct. of Appeal, 5th Dist.*, 434 So. 2d 310, 313 (Fla. 1983) (explaining that an unwritten decision—a per curiam affirmance—"is not a precedent for a principle of law and should not be relied upon for anything other than res judicata").

Our decision in the prior case is irrelevant to anything in this proceeding. Petitioner cites it solely to disparage the judge. Indeed, at paragraph 109, the author of the motion to disqualify acknowledges:

> The only unifying feature between this Court's rulings/acts in [the unreported case] and the case at bar — is that this Court departed from the essential requirements of law, in both cases, whilst adjudicating chill[sic]-related matters.

### *The Motion to Disqualify*

Like all of counsel's filings, the 33-page motion is extremely difficult to follow and argues 14 grounds for disqualification.

The motion begins with the frivolous argument—often seen in AI hallucinations—that **[*10]** the filing of a motion to disqualify under rule 2.330 automatically stays all proceedings in the trial court. *Avery*, 2026 Fla. App. LEXIS 4059, 2026 WL 1475262, at *1 n.1 (noting that this Court has seen this AI-hallucinated argument all too often).

The author of the petition in this case is similarly mistaken and, at page 30, argues that, after the motion was filed, petitioner "was foreclosed by Rule 2.330 from submitting anything."

### *Allegations that are Contrary to the Record*

The motion falsely alleges that the judge "systematically muzzled" counsel at the hearing. The hearing transcript refutes this allegation.

"[A] motion made on a trial judge's statement in open

court that does not accurately represent what has actually been said cannot comply with the requirement that an affidavit be made 'in good faith.'" *Gregory v. State*, 118 So. 3d 770, 780 (Fla. 2013) (concluding that the motion to disqualify was legally insufficient).

Many more of the allegations in this case are contrary to the record. As in *Gregory*, we conclude that these allegations are insufficient to merit disqualification. *Id.* Allegations concerning events at a hearing that are contrary to the record are not sufficient to disqualify. *Id.* at 779-80.

A judge cannot be disqualified based on AI-hallucinated events.

### *Scattershot Arguments*

The motion raises the following grounds, which we reproduce verbatim:

> A. "The Court Declared the Agreed Order's (Specifically, the Fee Arrangement) Binding and Unreviewable at 1:30 P.M., Then Modified It as a Contempt Sanction at 3:30 P.M. Without Motion, Notice, or Evidence, After Having Just Told Respondent She Had No Standing to Contest It."
>
> B. "The Court Manufactured a Finding **[*11]** of Consent to Adjudicate the 4:30 P.M. Motion at 1:30 P.M.: a Finding Directly Contradicted by the Transcript, While Ignoring That Its Own Scheduling Order Prohibited Any Change to the Hearing Time."
>
> C. "The GAL's Own Attorney Disclosed on the Record That She Was Retained to Protect the GAL's License (Not for Any Investigative Function), and the Court Approved the Arrangement After Reading the Statute Aloud and Reaching the Opposite of Its Plain Meaning."
>
> D. "The Court Categorically Refused to Receive Any Proffer of Proof on the Record, Before the First Witness Was Called, Foreclosing in Advance the Statutory Mechanism for Creating a Reviewable Record."
>
> E. "The Court Denied Two Fully-Briefed, Unopposed Motions Comprising 74 Paragraphs Without Addressing, Distinguishing, or Acknowledging a Single One of the Thirty-plus Controlling Authorities Respondent Cited."
>
> F. "The Court Applied a One-Way Evidentiary Standard: Admitting Unlimited Hearsay for Petitioner's Witnesses Under an Invented Waiver While Blocking Every Category of Medical Evidence Offered on Respondent's Behalf."
>
> G. "After Petitioner Rested, the Court Did Not Ask Whether Respondent Wished to Present a Defense; It Moved Directly **[*12]** to Closing Arguments, Then Admonished Respondent's Counsel for the Outcome the Court Had Engineered."
>
> H. "The Court Admonished Respondent's Counsel for Not Cross-Examining Witnesses, After Having Systematically Foreclosed Every Mechanism That Would Have Made Cross-Examination Meaningful."
>
> I. "The Court Awarded Attorney's Fees, Reallocated GAL Fees, and Granted Makeup Timesharing at the Conclusion of the Contempt Hearing, None of Which Was Pending in the Contempt Motion, Supported by Evidence, or the Subject of Prior Notice."
>
> J. "The Contempt Finding Rests on Evidence the Court Excluded, While the Medical Documentation That Would Have Answered the Contempt Allegation Had Been in Opposing Counsel's Possession for Three Days Before the Contempt Motion Was Filed."
>
> K. "Prior to Any Substantive Hearing ever Occurring in the Dissolution Proceedings, the GAL Disclosed to Respondent's Counsel a Personal Relationship With This Court That She Stated Would Prevent Her Removal, and the

Subsequent Record Is Consistent With That Statement at Every Point."

L. "The Court's Oral Rulings Mischaracterized Respondent's Domestic Violence Filings as Emergency Motion Abuse in This Dissolution Case, Characterizing **[*13]** the Exercise of a Domestic Violence Victim's Statutory Rights as Bad-Faith Litigation."

M. "Notably, the Fourth District Court of Appeal Has Previously Reversed This Court, Judge Carbuccia, for Departure from Essential Requirements of Law in Its Treatment of Medical Authority, and This Court Has Now Adopted the Diametrically Opposite Position on the Same Type of Evidence."[3]

N. "Not One Exhibit Was Admitted Into Evidence at Either Hearing: Every Ruling Was Made on a Record Consisting Entirely of Argument and Hearsay Testimony."

O. "The Court's Demeanor Toward Respondent's Counsel, Including Repeated Misidentification of Counsel by Name and Gender, Hostile Conduct Documented in the Transcript, and Proceedings That Continued While Counsel's Audio Malfunctioned, Reflecting Asymmetric Treatment That a Reasonably Prudent Person Would Fear Was Not Neutral."

Most of these arguments merely complain about adverse rulings, which are not grounds to disqualify. *Jackson v. State*, 599 So. 2d 103, 107 (Fla. 1992).

Many of these arguments are frivolous. For example, grounds A and B complain about the timing of the court's ruling on the emergency motion. The record shows that counsel asked to argue her motion first. The court did not have to hear the motion again at 4:30 p.m.

Other arguments are contrary to the record. The proceedings did not continue while counsel's audio malfunctioned. Instead, the transcript shows that, several times during the Zoom hearing, the court alerted counsel that she was "muted" and could not be heard.

The court **[*14]** did not characterize the domestic violence filings as bad faith litigation.

The petition and disqualification motion claim the court denied the Omnibus Application, but the court repeatedly refused to address it because it was not set for hearing.

The Omnibus Application raises many of the same frivolous arguments repeated in the motion to disqualify and petition.[4] For example, counsel's argument that the GAL cannot be heard because she had not filed a report is baseless. The statute provides to the contrary.

> The guardian ad litem *may address the court* and make written *or oral recommendations to the court.* The guardian ad litem shall file a written report which may include recommendations and a statement of the wishes of the child. The report must be filed and served on all parties at least 20 days prior to the hearing at which it will be presented unless the court waives such time limit.

§ 61.403(5), Fla. Stat. (2025) (emphasis added); *see also* § 61.403(6), Fla. Stat. (2025) ("A guardian ad litem, *acting through counsel*, may file such pleadings, motions, or petitions for relief as the guardian ad litem deems appropriate or necessary in furtherance of the guardian's function.") (emphasis added).

The GAL in this case could not complete **[*15]** her report because petitioner cut off contact with the child. The GAL properly applied for relief from the court, and the court properly appointed counsel to assist the GAL—especially in light of counsel's voluminous filings and email.

The allegation that the court did not allow counsel to present a defense or argument at the hearing is

[3] This argument cites our unpublished decision in the unrelated and irrelevant 2023 case.

[4] Spanning pages 13 to 15, the petition quotes the Omnibus Application's entire "wherefore" clause, which is appended.

contrary to the record. After respondent closed her case, the court opened the floor to petitioner's counsel, who stated: "Nothing, Your Honor. I stand on my filings and my prior objections."

Likewise, the allegation that counsel was prevented from moving to disqualify during the contempt hearing is contrary to the record. The transcript shows that counsel could have moved to disqualify at many points during the hearing and did not do so.

This results in a waiver and alone merits denial. *Fischer v. Knuck*, 497 So. 2d 240, 243 (Fla. 1986) ("A motion for recusal is considered untimely when delayed until after the moving party has suffered an adverse ruling unless good cause for delay is shown.").

### *Legal Gibberish*

The allegation in ground H that the judge admonished counsel for not cross-examining witnesses is bizarre. No such citation or quotation of the alleged admonishment is in the record. At paragraph **[*16]** 77, the motion argues:

> The Court admonished her for that judgment. ***The bind that creates, participate and get shut down on the one hand*** . . . ***decline and get admonished on the other, is not a fair proceeding. It is the record of one***.

(bold and italics in original).

The filings often emphasize (with bold and italics) seemingly random sentences causing the reader to focus on what turns out to be irrelevant facts.

Here, the motion emphasizes legal gibberish. The motion and petition contain many other puzzling arguments.

### *Arguments Not Supported by the Official Record*

The author of the motion acknowledged using an unofficial "rough draft transcript" and argued that the trial court repeatedly referred to counsel as "Mr. Soroka" and allegedly mispronounced counsel's name numerous times during the hearing.

The official transcript, however, reflects no such mistakes. No citations are given, and notably, counsel never objected at the hearing to the judge referring to her as "Mr." or mispronouncing her name. The motion, nevertheless, suggests that the judge was disparaging counsel.

We suspect that AI generated these bogus arguments from mistranscriptions in the "rough draft transcript."

Again, a judge **[*17]** cannot be disqualified based on events that are contrary to the record. *See Gregory*, 118 So. 3d at 779-80.

### *Issue Churning and Unpreserved Issues*

The petition, and counsel's other filings in this case, suffer from an increasing problem with AI-generated legal documents—issue churning. Many AI-generated or AI-assisted documents aggressively raise scattershot arguments. This tactic does nothing to further the interests of the client and instead hurts the chances of success.

Here, the author churns out spurious arguments—some that were not even raised below:

• "**Adjudication of matters not noticed**." Petitioner claims that the court erred in making evidentiary findings because the hearing was not noticed as evidentiary. The contempt hearing, however, was obviously evidentiary. The court took testimony, including from petitioner.

• "**A consent finding the transcript refutes**." The transcript shows that counsel asked for permission and agreed to argue her emergency motion first.

• "**Denial of a hearing the court had ordered**." Petitioner complains that the court denied the emergency motion at the 1:30 p.m. hearing when it was scheduled for 4:30 p.m.

• "**Prejudgment from the bench**." No such claim

was raised below. The petition complains **[*18]** that the court stated that failure to produce the child to the GAL would be contempt. No such prejudgment occurred.

• "**Rulings irreconcilable on the record.**" Petitioner claims the court ruled inconsistently because it found petitioner lacked standing to object to the GAL fees but later modified the agreed order to require her to pay 50% of the GAL fees.

• "**Systematic denial of record-making.**" Again, the allegation that the court prevented counsel from presenting evidence, making argument, or preserving issues is contrary to the record.

• **The court's 10-day delay in ruling after the motion to disqualify was filed confirms the fear of bias**. The rule requires the judge to rule within 30 days of service of the motion. Fla. R. Gen. Prac. & Jud. Admin. 2.330(*l*). The court's 10-day delay in ruling provides no basis for disqualification.

The petition concludes with a "cumulative effect" argument:

> In one day the trial court declared a child in an emergency posture after twice refusing to treat [petitioner]'s filings as emergencies, and has since refused a third time in writing; adjudicated and denied evidentiary matters not noticed or set for hearing, and adjudicated and denied matters set for another time after hearing the challenged **[*19]** appointee first, [respondent]'s counsel second, and called [petitioner]'s counsel's compelled response consent; denied unopposed motions without addressing any legal authority provided; read a statute correctly yet applied it backwards; warned [petitioner] that certain acts constitute contempt, without evidence, and then found contempt ninety minutes later; excluded the medical advice and documentation in all parties' counsel's possession as of June 12, 2026; opened an evidentiary door in one direction only, foreclosed [petitioner]'s counsel's every record-making attempt, repeatedly, and modified an agreed order on its own initiative.

This typifies the "issue churning" problem. AI churns out a laundry list of convoluted arguments that no competent lawyer should make. Counsel must exercise independent judgment when making arguments to a court.

The unnatural ways the arguments are presented further leads us to suspect AI was used.

Ultimately, however, whether this was AI-generated, AI-assisted, or something else makes no difference. An attorney is obligated to stand behind any submission to a court.

***The Requests for Certiorari***

The 25 pages of argument that "certiorari should issue as to seven **[*20]** rulings" further demonstrates the issue-churning problem. The petition purports to seek review of oral rulings as well as the written orders.

None of these rulings are appealable or subject to certiorari review, which is discretionary and not merited here. *See Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011); *Bared & Co. v. McGuire*, 670 So. 2d 153, 157 (Fla. 4th DCA 1996). An oral ruling is not subject to certiorari review. *Holt for Thirteenth Judicial Circuit, Hillsborough Cnty. v. Keetley*, 250 So. 3d 206, 209 (Fla. 2d DCA 2018).

The trial court has not determined the makeup timesharing or the amount of fees/costs to be imposed as a sanction. A temporary custody ruling or final fee/cost judgment will be appealable. This precludes certiorari review.

The certiorari portion of the petition churns out the same type of scattershot, convoluted arguments discussed above.

***Courts Should Not Tolerate Abusive AI-Assisted Filing***

Pro se litigants and lawyers can easily abuse AI to crank out extensive and confounding documents that

cause delay, annoyance, and expense to the other side. Busy courts can drown in a flood of filings that are difficult to navigate. Abusive AI filing clogs dockets and undermines the administration of justice. *E.g., Avery*, 51 Fla. L. Weekly D1068 (where the pro se litigant sought a ruling on more than 90 pending motions).

Courts expect more from an attorney. *See Capital Standard, LLC v. U.S. Bank Nat'l Ass'n as tr. for Bear Stearns Asset Backed Sec. I Tr. 2005-AC9, Asset-Backed Certificates, Series 2005-AC9*, No. 2D2024-1392, 2026 Fla. App. LEXIS 6377, 2026 WL 2450571, at *1 (Fla. 2d DCA Aug. 21, 2026) ("[I]t defies belief for a practicing attorney to plead **[*21]** ignorance of the risks of relying on generative AI without double-checking the results.").

By filing a document with her signature, counsel represents that she has read the document, that "there are good grounds to support the document," and that "the document is not interposed for delay." Fla. R. Gen. Prac. & Jud. Admin. 2.515(d)(2). No less than a pro se litigant, an attorney is responsible for the content of filings and should not be filing frivolous, scattershot arguments. An AI supercomputer would struggle to find meaning in some of the prose used in this case. Counsel's arguments need to be comprehensible to human readers—the courts, opposing counsel, and the litigants.

Here, counsel's filings and abusive motion practice resemble what we typically see from vexatious pro se litigants. The filings appear designed to cause delay.

Counsel's conduct in this case implicates many rules of professional conduct. R. Regulating Fla. Bar 4-1.1 ("Competence"); R. Regulating Fla. Bar 4-2.1 ("Adviser"); R. Regulating Fla. Bar 4-3.1 ("Meritorious Claims and Contentions"); R. Regulating Fla. Bar 4-3.2 ("Expediting Litigation"); and R. Regulating Fla. Bar 4-3.3 ("Candor toward the Tribunal").

Counsel's conduct also raises ethical questions concerning billing. R. Regulating Fla. Bar 4-1.5 ("Fees and Costs for Legal Services"). The first factor in determining a reasonable fee is "the time and labor required, **[*22]** the novelty, complexity, difficulty of the questions involved, and the skill requisite to perform the legal service properly." R. Regulating Fla. Bar 4-1.5(b)(1)(A).

It takes almost no skill and little time to generate AI slop. When a lawyer files such slop, the lawyer violates the duty to "exercise independent professional judgment." R. Regulating Fla. Bar 4-2.1.

## *Conclusion*

The prohibition petition shows no basis for discretionary writ relief. The motion to disqualify merely sought to "frustrate" the court's rulings and was properly denied. *Fischer*, 497 So. 2d at 243 ("We find the motion for disqualification legally insufficient, frivolous, and untimely."). The request for certiorari relief is likewise denied.

## *Order to Show Cause*

Within ten (10) days of this opinion, petitioner's counsel, Jaclyn R. Soroka, shall file a response and show cause—without the use of AI—why sanctions, such as referral to the Florida Bar for consideration of disciplinary proceedings, should not be imposed for submitting frivolous filings to this Court. *See* Fla. R. App. P. 9.410(a) ("After 10 days' notice, on its own motion, the court may impose sanctions for any violation of these rules, or for the filing of any proceeding, motion, brief, or other document that is frivolous or in bad faith.").

*Petition denied. Order to show* ***[*23]*** *cause concerning sanctions issued.*

LEVINE and SHEPHERD, JJ., concur.

## *Appendix*

The following is the "wherefore" clause of the "Urgent Omnibus Application," as quoted between

pages 13 and 15 of the petition:

(a) Dismiss, stay, or continue the July 14, 2026, 3:30 p.m. contempt hearing based on Petitioner's failure to file the Certificate of Conferral explicitly required by this Court's Judicial Assistant, Broward County Local Rule 10A, Florida Rule of Civil Procedure 1.202, and Division 40 Procedures Paragraph V.(A), and direct that no contempt hearing be rescheduled until a Certificate of Conferral is filed; (b) Address Respondent's pending Urgent Motion to Strike and for Protective Order and exercise this Court's independent authority under Florida Rule of General Practice and Judicial Administration 2.425(c) with respect to the documented violation of Rule 2.425 in the Motion for Contempt (Filing No. 250792821); (c) At the July 14, 2026, 1:30 p.m. GAL Case Management Conference, take no action based on unsworn verbal representations by the Guardian ad Litem in the absence of a written report filed and served in compliance with Florida Statute section 61.403 and Paragraph 25 of the Order of Appointment, consistent with Respondent's due process rights to review, rebut, and crossexamine any report before relief is ordered, as required by *Bahl v. Bahl*, 220 So.3d 1214 (Fla. 2d DCA 2016); (d) Address the Guardian ad Litem's documented violation **[*24]** of Florida Statute section 61.404 and Paragraph 21 of the Order of Appointment arising from the June 12, 2026 'Updated Recommendations' email, and place all parties on notice that any further informal disclosure of GAL investigation information outside the formal court-report process would constitute a second violation; (e) Decline to authorize any inoffice meeting between the Guardian ad Litem and S.P. absent a court order and demonstrated compliance with the requirements of Florida Statute section 61.403 and the Paragraph 18 consent and objection process established in the Order of Appointment; (f) Order that Paragraph 19 of the Order of Appointment is unenforceable to the extent it purports to override Respondent's lawful revocation of HIPAA authorization pursuant to 45 C.F.R. section 164.508(b)(5) or to override S.P.'s psychotherapist-patient privilege as recognized in *Attorney ad Litem for D.K. v. Parents of D.K.*, 780 So. 2d 301 (Fla. 4th DCA 2001), and *S.C. v. Guardian Ad Litem*, 845 So. 2d 953 (Fla. 4th DCA 2003), and that records access by the Guardian ad Litem shall be governed exclusively by Paragraph 18 of the Order of Appointment and Florida Statute section 61.403(2); (g) Schedule a hearing on the grounds for vacatur of the Order Appointing Guardian Ad Litem as set forth in Part IV, Section A of this Motion, and pending that hearing, direct that no further GAL investigation activity occur in this matter; (h) Vacate or modify the reunification **[*25]** therapy provision of the March 30, 2026 Agreed Stay Away Order as set forth in Part IV, Section B of this Motion, and stay all reunification therapy sessions with Dr. Kelly Painter pending completion of the comprehensive psychological and psychiatric evaluation recommended by Dr. Halle Roebuck, Ph.D., LMFT on June 17, 2026; (i) Enter a sealing order as set forth in Part IV, Section C of this Motion, directing that all GAL investigation materials obtained under color of Paragraph 19 or outside the written scope of the authorized releases of information be submitted to this Court under seal and held in abeyance pending a hearing on the lawfulness of their procurement; (j) Schedule a hearing on the grounds for discharge of the Guardian ad Litem set forth in Part I, Section F of this Motion, or in the alternative discharge the Guardian ad Litem based on the cumulative record of statutory and appointment order violations established herein; (k) In the event this Court does not discharge the Guardian ad Litem, appoint a separate attorney ad litem for S.P. pursuant to Florida Statute section 61.401 to protect S.P.'s psychotherapist-patient privilege and to advance S.P.'s expressed position, independent of the GAL; (l) **[*26]** Find that Respondent's conduct regarding the DBT therapy referral to Tammy Berman constitutes neither willful non-compliance nor civil contempt, the OFW record establishing that

Respondent identified a clinical limitation with the referred provider on June 25, 2026, notified Petitioner in writing the same day, and actively pursued an age-appropriate alternative in good faith and in consultation with S.P.'s treating clinical team; and (m) Grant such further relief as this Court deems just and proper." *Id.* at Wherefore (a-m).

---

End of Document