UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALYSSA MERCANTE,

Plaintiff,

v.

JEFF TARZIA,

Defendant.

---

**MEMORANDUM & ORDER**
24-CV-8471 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Alyssa Mercante commenced the above-captioned action on December 11, 2024 against Defendant Jeff Tarzia, (Compl., Docket Entry No. 1), filed an Amended Complaint on April 18, 2025, and a Second Amended Complaint ("SAC") on May 8, 2025. (*See* Am. Compl., Docket Entry No. 11; SAC, Docket Entry No. 13.) Plaintiff alleges five causes of action: (1) defamation and defamation per se based on several statements made by Defendant about Plaintiff, (SAC ¶¶ 355–74); (2) bias-related violence or intimidation under New York Civil Rights Law § 79-n, (*id.* ¶¶ 375–81); (3) intentional inflection of emotional distress, (*id.* ¶¶ 382–92); (4) tortious interference with Plaintiff's employment contract, (i*d.* ¶¶ 393–404); and (5) common law "stochastic terrorism" and/or prima facie tort, (*id.* ¶¶ 405–38).[1] Plaintiff alleges

[1] On July 28, 2025, Defendant moved to dismiss the SAC for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. to Dismiss, Docket Entry No. 22; Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss, Docket Entry No. 22–1; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Docket Entry No. 23; Def.'s Reply in Supp. of Def.'s Mot. to Dismiss, Docket Entry No. 24.) On November 4, 2025, the Court found it lacked personal jurisdiction over Defendant and ordered the parties to engage in jurisdictional discovery. (Mem. & Order dated Nov. 4, 2025 ("November 2025 Decision"), Docket Entry No. 37.)

defamation based on two specific statements Defendant created about Plaintiff on his X account, formerly known as Twitter ("Twitter"), and also alleges Defendant published numerous social media posts, videos, and online articles across various platforms portraying Plaintiff in a negative light. (*Id.* ¶¶ 143–53, 168–76.)

On May 26, 2026, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rule 72.1(b)(1) of the S.D.N.Y./E.D.N.Y. Joint Local Rules, Plaintiff filed a notice of objection with the Court, appealing Magistrate Judge Lara K. Eshkenazi's decision to deny Plaintiff's requested order to show cause concerning Defendant's use of generative artificial intelligence ("AI") in his briefs and other filings in this case (the "OTSC Sanction Appeal"), and on June 9, 2026, Defendant opposed the OTSC Sanction Appeal.[2] For the reasons discussed below, the Court denies Plaintiff's appeal of Judge Eshkenazi's May of 2026 determination.

---

[2] (Pl.'s Notice of Objs. and Appeal of Magistrate Judge's Denial to Issue an Order to Show Case ("Pl.'s OTSC Sanction Appeal"), Docket Entry No. 96; Pl.'s Mem. in Supp. of Pl.'s OTSC Sanction Appeal ("Pl.'s Mem."), appended to Pl.'s OTSC Sanction Appeal, Docket Entry No. 96-1; Decl. of J. Remy Green, Esq. in Supp. of Pl.'s OTSC Sanction Appeal ("Green Decl."), appended to Pl.'s OTSC Sanction Appeal, Docket Entry No. 96-2; Def.'s Mem. in Opp'n to Pl.'s OTSC Sanction Appeal ("Def.'s Opp'n"), Docket Entry No. 99; Pl.'s Reply in Supp. of Pl.'s OTSC Sanction Appeal ("Pl.'s Reply"), Docket Entry No. 103; Decl. of J. Remy Green, Esq. in Supp. of Pl.'s Reply ("Green Reply Decl."), appended to Pl.'s Reply, Docket Entry No. 103-1.)

Plaintiff also filed a notice of supplemental authority alerting the Court to *Lisandrillo v. Palozzi*, --- So. 3d ---, 2026 WL 2727559 (Fla. Dist. Ct. App. Sep. 16, 2026), a Fourth District Court of Appeals of Florida state case. (Pl.'s Notice of Suppl. Authority, Docket Entry No. 110; *see also* Def.'s Resp. to Pl.'s Notice of Suppl. Authority, Docket Entry No. 111.) In her briefing, Plaintiff also cites extensively to other cases that are out of circuit, *see, e.g., Miller v. Regions Bank*, 833 F. Supp. 3d 1201 (N.D. Ala. 2026); *Twigg v BSN Sports, Inc.*, No. 23-CV-67, 2026 WL 1432680 (M.D. Pa. May 21, 2026); *Gauthier v Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651 (E.D. Tex. Nov. 25, 2024), or apply various state laws, *see, e.g., Lisandrillo*, 2026 WL 2727559; *Doe v Trs. of Columbia Univ. in the City of NY*, 254 N.Y.S.3d 393 (Sup. Ct. 2026). Both types of cases are unhelpful to the Court's analysis because they do not apply Rule 11 and/or are not binding authority. Even cases published by other courts within the Second Circuit, such as the District of Connecticut, are unhelpful as different districts have established rules surrounding suspected illicit use of AI that the Eastern District of New York

## I. Background

The Court assumes the parties' familiarity with the facts as set forth in the Court's November 2025 Decision. (November 2025 Decision 3–8.)

### a. November 2025 Decision and subsequent procedural history

#### i. November 2025 Decision

Defendant is a resident of San Diego, California and currently makes a living as an influencer and content creator. (SAC ¶¶ 32, 88.) Plaintiff alleges that Defendant posts content related to the gaming industry on his website, YouTube channel, and various other social media platforms. (*Id.* ¶ 88.) Plaintiff is a resident of Kings County, New York and she has worked as a female journalist in the video game industry, previously as a senior editor at a prominent gaming news website as well as writing for various other publications. (*Id.* ¶¶ 3, 31, 82.)

In its November 2025 decision, the Court held it lacked personal jurisdiction over Defendant because Plaintiff failed to plead specific jurisdiction under C.P.L.R. §§ 302(a)(1) and 302(a)(3) and Plaintiff failed to plead an agency or conspiracy theory. (November 2025 Decision 11–54.) *See Mercante v. Tarzia*, No. 24-CV-8471, 2025 WL 3073739, at *7, *8 (E.D.N.Y. Nov. 4, 2025). First, the Court found that Plaintiff failed to establish that Defendant

---

has not adopted. *See Andre v. Warden*, *FCI Danbury*, 827 F. Supp. 3d 294, 306 (D. Conn. 2025) (adopting an analytical framework for the District of Connecticut set out by a prior District of Oklahoma case); *see also Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) (finding that while "several courts have recently proposed or enacted local rules or orders specifically addressing the use of artificial intelligence tools before the court[,] . . . such a rule is not *necessary* to inform a licensed attorney . . . that she must ensure that her submissions to the [c]ourt are accurate"). The Court therefore finds Plaintiff's cited out-of-circuit, out-of-state, and out-of-district (except for the Southern District of New York, the Eastern District's sister court) authorities unpersuasive and does not consider them further. In comparison to the seventeen out-of-circuit, out-of-state, and out-of-district authorities, Plaintiff cites to only four applicable cases. *See Chakma v. Sushi Katsuei, Inc.*, No. 23-CV-7804, 2026 WL 1399056 (S.D.N.Y. May 19, 2026); *Superb Motors Inc. v. Deo*, No. 23-CV-6188, 2026 WL 1179837 (E.D.N.Y. Apr. 30, 2026); *Jimenez-Fogarty v. Fogarty*, 831 F. Supp. 3d 253 (S.D.N.Y. 2026); *Mata v. Avianca*, *Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023).

"transacts business" in New York pursuant to § 302(a)(1) because Defendant's posting of defamatory material on a monetized YouTube channel did not constitute purposeful availment or purposeful targeting of New York residents. (November 2025 Decision 20–31.) In addition, the Court held that Plaintiff did not adequately establish the required nexus to prove both that her defamation and non-defamation claims arise from Defendant's New York contacts. (*Id.* at 31–38.) Second, the Court held that Plaintiff failed to plead specific jurisdiction under § 302(a)(3) because the SAC fails to allege any facts or make any arguments to satisfy the "situs-of-injury" requirement, mandating that the location of the original event which caused the injury be within the forum state. (*Id.* at 38–42.) Lastly, the Court found that Plaintiff did not establish jurisdiction over Defendant through his contacts with three New York streamers that Plaintiff alleged were New York agents or co-conspirators of Defendant. (*Id.* at 43–50.)

The Court, however, granted jurisdictional discovery in order to determine the extent of Defendant's "interactivity and revenue amassed from New York residents" and relationships with the three New York-based content creators. (*Id.* at 50–54.) The Court, therefore, denied Defendants' motion to dismiss without prejudice and the Court directed the parties to complete jurisdictional discovery within forty-five days. (*Id.* at 54; Order dated Nov. 4, 2025.)

**i. Jurisdictional discovery disputes**

On December 11, 2025, Judge Eshkenazi granted Plaintiff's motion for an extension of time to complete discovery, extending the deadline to February 2, 2026. (Order dated Dec. 11, 2025.)

On December 19, 2025, Plaintiff filed a motion to compel Defendant's communications with New York-based content creators who were allegedly connected to Defendant. (Pl.'s Mot. to Compel, Docket Entry No. 40.) Plaintiff claimed that Defendant had continued to stall production since the Court ordered jurisdictional discovery in August of 2025 and that Rule 37

of the Federal Rules of Civil Procedure ("Rule 37") required the court to award mandatory fees for the costs incurred in making the motion. (*Id.* at 5.) Fed. R. Civ. P. 37.

On January 9, 2026, Defendant opposed the motion to compel, although he conceded that the requested discovery was appropriate under the Court's directive in the November 2025 Decision. (Def.'s Opp'n to Mot. to Compel, Docket Entry No. 42.) Defendant claimed that extensive data was being produced and any lack of production was due to either technical complexity in extracting data or overly burdensome requests. (*Id.*)

On January 12, 2026, Plaintiff filed a motion for discovery seeking various production requests and renewing her request for Rule 37 fees. (Mot. for Disc., Docket Entry 44.) This separate motion included a request for Defendant to produce all of his chatlogs with AI platforms among other requests.[3] (*Id.*)

On January 14, 2026, Judge Eshkenazi granted Plaintiff's motion to compel but deferred "ruling on whether sanctions [were] appropriate at this time," waiting to "consider whether sanctions [were] appropriate after resolving the [motion for discovery] filed by Plaintiff on [January 12, 2026]." (Order dated Jan. 14, 2026.) On January 19, 2026, Defendant opposed the motion for discovery, arguing that Plaintiff was incorrect in characterizing Defendant's actions as an effort to withhold information and that Rule 37 fees were improper. (Def.'s Opp'n to Mot. for Disc., Docket Entry No. 47.) On January 20, 2026, Plaintiff replied and, for the first time, raised the issue of violations pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") by defense counsel for allegedly "citing LLM chatbots as if they were factual authorities." (Pl's Reply in Supp. of Mot. for Disc. 1, Docket Entry No. 48.) Plaintiff argued that in response

[3] The Court highlights this specific request to prevent confusion about the multiple different conversations the parties and Judge Eshkenazi have engaged in with respect to alleged AI use by Defendant and defense counsel.

to discovery requests seeking information about the location of subscribers who pay to access Defendant's content channels, Defendant cited a chatbot as an authority to explain why users' demographic information was not available. (*Id.* at 2–3.) In addition, Plaintiff raised a similar argument about citing AI in response to Plaintiff's production request for a copy of Defendant's website code. (*Id.* at 5–6.) Plaintiff believed that defense counsel was utilizing generative AI models as a substitute for satisfying his legal duties to his client. (*See generally id.*) Plaintiff did not make a motion for sanctions, or request an order to show cause, but mentioned it as an option that Judge Eshkenazi could consider to address the improper use of AI. (*Id* at 1.)

On January 26, 2026, Judge Eshkenazi scheduled a hearing on the motion for discovery for February 9, 2026. (Order dated January 26, 2026.) At the hearing, Judge Eshkenazi and the parties reviewed the contested discovery requests.[4] (*See generally* Feb. 9, 2026 Conf. Tr., Docket Entry No. 54.) When the parties discussed the issue of how Defendant can extract website data, plaintiff's counsel reiterated her belief that defense counsel relied on AI to make a factual statement and argued that this constituted a Rule 11 violation. (*Id.* at 19:20–20:8.) Judge Eshkenazi granted Plaintiff's motion for discovery, (Pl.'s Mot. for Disc.), and deferred ruling on Rule 37 fees until the end of jurisdictional discovery, which was extended until February 17, 2026. (Order dated Feb. 10, 2026.)

On February 19, 2026, Plaintiff filed a motion for sanctions under Rule 37 against Defendant for failing to comply with the jurisdictional discovery deadline and Judge Eshkenazi's

[4] The Court notes that during the hearing and at this point in the litigation, the record reflects that the parties were struggling to maintain a cooperative dialogue both with Judge Eshkenazi and with each other. (Feb. 9, 2026 Conf. Tr. 8:02–13 (Judge Eshkenazi: "Let's bring the temperature down . . . ."), 15:15–16:10 (Judge Eshkenazi: "No yelling. Let's try again to use less inflammatory language . . . . Mr. Coleman, stop. Okay? No one's going to speak to anyone this way in a conference with me.").)

various discovery orders. (Pl's Mot. for Sanctions at 1, Docket Entry No. 56.) Plaintiff claimed that Defendant had not made any additional production since the February 9, 2026 status conference and has otherwise missed the deadline to make further production. (*Id.*) Defendant opposed the motion arguing that the parties were working together cooperatively to recover responsive documents that were presenting technical challenges, the missed deadline was due to procedural confusion, and Defendant's conduct did not rise to the level of bad faith required for the Court to impose sanctions. (Def.'s Opp'n to Pl.'s Mot. for Sanctions, Docket Entry No. 60.)

On February 26, 2026, Judge Eshkenazi denied the motion for sanctions and ordered the parties to file a joint status letter by March 6, 2026 to update to the Court about remaining jurisdictional discovery issues. (Order dated Feb. 26, 2026.) On March 6, 2026, Plaintiff filed two letters on the docket: (1) the first addressing the parties' failure to draft a joint letter to the Court, (Pl.'s Ltr. re: Non-Joint Filing, Docket Entry No. 63); and (2) the second letter raising the issue of Defendant's use of generative AI in his recent court filings.[5] Specifically, Plaintiff argued that various case citations within the brief and letter contained indicia of AI use. (Pl.'s Ltr. in Opp'n to Def.'s Maintenance of Seal Req. 5.) Upon receiving these letters, Judge Eshkenazi extended jurisdictional discovery to March 20, 2026. (Order dated Mar. 12, 2026.) On March 20, 2026, the parties filed a joint letter. (Status Update, Docket Entry No. 72.) Plaintiff argued that Defendant was still withholding production with regard to emails and messages from social media chats as ordered by Judge Eshkenazi. (*Id.* at 3–4.) Defendant asserted that reasonable searches for responsive documents were completed. (*Id.*) On March 24,

---

[5] (Pl.'s Ltr. in Opp'n to Def.'s Maintenance of Seal Req. 1, Docket Entry No. 64; *see also* Def.'s Opp'n to Pl.'s Mot. for Sanctions; Def.'s Maintenance of Seal Req., Docket Entry No. 61.)

2026, Judge Eshkenazi ordered a status conference, which was later re-scheduled to April 21, 2026. (Scheduling Order dated Mar. 24, 2026; Order dated Mar. 27, 2026.)

**b. Plaintiff's requested order to show cause regarding defense counsel's alleged use of AI**

At the April 21, 2026 status conference, Judge Eshkenazi began by addressing the issue of Defendant's use of generative AI as raised by Plaintiff in her March 6, 2026 letter.[6] Judge Eshkenazi indicated that she reviewed the filings which allegedly were drafted using AI and noticed that certain case law propositions were not supported by the decisions they were cited for and admonished defense counsel for such mistakes, ordering that he must be certain not to make those mistakes in future filings to the Court and in correspondence with opposing counsel.[7] (*Id.* at 7:21–8:10.)

On May 9, 2026, Plaintiff filed a motion requesting that Judge Eshkenazi issue an order to show cause to force defense counsel to provide a detailed explanation about the citation

[6] (Apr. 21, 2026 Conf. Tr. 7:03–8:10, appended to Pl.'s OTSC Sanction Appeal and annexed to Decl. of J. Remy Green, Esq. in Supp. of Pl.'s OTSC as Ex. 1, Docket Entry No. 96-3.)

[7] At the April 21, 2026 status conference, Judge Eshkenazi also granted Rule 37 fees, directed Plaintiff to provide Defendant with the cost of reasonable fees for the motion to compel and motion for discovery, instructed Defendant to raise objections to the fee amount by May 6, 2026, and if there were no objections, to pay Plaintiff by May 13, 2026. (Order dated Apr. 21, 2026.)

Despite the parties' failure to agree on the fee award amount, on May 8, 2026, Plaintiff sent Defendant wire transfer instructions. (May 11, 2026 Conf. Tr. 22:24–23:03, appended to Pl.'s OTSC and annexed to Decl. of J. Remy Green, Esq. in Supp. of Pl.'s OTSC as Ex. 2, Docket Entry No. 96-4.) The same evening, Defendant filed a letter requesting to defer the May 13, 2026 deadline because of the lack of progress on the fee's negotiation. (Ltr. re: Rule 37 Fee Objections ("ECF No. 88"), Docket Entry No. 88.) For clarity, the Court provides this procedural history to explain the circumstances around and reasoning behind why defense counsel filed ECF No. 88. Otherwise, this history is not relevant to Plaintiff's OTSC Sanction Appeal. *See infra* footnote 8.

mistakes found in ECF No. 88 and other filings (the "OTSC").[8] (Pl.'s Mot. for OTSC 1, 4, Docket Entry No. 89.) Plaintiff argued that the filing contains more unreviewed generative AI use and that Judge Eshkenazi's warning about AI use during the April 21, 2026 status conference had proven to be insufficient, warranting the OTSC to investigate how these citation errors occurred. (*Id.* at 1, 4.) Plaintiff also argued that Defendant's pattern of careless filings has imposed a "significant burden on Plaintiff and the Court." (*Id.* at 5.)

Defendant opposed the OTSC and explained that there was a misunderstanding with Judge Eshkenazi's order about whether Defendant's fee amount objections needed to be filed on the docket. (Def.'s Opp'n to the OTSC 1, Docket Entry No. 90.) In support, Defendant first argued that Plaintiff mischaracterized the events which she argued supported the OTSC and the noted citation issues were not fake citations but were the result of hasty filing due to Plaintiff's position that Defendant had missed another filing deadline. (*Id.* at 1–3.) Second, defense counsel admitted that there were citations errors or "clerical numbering errors" that were incurred in the process of counsel retrieving the cases from Westlaw. (*Id.* at 1–2.) Third, Defendant argued that none of the citation errors were factually wrong. (*Id.*) Defendant claimed that the corrected citations offered in his response supported the propositions for which they were cited. (*Id.*) Lastly, Defendant argued that there was no burden imposed on Plaintiff or the Court by Defendant's delay in the filing of his objections two days after the May 6, 2026 deadline. (*Id.* at 1–3.)

[8] While there were numerous arguments made in support of the OTSC, only Plaintiff's arguments concerning defense counsel's use of AI is relevant to the Court's review of the OTSC Sanction Appeal. (*See* Pl.'s OTSC.) The other issues in Plaintiff's OTSC Sanction Appeal, namely, the confidentiality violation and missed deadline, are relevant to Judge Eshkenazi's recent ruling on sanctions. (*See* Pl.'s Mot. for Sanctions, Docket Entry No. 100; Mem. & Order, Docket Entry No. 112.)

Following the filing of the OTSC, on May 11, 2026, the parties met for another status conference with Judge Eshkenazi. (Min. Entry & Order dated May 12, 2026.) Judge Eshkenazi admonished both parties for unproductive and unprofessional communication that continued to waste time and resources for the parties as well as the Court. (May 11, 2026 Conf. Tr. 5:03–7:02.) With respect to Plaintiff's requested OTSC, Judge Eshkenazi again cautioned defense counsel to be more careful in his submissions to opposing counsel and the Court. (*Id.* at 16:04–17.) Plaintiff argued that the OTSC was necessary because of the presence of hallucinated authorities and Defendant responded by stating that the cases existed and stood for the propositions they were cited to support. (*Id.* at 25:10–26:18.) Judge Eshkenazi declined to issue the OTSC or impose sanctions and, in response to Plaintiff's remarks that other courts have issued orders to show cause to require an attorney to explain how citation mistakes happened, commented that many filings happened in a short period of time in this case and "normally when [she] has imposed these types of order to show cause it's when it's caused the Court difficulty."[9] (*Id.* at 35:11–36:12.)

**c. The OTSC Sanction Appeal**

On May 26, 2026, Plaintiff filed an appeal to this Court challenging Judge Eshkenazi's denial of the OTSC, (Pl.'s OTSC Sanction Appeal), which Defendant opposed, (Def.'s Opp'n).[10]

---

[9] Judge Eshkenazi also made clear that she would not impose sanctions for "citation errors in letters between the parties," holding that her warning was sufficient and defense counsel's behavior did not rise to the level that would warrant the OTSC. (May 11, 2026 Conf. Tr. 26:21–27:06.)

[10] On July 23, 2026, Plaintiff filed a consent motion requesting the Court: (1) transfer the case to the Southern District of California pursuant to 28 U.S.C. § 1404; and (2) stay the transfer order until the resolution of the pending OTSC Sanction Appeal and motion for sanctions filed by Plaintiff on June 10, 2026. (Pl.'s Notice of Mot. to Transfer, Docket Entry No. 107.) Plaintiff argued that the case should be transferred because the parties consent and the "pertinent equitable considerations" "weight heavily in favor of transfer." (Pl.'s Mem. in Supp. of Mot. to

## II. Discussion

Plaintiff urges the Court to overturn Judge Eshkenazi's denial to issue the OTSC because of the continued citation mistakes in Defendant's filings and because defense counsel has failed to offer a plausible explanation as to how these errors occurred, arguing they must be a result of unreviewed generative AI use. (Pl.'s Mem. 18.) Plaintiff asserts that the Court should overturn the OTSC denial for several reasons: (1) an order to show cause is the appropriate action when "there are indicia of hallucinated authority," (*id.* at 14–15, 20–22); (2) Judge Eshkenazi's reasoning that a burden on the Court is required was a "legal mistake" and not a decision of discretion, alleging that the fact that defense counsel's use of AI did not impact the Court controlled her denial decision, (*id.* at 15–20; Pl.'s Reply 14–17); (3) defense counsel has now admitted to using AI, which he previously denied, which alters the Court's analysis of the discretion accorded to magistrate judges who are "uniquely positioned to understand the history"

---

Transfer 3–4, appended to Pl.'s Notice of Mot. to Transfer, Docket Entry No. 107-1.) Plaintiff further asked the Court to stay the transfer until the two pending motions are decided because the motions involve imposing sanctions for Defendant's conduct before Judge Eshkenazi and the Court. (*Id.* at 4–6.) Defendant consented to the relief sought but did not join the motion to transfer. (*Id.* at 1; *see* Def.'s Statement re: Pl.'s Mot. to Transfer, Docket Entry No. 108.) While Defendant did "not oppose" the motion to transfer, he reiterated his position that the Court lacks personal jurisdiction over him. (Def.'s Statement re: Pl.'s Mot. to Transfer 1.) Further, Defendant did "not oppose" the requested stay pending resolution of the outstanding motions. (*Id.*)

On July 24, 2026, the Court granted the motion to transfer the case to the Southern District of California, but stayed the transfer until decisions on the two pending motions. (Order dated July 24, 2026.) The Court found: (1) both parties consented to such transfer; (2) Plaintiff might have originally brought the action in the Southern District of California because Defendant resides in the County of San Diego, California; and (3) the relevant equitable factors weighed in favor of transfer. (*Id.*)

This Memorandum and Order resolves the second of the two outstanding motions: the OTSC Sanction Appeal. Judge Eshkenazi issued a decision on September 18, 2026, granting Plaintiff's motion for sanctions. (Mem. & Order.) Having resolved both motions, the Court therefore lifts the stay and transfers this case to the Southern District of California.

of misconduct in this case and leaves Judge Eshkenazi's decision "on shaky ground," (Pl.'s Reply 5, 10); (4) defense counsel's insistence that the citations exist and support the propositions they are cited for indicates that Judge Eshkenazi's warnings have not been an adequate solution, (Pl.'s Mem. 18–20); and (5) defense counsel's lack of candor and failure to comply with both his ethical and diligence obligations constitutes bad faith, (*id.* at 3 Pl.'s Reply 2–3). Plaintiff requests that the Court set aside Judge Eshkenazi's denial of the OTSC and issue a separate order to show cause "to find out how the mistakes were made" both in ECF No. 88 "and those across the rest of the docket" in order to establish a basis for future sanctions. (Pl.'s Mem. 22.)

Defendant opposes the OTSC Sanction Appeal arguing that Plaintiff cannot meet her burden of showing Judge Eshkenazi's OTSC discretionary denial was "clearly erroneous or contrary to law." (Def.'s Opp'n 1, 4.) In Defendant's brief, defense counsel outlines a transparent explanation of how the error occurred and argues that this "leaves the appeal without the justification it offers for the relief it seeks." (*Id.* at 1–2.) Defense counsel's explanation admits that he used a Westlaw AI tool to identify cases, took those propositions without confirming them, and, as a result, incorrect reporter numbers appeared in Defendant's papers. (*Id.* at 2.) Defendant also argues that the absence of a burden on the Court was only a factor in the Court's reasoning, not the sole ground for Judge Eshkenazi's ruling. (*Id.* at 3.) Defense counsel asserts that he has been candid with the Court and argues that he has admitted or is admitting[11] to the inaccurate citations in ECF No. 88. (*Id.* at 2, 8–9.)

---

[11] Plaintiff alleges filings from ECF No.'s 50, 60, 61, 66 and 88 all contain various indicia of artificial intelligence use. (Pl.'s Mem. 4–8.) In his opposition brief, Defendant addresses the five citation errors listed by the Plaintiff from ECF No. 88. (Def.'s Opp'n 8–9.) Defendant stands by his reliance on four of the cases, but withdraws reliance on a single case, *A.M. v. City of New York,* No. 21-CV-5191, 2022 WL 20472226 (E.D.N.Y. Feb. 2, 2022). (*Id.*)

**a. Standards of review**

**i. Review of magistrate decision**

"A magistrate judge is authorized 'to make findings as to non-dispositive . . . matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Romain v. State Farm Fire & Cas. Co.*, No. 21-CV-6609, 2025 WL 3461169, at *1 (E.D.N.Y. Apr. 14, 2025) (quoting *United States v. Town of Oyster Bay*, No. 14-CV-2317, 2022 WL 4485154, at *2 (E.D.N.Y. Sep. 27, 2022)); *Secs. & Exch. Comm'n v. NIR Grp., LLC*, No. 11-CV-4723, 2025 WL 446243, at *1 (E.D.N.Y. Feb. 10, 2025) (quoting same); *Town of Oyster Bay*, 2022 WL 4485154, at *2 (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)) (same); *see also Sampedro v. Silver Point Cap., L.P.*, 958 F.3d 140, 142 & n.1 (2d Cir. 2020) (affirming district court's application of "clear error" review to magistrate judge's discovery order). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 90 (2d Cir. 2023) (quoting *Atl. Specialty Ins. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019)); *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)) (same); *see also Abraham v. City of New York*, No. 22-CV-1162, 2026 WL 1170841, at *2 (E.D.N.Y. Apr. 29, 2026) (same); *Krick v. Raytheon Co.*, 757 F. Supp. 3d 342, 346 (E.D.N.Y. 2024) (same), *appeal docketed*, No. 26-1225 (2d Cir. May 5, 2026). An order "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 276–77 (E.D.N.Y. 2022) (quoting *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014)); *see also Krick*, 757 F. Supp. 3d at 346 (quoting same). Under this highly deferential standard,

"magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 219 (E.D.N.Y. 2021) (citing *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009)); *see also Secs. & Exch. Comm'n*, 2025 WL 446243, at *1 (quoting same). "Thus, 'an objecting party carries a heavy burden to prove error.'" *Gonzalez v. Wicked Taco LLC*, 795 F. Supp. 3d 401, 404 (E.D.N.Y. Aug. 18, 2025) (quoting *Rivera v. Lettire Constr. Corp.*, No. 21-CV-6006, 2022 WL 14891414, at *2 (S.D.N.Y. Oct. 26, 2022)); *see Macchia v. ADP, Inc.*, 711 F. Supp. 3d 162, 166 (E.D.N.Y. 2024) ("[A] party seeking to overturn or modify a discovery order [by a magistrate judge] bears a heavy burden"); *Delgado v. Donald J. Trump for President, Inc.*, No. 19-CV-11764, 2024 WL 3639541, at *1 (S.D.N.Y. Aug. 1, 2024) (quoting *Lyondell-Citgo Refin., LP v. Petroleos de Venezuela, S.A.*, No. 02-CV-795, 2005 WL 551092, at *1 (S.D.N.Y. Mar. 9, 2005)) (same); *In re Alpene, Ltd.*, No. 21-MC-2547, 2023 WL 5237336, at *4 (E.D.N.Y. Aug. 15, 2023) (quoting *Wager v. G4S Secure Integration, LLC*, No. 19-CV-3547, 2021 WL 293076, at *2 (S.D.N.Y. Jan. 28, 2021)) (same); *see also Burks v. Stickney*, 837 F. App'x 829, 831–33 (2d Cir. 2020) (affirming the district court's affirmation of the magistrate judge's award of sanctions because the court was "not left with the definite and firm conviction that [the magistrate judge] committed any mistakes, overlooked any evidence, or that his conclusions were clearly erroneous or contrary to law"); *Mumin v. City of New York*, No. 23-CV-3932, 2026 WL 2620238, at *4 (S.D.N.Y. Sep. 4, 2026) (affirming the magistrate judge's decision not to impose sanctions because the magistrate judge "did not err or abuse his discretion to impose sanctions"); *Milton v. Rehman*, No. 19-CV-2770, 2025 WL 2624533, at *4–5, *7 (S.D.N.Y. Sep. 11, 2025) (affirming the magistrate judge's decision to grant in part and deny in part a motion for sanctions under a "clearly erroneous or contrary to law" standard); *Morgan Art*

*Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2025 WL 2528301, at *5–6, *10 (S.D.N.Y. Sep. 3, 2025), *mot. to certify appeal denied*, 2026 WL 18584 (S.D.N.Y. Jan. 2, 2026) (same). When a party serves and files objections to a magistrate judge's decision on "a pretrial matter not dispositive of a party's claim or defense," "[t]he district judge in the case must consider [those] timely objections" to the magistrate judge's decision, "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (noting that Fed. R. Civ. P. 72(a) "requires a district court to consider a party's timely objections to a magistrate judge's order deciding a 'pretrial matter not dispositive of a party's claim or defense' and to 'modify or set aside any part of the order that is clearly erroneous or is contrary to law'" (quoting *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008))); *Herman v. Katten Muchin Rosenman LLP*, No. 25-CV-3162, 2026 WL 2185295, at *2 (S.D.N.Y. July 28, 2026) ("District courts 'must consider timely objections' to a magistrate judge's ruling on such matters and must 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" (quoting Fed. R. Civ. P. 72(a))); *Jackson v. Nassau Cnty.*, 350 F.R.D. 227, 231–32 (E.D.N.Y. 2025) (quoting same).

**ii. Rule 11 sanctions**

A court has the inherent power to sanction a party "for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) ("[A court's] authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [it]."); *see also Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) ("A 'primary aspect' of the discretion that attends a federal court's inherent power 'is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" (quoting *Chambers*, 501 U.S. at 44–45)); *Ceglia v. Zuckerberg*,

600 F. App'x 34, 36 (2d Cir. 2015) ("A court has 'inherent power' to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" (quoting *Chambers*, 501 U.S. at 44–45)). "Sanctionable conduct must be proven by clear and convincing evidence and the district court must make a specific finding of bad faith." *Amerisource Corp. v. RX USA Int'l Inc.*, No. 02-CV-2514, 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)), *aff'd* 432 F. App'x 25 (2d Cir. 2011); *see Gov't Emps. Ins. Co. v. Clarke*, No. 23-CV-4605, 2025 WL 1519177, at *1 (E.D.N.Y. May 28, 2025) (quoting *id.*); *see also Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) ("[C]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power."). "Moreover, inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018) (quoting *Wolters Kluwer Fin. Servs. Inc.*, 564 F.3d at 114) (same); *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, No. 20-CV-7472, 2025 WL 2105852, at *12 (S.D.N.Y. July 25, 2025) (same). "Clear and convincing evidence is evidence that makes the fact to be proved 'highly probable.'" *RKI Constr., LLC v. WDF Inc.*, No. 14-CV-1803, 2020 WL 6545915, at *21 (E.D.N.Y. Nov. 6, 2020) (quoting *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 595–96 (E.D.N.Y. 2000)). However, a court need only "make an explicit finding of bad faith" for actions "taken on behalf of a client." *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000) (noting a circuit split and clarifying "the circumstances under which a district court has the power to sanction pursuant to its inherent authority without a finding of bad faith"); *see also King v. Davis*, No. 25-966, 2026 WL 762399, at *3 (2d Cir. Mar. 18, 2026) (summary order)

(quoting *id.*)). A court need not make a finding of bad faith when an attorney "violat[es] . . . a court order or [engages] in other misconduct that is not undertaken for the client's benefit." *Seltzer*, 227 F.3d at 42; *see also Rosellini v. U.S. Bankr. Ct. (In re Sanchez)*, 790 F. App'x 293, 295 (2d Cir. 2019) (upholding a bankruptcy court's imposition of sanctions on a pro se attorney for failure to prosecute and failure to appear at hearings; concluding that the attorney was "incorrect that any bad faith finding is a necessary predicate to a sanctions order"); *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001) (noting that a court may exercise its inherent authority to sanction an attorney who "has negligently or recklessly failed to perform his responsibilities as an officer of the court"); *Guest v. First Republic Corp. of Am.*, 618 F. Supp. 3d 86, 93 (N.D.N.Y. 2022) (declining to award monetary sanctions, which generally "should be saved for bad faith, vexatious, or wanton acts or actions otherwise undertaken for oppressive reasons"); *Lee v. City of Troy*, 559 F. Supp. 3d 73, 83 (N.D.N.Y. 2021) (sanctioning an attorney for making an inappropriate comment to his adversary after he received an unfavorable jury verdict since the attorney's behavior belonged to the category that did "not require a finding of bad faith on the attorney's part" and was "not undertaken for the client's benefit" (citing *Seltzer*, 227 F.3d at 42).

Rule 11(c)(3) states: "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

**b. The Court denies the OTSC Sanction Appeal**

The Court acknowledges that unchecked use of AI has become a pervasive problem plaguing our nation's legal system. *See* Damien Charlotin, AI Hallucination Cases, https://www.damiencharlotin.com/hallucinations/ (last accessed Sep. 30, 2026) (identifying 1432 proceedings in United States courts to date involving citations to non-existent cases likely "hallucinated" by AI); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342–43, 347–48 (E.D.N.Y. 2025) (noting the availability of AI tools has unleashed an "epidemic of . . . fake cases" in legal submissions and collecting cases); *see also Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1347 (E.D. Okla. 2025) ("Federal courts increasingly confront filings prepared with the assistance of generative artificial intelligence. While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent. No uniform standard yet governs this issue."). Not only does unchecked AI use "create unnecessary work for courts and opposing attorneys alike" but "perhaps most critically, they demonstrate a failure to provide competent representation to the client." *Benjamin*, 779 F. Supp. 3d at 343; *see Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023) (noting that some of the potential harm caused by improper use of AI includes wasting judicial and party resources, failing to raise potentially effective arguments for a client, damaging the reputation of judges and courts named in fake opinions, and undermining institutional trust in the legal profession and justice system).

Rule 11(b)(2) states:

> [b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are

> warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2); *Farrington v. Poole*, 185 F.4th 334, 341 n.5 (2d Cir. 2026) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)); *see Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) (quoting Fed. R. Civ. P. 11(b)(2)); *see also* N.Y. R. Pro. Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."). "Under Rule 11, a court may sanction an attorney for, among other things, misrepresenting facts or making frivolous legal arguments." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam).

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 535 (2d Cir. 2020) ("Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998))). "At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, [the court] can think of no other way to ensure that the arguments made based on those are warranted by existing law, or otherwise legally tenable." *Park*, 91 F.4th at 615 (internal citations and quotation marks omitted); *see also Cooter & Gell*, 496 U.S. at 398 (explaining that Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers"); *Benjamin*, 779 F. Supp. 3d at 343 ("[A]n attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11."). "A fake opinion is not

'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Park*, 91 F.4th at 615 (quoting *Mata*, 678 F. Supp. at 461); *see also Braica v. Frankowski*, 826 F. Supp. 3d 286, 293 (D. Conn. 2025) ("A litigant submitting hallucinated citations to a court inherently runs afoul of [Rule 11] requirement[s]." (quoting *Mata*, 678 F. Supp. at 461)).

**i. Defense counsel violated Rule 11**

The Court has undertaken a comprehensive review of Defendant's filings in this case and this enlarged inquiry did not uncover obvious indicia of unverified artificial intelligence use other than those Plaintiff discovered. As discussed *infra*, there is one obvious hallucination and several mis-citations that include citation inaccuracies, such as fabricated quotes, misstatements of law, and incorrect database identifiers. While there may be questionable lawyering regarding whether an authority supported the proposition for which it was cited, the Court's disagreement with Defendant's assertions do not clearly implicate hallucinated AI use.

**1. Mis-citations in documents other than ECF No. 88**

The relevant mis-citations in documents other than ECF No. 88 are discussed below in chronological order:

In Defendant's Opposition to Plaintiff's Motion for Sanctions, Docket Entry No. 60, Defendant relies on *Salahuddin v. Harris*, 782 F.2d 1127, 1131–32 (2d Cir. 1986) and includes the following quote: "'there must be a finding on the record of willfulness or bad faith' and 'the severity of the sanction must be commensurate with the noncompliance.'" (Def.'s Opp'n to Pl.'s Mot. for Sanctions 3.) Counsel's citation to the case is correct, but the quoted language does not appear in the decision. However, the case does decline to impose sanctions upon the finding of a

lack of bad faith, and although there is no specific holding about proportionality between the severity of the offense and the imposition of sanctions, it can arguably be inferred based on the holding. This is not a clear use of AI and could be an incorrect use of quotation marks.

In Defendant's Maintenance of Seal Request, Docket Entry No. 61, Defendant relies on *Hickman v. Taylor*, 329 U.S. 495 (1947) and includes the following quote: "Work product encompasses documents 'prepared in anticipation of litigation' by or for a party." (Def.'s Maintenance of Seal Req. 2.) Counsel's citation to the case is correct, but the quoted language does not appear in the decision. However, the case does address the issue of whether an attorney's work product is protected from discovery requests. This is not a clear use of AI and could be an incorrect use of quotation marks.[12]

In the same filing, Defendant's Maintenance of Seal Request, Defendant relies on *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016) and argues that it stands for the following proposition: "Their privacy interests are substantial, especially considering the mechanisms at play for their disturbance in a case centering on heated allegations and counteraccusations of Internet-based harassment and abuse." (Def.'s Maintenance of Seal Req. 4.) Counsel's citation to the case is correct, but *Bernstein*'s holding and the analysis in the opinion do not support the proposition for which defense counsel cited the case. Instead, the Second Circuit affirmed the district court's ruling that a permanent seal of a complaint after settlement was not appropriate given the weak privacy interests balanced against the strong presumption of public access. *Bernstein*, 814 at 144–146. Contrary to Defendant's

---

[12] Defendant also relied on *Hickman v. Taylor*, 329 U.S. 495 (1947) for the same quoted language in Defendant's Motion to Seal Document and Motion for Discovery. (*See* Def.'s Mot. to Seal and Mot. for Disc. 2, Docket Entry No. 66.) As discussed, that quoted language does not appear in the decision although the case does generally address the protection of attorney work product.

assertion, the Second Circuit found that the allegations in the complaint which "range[d] from exaggerated to wholly fabricated" did not justify keeping the complaint sealed. *Id*. at 143. While the case's conclusion is the opposite holding for which Defendant cites the case, the Court cannot find that this was caused by impermissible AI use — it could easily be the product of a lawyer's lack of diligence in reading and comprehending case law.

**2. Mis-citations in ECF No. 88**

The parties agree about the following mis-citations in ECF 88:

Defendant cites to "*Richir v. Vill. of Fredonia*, 2008 WL 4104455, at *2 (W.D.N.Y. 2008) (court conducted its own analysis to determine what time constituted reasonable motion expenses rather than deferring to the moving party's submission)." *Richir v. Vill. of Fredonia* is a real case opinion, but the citation is to an unrelated case, *Whitcomb v. Todd*, No. 04-CV-223, 2008 WL 4104455 (N.D.N.Y. Sept. 3, 2008). The correct database identifier for *Richir* is 2008 WL 943024, with the correct full citation as *Richir v. Vill. of Fredonia*, No. 05-CV-76, 2008 WL 943024 (W.D.N.Y. Apr. 4, 2008). Despite the incorrect database identifier, the case does support Defendant's proposition included in the explanatory parenthetical.

Defendant next cites to "*Rich Prods. Corp. v. Bluemke*, 2014 WL 3908334, at *3 (W.D.N.Y. 2014)" in support of the proposition that "Although meet-and-confer time can in some circumstances be compensable, it is only so when it is directly related to the motion that follows." *Rich Prods. Corp. v. Bluemke* is a real case opinion, but the citation is for an unrelated case, *Shambour v. Carver Cnty*., No. 14-CV-566, 2014 WL 3908334 (D. Minn. Aug. 11, 2014). The correct database identifier for *Rich Prods. Corp.* is 2014 WL 860364, with the correct full citation as *Rich Prods. Corp. v. Bluemke*, No. 13-CV-30, 2014 WL 860364 (W.D.N.Y. Mar. 5, 2014). Despite the incorrect database identifier, the case does support Defendant's proposition.

Defendant next cites to "*Townsend v. Haza Foods, LLC,* Slip Copy (W.D.N.Y. 2026) (time spent preparing discovery responses, reviewing privilege logs, or participating in discovery conferences not specifically incurred for the motion to compel is not compensable under Rule 37)." *Townsend v. Haza Foods, LLC* is a real case, but Defendant failed to include any citation to the case. The correct full citation is *Townsend v. Haza Foods, LLC*, No. 24-CV-6180, 2026 WL 809490 (W.D.N.Y. Mar. 24, 2026). Despite the lack of a citation, the case does support Defendant's proposition included in the explanatory parenthetical.

Defendant also cites to "*Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02-CV-6441, 2003 WL 21976400, at *4 (S.D.N.Y. 2003) (the party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable)." This citation is correct and while not quoted, the language included in the parenthetical is an exact quote from page *3, not *4. Plaintiff takes issue with this citation because it is cited, using a *see* signal, to support Defendant's proposition that "The party seeking fees bears the burden of substantiating the reasonableness of the hours claimed through adequate documentation." (Pl.'s Mem. 5.) While citing this case for the initial proposition may be questionable lawyering, the explanatory parenthetical is correct and there is no other indication that this case was the result of AI.

Lastly, and most egregiously, Defendant cites to "*A.M. v. City of New York*, 2022 WL 17543173, at *1 (E.D.N.Y. 2022) (denying fee motion where plaintiff failed to comply with formal filing requirements, including notice of motion and supporting declarations)." This citation is a hallucination: this case does not exist and is fictitious. Defendant does not dispute this and has since withdrawn reliance on this case. (Def.'s Opp'n 9.)

All of these mis-citations were identified by Plaintiff in her brief and have been previously addressed by both defense counsel and Judge Eshkenazi.[13] (*See* Pl.'s Mem. 4–5; Def.'s Opp'n 8–9.) Given that the Court's review of Defendant's twenty-two filings did not result in additional discovery of incorrect citations, the Court questions the motives behind Plaintiff's expansive request in light of the Court's wasted judicial resources in conducting the requested review.

Regardless, defense counsel has violated Rule 11 by, at the very least, citing to "*A.M. v. City of New York*, 2022 WL 17543173, at *1 (E.D.N.Y. 2022)," an entirely fabricated case and an AI hallucination. *See, e.g.*, *Park*, 91 F.4th at 615 (finding that an attorney's "submission of a brief relying on non-existent authority" violated Rule 11); *Jimenez-Fogarty v. Fogarty*, 831 F. Supp. 3d 253, 257–59, 261–64 (S.D.N.Y. 2026) (finding that the inclusion of fabricated and non-existent citations in a memorandum of law filed with the court violated Rule 11); *Flycatcher Corp. v. Affable Ave. LLC*, No. 24-CV-9429, 2026 WL 306683, at *12 (S.D.N.Y. Feb. 5, 2026) (finding that the attorney's submission of "documents containing fake cases and misattributed quotes hallucinated by AI" violated Rule 11); *Benjamin*, 779 F. Supp. 3d at 348–49 (finding that counsel's fictitious citations in her brief violated Rule 11). As for the other inaccurate citations

[13] Plaintiff spends a large portion of her brief attacking Judge Eshkenazi's decision denying the OTSC, arguing that she did not have knowledge of the full extent of the mis-citations and the OTSC would have offered a more appropriate and comprehensive inquiry into Defendant's filings. (Pl.'s Mem. 22; Pl.'s Reply 9 ("There is little question that simply filing this appeal generated many of the answers that issuing an order to show cause would have. As it stands, the record now is far different from what the Magistrate Judge reviewed — which itself emphasizes why it was a mistake to decline the [OTSC]."), 10 ("That leaves Mr. Coleman's assertion the Court must defer to how the Magistrate Judge was 'uniquely positioned to understand the history' of the misconduct here on shaky ground." (quoting Def.'s Opp'n 5.)).) The Court's review of all twenty-two filings by counsel for Defendant, at Plaintiff's request, and lack of additional findings of mis-citations proves Plaintiff's theory incorrect and only further discredits the alleged "need" for an OTSC. It also reaffirms that Judge Eshkenazi was best situated to rule on the OTSC due to her experience with the parties in this case.

listed above, it is not clear whether the mis-citations were a result of inappropriate AI use or inadequate lawyering. *See Jimenez-Fogarty*, 831 F. Supp. 3d at 257–58 (considering only fabricated citations, those "that cannot be located at all by name" or "have nothing to do with the propositions for which they were cited," and disregarding citations that contained "typographical errors" such as "citations to cases that exist and support the propositions for which they were cited but are not located in the volume or at the page of the reporter (or database identifier) given," "otherwise correct citations that give the wrong case name," and "instances where the cited case covers the same topic as the proposition for which it [was] cited but where the case's holding [was] completely mischaracterized"). Hallucinations in the form of fabricated quotations and misstatements of law violate Rule 11 because the "filing demonstrates that [the attorney] did not 'read, and thereby confirm the existence and validity of, the legal authorities on which they rely.'" *Tiekert v. Vill. of Mamroneck*, No. 23-CV-8714, 2026 WL 2690037, at *6 (S.D.N.Y. Sep. 14, 2026) (quoting *Park*, 91 F.4th at 615). Defense counsel admits to using AI to identify cases without checking those propositions and citations to confirm their accuracy. (Def.'s Opp'n 2.) The Court therefore finds that defense counsel violated Rule 11. Judge Eshkenazi's OTSC denial did not make a ruling to the contrary of this holding.

**ii. Judge Eshkenazi's denial of the OTSC was not clearly erroneous or contrary to law**

The Court's review is not as to whether defense counsel used AI in the drafting process, but rather, whether the discretionary ruling by Judge Eshkenazi was "clearly erroneous or [ ] contrary to law." Fed. R. Civ. P. 72(a); *Romain*, 2025 WL 3461169, at *1. Defense counsel should not have filed ECF No. 88 with the Court before cite-checking his own work; his improper citations are unacceptable, and his admitted use of AI needs to comply with Rule 11.

However, Plaintiff has failed to "carr[y] [her] heavy burden to prove" that Judge Eshkenazi erred in denying her request for the OTSC. *Gonzalez*, 795 F. Supp. 3d at 404.

When Rule 11 is violated, sanctions are discretionary rather than mandatory. *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) ("Even when Rule 11 is violated, sanctions under Rule 11 are discretionary, not mandatory." (internal quotation marks omitted)); *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (same); *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) (same). A court has discretion to fashion sanctions as it deems "appropriate," but they "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), (4); *see also* Fed. R. Civ. P. 11(c)(5) (imposing some "[l]imitations on [m]onetary [s]anctions"); *Cooter & Gell,* 496 U.S. at 404 (explaining that sanctions under Rule 11 must serve the goals of specific and general deterrence). A court should also be mindful to impose Rule 11 sanctions "with restraint," *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)), because it may be acting "as accuser, fact finder and sentencing judge," *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998). *See also Chambers*, 501 U.S. at 44–45 ("Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). "Sanctions should not be imposed for minor, inconsequential violations of the standards prescribed by [Rule 11(b)]." *Mata*, 678 F. Supp. 3d at 462 (internal quotation marks omitted).

At the May 11, 2026 hearing, Judge Eshkenazi declined to issue the OTSC for potential sanctions for the appearance of hallucinated authorities in ECF No. 88. Judge Eshkenazi stated

that she was "not imposing sanctions now" and had "given the warning . . . that if it happen[ed] again . . . that there will be sanctions." (May 11, 2026 Tr. 26:21–27:3.) When Plaintiff's counsel inquired further, Judge Eshkenazi explained that she had not "had time to check [defense counsel's] cites between the time of the filings and [the May 11, 2026 hearing]" and given the "voluminous" filings in a short period of time, she would "not impos[e] sanctions today" on the issue of the alleged mis-citations. (*Id.* at 27:23–28:3.) Instead, Judge Eshkenazi stated that "[i]f it continue[d], then [she] would reconsider." (*Id.* at 28:3–4.) When Plaintiff's counsel brought up the OTSC yet again during the hearing, Judge Eshkenazi denied the OTSC explaining that it was "a little strange . . . to issue a[n] order to show cause on something that didn't really impact [her] between last night and today" and instead she issued a warning. (*Id.* at 36:19–24; *see also id.* at 36:2–17.)

Plaintiff asks the Court to review Judge Eskenazi's denial of the OTSC, meaning she asks the Court to conduct a highly deferential review of Judge Eshkenazi's discretionary decision as to whether or not to issue an order to show cause and to issue sanctions. *See Sorenson*, 683 F. App'x at 35 (noting that when Rule 11 is violated, sanctions are discretionary rather than mandatory); *Flycatcher*, 2026 WL 306683, at *10 ("A court has discretion to fashion sanctions as it deems appropriate." (internal quotation marks omitted)); *Almakalani*, 527 F. Supp. 3d at 219 (explaining that a district judge's review of a magistrate judge's determination is highly deferential as "magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused"); *see also Gonzalez*, 795 F. Supp. 3d at 404 ("[A]n objecting party carries a heavy burden to prove error."). The crux of Plaintiff's argument is: (1) Judge Eshkenazi's decision was not one of "discretion" but instead of explicit legal mistake because she allegedly only took into account the burden of Defendant's imperfect

case citations on the Court, (Pl.'s Mem. 16–20); (2) orders to show cause consider the burden the conduct places on opposing counsel first, and then the court's future burden in "unraveling" the mis-citations, (*id.* at 15–16); and (3) Plaintiff's counsel believes Judge Eshkenazi's decision to admonish defense counsel was insufficient to deter him against using AI in the future and instead monetary sanctions are the only appropriate remedy, (*id.*; *see also id.* at 1 ("[T]he warnings the [c]ourt below has issued, perhaps because of the lack of real consequences, have only emboldened Defendant to use even less care.")). Ultimately and admittedly, Plaintiff is unhappy that Judge Eshkenazi did not prioritize the "harm" Defendant's five incorrect citations in one document, ECF No. 88, caused Plaintiff. (*See* May 11, 2026 Tr. 36:2–17 (Judge Eshkenazi: "So you're asking for an order to show cause for the inconvenience that [the mis-citations] caused you[?]" Mx. Green: "Yes.").) Further, Plaintiff now asks this Court to review all filings on the docket. Not only does this appear to be a "witch hunt" to further support Plaintiff seeking more money in the form of sanctions against Defendant and defense counsel, but Plaintiff wastes crucial judicial resources, both with her OTSC Sanction Appeal and her request that the Court review all filings by defense counsel — work that Plaintiff's counsel failed to undertake.[14] The

[14] Plaintiff argues in her memorandum in support of the OTSC Sanction Appeal that "the relevant burden on the [c]ourt comes post-order to show cause, because the burden is unraveling the conduct that is the subject of the order to show cause." (Pl.'s Mem. 16.) She contends that Judge Eshkenazi erred by considering the burden on the Court before issuing the order to show cause and requests an order to show cause for the Court to better understand how defense counsel made the mistakes at issue. (*Id.* at 16–18.) However, by requesting that this Court conduct a comprehensive review of all of Defendant's filings to date, Plaintiff now imposes a burden on the Court before the issuance of the order to show cause. Plaintiff cannot have it both ways — arguing that the Court's burden should only be considered post-OTSC but imposing on the Court that same burden pre-OTSC during this appeal.

Court did not uncover any additional mis-citations in the twenty-two filings by Defendant other than those already identified by Plaintiff.[15]

First, Plaintiff argues that Judge Eshkenazi's denial of the OTSC was a legal error because Judge Eshkenazi's ruling was allegedly grounded on the burden, or lack thereof, of the mis-citations on the Court and did not factor in the burden imposed on Plaintiff. (Pl.'s Mem. 3 ("The Court below was legally incorrect that frivolous conduct must directly impact the Court . . . ."); *see also id.* 15–18.) While courts can consider the relevant burden the mis-citations caused both on the court and opposing parties, the Court has not located any case that states, as a rule of law, that a court must impose sanctions for hallucinated citations, let alone a case that states that the court must issue sanctions where the mis-citations imposed a burden only on the opposing party. *See Mata*, 678 F. Supp. 3d at 448–49 (listing the "[m]any harms [that] flow from the submission of fake opinions"). None of the cases cited by Plaintiff declares such a rule either[16] — instead, all of the cases cited by Plaintiff involve situations where the court factored in various relevant burdens imposed, and those caused both pre- and post-order to show cause, by the mis-citations when deciding to sanction an attorney. (*See* Pl.'s Mem. 15–18; *see also* Def.'s Opp'n 6–7.) *See Chakma v. Sushi Katsuei, Inc.*, No. 23-CV-7804, 2026 WL 1399056, at *11

[15] The Court's holding that the requested OTSC is unnecessary is further supported by the Court's review of the twenty-two other filings by Defendant.

[16] Plaintiff argues that "[t]o reduce [Judge Eshkenazi's] explanation [in denying the OTSC] to a mere 'factor in a discretionary calibration, not the rule of decision' attempted to write what the Magistrate Judge actually said out of the transcript." (Pl.'s Reply 10 (quoting Def.'s Opp'n 6).) Plaintiff attempts to argue that Judge Eshkenazi's statement about the lack of burden on the Court can only be read as a "rule of decision" and not as a "factor in a discretionary calibration." However, Plaintiff has failed to cite to any part of the transcript where Judge Eshkenazi explicitly declined to issue the OTSC because (1) she stated that is was necessary for the mis-citations to impose a burden on a court for the court to impose sanctions and (2) because there was no burden imposed on Judge Eshkenazi, she could not issue sanctions.

(S.D.N.Y. May 19, 2026) (sanctioning counsel only in the form of attorneys' fees for opposing counsel because of counsel's pattern of false submissions); *Superb Motors Inc. v. Deo*, No. 23-CV-6188, 2026 WL 1179837, at *1, *3–4 (E.D.N.Y. Apr. 30, 2026) (sanctioning counsel when the court "independently found" fake citations, without a discussion on the impact on opposing counsel); *Jimenez-Fogarty*, 831 F. Supp. 3d at 264–65, 267 (discussing the burden caused on the court by the lawyer's obfuscation and consistent efforts to minimize her actions and holding that while the court "appreciate[e]d [opposing counsel's] efforts at elucidating the law on sanctions, . . . those efforts [do not] entitle her to fees for what amounted to a voluntary effort to educate the [c]ourt"); *Mata*, 678 F. Supp. 3d at 448–49 (explaining the various burdens imposed by counsel's use of AI). Contrary to Plaintiff's assertions, case law supports that "[i]n determining the appropriate sanction, courts focus *not* on compensation *for the aggrieved party*, but on the deterrence of baseless filings and the curbing of abuses." *Tiekert*, 2026 WL 2690037, at *8 (emphasis added) (quoting *Benjamin*, 779 F. Supp. 3d at 348). This reasoning aligns with the procedural mechanisms of sanctions, where a court can issue an order to show cause either *sua sponte* or at the request of opposing counsel. *See Mata*, 678 F. Supp. 3d at 462 (explaining that a court can impose sanctions *sua sponte* or after an "adversary initiates sanctions proceedings under Rule 11(c)(2)"). Where a court decides to impose a monetary penalty, that fine is payable to the court and not to the opposing party or opposing counsel. *See Mata*, 678 F. Supp. 3d at 466 (ordering the attorney pay the registry of the court as a penalty under Rule 11 "to advance the interests of deterrence and not as punishment or compensation"); *see also infra* footnote 17; *cf. Yaroshevky v. Karlin,* No. 25-CV-2747, 2026 WL 522624, at *11–12 (E.D.N.Y. Feb. 23, 2026) (granting the defendants' Rule 11 motion and request for leave to file a formal fee application to

recover fees related to the Rule 11 motion"), *report and recommendation adopted*, 2026 WL 879292 (E.D.N.Y. Mar. 31, 2026).

Instead, a court's decision to issue an OTSC or to impose a sanction is one based entirely on discretion and upon a court's consideration of various factors. *See Perez*, 373 F.3d at 325 (explaining that the decision of whether to award sanctions under Rule 11 rests firmly within the discretion of the trial court); *Yaroshevky*, 2026 WL 522624, at *7, *10–11 (listing the various factors that a court generally considers when deciding whether to impose Rule 11 sanctions and considering such factors to determine if sanctions for hallucinated cases and mis-citations should be sanctioned). Moreover, many courts heavily weigh the burden the mis-citations imposed on the court, and only sometimes consider the burden imposed on opposing counsel, when deciding whether to impose a sanction. *See, e.g., Tiekert*, 2026 WL 2690037, at *8 (considering the harms caused by the misconduct on the attorney's client, the opposing party and their counsel, the court and its staff, and the judicial system in deciding whether to issue sanctions); *Benjamin*, 779 F. Supp. 3d at 348–49 (sanctioning plaintiff's counsel for use of AI and citing to the cost on plaintiff and the waste of the court's resources, without mention of the burden imposed on opposing counsel); *Yaroshevsky*, 2026 WL 522624, at *9–11 (considering the impact of the plaintiff's consistent mis-citations on both the court and opposing counsel); *see also Barteca Holdings LLC v. Tacobarn Newton LLC*, --- F. Supp. 3d ---, ---, 2026 WL 2253785, at *2–3 (D. Conn. Aug. 4, 2026) (outlining the numerous harms caused by the filing of hallucinated cases and emphasizing the significant impact on the court). The Court cannot find that Judge Eshkenazi's decision was "contrary to law" when there is no hard-line rule of law that governs a judge's discretion in determining whether or not to issue an OTSC and/or impose sanctions.

Judge Eshkenazi appropriately considered the various burdens caused by defense counsel's mis-citations, such as the burden imposed on the Court, when she denied the OTSC.

Second, Plaintiff argues that Judge Eshkenazi's decision to admonish Defendant and his counsel was insufficient and instead appears to argue that the only way for defense counsel to be deterred is by giving Plaintiff money in the form of sanctions.[17] The Court cannot find that Judge Eshkenazi's decision to exercise her judgment and determine that an admonishment was more appropriate than a monetary sanction was "clearly erroneous." *See* Fed. R. Civ. P. 11(c)(4) ("[A] sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Mata*, 678 F. Supp. 3d at 465 ("The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head), etc.").

Judge Eshkenazi's decision to give a warning to defense counsel, and not order monetary payment, is well within her right to decide how best to handle the motion. *See Tiekert*, 2026 WL

---

[17] Contrary to Plaintiff's assertion, case law supports that a sanction in the form of monetary payment is often paid to the court and not to the opposing party (aside from potentially attorney's fees). *See Mata*, 678 F. Supp. 3d at 466 ("An attorney may be required to pay a fine, or, in the words of Rule 11, a 'penalty,' to advance the interests of deterrence and not as punishment or compensation. (citing *Universitas Educ., LLC v. Nova Grp.*, 748 F.3d 99, 103–04 (2d Cir. 2015)); *see, e.g., Jimenez-Fogarty*, 831 F. Supp. 3d at 257–59, 268 (sanctioning counsel for use of AI and making the payment payable to the Clerk of Court); *Superb Motors Inc.*, 2026 WL 1179837, at *4 (same); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 351 (E.D.N.Y. 2025) (same). Plaintiff has not, in her initial OTSC request or her OTSC Sanction Appeal, requested attorney's fees.

2690037, at *5 ("When Rule 11 has been violated, district courts have broad discretion to craft a sanction appropriate under the circumstances."); *Mata*, 678. F. Supp. 3d at 465 ("[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve the goal. [T]he [c]ourt has wide discretion to craft an appropriate sanction, and may consider the effects on the parties . . . ." (first and second alterations in original)). There are many cases where courts faced clear illicit AI use and determined that Rule 11 violations did not require the issuance of a fine and instead warned the offending party. *See Booker v. U.S. Bank N.A. as Tr. for Truman 2016 SC6 Title Tr.*, --- F. Supp. 3d ---, ---, 2026 WL 2254689, at *6 (D. Conn. Aug. 5, 2026) (admonishing counsel and warning "any future filing containing fabricated authorities, inaccurate quotations, erroneous citations, or other AI-generated hallucinations — or any future failure to conduct a reasonable, human-based verification of authorities before filing — may result in substantially more severe sanctions"); *Cartagena v. Dixon*, No. 25-CV-3552, 2026 WL 673811, at *5–6 (S.D.N.Y. Mar. 10, 2026) (admonishing counsel's use of hallucinated cites and warning that further misconduct may lead to sanctions or referral for discipline where the attorney had a history of submitting fake authorities and misrepresentations of the law and was previously sanctioned on multiple occasions for such submissions), *reconsideration denied*, No. 25-CV-3552, 2026 WL 2806930 (S.D.N.Y. Sep. 18, 2026); *United States v. Cohen*, 724 F. Supp. 3d 251, 258–59 (S.D.N.Y. 2024) (declining to sanction counsel while noting "[h]is citation to non-existent cases is embarrassing and certainly negligent, perhaps even grossly negligent"); *see also Braica*, 826 F. Supp. 3d 286 at 289 (admonishing the plaintiff for "fabricated case law, fictitious quotes, and repeated misstatements of law in [the p]laintiff's briefs" and striking the briefs containing AI-generated hallucinations); *Hall v. Acad. Charter Sch.*, No. 24-CV-8630, 2025 WL 2256653, at *5

(E.D.N.Y. Aug. 7, 2025) (collecting cases); *cf. Flycatcher*, 2026 WL 306683, at *12 (sanctioning counsel because it was clear that counsel "was not dissuaded by [c]ourt orders or the threat of sanctions from filing unchecked, AI-generated submissions with false legal citations" and "when given the opportunity to explain his conduct in person, [he] chose to give many answers, only a few of which were true").

The Court's finding that Judge Eshkenazi did not abuse her power in denying the OTSC is supported by statutory law which warns that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(1), (4), and case law which warns that a court "need[s] to ensure that any [sanctions] decision is made with restraint," *Storey*, 347 F.3d at 387, because it may be acting "as accuser, fact finder and sentencing judge," *Mackler Prods., Inc.*, 146 F.3d at 128.

The Court finds that Judge Eshkenazi's OTSC denial is not "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Romain*, 2025 WL 3461169, at *1. The Court therefore (1) declines to set aside Judge Eshkenazi's decision and (2) concludes that there is no basis to issue an OTSC or impose sanctions against Defendant.

While the Court denies Plaintiff's appeal, the Court makes clear that its' decision is not an endorsement or approval of defense counsel's actions. Although Judge Eshkenazi declined to issue the OTSC or impose sanctions against Defendant or defense counsel, she very well could have done so, in her discretion, due to defense counsel's egregious mis-citations and obvious failure to conduct the diligence required of all attorneys. *See Jimenez-Fogarty*, 831 F. Supp. 3d at 267 (collecting cases); *see also Park*, 91 F. 4th at 615 ("[S]everal courts have recently proposed or enacted local rules or orders specifically addressing the use of artificial intelligence tools before the court. But such a rule is not *necessary* to inform a licensed attorney, who is a

member of the bar of this Court, that she must ensure that her submissions to the [c]ourt are accurate.”).

By failing to abide by the obligations imposed on him by the ethical code which applies to attorneys, and the Federal Rules of Civil Procedure, counsel risks not only his standing with the bar, but also the interests of his client, the hard-earned reputations of judges, and the integrity of the judicial system as a whole. *Mata*, 678 F. Supp. 3d at 448–49.

## III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's OTSC Sanction Appeal and affirms Judge Eshkenazi's ruling. The Court also lifts the stay and directs the Clerk of Court to transfer this case to the District Court for the Southern District of California.

Dated: October 2, 2026
Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge